1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

FEDERAL TRADE COMMISSION,

     Plaintiff,

     v.

AMAZON.COM, INC.,

     Defendant.

**Case No. 2:14-cv-01038-JCC**

**PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD........................................................................................................ 4

ARGUMENT .................................................................................................................... 5

   I.     The Complaint Alleges That Amazon Engaged in Unfair Practices in Violation of Section 5 of the FTC Act. ..................................................................................... 5

     A.    The Complaint Alleges That Amazon Caused Substantial Injury to Consumers. ...... 6

        1.    Amazon billed at least thousands of consumers for millions of dollars in unauthorized charges. ............................................................................... 6

        2.    Amazon's state-law arguments do not undermine the FTC's allegations of substantial injury. ................................................................................... 6

     B.    Consumers Could Not Reasonably Avoid the Injury Resulting from Amazon's Unauthorized Billing. ......................................................................................... 10

     C.    The Injury Amazon's Consumers Suffered Was Not Outweighed by Any Countervailing Benefits to Consumers or Competition........................................ 13

   II.    There Is No Additional Pleading Requirement for Alleging that Billing Without Consent Is an Unfair Practice Under Section 5 of the FTC Act. .............................. 14

   III.   The Complaint Adequately Pleads a Request for Injunctive Relief......................... 17

   IV.   This Court Should Not Consider the Exhibits to Amazon's Motion. ....................... 19

CONCLUSION................................................................................................................ 21

RESPONSE TO DEFENDANT'S MOTION TO DISMISS        Federal Trade Commission
Case No. 2:14-cv-01038-JCC               600 Pennsylvania Avenue N.W.
                                     Washington, DC  20580
i                             (202) 326-3231

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 4, 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) ....................................................... 4

*Boy 1 v. Boy Scouts of Am.*, 993 F. Supp. 2d 1367 (W.D. Wash. 2014) ......................................... 8

*Ecological Rights Foundation v. Pacific Gas and Elec. Co.*, 713 F.3d 502 (9th Cir. 2013) ........ 19

*FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009) ..................................... 7, 10, 16

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) ................................................ 18

*FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048 (C.D. Cal. 2012) ................................ 7, 18

*FTC v. Crescent Publ'g Grp., Inc.*, 129 F. Supp. 2d 311 (S.D.N.Y. 2001) ....................... 7, 17, 20

*FTC v. Cyberspace.Com, LLC*, 453 F.3d 1196 (9th Cir. 2006) .................................................. 20

*FTC v. Direct Benefits Grp., LLC*, No. 6:11–cv–1186–Orl–28TBS, 2013 WL 3771322 (M.D. Fla. July 18, 2013) ....................................................................... 12

*FTC v. Evans Products Co.*, 775 F.2d 1084 (9th Cir. 1985) ....................................... 19

*FTC v. Global Marketing Group, Inc.*, 594 F. Supp. 2d 1281 (M.D. Fla. 2008) ...................... 15

*FTC v. Ideal Fin. Solutions, Inc.*, No. 2:13-cv-00143-JAD-GWF, 2014 WL 2565688 (D. Nev. June 5, 2014) ........................................................................... 7, 15

*FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975 (N.D. Cal. 2010), *aff'd*, 475 F. App'x 106 (9th Cir. 2012) .................................................................. 7, 12, 13, 15

*FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000) ....................................... 7, 13, 15

*FTC v. Kennedy*, 574 F. Supp. 2d 714 (S.D. Tex. 2008) ....................................................... 7, 15

*FTC v. Merchant Servs. Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394 (E.D. Wash. Aug. 13, 2013) ..................................................................................... 19

*FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010), *amended*, 2010 WL 2365956 (9th Cir. June 15, 2010) ........................................................................... passim

*FTC v. Pantron I Corp*, 33 F.3d 1088 (9th Cir. 1994) ................................................ 18

*FTC v. Sage Seminars*, No. C 95-2854 SBA, 1995 WL 798938 (N.D. Cal. Nov. 2, 1995) ......... 18

*FTC v. Tatto, Inc.*, No. 2:13-cv-08912-DSF-FFM (C.D. Cal. Dec. 16, 2013) ............................ 15

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

*FTC v. Verity Int'l, Ltd.*, 335 F. Supp. 2d 479 (S.D.N.Y. 2004) ................................... 11

*FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006) ........................................... 9

*FTC v. Websource Media, LLC*, No. H-06-1980, 2007 WL 5463511 (S.D. Tex. July 2, 2007).. 15

*FTC v. Wells*, 385 F. App'x 712 (9th Cir. 2010) ..................................................... 7

*FTC v. Willms*, No. C11-828 MJP, 2011 WL 4103542 (W.D. Wash. Sept. 13,
  2011) ............................................................................. 7, 15, 17, 20

*Goodman v. HTC America, Inc.*, No. C11–1793MJP, 2012 WL 2412070 (W.D. Wash. June 26,
  2012) ................................................................................. 19, 20

*Imber-Gluck v. Google, Inc.*, No. 5:14-CV-01070-RMW, 2014 WL 3600506 (N.D. Cal. July 21,
  2014) ................................................................................... 9, 10

*In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030 (N.D. Cal. 2012) ................... 7, 10, 13

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ............................... 5

*Int'l Assoc. of Conf. Interpreters*, 123 F.T.C. 465 (1997) ................................... 18

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .................................... 8

*Martinez v. California*, 444 U.S. 277 (1980) ................................................. 7

*Mollett v Netflix, Inc.*, No. 5:11-CV-01629-EJD, 2012 WL 3731542 (N.D. Cal. Aug. 17,
  2012) ................................................................................... 9, 10

*N.L.R.B. v. Donkin's Inn, Inc.*, 532 F.2d 138 (9th Cir. 1976) ................................ 9

*Nelson v. New Hampshire Fire Ins. Co.*, 263 F.2d 586 (9th Cir. 1989) ........................ 8

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008) ................. 5

*Orkin Exterminating Co. v. FTC*, 849 F.2d 1354 (11th Cir. 1988) ............................. 12

*OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ................................. 4

*TRW, Inc. v. FTC*, 647 F.2d 942 (9th Cir. 1981) ............................................. 18

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ..................................... 19, 20

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ....................................... 18

*Williams v. Brookdale Senior Living Cmtys.*, No. C14-5384 RBL, 2014 WL 3671335 (W.D.
  Wash. July 22, 2014) ................................................................... 8

*Zale Corp.*, 78 F.T.C. 1195 (1971) ......................................................... 18

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

iii

1

**Statutes**

2  15 U.S.C. § 45 ............................................................................................................... 1

3  15 U.S.C. § 45(a)(1) ..................................................................................................... 5

4  15 U.S.C. § 45(n) .......................................................................................................... 5

5  15 U.S.C. § 53(b) ........................................................................................................ 17

6  15 U.S.C. § 6502(b)(1)(A)(ii) .................................................................................... 16

7  15 U.S.C. § 8404(c) .................................................................................................... 16

8  **Rules**

9  Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 4

10  **Other Authorities**

11  *Apple Inc.*, Docket No. C-4444 (F.T.C. Mar. 25, 2014) ....................................... 4, 17

12  *Google Inc.*, File No. 122 3237 (F.T.C. Sept. 4, 2014) ........................................ 4, 17

13  Restatement (Third) of Agency § 3.05, cmt. b (2006) .............................................. 9

14

15

16

17

18

19

20

21

22

23

24

25

26

RESPONSE TO DEFENDANT'S MOTION TO DISMISS          Federal Trade Commission
Case No. 2:14-cv-01038-JCC                         600 Pennsylvania Avenue N.W.
                                                   Washington, DC  20580
(202) 326-3231

Plaintiff, the Federal Trade Commission ("FTC"), submits this memorandum in opposition to defendant Amazon.com, Inc.'s ("Amazon's") motion to dismiss ("MTD") the FTC's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 7.) The FTC's complaint (Dkt. 1) alleges that Amazon has billed parents and other account holders millions of dollars in unauthorized charges children incurred while playing kids' games on mobile devices. Billing for unauthorized charges is an unfair practice under the well-established three-prong test set forth in Section 5 of the FTC Act, 15 U.S.C. § 45. The complaint satisfies this test, alleging that consumers suffered significant monetary harm, that consumers could not reasonably avoid the harm because they were unaware that Amazon would not seek their authorization for the charges, and that the harm is not outweighed by any benefits to consumers or competition of failing to obtain consent. Amazon urges the Court to consult inapplicable legal standards, misapplies the correct legal standard, and mischaracterizes the complaint. Amazon's motion should be denied.

## BACKGROUND

Amazon sells applications ("apps") in its Appstore, which is a digital store preloaded on Amazon's Kindle Fire mobile devices and also available for installation on certain other mobile devices. Compl. ¶ 9. The Kindle Fire is a multipurpose mobile device that can run apps for entertainment, including watching movies or playing games. *Id.* ¶ 9; MTD at 4. Amazon sells and makes money from game apps that can be purchased from the Appstore and played on the Kindle Fire. Compl. ¶¶ 8, 10-12. Many of these apps are games that children are likely to play (referred to here as "kids' apps"). *Id.* ¶ 11. Many of these apps are searchable under the keyword "kids," are described or marketed as suitable for children, or are in fact widely used by children. *Id.* ¶ 24.

Amazon offers these apps as "free" or for a specific dollar amount, but many of the apps contain the ability for users to incur charges, known as "in-app charges." *Id.* ¶ 11. These in-app charges generally range from $0.99 to $99.99 and can be incurred in unlimited amounts. *Id.*

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

While a parent may download the app, in many instances it is a child that plays with the app on the mobile device.  *Id*. ¶¶ 16-17.  For example, in the game "Ice Age Village," children can buy virtual "acorns" for use in the game, with the largest quantity (2,100 acorns) costing $99.99.  *Id*. ¶ 26.  Amazon controls the billing process for in-app charges, bills the consumer's credit card or other funding mechanism linked to the user's Amazon account, and retains 30% of the revenue from each in-app sale.  *Id*. ¶¶ 11-12.

When it launched the Appstore in November 2011, Amazon allowed children to incur unlimited charges merely by clicking through popups in the app, without seeking authorization from the account holder for kids' charges.  *Id*. ¶¶ 8, 18-19.  Amazon did not request any action (such as password entry) by the account holder prior to billing.  *Id*.  Almost immediately, Amazon began receiving voluminous complaints about unauthorized in-app charges by children.  *Id*. ¶ 8.  Just weeks after it introduced in-app charges, these complaints reached levels an Amazon Appstore manager described as "near house on fire," noting that "we're clearly causing problems for a large percentage of our customers."  *Id*. ¶¶ 8, 27.  Amazon personnel were well aware that the problem related to Amazon's failure to obtain parents' consent for the charges; as Amazon's in-app charge project manager put it, "parents are excluded from the buying process for these apps."  *Id*. ¶ 19.

Shortly after it began receiving consumer complaints, Amazon introduced a password prompt for charges over $20.  *Id*. ¶ 20.  Amazon made that change to ensure that those charges were incurred "by the actual accountholder and not someone without permission," according to one internal document, but it did not take similar steps for charges of $20 and under.  *Id*.  In deciding to change the framework for charges over $20, Amazon's Appstore manager noted that "it's much easier to get upset about Amazon letting your child purchase a $99 product without any password protection than a $20 product."  *Id*.  And just months later, Amazon's app manager again described the problem of unauthorized charges by children as a "house on fire" situation.  *Id*. ¶ 27.

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

1        Amazon continued to bill consumers for many in-app charges by children without

2 authorization, eventually adding a password prompt that would appear for some in-app charges

3 but not others, without telling users when those password prompts would appear. *Id.* ¶ 21. The

4 prompts operate in different ways for different apps and different account holders, and often

5 open up a billing window in which further charges can be incurred without password entry. *Id.*

6 The prompts generally only instruct account holders to enter their Amazon password to

7 "Confirm In-App Purchase" (*singular*), however, and do not explain that entering a password

8 means that Amazon will bill consumers for *multiple* and *unlimited* charges over an undisclosed

9 duration (ranging from fifteen minutes to an hour) without seeking further password entry. *Id.*

10 ¶ 22. Amazon has not publicly disclosed any information about how or when it seeks account

11 holder authorization for these charges—for example, whether or when it will seek password

12 entry before a charge is incurred. *Id.* ¶¶ 15, 19-22. The limited information it does provide

13 about in-app charges is often "below the fold." *Id.* ¶ 15.

14        The complaint alleges that Amazon often did not obtain account holder's authorization

15 for charges by children in kids' apps. *Id.* ¶¶ 8, 17-23, 27-30, 33-35. When Amazon displayed

16 information about the dollar amount of particular in-app charges, it did so on popups often seen

17 by children, who have little or no understanding that they are spending real money, rather than a

18 parent or other account holder. *Id.* ¶¶ 17-19, 25, 28-29. Many parents have complained that they

19 were in fact unaware of and did not authorize charges by their children in kids' apps. *Id.* ¶¶ 8,

20 27-30, 33. For example, one consumer whose six-year-old "click[ed] on a lot of buttons at

21 random (she can't read)" and incurred several unauthorized charges was "shocked that there is

22 no password protection" for in-app charges. *Id.* ¶ 29. Another consumer whose daughter

23 incurred over $350 in unauthorized charges complained that Amazon allowed the charges

24 without any "step that requires a password to validate payment information." *Id.* Amazon has

25 received at least thousands of complaints related to unauthorized in-app charges by children,

26

RESPONSE TO DEFENDANT'S MOTION TO DISMISS         Federal Trade Commission
Case No. 2:14-cv-01038-JCC         600 Pennsylvania Avenue N.W.
        Washington, DC  20580
        (202) 326-3231

amounting to millions of dollars in charges.  *Id.* ¶ 27.  Many consumers report up to hundreds of dollars in such charges.  *Id.* ¶ 8.

Many children incur unauthorized charges without their parents' knowledge, but even parents who discover the charges and want to request a refund face significant hurdles in doing so.  *Id.* ¶ 30.  Amazon's stated policy is that all in-app charges are final.  *Id.*  To the extent consumers attempt to contact Amazon and seek an exception to the stated no-refund policy for these charges, they face an unclear and confusing process, involving emails and web pages that do not explain how to seek a refund or that suggest that consumers cannot obtain a refund for these charges.  *Id.*

Remarkably, Amazon set up its system in a way that billed consumers for kids' charges without authorization well after media reports about unauthorized charges by children in similar apps had surfaced on competing platforms.  *Id.* ¶ 8.  Apple Inc. and Google Inc., Amazon's biggest competitors in this space, later agreed to settle FTC complaints that they unfairly billed consumers for in-app charges by children without obtaining consumers' informed consent, agreeing to offer and provide full refunds to consumers and to obtain consent going forward.  *See Apple Inc.*, Docket No. C-4444 (F.T.C. Mar. 25, 2014) (consent order), *available at* http://www.ftc.gov/system/files/documents/cases/140327appledo.pdf ("*Apple FTC Order*"); Agreement Containing Consent Order, *Google Inc.*, File No. 122 3237 (F.T.C. Sept. 4, 2014) (proposed order for public comment), *available at* http://www.ftc.gov/system/files/documents/cases/140904googleplayorder.pdf ("*Google FTC Proposed Order*").

## LEGAL STANDARD

A Rule 12(b)(6) motion questions whether a complaint "state[s] a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)).  Plausibility requires "something more than a sheer possibility, but less than a probability[.]"  *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012)

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

1  (citing *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted)).  In making this assessment,

2  courts "accept as true all facts alleged in the complaint," and "draw all reasonable inferences in

3  favor of [the plaintiff]."  *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2

4  (9th Cir. 2008).  As long as the complaint alleges facts sufficient to state a claim that is "not

5  facially implausible," a Rule 12(b)(6) motion should be denied.  *In re Gilead Scis. Sec. Litig.*,

6  536 F.3d 1049, 1057 (9th Cir. 2008).

**ARGUMENT**

7

8  **I.      The Complaint Alleges That Amazon Engaged in Unfair Practices in Violation of**

9           **Section 5 of the FTC Act.**

10          Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting

11  commerce."  15 U.S.C. § 45(a)(1).  To allege unfairness under the FTC Act, the FTC must plead

12  that (i) an act or practice caused or is likely to cause substantial injury to consumers, (ii) the

13  injury was not reasonably avoidable by consumers, and (iii) the injury was not outweighed by

14  any countervailing benefits to consumers or competition.  15 U.S.C. § 45(n); *FTC v. Neovi, Inc.*,

15  604 F.3d 1150, 1153 (9th Cir. 2010), *amended*, 2010 WL 2365956 (9th Cir. June 15, 2010).

16  Amazon attempts to misdirect the Court by referring to statutes it admits are inapplicable and a

17  nonexistent legal standard that purportedly exists for allegations involving "express informed

18  consent."  MTD at 8-12.  But, as discussed at pages 14 to 17 below, Amazon's efforts to

19  substitute new requirements for the longstanding unfairness standard are meritless; no other

20  standard applies.

21          Here, the FTC alleges that Amazon "has billed parents and other Amazon account

22  holders . . . without having obtained the account holders' express informed consent."  Compl.

23  ¶ 33.  Amazon's practices, the complaint alleges, "have caused or are likely to cause substantial

24  injury to consumers that consumers themselves cannot reasonably avoid and that is not

25  outweighed by countervailing benefits to consumers or competition."  *Id*. ¶ 34.  For reasons

26

RESPONSE TO DEFENDANT'S MOTION TO DISMISS                    Federal Trade Commission
Case No. 2:14-cv-01038-JCC                                   600 Pennsylvania Avenue N.W.
                                                             Washington, DC  20580
(202) 326-3231

detailed below, the complaint properly states a claim for relief, and Amazon's motion should be denied.

> **A.**    **The Complaint Alleges That Amazon Caused Substantial Injury to Consumers.**
>
> > **1.**    **Amazon billed at least thousands of consumers for millions of dollars in unauthorized charges.**

In bringing a Section 5 unfairness claim, the FTC may establish substantial injury by showing small harm to a large number of consumers or large harm in aggregate. *Neovi*, 604 F.3d at 1157. The FTC's complaint alleges both. Specifically, "thousands of consumers" have complained that Amazon billed them for unauthorized in-app charges by children, with "many consumers reporting up to hundreds of dollars" in charges, "amounting to millions of dollars" in total. Compl. ¶¶ 8, 27.

> > **2.**    **Amazon's state-law arguments do not undermine the FTC's allegations of substantial injury.**

Amazon does not argue that monetary harm to thousands of consumers amounting to millions of dollars in total is insubstantial. Rather, Amazon claims that every penny of the in-app charges at issue in the complaint was technically authorized and therefore harmless. MTD at 12. Notably, in making this argument, Amazon does not cite a single case construing Section 5 of the FTC Act, the statute governing the FTC's claim here. *See* MTD at 12-18. Instead, Amazon strains to fit this case into the state-law doctrine of apparent authority, insisting that parents apparently authorized in-app charges by allowing their children to use Amazon's mobile devices. MTD at 13-18. Amazon's argument ignores the governing legal standard and distorts the state-law principles it urges this Court to apply in lieu of Section 5.

As Amazon acknowledges, courts routinely have held that billing consumers without their knowledge or permission causes injury under Section 5 of the FTC Act. MTD at 10-11

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

(citing *FTC v. Wells*, 385 F. App'x 712, 713 (9th Cir. 2010); *FTC v. Ideal Fin. Solutions, Inc.*, No. 2:13-cv-00143-JAD-GWF, 2014 WL 2565688, at *1, *5 (D. Nev. June 5, 2014); *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1054, 1079 (C.D. Cal. 2012); *FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1000-05 (N.D. Cal. 2010), *aff'd*, 475 F. App'x 106 (9th Cir. 2012); *FTC v. Crescent Publ'g Grp., Inc.*, 129 F. Supp. 2d 311, 321-23 (S.D.N.Y. 2001); *FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176, 1191 (C.D. Cal. 2000)).[1] Here, thousands of parents and other account holders complained that they did not know their children could incur in-app charges without their approval. Compl. ¶¶ 8, 27-29. In an on-point decision, the United States District Court for the Northern District of California denied a motion to dismiss an unfair practices claim against Apple Inc. for billing for unauthorized in-app charges by children, holding that "[p]laintiffs have shown that they suffered substantial harm by incurring charges that they did not explicitly authorize[.]" *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1041 (N.D. Cal. 2012) (also noting that California unfair practices law mirrors the elements of FTC unfairness law). Amazon does not cite any case law suggesting that a company does not cause injury under Section 5 of the FTC Act when it bills consumers without their knowledge or permission.

Amazon instead argues—without support—that state-law principles of apparent authority insulate it from liability under the FTC Act. But state-law principles do not constrain the scope of the FTC Act. *See Neovi*, 604 F.3d at 1155-56 (declining to consider state law in interpreting the FTC Act). To the extent apparent authority operates as a defense to state-law violations, it is not a defense to a federal claim. *See Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) (rejecting proposition that state-law defense applies to federal claim); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1194 (10th Cir. 2009) (rejecting premise that a practice cannot be unfair "unless it violates some law independent of the [FTC Act]").

---

[1] See also, for example, *Neovi*, 604 F.3d 1150; *FTC v. Willms*, No. C11-828 MJP, 2011 WL 4103542, at *9 (W.D. Wash. Sept. 13, 2011); *FTC v. Kennedy*, 574 F. Supp. 2d 714, 719, 721 (S.D. Tex. 2008).

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

1    Even if the doctrine of apparent authority were applicable under Section 5, however,

2    Amazon misapplies the standards it cites.  At minimum, the doctrine of apparent authority

3    requires that the principal (in this case, the parent) *know* what the "agent" (the child) ostensibly

4    is doing on his or her behalf.  *Williams v. Brookdale Senior Living Cmtys.*, No. C14-5384 RBL,

5    2014 WL 3671335, at *2 (W.D. Wash. July 22, 2014) ("[T]here must be evidence that the

6    principal had knowledge of the act which is being committed by its agent." (internal citation and

7    quotation marks omitted)); *Boy 1 v. Boy Scouts of Am.*, 993 F. Supp. 2d 1367, 1373 (W.D. Wash.

8    2014) (same).  And the third party must have reason to believe that the "agents" were engaging

9    in the acts—here, financial transactions—with permission.  *See Nelson v. New Hampshire Fire*

10   *Ins. Co.*, 263 F.2d 586, 589 (9th Cir. 1989).

11   Amazon does not satisfy either requirement.  Amazon characterizes the FTC's claim as

12   alleging a violation where "a parent hands a child an electronic device *knowing* that the device

13   can make charges to the parent's account and that the parent is responsible for them."  MTD at

14   13 (emphasis added).  But this is precisely the opposite of what the complaint alleges.

15   Consumers have complained about children incurring "unauthorized in-app charges without their

16   parents' knowledge" since the introduction of in-app charges to the Amazon Appstore.  Compl.

17   ¶¶ 8, 30.  Consumers have complained (including to Amazon) that they were "unaware that in-

18   app activities would result in real monetary loss" and surprised that their children could incur in-

19   app charges without a password prompt or other form of authorization.  *Id.*  ¶¶ 28-29.  Amazon's

20   in-app charge project manager attributed this problem to "parents [being] excluded from the

21   buying process for these apps."  *Id.*  ¶ 19.  Amazon cannot argue, particularly on a motion to

22   dismiss, that parents *knew* that their children were incurring costly and repeated in-app charges

23   when the complaint alleges the opposite.[2]

24

25   _____

     [2] Amazon may disagree with its consumers and its employees about whether parents knew that children could incur

26   in-app charges without their involvement, but that is—at most—a factual dispute inappropriate for resolution on a
     motion to dismiss.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Indeed, Amazon's agency

RESPONSE TO DEFENDANT'S MOTION TO DISMISS                    Federal Trade Commission
Case No. 2:14-cv-01038-JCC                                   600 Pennsylvania Avenue N.W.
                                                             Washington, DC  20580
(202) 326-3231

1   Amazon brushes this aside, comparing the mobile device at issue to a credit card and

2   insisting that every child (even "an infant") becomes an agent upon receiving "a device enabled

3   to make online purchases[.]"[3]  MTD at 13-14.   Unlike credit cards, however, Amazon's mobile

4   devices are multipurpose devices with a broad array of functionality.  Compl. ¶ 9; MTD at 4

5   (noting that "[a]pps allow device users to read books, watch movies, and play games; engage

6   with social media; organize and manage their personal files; and perform [a] seemingly limitless

7   range of other mobile electronic activities").   Many parents have not understood these devices to

8   be credit cards, allowing children to use them not to incur charges but to play kids' games.

9   Compl. ¶¶ 17, 24-26, 28-29.  The Second Circuit decision in *FTC v. Verity International, Ltd.*,

10  443 F.3d 48 (2d Cir. 2006) is instructive.  In that case, the defendant relied on the doctrine of

11  apparent authority to argue that all charges for long-distance calls made through consumers'

12  computers were "necessarily made with the subscriber's apparent authority" because users were

13  authorized to use the computers.  *Id*. at 64.  The court's analysis in rejecting this argument

14  applies equally here:

15         [T]he computer is a multipurpose tool that is not primarily understood as a
        payment mechanism, and in the ordinary habits of human behavior, one does not
16      reasonably infer that because a person is authorized to use a computer, the
        subscriber to the telephone line connected to the computer has authorized the
17      computer user to purchase online content on the subscriber's account.  Apparent
        authority does not exist on these facts.
18

19  *Id*.

20  Amazon's reliance on *Imber-Gluck v. Google, Inc.*, No. 5:14-CV-01070-RMW, 2014 WL

21  3600506, at *1, *4 (N.D. Cal. July 21, 2014) and *Mollett v Netflix, Inc.*, No. 5:11-CV-01629-

22

23  arguments generally are inappropriate for resolution on a motion to dismiss, given that issues of agency are typically
    treated as fact issues.  *N.L.R.B. v. Donkin's Inn, Inc.*, 532 F.2d 138, 141 (9th Cir. 1976).
24  [3] In arguing this, Amazon characterizes a comment from the Restatement (Third) of Agency as providing an
    "example of apparent authority[.]"  MTD at 13.  That is an overstatement at best, since the comment says the
25  individual in the hypothetical is acting "without actual authority," mentions that certain aspects of the example may
    "not [be] compatible with the presence of apparent authority," and does not conclude whether apparent authority
26  exists.  Restatement (Third) of Agency § 3.05, cmt. b.

RESPONSE TO DEFENDANT'S MOTION TO DISMISS          Federal Trade Commission
Case No. 2:14-cv-01038-JCC                        600 Pennsylvania Avenue N.W.
                                                       Washington, DC  20580
                         9                                 (202) 326-3231

1   EJD, 2012 WL 3731542, at *3 (N.D. Cal. Aug. 17, 2012) is unavailing.  Neither case discussed

2   apparent authority.  *See generally Imber-Gluck*, 2014 WL 3600506; *Mollett*, 2012 WL 3731542.

3   Amazon declines to mention the *Apple* decision by the same court that decided these cases and

4   the *same judge* that decided *Mollett*.  In *Apple*, as noted above, the court held that plaintiffs

5   demonstrated substantial injury by alleging that their children incurred in-app charges they "did

6   not explicitly authorize."  *Apple*, 855 F. Supp. 2d at 1041.  Likewise, the court in *Imber-Gluck*

7   noted that plaintiff alleged "substantial harm in the aggregate by incurring Google Play charges

8   that they did not explicitly authorize."[4]  *Imber-Gluck,* 2014 WL 3600506, at *6.  Amazon

9   ignores this portion of the decision, instead emphasizing that the court dismissed plaintiff's

10  contract-based declaratory judgment claim to void charges incurred by minors.  *Id.* at *4.  This

11  says nothing about whether unauthorized charges constitute injury under the FTC Act.[5]  *See*

12  *Accusearch*, 570 F.3d at 1194.

B.  **Consumers Could Not Reasonably Avoid the Injury Resulting from Amazon's**

     **Unauthorized Billing.**

15      As Amazon acknowledges, MTD at 18, under Section 5 of the FTC Act, an injury is not

16  reasonably avoidable unless consumers could have made a "free and *informed* choice" to avoid

17  the harm.  *Neovi*, 604 F.3d at 1158 (emphasis added).  The FTC's complaint alleges that

18  Amazon often has not sought consent for in-app charges from the account holder, instead only

19  displaying information about the charge to the child.  Compl. ¶ 19.  In some instances, Amazon

20  has prompted consumers for their password in connection with an in-app charge, but has not

21  informed consumers that entering a password to confirm that charge allows unlimited in-app

22  charges without password entry for an undisclosed period of time.  *Id.* ¶¶ 21-22.  The complaint

[4] The court ultimately dismissed plaintiff's claim, however, because (unlike here) plaintiff failed to allege that the costs of Google's practices outweighed any benefits.  *Imber-Gluck,* 2014 WL 3600506 at *6.

[5] *Mollett*, 2012 WL 3731542, at *2, a case about the allegedly "knowing" or "willful" disclosure of private consumer information under the Video Privacy Protection Act of 1988 and state law, addresses similarly inapposite legal standards.

RESPONSE TO DEFENDANT'S MOTION TO DISMISS          Federal Trade Commission
Case No. 2:14-cv-01038-JCC                                     600 Pennsylvania Avenue N.W.
                                                                        Washington, DC  20580
(202) 326-3231

alleges that these practices caused harm that "consumers themselves cannot reasonably avoid[.]" *Id.* ¶ 34.

Amazon, relying almost entirely on materials outside the scope of the complaint (which, as discussed below, this Court should exclude), argues that parents are equipped with the means to avoid unauthorized in-app charges by children. MTD at 19-20. Significantly, Amazon does not (and cannot) argue that parents had a reasonable means to avoid incurring charges at the time of the transactions. As the complaint alleges and Amazon's employees acknowledged, Amazon established an in-app billing process that excluded parents from the moment of choice about whether to approve a charge. Compl. ¶¶ 19, 21-22. Instead, Amazon contends that account holders should have anticipated the possibility of unauthorized in-app charges and avoided them by changing the default device settings, closely monitoring gameplay, or not downloading apps. MTD at 19-20. Similarly, in *Verity*, the defendant argued that consumers could reasonably avoid injury by "controlling access to their phone lines" or "locking their computers," among other things. *FTC v. Verity Int'l, Ltd.*, 335 F. Supp. 2d 479, 499 (S.D.N.Y. 2004), *aff'd in part and rev'd in part*, 443 F.3d 48 (2d Cir. 2006). The district court found that argument unpersuasive: "Even assuming that such practices would have been effective, the difficulty with defendants' position is that it would require consumers first to suffer an injury and then to find and implement a solution to avoid being injured again." *Id*. Amazon's argument is unavailing here as well, where many consumers were "unaware that in-app activities would result in real monetary loss" and where Amazon did not inform consumers about how or whether it would seek consent for in-app charges. Compl. ¶¶ 15, 21-22, 28. Consumers therefore did not have a "free and informed choice" about whether to incur the charges. *Cf. Neovi*, 604 F.3d at 1158; *Apple*, 855 F. Supp. 2d at 1041 (denying motion to dismiss unfair practices claim where plaintiffs adequately pled they could not have avoided injury from unauthorized in-app charges).

Amazon also argues that consumers could reasonably have avoided injury here by seeking a refund from Amazon for unauthorized charges. MTD at 20. But "the fact that many

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

1    customers were able to—eventually—obtain refunds from Defendant[] does not render the injury

2    avoidable." *FTC v. Direct Benefits Grp., LLC*, No. 6:11–cv–1186–Orl–28TBS, 2013 WL

3    3771322, at *17 (M.D. Fla. July 18, 2013); *see also Neovi*, 604 F.3d at 1158 (internal quotation

4    marks omitted) ("Regardless of whether a bank eventually restored consumers' money, the

5    consumer suffered unavoidable injuries that could not be fully mitigated."). Indeed, "the burden

6    should not be placed on defrauded customers to avoid charges that were never authorized to

7    begin with." *FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1004-05 (N.D. Cal. 2010), *aff'd*,

8    475 F. App'x 106 (9th Cir. 2012).

9         Amazon's argument fails here. Amazon insists that it refunded consumers who

10   complained, MTD at 21, but many consumers may not have noticed the unauthorized charges.

11   Compl. ¶ 30 ("Many children incur unauthorized charges without their parents' knowledge.");

12   *see Neovi*, 604 F.3d at 1158 (internal quotation marks omitted) ("It is likely that some consumers

13   never noticed the unauthorized withdrawals."). Even if consumers noticed the charges, many

14   likely were dissuaded from seeking refunds—as Amazon admits, its unequivocal stated policy is

15   that the charges are nonrefundable. MTD at 20 (citing Compl. ¶ 30); *cf. Orkin Exterminating

16   Co. v. FTC*, 849 F.2d 1354, 1365-66 (11th Cir. 1988) (rejecting reasonable avoidance argument

17   where consumers "were not directly informed" that refunds were available). Amazon does not

18   cite any authority for the proposition that consumers can reasonably avoid harm by seeking a

19   refund where the defendant's stated policy is that refunds are unavailable. Instead, Amazon

20   argues that its policy does not mean what it says: many consumers who have sought refunds for

21   unauthorized in-app charges have obtained them. But even these consumers, the complaint

22   alleges, faced a burdensome process that is "unclear and confusing, involving emails and web

23   pages that do not explain how to seek a refund for in-app charges, or that suggest that consumers

24   cannot obtain a refund for such charges." *See* MTD at 20; Compl. ¶ 30; *Neovi*, 604 F.3d at 1158

25   (internal quotation marks omitted) ("Even if the consumer did notice [unauthorized charges],

26

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

obtaining reimbursement required a substantial investment of time, trouble, aggravation, and money."). The complaint properly pleads that consumers could not reasonably avoid the harm.

### C. The Injury Amazon's Consumers Suffered Was Not Outweighed by Any Countervailing Benefits to Consumers or Competition.

The final element of a Section 5 unfairness claim weighs injury against—to the extent they exist—offsetting benefits to consumers or competition. In making this comparison, the focus is on the particular practice alleged to violate the law: here, Amazon's failure to obtain consumers' informed consent for these charges. The FTC does not allege that this practice produced offsetting benefits, because billing parents and other account holders for virtual items they did not purchase does not benefit consumers or competition. *See, e.g.*, *Inc21.com*, 745 F. Supp. 2d at 1004 ("[I]t cannot be said that defendants' 'customers' benefitted at all from services that they never agreed to purchase, didn't know were being provided to them, and never wanted in the first place."). The cost of this practice, on the other hand, is significant and concrete: monetary loss "amounting to millions of dollars" in total. Compl. ¶ 27. The cost-benefit prong of the unfairness test is "easily satisfied" where, as here, "a practice produces clear adverse consequences for consumers that are not accompanied by an increase in services or benefits to consumers or by benefits to competition." *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1201 (C.D. Cal. 2000); *see also Apple*, 855 F. Supp. 2d at 1041 (denying motion to dismiss unfair practices claim where plaintiffs adequately pled costs outweighed benefits).

Amazon claims that the FTC's complaint must identify and discuss potential benefits like the entire concept of "in-app purchasing," the "convenience" of streamlined purchasing, and "innovators try[ing] different things[.]" MTD at 22. But the FTC's complaint does not attack "in-app purchasing" as a whole; it alleges that the specific practice of billing consumers for in-app charges without first obtaining their informed consent is unfair. Compl. ¶¶ 33-35. Nor does

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

1   the complaint impugn or threaten the convenience of streamlined (e.g., "1-Click") purchasing or

2   innovative responses to the market.[6]  The claim here is simple: Amazon, like every other market

3   participant, cannot bill consumers without their consent.  To the extent Amazon believes there is

4   evidence that unconsented billing benefits consumers or competition, that would be an issue of

5   fact, not a pleading deficiency.

6   **II.      There Is No Additional Pleading Requirement for Alleging that Billing Without**

7   **Consent Is an Unfair Practice Under Section 5 of the FTC Act.**

8               As explained above, the FTC has sufficiently pled facts that support a Section 5

9   unfairness claim under the standard three-prong unfairness test, and that showing is all that is

10  required to deny Amazon's motion to dismiss.  Amazon, however, spends much of its brief

11  arguing against a straw man: that by alleging that Amazon failed to obtain "express informed

12  consent" for children's in-app charges, the FTC is applying a "new," "different and higher"

13  standard that would "govern retroactively."  MTD at 1.  Amazon describes this "heightened"

14  standard as requiring that Amazon obtain contemporaneous authorization for *each* in-app charge,

15  such as by requesting password entry before individual charges.  *Id*. at 1, 2, 8, 9.  This argument

16  is groundless and mischaracterizes the complaint.

17              As is apparent from the face of the complaint, the allegation that Amazon billed without

18  "express informed consent" is another way of stating that it billed consumers for "unauthorized"

19  charges.  The complaint refers to Amazon's "unauthorized" charges or failure to explain how

20  charges will be "authorized" over a dozen times.  *See* Compl. ¶¶ 8; 15; 27; 28; 29; 30; *see also*

21  ¶ 24 heading ("**Amazon Bills Many Parents for Unauthorized In-App Charges Incurred by**

22  **Children**") (emphasis in original).  The complaint likewise discusses the account holder's lack

23  of "consent" to in-app charges in conjunction with alleging that they were unauthorized.  *Id*.

24  ¶¶ 8, 23, 27, 29.

25  ──────────────────────

26  [6] Amazon's assertion throughout its motion that the FTC is seeking to require password entry prior to each in-app charge is inaccurate, as explained below in Part II.  *Infra* at page 16.

RESPONSE TO DEFENDANT'S MOTION TO DISMISS                    Federal Trade Commission
Case No. 2:14-cv-01038-JCC                                          600 Pennsylvania Avenue N.W.
                                                                                   Washington, DC  20580
                                            14                            (202) 326-3231

1    Indeed, the FTC and courts routinely use the terms "express informed consent" and

2    authorization interchangeably.  For example, in *FTC v. Willms*, a case in which the FTC alleged

3    that consumers were enrolled in internet-based programs without their knowledge resulting in

4    "unauthorized charges to consumers," the court noted that the FTC alleged that "Defendants

5    have violated Section 5 of the FTCA by charging consumers' accounts without express informed

6    consent," and held that "[c]ourts have found a violation of Section 5(a) where the defendant has

7    withdrawn money from a consumer's bank account without informed consent."  *FTC v. Willms*,

8    No. C11-828 MJP, 2011 WL 4103542, at *9 (W.D. Wash. Sept. 13, 2011) (citing *FTC v. Global

9    Marketing Group, Inc.*, 594 F. Supp. 2d 1281 (M.D. Fla. 2008) and *FTC v. J.K. Publications,

10   Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000)); *see also FTC v. Kennedy*, 574 F. Supp. 2d 714, 719,

11   721 (S.D. Tex. 2008) (FTC alleged that defendant "unfairly caused unauthorized charges to be

12   billed" and court concluded that defendant engaged in unfair practice "by causing or permitting

13   consumers telephone bills to be charged without previously obtaining their informed consent");

14   *FTC v. Ideal Fin. Solutions, Inc.*, No. 2:13-cv-00143-JAD-GWF, 2014 WL 2565688, at *5 (D.

15   Nev. June 5, 2014) (upholding claim where FTC alleged that defendant billed consumers without

16   "express informed consent" and reasoning that "[c]ourts regularly find unauthorized billing to be

17   unfair").[7]

18       Amazon cites two statutes with specific "consent" requirements and notes that there is no

19   equivalent in the specific context of children's in-app charges.  The statutes are inapplicable, as

20   Amazon itself admits, since this is not a negative option marketing matter and because it does

21   not involve collection of minors' personal information.  MTD at 9-10.  The cases cited by

22   Amazon, *see id*. at 10-11, and the cases cited above show that the FTC can bring unauthorized

23

---

24   [7] These and other cases are pled as a failure to obtain "express informed consent."  *See, e.g.*, Complaint ¶ 31,
     *Inc21.com Corp.*, 745 F. Supp. 2d 975; Complaint ¶ 62, *Ideal Fin. Solutions*, 2014 WL 2565688; Complaint ¶ 37,

25   *FTC v. Tatto, Inc.*, No. 2:13-cv-08912-DSF-FFM (C.D. Cal. Dec. 16, 2013); Complaint ¶ 100, *Willms*, 2011 WL
     4103542; Complaint ¶ 24, *FTC v. Websource Media, LLC*, No. H-06-1980, 2007 WL 5463511 (S.D. Tex. July 2,

26   2007).

RESPONSE TO DEFENDANT'S MOTION TO DISMISS                     Federal Trade Commission
Case No. 2:14-cv-01038-JCC                                    600 Pennsylvania Avenue N.W.
                                                                 Washington, DC  20580
                              15                                    (202) 326-3231

billing cases—including those using the term "express informed consent"—under Section 5 without reference to those two statutes.  Amazon cites no authority that those two statutes constrain the FTC's authority to bring a case alleging billing without informed consent under Section 5 *sub silentio*—and there is none.  *See Accusearch*, 570 F.3d at 1194 ("[T]he FTCA enables the FTC to take action against unfair practices that have not yet been contemplated by more specific laws."); *see also* 15 U.S.C. § 8404(c) (Restore Online Shoppers' Confidence Act provision stating that "[n]othing in this section shall be construed to limit the authority of the Commission under any other provision of law"); 15 U.S.C. § 6502(b)(1)(A)(ii) (Children's Online Privacy Protection Act provision directing FTC to issue rules regarding "verifiable" parental consent for online collection of children's information; does not address financial transactions).

As nothing in the complaint's use of the term "express informed consent" suggests a new or higher standard applied to this case, Amazon has invented a fictional "consent" standard that it claims the FTC is applying: that Amazon was required to obtain contemporaneous authorization to *each* in-app charge by a child—for example, by displaying a password prompt for *each* in-app charge in a kids' app.  *See, e.g.*, MTD at 3 (asserting without citation that the FTC is seeking to "requir[e] re-entry of a customer's password to complete each individual digital purchase").  That is flatly inaccurate.  The complaint does not allege, and the FTC has never contended, that Amazon is required by law to take specific steps—such as a password prompt for every in-app charge—to obtain consent for those charges.  In fact, the complaint itself notes that Amazon changed its in-app charge framework in June 2014—on the eve of litigation—to obtain consent for in-app charges on its newer mobile devices.  Compl. ¶ 27.  Amazon currently *does not* prompt users for a password for each charge in kids' apps.  Instead, Amazon allows consumers to consent to charges in advance.  The FTC's settlements with Apple and Google likewise illustrate that companies can obtain account holders' consent to multiple in-app charges by their

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

16

children in advance.  *See Apple FTC Order*, *supra* p. 4, at 2-3 (expressly permitting consent to potential future in-app charges); *Google Proposed FTC Order*, *supra* p. 4, at 2-3 (same).

Finally, Amazon seeks to distinguish various other unauthorized billing cases by arguing that they involved deception or situations where the charges were not authorized "at all."  *See* MTD at 10-11.  But the very cases cited by Amazon support the FTC's legal theory here: it is unlawful to charge consumers without first obtaining their authorization.  While some of those cases may also have involved deceptive behavior, deception is a separate Section 5 violation, and the FTC does not need to show that a defendant's activities were misleading in order to show unauthorized billing or any other unfairness claim.  *See, e.g.*, *Neovi*, 604 F.3d at 1156; *Crescent Publishing*, 129 F. Supp. 2d at 322 (analyzing unfairness independently of deception claim).

Nor is it relevant that in some unauthorized billing cases consumers never authorized *any* transactions with the defendants.  That is also not a requirement for an unfairness claim, and other cases involve defendants who billed for both authorized and unauthorized charges.   For example, in *Crescent Publishing*, despite defendant's arguments that it had many "satisfied customers" who authorized defendant's charges, the court found that the FTC was likely to prevail on the merits of its unfairness claim alleging unauthorized billing.  129 F. Supp. 2d at 322; *see also Willms*, 2011 WL 4103542, at *1, *9 (some consumers may have agreed to initial charges but other charges were billed without consent).  To the extent that Amazon's brief can be read as suggesting that there must be a precisely analogous FTC case in order for the complaint to proceed, that is not required under Section 5.  *See, e.g.*, *Neovi*, 604 F.3d at 1153 (finding unfairness violation and noting that the FTC "has broad powers under the FTC Act to prevent businesses from engaging in unfair or deceptive practices").

## III.    The Complaint Adequately Pleads a Request for Injunctive Relief.

The FTC properly seeks a permanent injunction against Amazon to prevent future violations of the FTC Act.  *See* 15 U.S.C. § 53(b) (The FTC "may seek, and after proper proof, the court may issue, a permanent injunction."); *FTC v. Pantron I Corp*, 33 F.3d 1088, 1102 (9th

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

Cir. 1994) (Section 13(b) of the FTC Act "gives the federal courts broad authority to fashion appropriate remedies for violations of the Act."). In its motion, Amazon baldly asserts that there is no basis for such relief because "the Complaint itself concedes that the allegedly unfair practice has already ended and is not likely to recur." MTD at 23. In fact, the complaint clearly alleges that "[a]bsent injunctive relief by this Court, Defendant is likely to continue to injure consumers, reap unjust enrichment, and harm the public interest." Compl. ¶ 36. Amazon appears to be relying on the FTC's allegation that Amazon very recently changed its in-app charge framework to obtain account holder's informed consent for in-app charges *on its newer mobile devices*, *id.* ¶ 27, but, as Amazon admits in a footnote to its motion, this change was not made to all of its devices. MTD at 23 n.4. At minimum, whether Amazon has cured its illegal practices is a question of fact that is not properly resolved on a motion to dismiss.

Moreover, even if Amazon's recent changes to its billing process stopped the unlawful charging of consumers, it is well established that voluntary cessation of illegal conduct does not deprive a court of the power to grant injunctive relief. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1237-38 (9th Cir. 1999) ("The reason that the defendant's conduct, in choosing to voluntarily cease some wrongdoing, is unlikely to moot the need for injunctive relief is that the defendant could simply begin the wrongful activity again."). Accordingly, the burden of demonstrating mootness is "a heavy one," and "it must be 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Commerce Planet*, 878 F. Supp. 2d at 1087 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) and *TRW, Inc. v. FTC*, 647 F.2d 942, 953 (9th Cir. 1981)). Cessation of conduct after commencement of an investigation is given even less credibility. *FTC v. Sage Seminars*, No. C 95-2854 SBA, 1995 WL 798938, at *6 (N.D. Cal. Nov. 2, 1995); *accord Int'l Assoc. of Conf. Interpreters*, 123 F.T.C. 465, 658 (1997) (quoting *Zale Corp.*, 78 F.T.C. 1195, 1240 (1971)) ("A claim of abandonment is rarely sustainable as a defense to a Commission complaint where, as here, the alleged discontinuance occurred 'only after the Commission's hand was on the respondent's

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

1   shoulder.'"").  Here, Amazon did not implement its most recent changes to its in-app billing

2   process until the eve of the Commission's filing of the complaint, over two and a half years after

3   consumers began complaining about unauthorized charges by children and, as Amazon concedes

4   in its motion, well into the FTC's investigation.  *See* MTD at 21 (referencing the FTC's

5   "extensive pre-complaint discovery").

6          Amazon's reliance on *FTC v. Evans Products Co.*, 775 F.2d 1084 (9th Cir. 1985) and

7   *FTC v. Merchant Servs. Direct, LLC*, No. 13-CV-0279-TOR, 2013 WL 4094394 (E.D. Wash.

8   Aug. 13, 2013) is unavailing.  Both cases concerned a request for *preliminary* relief, which is not

9   at issue here.  Moreover, *Evans Products* involved conduct that had ceased *three years* prior to

10  the filing of the complaint, and the defendant company had filed for bankruptcy.  775 F.2d at

11  1088.

12  **IV.      This Court Should Not Consider the Exhibits to Amazon's Motion.**

13         Amazon attached over 50 pages of documents to its motion, the vast majority of which

14  this Court should not consider.[8]  A document not attached to the complaint is incorporated by

15  reference and properly before the Court on a motion to dismiss only "if the plaintiff refers

16  extensively to the document or the document forms the basis of the plaintiff's claim."  *United*

17  *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *accord Ecological Rights Foundation v.*

18  *Pacific Gas and Elec. Co*., 713 F.3d 502, 511 (9th Cir. 2013) ("Whether a document is 'central'

19  to a complaint turns on whether the complaint 'necessarily relies' on that document.") (citations

20  omitted); *Goodman v. HTC America, Inc.*, No. C11–1793MJP, 2012 WL 2412070, at *4 (W.D.

21  Wash. June 26, 2012) (denying consideration of contractual documents and screenshots where

22  plaintiff's claims did not rely on the contents of any particular document).

23         This standard is not met here, as evidenced by the scant justification proffered by

24  Amazon.  For example, Amazon claims that one sentence in the complaint—"Amazon's stated

---

[8] Although the FTC does not concede that any of the documents meet the standard to be incorporated by reference, the FTC does not object to the Court's consideration of Attachments C-1 and C-2.

RESPONSE TO DEFENDANT'S MOTION TO DISMISS          Federal Trade Commission
Case No. 2:14-cv-01038-JCC                                    600 Pennsylvania Avenue N.W.
                                                                       Washington, DC  20580
(202) 326-3231

1  policy is that all in-app charges are final"—means the Court should consider unrelated portions

2  of multiple versions of its terms and conditions.  MTD at 5; Compl. ¶ 30.  In fact, Amazon's

3  other attached documents show this allegation does not depend on the terms and conditions

4  documents, as Amazon representatives directly communicated the policy to consumers seeking

5  refunds.  *See, e.g.*, MTD Attach. D at 8 ("As a standard policy, Amazon Appstore purchases are

6  not returnable.").  Amazon does not and cannot suggest that the complaint "necessarily relies" on

7  the terms and conditions documents, or on any other documents that it attached.  *See Ritchie*, 342

8  F.3d at 908; *Goodman*, 2012 WL 2412070, at *4.

9         Even if the Court were to consider the documents, the buried, unclear fine print terms do

10  not refute the FTC's allegations that consumers were unaware that in-app charges could be

11  incurred by children without their involvement.  *See, e.g., Willms,* 2011 WL 4103542, at *1, *9,

12  (finding FTC likely to prevail on claim that charges were unauthorized; websites included

13  disclaimers about charges that consumers were unlikely to see); *Crescent Publishing,* 129 F.

14  Supp. 2d at 322 (finding FTC likely to prevail on claim that charges were unauthorized; website

15  provided no "clear indication" of the point at which charges would be incurred);  *see also FTC v.*

16  *Cyberspace.Com, LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) (summarizing case law from other

17  circuits in which fine print disclosures are insufficient to cure other FTC Act violations).

18  Amazon unsurprisingly highlighted—and, in the case of the sample app screenshots, extracted

19  and enlarged—the language in the terms and conditions that Amazon claims justify the charges,

20  as the language is not clear or prominent.  Moreover, none of the documents explains how or

21  when Amazon seeks account holder authorization for in-app charges, which is the key issue here.

22        Amazon also attached multiple customer service exchanges between Amazon

23  representatives and consumers complaining about unauthorized in-app charges, but these are

24  similarly irrelevant to resolving the motion to dismiss.  Although Amazon asserts that all of these

25  consumers received refunds, it is notable that, in the first exchange, while Amazon highlighted

26  the representative's statement saying "I will go ahead and cancel all these order's for you [*sic*],"

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

1    Amazon did not highlight the representative's next statement, "I'm sorry, . . . I see that a member

2    of our Amazon Appstore team will need to help you with this these order's [*sic*]."  MTD Attach.

3    D at 1-2.  The consumer was then given separate contact information to call Amazon for

4    assistance.  Regardless of whether the consumer ultimately received a refund—which is not clear

5    from the document—this exchange simply illustrates the hoops through which consumers had to

6    jump to request refunds.

7                                          **CONCLUSION**

8            For the foregoing reasons, the FTC requests that the Court deny Amazon's motion to

9    dismiss.

10

11   Dated: September 29, 2014                    /s/ Jason M. Adler
                                                  JASON M. ADLER
12                                                DUANE C. POZZA
                                                  HEATHER ALLEN
13                                                jadler@ftc.gov, dpozza@ftc.gov, hallen@ftc.gov
14                                                Federal Trade Commission
                                                  600 Pennsylvania Avenue N.W., CC-10232
15                                                Washington, DC  20580
                                                  P: (202) 326-3231, (202) 326-2042, (202) 326-2038
16                                                F: (202) 326-3239

17                                                LAURA M. SOLIS, WA Bar No. 36005
18                                                lsolis@ftc.gov
                                                  Federal Trade Commission
19                                                915 2nd Avenue, Suite 2896
                                                  Seattle, WA  98174
20                                                P: (206) 220-4544
21                                                F: (206) 220-6366

22                                                Attorneys for Plaintiff
                                                  FEDERAL TRADE COMMISSION
23

24

25

26

RESPONSE TO DEFENDANT'S MOTION TO DISMISS                      Federal Trade Commission
Case No. 2:14-cv-01038-JCC                                 600 Pennsylvania Avenue N.W.
                                                               Washington, DC  20580
(202) 326-3231

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I, Jason M. Adler, certify that on September 29, 2014, I electronically filed the foregoing Plaintiff's Response to Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

By: /s/ Jason M. Adler

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231