THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

AMAZON.COM, INC.,

Defendant.

No. 2:14-CV-01038-JCC

**AMAZON.COM, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

NOTED ON MOTION CALENDAR:
Friday, October 3, 2014

ORAL ARGUMENT REQUESTED



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The FTC's Retreat from the Inapplicable "Express Informed Consent" Standard Leaves No Basis to Proceed on the Complaint .......... 2

B. The Allegations in the Complaint Fail to Satisfy Section 5(n) of the FTC Act .......... 3

1. Consumers Billed for Transactions They Authorized Do Not Suffer Substantial Injury .......... 3

a. The Charges at Issue Were Authorized .......... 3

b. Common Law Agency Principles Are Applicable When Evaluating Section 5 Unfairness Claims .......... 5

2. Consumers Could Reasonably Avoid the Alleged Harm .......... 8

3. The Complaint Fails to Sufficiently Allege That Consumer Injury Outweighs Countervailing Benefits to Consumers or Competition .......... 11

C. The FTC's Request for Injunctive Relief Should Be Dismissed .......... 12

III. CONCLUSION .......... 12




**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008)....................3

*Boy 1 v. Boy Scouts of Am.*,
993 F. Supp. 2d 1367 (W.D. Wash. 2014)....................7

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ....................11

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) ....................4

*Datel Holdings Ltd. v. Microsoft Corp.*,
712 F. Supp. 2d 974 (N.D. Cal. 2010) ....................4

*FTC v. Accusearch Inc.*,
570 F.3d 1187 (10th Cir. 2009) ....................5

*FTC v. Inc21.com*,
741 F. Supp. 2d 975 (2010), *aff'd*, 475 F. App'x 106 (9th Cir. 2012)....................11, 12

*FTC v. Interbill and Wells*,
slip op. No. CV-S-06-01644-JCM-PAL, at 7 (D. Nev. 2009), *aff'd sub nom FTC v. Wells*, 385 F. App'x 712 (9th Cir. 2010) ....................2

*FTC v. J.K. Publ'ns, Inc.*,
99 F. Supp. 2d 1176 (C.D. Cal. 2000) ....................12

*FTC v. John Beck Amazing Profits LLC*,
888 F. Supp. 2d 1006 (9th Cir. 2012) ....................12

*FTC v. Neovi, Inc.*,
604 F.3d 1150 (9th Cir. 2010) ....................4, 5

*FTC v. Stefanchik*,
559 F.3d 924 (9th Cir. 2009) ....................6

*FTC v. Verity International, Ltd.*,
335 F. Supp. 2d 479 (S.D.N.Y. 2004)....................6, 8, 9, 10



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF AUTHORITIES**
**(continued)**

*FTC v. Verity International, Ltd.*,
443 F.3d 48 (2d Cir. 2006)....................5, 6, 10

*Imber-Gluck v. Google*,
No. 5:14-CV-01070-RMW, 2014 WL 3600506 (N.D. Cal. July 21, 2014)....................8

*In re Apple In-App Purchase Litig.*,
855 F. Supp. 2d 1030 (2012)....................12

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)....................9

*Martinez v. California*,
444 U.S. 277, 100 S. Ct. 553 (1980)....................5

*Mollett v. Netflix*,
No. 5:11-CV-01629-EJD, 2012 WL 3731542 (N.D. Cal. Aug. 17, 2012)....................8

*Williams v. Brookdale Senior Living Cmtys.*,
No. C14-5384 RBL, 2014 WL 3671335 (W.D. Wash. July 22, 2014)....................7

**OTHER CASES**

*Chicago Title Ins. Co. v. Washington State Office of Ins. Comm'r*,
178 Wn.2d 120, 309 P.3d 372 (2013)....................6

*Dimension Funding, L.L.C. v. D.K. Assocs., Inc.*,
146 Wn. App. 653, 191 P.3d 923 (2008)....................6

*Hoglund v. Meeks*,
139 Wn. App. 854, 170 P.3d 37 (2007)....................6

*Mauch v. Kissling*,
56 Wn. App. 312, 783 P.2d 601 (1989)....................7

*Ranger Ins. Co. v. Pierce Cnty.*,
138 Wn. App. 757, 158 P.3d 1231 (2007)....................7

*Ranger Ins. Co. v. Pierce Cnty.*,
164 Wn.2d 545, 192 P.3d 886 (2008)....................7

*State v. Parada*,
75 Wn. App. 224, 877 P.2d 231 (1994)....................7



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF AUTHORITIES**
**(continued)**

*Taylor v. Smith*,
13 Wn. App. 171, 534 P.2d 39 (1975) .......... 7

*Udall v. T.D. Escrow Servs., Inc.*,
159 Wn.2d 903, 154 P.3d 882 (2007) .......... 6

**FEDERAL STATUTES**

15 U.S.C. § 45 (Section 5 of the FTC Act) .......... passim

FTC Act .......... 5, 6

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 11

**OTHER AUTHORITIES**

Restatement (Third) of Agency § 2.03 (2006) .......... 6



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## I. INTRODUCTION

The FTC concedes that the correct legal standard is whether the charges at issue were "authorized" by Amazon customers. That concession vitiates any suggestion that Amazon acted unlawfully because it failed to obtain its customers' "express informed consent" to charge in-app purchases on their devices. This concession alone warrants dismissal of the Complaint.

What remains of the Complaint leaves both the Court and Amazon to guess exactly how the FTC's allegations fare against the correct "authorization" standard. At best, the FTC's belated effort to rehabilitate the Complaint in its brief underscores a further fatal defect: the remaining allegations fail to state a claim under that standard. As the allegations in the Complaint and the terms of service upon which it necessarily relies make clear, once a customer voluntarily links a credit card to his Amazon account to *authorize* 1-Click purchasing, he knows that he and anyone to whom he later entrusts that device can purchase content with a single click, whether that content is movies, music, books, or apps. Authorization for 1-Click purchasing does not vary depending on the type of content selected for purchase. The FTC further concedes that, prior to download of any app with in-app purchasing, Amazon always provided express notice to its customers of both that functionality and the availability of parental controls to prevent unwanted purchases by children.

Having abandoned the heightened legal standard pled in the Complaint and recanted any suggestion that Amazon should be required to obtain a separate password entry for every in-app transaction, Amazon and the Court are left with a mystery as to what additional barriers the FTC would require Amazon to implement for in-app purchases. That mystery makes the FTC's request for an injunction particularly inappropriate.

The FTC's effort to have this Court order some undefined "authorization" beyond what is already required of Amazon customers is precisely the type of rulemaking through litigation that Congress intended to prevent when adding Section 5(n) to the FTC Act. The Court should reject this effort, and dismiss the Complaint.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## II. ARGUMENT

### A. The FTC's Retreat from the Inapplicable "Express Informed Consent" Standard Leaves No Basis to Proceed on the Complaint

Notwithstanding its reliance on a heightened "express informed consent" standard in the Complaint, the FTC now concedes that it is not asking the Court to impose that standard in this case. Opp. at 14-16; Compl. ¶¶ 8, 19, 27, 33 (Dkt. 1). Instead, the Opposition attempts to pivot, asserting that "express informed consent is [just] another way of stating that [Amazon] billed customers for 'unauthorized' charges" and that "the FTC routinely uses the terms 'express informed consent' and authorization interchangeably." *Id.* at 14-15.[1] But "express informed consent" has independent legal meaning inapplicable here, and that confusion permeates the Complaint. The FTC cannot concede away this fundamental flaw.[2]

Despite its effort to repackage the allegations of the Complaint, the FTC's Opposition provides no greater clarity as to what it means by "authorization." There is no explanation as to how this Court should measure Amazon's conduct, and the FTC's own brief is contradictory on this subject. At one point, the FTC argues that consumers did not have a "reasonable means to avoid incurring charges at the time of the transactions." Opp. at 11. But it quickly recants, stating that it "has never contended . . . that Amazon is required by law to take specific steps – such as a password prompt for every in-app charge – to obtain consent for those charges." Opp. at 16. The FTC complains that, once an Amazon customer's device is entrusted to a child, Amazon requires no additional account holder "consent" before an in-app charge may

---

[1] When courts use the term "express informed consent" in unfair billing cases, typically the court is simply quoting or describing the FTC's allegations, as is evident from the FTC's discussion in its Opposition. *See* Opp. at 15; *see also id.* at 15 n.7 ("These and other cases are pled as a failure to obtain 'express informed consent.'").

[2] If, and to the extent that, the FTC's Opposition can be read to argue that the interchangeability of the terms authorization and express informed consent means the two legal requirements are identical, *see* Opp. at 15, that position is incorrect and should be rejected. *See, e.g.*, *FTC v. Interbill and Wells*, slip op. No. CV-S-06-01644-JCM-PAL, at 7 (D. Nev. 2009), *aff'd sub nom FTC v. Wells*, 385 F. App'x 712 (9th Cir. 2010) (directing defendant payment processor to conduct investigations of chargebacks, which include "5. confirming that the client has obtained required customer authorizations for the transactions; and 6. for transactions to which the TSR [Telemarketing Sales Rule] applies, confirming that the client has obtained the express informed consent to the charge as required by the TSR"). An attempt to hold Amazon to a heightened express informed consent standard would be contrary to existing law and should result in dismissal of the Complaint. *See* Motion to Dismiss at 8-12.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

be incurred. But the FTC nowhere explains what additional consent is required under the well-established law of authorization beyond the notice and authorization pled in the Complaint.

Failing to specify a standard, the FTC instead suggests that Amazon should have done in the past what Apple and Google recently agreed to do *prospectively* in March and September of this year when they entered into settlements with the FTC – namely, provide refunds to affected customers (which Amazon always has done) and agree to "obtain consent going forward." *See* Opp. at 4. Those negotiated agreements, of course, do not set the legal standard of what the statute requires today to avoid engaging in an unfair practice, let alone what was required when Amazon launched its Appstore in 2011.[3] Because the FTC has not alleged what additional customer authorizations it believes are required beyond those pled, the legal standard to determine whether the purchases in question would be considered "authorized" remains unknown and the Complaint should be dismissed.

## B. The Allegations in the Complaint Fail to Satisfy Section 5(n) of the FTC Act

The FTC's Opposition also does not cure the Complaint's failure to allege facts satisfying each element of Section 5(n).

### 1. Consumers Billed for Transactions They Authorized Do Not Suffer Substantial Injury

#### a. The Charges at Issue Were Authorized

The FTC contends that it satisfies the "substantial injury" prong of Section 5(n) because it has alleged a sufficient quantum of harm: "small harm to a large number of consumers [and] large harm in aggregate." Opp. at 6. The flaw in the FTC's argument, however, is that the allegations in the Complaint cannot support a finding of *any* cognizable harm, small or large. The FTC identifies the number of customer complaints Amazon received as its allegation of injury. But without more, and particularly divorced from any allegation about

---

[3] *See, e.g., Altria Grp., Inc. v. Good,* 555 U.S. 70, 89, n.13 (2008) ("[A] consent order is in any event only binding on the parties to the agreement."). Neither Apple nor Google admitted liability under Section 5. *See* consent decrees referenced in Opp. at 4.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

the percentage of Amazon Appstore users who actually complained about in-app purchases, the existence of customer complaints says nothing about purported injury. Moreover, the in-app transactions alleged here to constitute an unfair practice were *authorized* by Amazon's account holders and therefore cannot properly be characterized as having injured Amazon's customers. *See FTC v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010) (evaluating substantial-injury prong by first assessing the fact of injury – "consumers were injured by a practice for which they did not bargain" – and then the quantum of injury) (citation and internal quotation marks omitted).

It is not enough for the FTC to allege that the charges were "unauthorized" or that Amazon received complaints from customers who believed charges were incurred "without their authorization." The FTC's *factual* allegations are insufficient to support a plausible conclusion that the in-app charges at issue were unauthorized because Amazon's customers previously agreed that when they enabled their devices with 1-Click, they would be responsible for "all activities that occur under [their] account or password," including activity undertaken by others who are given access to their devices. Conditions of Use, Attachment A to Motion to Dismiss ("Mot."), at 2 (Dkt. 7).[4] The FTC does not explain how a purchase of other media like books and movies by means of 1-Click was authorized, yet using the same settings on the same devices for an in-app purchase was not. There is no meaningful distinction.

---

[4] As the FTC concedes, the Court may consider documents on which the complaint "necessarily relies." Opp. at 19. Attachments A and B to the Motion are such documents: the FTC relies on those terms in its Complaint to suggest Amazon customers may have been dissuaded from seeking refunds. Compl. ¶ 30. But even absent that reliance, they are the terms agreed to by consumers whose accounts incurred the disputed in-app purchases and are directly and necessarily relevant to whether users authorized in-app purchases. Thus, they are properly evaluated by the Court on a motion to dismiss. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (at motion to dismiss stage, considering billing agreement that was "integral" to the complaint because evaluation of its terms was necessary to determine the plausibility of plaintiff's allegations); *see also Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983-84 (N.D. Cal. 2010) (taking judicial notice of terms of use and related documents where "Plaintiff's complaint depends, at least in part, on the contents of the documents," and the documents were "available online" and "capable of accurate and ready determination because they are standard documents."). Given both reliance and core relevance to the FTC's allegations, the FTC's attempt to exclude these terms is meritless.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**b. Common Law Agency Principles Are Applicable When Evaluating Section 5 Unfairness Claims**

The FTC argues strenuously that state law of agency is not a defense to a federal claim of unfair billing practices. The FTC misses the point. Whether or not the law of agency provides a complete defense, *authorized* charges cannot be unfair. When an Amazon customer entrusts his or her device to others for their use, knowing that such access would permit the user to incur charges to the credit card linked to the customer account, that use is "authorized" under common law principles of agency.

The FTC relies on two cases for the proposition that common law agency principles cannot be considered by the Court, neither of which so holds. *FTC v. Neovi, Inc.* simply rejected a party's invitation to look to California's "Little FTC Act" for guidance in interpreting the FTC Act. 604 F.3d 1150, 1156 (9th Cir. 2010), *as amended*, 2010 WL 2365956 (9th Cir. June 15, 2010) ("While it is common practice for states with consumer protection statutes modeled on the FTC Act to rely on federal authority when interpreting those statutes, the reverse is not the case."). *Martinez v. California* held only that "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law." 444 U.S. 277, 284, n. 8, 100 S. Ct. 553, 558 n.8 (1980).[5]

Unlike the state law immunity provision at issue in *Martinez*, common law agency principles do not constitute an affirmative defense that would "constrain" the scope of the FTC Act. *See* Opp. at 7. Instead, application of agency principles can be necessary to determine whether elements of a Section 5 violation are satisfied. In this case, agency principles are fundamental to the question of whether consumers *authorized* the transactions or suffered cognizable injury. That is precisely the type of analysis conducted by the court in *FTC v. Verity International, Ltd.*, 443 F.3d 48, 64 (2d Cir. 2006), a case cited by the FTC, and it is the very

[5] Amazon does not make the argument at issue in *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1194 (10th Cir. 2009), which the FTC cites for its rejection of the premise that a practice cannot be unfair "unless it violates some law independent of the [FTC Act]." Opp. at 8.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

type of analysis this Court should undertake here. Although *Verity* involved far different facts than those presented here, the Second Circuit panel clearly considered defendants' argument that a Section 5 (deceptive practices) element was not satisfied because apparent authority existed for the transactions that were made. *Id.* at 63-64. The court did *not*, as the FTC argues, reject the agency argument on the basis that the state law of agency could not be considered. Courts routinely apply common law agency principles when assessing the liability of multiple actors under the FTC Act. *See, e.g.*, *FTC v. Stefanchik*, 559 F.3d 924, 930 (9th Cir. 2009) ("Under the FTC Act, a principal is liable for the misrepresentations of his agent acting within the scope of the agent's actual or apparent authority.")

The FTC also attempts to argue that apparent authority did not exist because "[a]t a minimum, the doctrine of apparent authority requires that the principal (in this case, the parent) know what the 'agent' (in this case, the child) ostensibly is doing on his or her behalf." Opp. at 8. But no such "knowledge" requirement exists under applicable state law. The Washington Supreme Court has held that apparent authority requires only that "a third party reasonably believes the agent has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 913, 154 P.3d 882 (2007) (citing Restatement (Third) of Agency § 2.03, at 113 (2006)). And courts have repeatedly found that apparent authority exists even where an agent acts *without* the knowledge of the principal, as well as where an agent acts *against* the principal's express instructions. *See Chicago Title Ins. Co. v. Washington State Office of Ins. Comm'r*, 178 Wn.2d 120, 135-36, 309 P.3d 372 (2013) ("[A]n insurance company is bound by all acts, contracts, or representations of its agent . . . which are within the scope of his real or apparent authority, notwithstanding they are in violation of private instructions or limitations upon his authority.") (citation and internal quotation marks omitted); *Dimension Funding, L.L.C. v. D.K. Assocs., Inc.*, 146 Wn. App. 653, 661, 191 P.3d 923 (2008) (finding that agent had apparent authority to sell principal's car without principal's knowledge); *Hoglund v. Meeks*, 139 Wn. App. 854, 869-70, 170 P.3d 37



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

(2007) (finding that associate attorney with law firm's approval to control litigation had apparent authority to bind firm to fee-sharing agreement without knowledge of firm partners). The knowledge requirement that the FTC seeks to impose is inconsistent with the findings of apparent authority in these cases.

The FTC cites two federal cases in support of the proposition that a principal without knowledge cannot be bound by an agent's conduct: *Williams v. Brookdale Senior Living Cmtys.*, No. C14-5384 RBL, 2014 WL 3671335, at *2 (W.D. Wash. July 22, 2014), and *Boy 1 v. Boy Scouts of Am.*, 993 F. Supp. 2d 1367, 1373 (W.D. Wash. 2014). Both cases, however, relied on a misstatement of law that was subsequently clarified by the Washington Supreme Court.[6]

The Washington Supreme Court has rejected such a "knowledge" requirement to establish apparent authority. In *Ranger Ins. Co. v. Pierce Cnty.*, 138 Wn. App. 757, 769, 158 P.3d 1231 (2007), the Court of Appeals recited the knowledge requirement quoted in *Mauch*. On review, however, the Washington Supreme Court stated the test for apparent authority without *Mauch*'s knowledge requirement, requiring only that "a principal's objective manifestations must cause the one claiming apparent authority to actually, or subjectively, believe that the agent has authority to act for a principal [and] be such that the claimant's actual, subjective belief is objectively reasonable." *Ranger Ins. Co. v. Pierce Cnty.*, 164 Wn.2d 545, 555, 192 P.3d 886 (2008) (citation and internal quotation marks omitted). Here, where parents entrusted their children with their 1-Click enabled devices after having agreed to be responsible for any purchasing activity that occurs under their account or password, it was objectively reasonable for

[6] *See Brookdale*, 2014 WL 3671335, at *2; *Boy 1*, 993 F. Supp. 2d at 1373. Both *Brookdale* (indirectly, through its citation to *State v. Parada*, 75 Wn. App. 224, 231, 877 P.2d 231 (1994)) and *Boy 1* cite *Mauch v. Kissling*, 56 Wn. App. 312, 316, 783 P.2d 601 (1989), which relies in turn on *Taylor v. Smith*, 13 Wn. App. 171, 177, 534 P.2d 39 (1975). While *Taylor* does state that apparent authority exists where "the principal knowingly permits the agent to perform certain acts," it states that apparent authority is equally established "when the principal has placed the agent in such position that persons of ordinary prudence are led to believe and assume that the agent is possessed of certain authority, and to deal with him on reliance of such assumption." 13 Wn. App. at 177.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Amazon to believe the person using the device had apparent authority; indeed, Amazon had no way of knowing otherwise.[7]

The FTC does not effectively address Amazon's argument that a device enabled by its owner to incur charges for future purchases is like a credit card enabled to incur charges when used with permission by someone other than the account holder. Once the account holder permits the device or the credit card to be used by others, he or she is responsible for charges incurred by that user. The FTC begs to differ on the basis that "unlike a credit card," the electronic device has other uses in addition to its ability to incur charges for purchases. Opp. at 9. But unlike the *Verity* case cited by the FTC, here the account holder had to understand that the device was meant to be a mechanism for payment, because it is the account holder himself who linked his credit card to the Amazon account for the very purpose of incurring future charges. The FTC's illogical position would assume that the very consumers who themselves use their devices to purchase media – including in-app content – somehow believe that such purchasing capability goes away when they hand the device to their child.[8]

**2. Consumers Could Reasonably Avoid the Alleged Harm**

The FTC contends that the Complaint satisfies the second prong of Section 5(n) because "Amazon established an in-app billing process that excluded parents from the moment of choice about whether to approve a charge," and therefore the alleged harm was not reasonably

[7] Even if a knowledge requirement was the law in Washington, the pleadings fail to allege that it was not satisfied here. The FTC does not dispute that Amazon's customers were provided with three separate notices of potential in-app charges before any charge could be incurred. *See* Mot. at 16-18. And other than asking the Court to ignore Amazon's Conditions of Use, the FTC does not dispute that Amazon's customers agree to the terms, which specifically provide that "Amazon does sell products for children, but it sells them to adults," and that Amazon Customers "agree to accept responsibility for all activities that occur under [their] account or password." Mot., Attachment A. Under these circumstances, the FTC cannot reasonably allege that Amazon's customers lacked knowledge that, by giving their children access to a mobile device previously enabled to incur charges, their children would have the ability to make purchases of all content types, including in-app features and functionality.

[8] Although the FTC seeks to discredit *Imber-Gluck v. Google*, No. 5:14-CV-01070-RMW, 2014 WL 3600506 (N.D. Cal. July 21, 2014) and *Mollett v. Netflix*, No. 5:11-CV-01629-EJD, 2012 WL 3731542 (N.D. Cal. Aug. 17, 2012), those cases support the common sense notion that an account holder who entrusts others with an electronic device enabled with access to a payment account or credit card cannot be heard to complain when that payment account is accessed. *See* Mot. At 14-15.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

avoidable. Opp. at 10-11. According to the Commission, it is '[s]ignificant[ that] Amazon does not (and cannot) argue that parents had a reasonable means to avoid incurring charges at the time of the transactions." Opp. at 11. But Amazon *does* contend that parents could reasonably avoid such charges, both at the time of the transactions and by preventing such in-app purchase opportunities from ever occurring in the first place.

Conspicuously absent from the FTC's Opposition is any recognition of the parental controls Amazon made available to account holders from the inception of its Appstore. *See* Opp. at 11 (referring in passing to the option of "changing the default device settings"). The FTC does not dispute – but instead simply ignores – the fact that those parental controls permitted account holders to configure their devices either to require password entry for all in-app purchases or to block them altogether. *See* Mot. at 19. The standard notice on Amazon's description page informed consumers that while the app provides opportunities "to buy items within the app using actual money," they "can configure parental controls from the device Settings menu by selecting Parental Controls."[9] Moreover, parents certainly could avoid the alleged injury by monitoring their child's use of the device without preset controls, by establishing and enforcing guidelines for their child's in-app purchases, or by not downloading any apps for their children that offered in-app purchasing. *See* Mot. at 19-20. The FTC Act does not exempt parents from the responsibility to supervise their children.

The FTC's sole response is to again rely on *FTC v. Verity International, Ltd.* (this time on the District Court's opinion). 335 F. Supp. 2d 479, 499 (S.D.N.Y. 2004), *aff'd in part*

[9] Mot., Attachment C-1; *see also* Mot., Attachment C-2. In addition, each in-app purchase concludes with a screen indicating the status of Parental Controls, along with a link to change that setting. *See* Mot., Attachment C-3. The FTC does not object to the Court's consideration of Attachments C-1 and C-2. Opp. at 19 n.8. All three are appropriately considered for this Motion because they consist of documents central to the FTC's allegations – screenshots showing the sequence whereby users made in-app purchases . Moreover, the Complaint specifically references the "Confirm In-App Purchase" process and the notices contained in Attachments C-1 and C-2, which represent an earlier step of the process. *See* ¶¶ 14, 15, 22. Attachment C-3 simply provides the final step in that purchase flow and may properly be considered. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (where complaint attached photograph and website caption, complaint incorporated by reference webpages surrounding the photograph because "a viewer accessing the . . . photograph must also access the surrounding pages").



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*and rev'd in part*, 443 F.3d 48 (2d Cir. 2006). But *Verity* is fundamentally distinguishable, involving a billing practice in which payment for access to adult-content websites was accomplished through use of a "dialer program," with charges appearing on the line subscriber's telephone bills as international calls to Madagascar. *Id.* at 485-86. *Verity* is a *deception* case involving the absence of *any* authorization, where telephone line subscribers unaware that individuals in their household were using the adult-content dialer service could only learn of defendants' billing practice after an international charge appeared on their phone bill. Under those facts, the court concluded that the harm could not reasonably be avoided by consumers "locking their computers" or "controlling access to their phone lines" because "it would require consumers first to suffer injury and then to find and implement a solution to avoid being injured again." *Id.* at 499. Here, by contrast, the possibility of a device being used to incur charges is crystal clear to every Amazon customer up front; that is how the device works; it is among its principal uses; customers expressly agree that they are responsible for others' activity on any 1-Click enabled device linked to a credit card; and Amazon provided notice of both in-app purchasing and the availability of various controls and protections to avoid charges incurred by others to whom they provide access to the device.

Of course, harm could be avoided entirely by implementing any of the options described in Amazon's Motion, all of which were readily available. *See* Mot. at 18-19. The FTC's argument that "many customers 'were unaware that in-app activities would result in monetary loss'" does not alter the conclusion that harm could have been *reasonably* avoided by any consumer who read the standard notice provided at the time of download of an app offering additional in-app content: "This app contains in-app purchasing, which allows you to buy items within the app using *actual money*." Mot., Attachment C-1 (emphasis added).[10]

[10] The FTC does *not* contend that download of apps themselves were done without parents' knowledge or authorization (in contrast to its allegations regarding in-app purchases).



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Amazon customers also could reasonably avoid the alleged harm after the fact by seeking a refund for the unwanted charges. The FTC's Complaint and Opposition are devoid of any allegation that an Amazon customer who sought a refund of charges incurred for an in-app purchase was denied a refund.[11] In fact, all refunds requested by the Amazon customers referenced in the Complaint were obtained. *See* Mot. at 20-21 & Attachment D.[12]

**3. The Complaint Fails to Sufficiently Allege That Consumer Injury Outweighs Countervailing Benefits to Consumers or Competition**

The FTC continues to rely on a formulaic recitation of the third required element of Section 5(n) that is insufficient to defeat a Rule 12(b)(6) motion. The Commission does not address the required cost-benefit balancing that the Act surely requires, but instead contends that Amazon has identified the wrong "benefits" to be considered, insisting that the "countervailing benefits to consumers or to competition" to be weighed are those flowing from "Amazon's failure to obtain consumers' informed consent for [in-app] charges." Opp. at 13-14. As such, the Commission continues, there are *no* benefits to balance "because billing parents and other account holders for virtual items they did not purchase does not benefit consumers or competition." *Id.*

The balancing of benefits proposed by the FTC is inconsistent with the text of the Act's unfair practices provision – which Congress passed in 1994 to limit the Commission's enforcement authority. The FTC's proposed test would essentially eliminate the countervailing benefits prong by converting it into a balancing of the harm resulting from the billing practice

[11] The Opposition's reliance on a random statement in *FTC v. Inc21.com*, 741 F. Supp. 2d 975, 1004 (2010), *aff'd*, 475 F. App'x 106 (9th Cir. 2012), is misplaced. There, the court rejected defendants' reliance on the availability of customer refunds, where the conduct in question resulted in *defrauded* customers who were billed for purchases that were "never authorized to begin with." *Id.* (emphasis added). There are no allegations of fraud in this case.

[12] Attachment D contains the full customer communications from which the Complaint selectively quotes. *See* Compl. ¶¶ 28-29. The FTC does not dispute their authenticity, and "a court ruling on a motion to dismiss may consider the full texts of documents which the complaint quotes only in part." *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997).



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

against the "benefits" of the harm. That, of course, is not what Congress intended.[13] Here, the countervailing benefits include Amazon's streamlined payment mechanism, which is of considerable benefit and utility to its customers. Because the FTC fails to even consider these benefits, much less to properly allege that harm to consumers outweighs them, there are no factual allegations that would satisfy the third prong of an unfair billing claim under Section 5.

**C. <u>The FTC's Request for Injunctive Relief Should Be Dismissed</u>**

The FTC concedes that Amazon continued to improve its in-app purchasing experience. *See* Compl. ¶¶ 20, 21, 27 (detailing Amazon's changes to its in-app charge framework). Indeed, it concedes that Amazon "changed its in-app charge framework [in June 2014] to obtain account holders' informed consent for in-app charges on its newer mobile devices," Compl. ¶ 27, satisfying even the negotiated standard reflected in the new Apple and Google consent decrees.[14] Where a defendant has discontinued the allegedly unlawful conduct, a permanent injunction is appropriate only if there is "a cognizable danger of recurrent violation, something more than the mere possibility." *FTC v. John Beck Amazing Profits LLC*, 888 F. Supp. 2d 1006, 1012-13 (9th Cir. 2012) (citation omitted). There is no such allegation here. Moreover, any injunction entered against Amazon must be *specific* as to what Amazon will be required to do. Yet here the FTC will not say what it will require, making its request for injunctive relief inappropriate.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

---

[13] The district court case cited by the FTC simply finds unpersuasive the alleged benefits identified by defendants in that case. *Inc21.com*, 741 F. Supp. 2d at 1004 ("[N]early all of defendants' 'customers' received no countervailing benefits from defendants' billing practices" because 96 percent received no services or products despite being billed and 97 percent never requested the alleged benefits in the first place). Neither of the other two cases cited in the FTC's discussion addresses the proper scope of benefits to be considered. *See FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000); *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1041 (2012) (issue not raised in case asserting violation of California's Unfair Competition Law).

[14] There is no allegation in the Complaint that the mechanism for incurring charges on older devices (i.e., first generation Kindle Fire devices, for which no password is required for in-app purchases of less than $1 each) constitutes a violation of Section 5. *See* Mot. at 23 n.4.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

DATED: October 3, 2014

*s/ Harry H. Schneider, Jr.*
Harry H. Schneider, Jr., WSBA No. 9404
David J. Burman, WSBA No. 10611
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
DBurman@perkinscoie.com

*s/ J. Douglas Baldridge*
J. Douglas Baldridge WSBA No. 37247
Danielle R. Foley (*pro hac vice* forthcoming)
**Venable LLP**
575 7th Street, NW
Washington, DC 20004
Telephone: (202) 344-4000
Facsimile: (202) 344-8300
jbaldridge@venable.com,
drfoley@venable.com

Attorneys for Defendant Amazon.com, Inc.



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**CERTIFICATE OF SERVICE**

On the 3rd day of October, 2014, I caused to be served upon the following, at the address stated below, via the method of service indicated, a true and correct copy of the foregoing document.

| | | |
|---|---|---|
| Jason M. Adler<br>Duane C. Pozza<br>Federal Trade Commission<br>600 Pennsylvania Ave NW, CC-10232<br>Washington, DC 20580<br>jadler@ftc.gov<br>dpozza@ftc.gov<br><br>Attorneys for Plaintiff | ___<br>___<br>_X_<br>___<br>___<br>___ | Via hand delivery<br>Via U.S. Mail, 1st Class, Postage Prepaid<br>Via CM/ECF system<br>Via Overnight Delivery<br>Via Facsimile<br>Via Email |
| Laura M. Solis<br>Federal Trade Commission<br>915 Second Avenue, Suite 2896<br>Seattle, WA 98174<br>lsolis@ftc.gov<br><br>Attorney for Plaintiff | ___<br>___<br>_X_<br>___<br>___<br>___ | Via hand delivery<br>Via U.S. Mail, 1st Class, Postage Prepaid<br>Via CM/ECF system<br>Via Overnight Delivery<br>Via Facsimile<br>Via Email |

**I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.**

DATED at Seattle, Washington, this 3rd day of October, 2014.

*s/ Harry H. Schneider, Jr.*___________



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000