THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

                    Plaintiff,

      v.

AMAZON.COM, INC.,

                  Defendant.

CASE NO. C14-1038-JCC

ORDER DENYING DEFENDANT
AMAZON'S MOTION TO DISMISS

This matter comes before the Court on Defendant's motion to dismiss for failure to state a claim (Dkt. No. 7), Plaintiff's response (Dkt. No. 11), and Defendant's reply (Dkt. No. 12).

The parties raise several disputed legal issues, including: (1) what documents, if any, the Court may consider in reviewing the motion to dismiss, (2) whether the complaint attempts to assert a new legal standard, and (3) whether the complaint pleads facts sufficient to state a claim under Section 5 of the FTC Act, 15 U.S.C. § 45(n). The Court addresses each issue in turn.

Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

## I.      BACKGROUND

Defendant Amazon.com, Inc. ("Amazon") operates an Appstore in which customers can view and download apps to use on Android mobile devices or Kindle Fire tablets. Dkt. No. 1, p. 3. Apps take many forms, but include functions that allow users to read books, play games, stream movies, check weather, and organize files. Dkt. No. 1, p. 3; Dkt. No. 7, p. 4. Apps may be free or come at a cost to download and install. Dkt. No. 1, p. 4. Certain user activities within some apps also come with monetary charges, starting at $0.99. *Id.* These charges are known as "in-app purchases." *Id.*

Many apps geared towards children, and likely to be used by children, offer in-app purchases. Dkt. No. 1, pp. 7–10. For example, a child may be prompted to use or acquire seemingly-fictitious currency to advance his or her progress in a game, but in reality is making an in-app purchase. *Id.* at 8–9. Amazon has received many complaints from adults who were surprised to find themselves charged for in-app purchases made by children. *Id.*

The Federal Trade Commission ("FTC") brings suit against Amazon, alleging that the billing of parents and other account holders for in-app purchases incurred by children "without having obtained the account holders' express informed consent" is unlawful under Section 5 of the FTC Act, 15 U.S.C. § 45(n). Dkt. No. 1, p. 11.

Amazon moves the Court to dismiss the case for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In support of its motion, Amazon argues, *inter alia*, that (1) the FTC's use of the phrase "express informed consent" attempts to create a new legal standard, and (2) because in-app purchases were made by children with actual or apparent authority, the complaint fails to satisfy the requirements of 15 U.S.C. § 45(n). Dkt. No. 7.

The Court turns first to the appropriate standard of review, including what documents may be considered while undergoing that review.

ORDER DENYING DEFENDANT AMAZON'S
MOTION TO DISMISS
PAGE - 2

## II.   MOTION TO DISMISS, MATERIALS CONSIDERED

### A.   Standard for Motion to Dismiss Under Fed. R. Civ. P 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint has stated a claim "plausible on its face" when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff is obligated to provide grounds for his entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

As Amazon has not filed an answer to the complaint, its motion to dismiss for failure to state a claim is timely. Fed. R. Civ. P. 12(b).

### B.   Documents Incorporated in the Court's Review

The parties dispute whether the Court may consider the documents attached to Amazon's motion to dismiss. *See* Dkt. No. 7, pp. 7–8; Dkt. No. 11, pp. 19–20 ("This Court Should Not Consider the Exhibits to Amazon's Motion"). The documents are as follows:

(A) Amazon's terms and conditions of use;

(B) The Amazon Appstore conditions of use;

(C)(1) A screenshot depicting a children's app called "Pet Shop Story," and its description;

(C)(2) A screenshot depicting the "Pet Shop Story" app and its "Key Details" link;

(C)(3) A screenshot confirming a recent in-app purchase and showing a "Parental Controls" button, and;

(D) Copies of customer complaints and Amazon's responses.

Dkt. No. 7, pp. 31–85.

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court may not typically consider evidence outside the pleadings without converting the motion into a Rule 56 motion for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). However, documents that are "incorporated by reference" in the complaint or facts for which judicial notice are taken may be considered without conversion into a Rule 56 motion. *Id.* (citing *Van Buskirk v. CNN*, 284 F.2d 977, 908 (9th Cir. 2002)).

The doctrine of "incorporation by reference" has been articulated in various ways. Courts typically require that a document be "referred to extensively" in the complaint or "form the basis" of the complaint to be considered incorporated by reference. *Ritchie*, 342 F.3d at 908. An insurance coverage plan "forms the basis" of a complaint based on coverage and a newspaper article containing an allegedly defamatory statement "forms the basis" of the corresponding defamation complaint. *Parrino v. FHIP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998) (insurance); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)) (newspaper). Another route to incorporation exists "if the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance . . ." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (where a billing agreement was not explicitly referred to in the complaint but necessary to the claim and its authenticity was not disputed, it was validly considered on a motion to dismiss).

A court may also review materials on a motion to dismiss if they are the subject of judicial notice. Judicial notice may be taken of factual matters that are either generally known or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Ritchie*, 342 F.3d at 908–09; Fed. R. Evid. 201(b). Judicial notice should be taken with reserve, however, as its function is to deprive a party of the opportunity to attack opposing evidence through rebuttal and cross-examination. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005).

Turning to the six attachments, the Court finds that only Attachments C(1), C(2), and D are appropriate to consider in reviewing Amazon's motion to dismiss.

1. Attachments A & B:

The FTC brings a single cause of action against Amazon: unfair billing practices. Nowhere does its complaint reference either Amazon's general terms and conditions of use or those for its Appstore. *See generally* Dkt. No. 1. Only once does the complaint tangentially mention Amazon's terms and conditions: "Amazon's stated policy is that all in-app charges are final." Dkt. No. 1, p. 10; Dkt. No. 7, p. 5. This language, vaguely acknowledging a "stated policy," does not mention terms or conditions of use. Rather, taken in context, this language is focused on the customer service experience of requesting a refund. Dkt. No. 1, p. 10, ¶ 30. In response to customer complaints, Amazon employees caution that "[a]s a standard policy, Amazon Appstore purchases are not returnable." Dkt. No. 7, pp. 72, 76 (Attachment D).[1] The terms and conditions documents, therefore, neither "form the basis" of the complaint, nor are

---

[1] In the five total complaints included in Attachment D, two customers were informed about this policy and one was told that the refund was a one-time courtesy. The remaining two customers were not apprised of the policy. *See* Dkt. No. 7, pp. 65–85.

referred to extensively in the complaint. By any definition, neither Attachment A or B has been incorporated by reference.

Nor does the Court take judicial notice of Attachment A or B. This Court has previously held that neither legal terms nor similar customer terms of use were "beyond reasonable controversy" such that judicial notice was appropriate. *Goodman v. HTC America, Inc.*, 2012 WL 2412070, at *4 (W.D. Wash. June 26, 2012). Erring on the side of caution with respect to judicial notice, the Court declines to do so. Neither Attachment A nor B will be considered in reviewing Amazon's motion to dismiss.

   2.   Attachments C(1)–(2)

The complaint thoroughly describes the process by which customers search for, download, and use apps. Dkt. No. 1, pp. 4–8. Attachments C(1) and C(2) illustrate this customer experience. Dkt. No. 7, pp. 58–61. Similar images are included in the complaint. Dkt. No. 1, pp. 5, 8. The Court finds Attachments C(1) and C(2) to have been incorporated by reference in the complaint. The FTC does not object to the Court's consideration of these documents. Dkt. No. 7, p. 19, n. 8. Both Attachments C(1) and C(2) are considered in this review.

   3.   Attachment C(3)

Attachment C(3), which shows a "Parental Control" option on a purchase confirmation screen, adds information to Attachments C(1)-(2) not referenced in the complaint. The complaint never mentions parental control functions. *See generally* Dkt. No. 1. Attachment C(3), which provides evidence of the existence of parental controls, was not incorporated by reference in the complaint. Again, in an exercise of caution, the Court declines to take judicial notice of Attachment C(3) and does not consider it in reviewing Amazon's motion to dismiss.

   4.   Attachment D

ORDER DENYING DEFENDANT AMAZON'S
MOTION TO DISMISS
PAGE - 6

The complaint quotes directly from customer complaints provided in Attachment D. Dkt. No. 1, pp. 9–10. Furthermore, the dissatisfaction and confusion expressed by these customers forms the basis of the FTC's complaint: that parents were substantially harmed in a way not reasonably foreseeable and for which countervailing benefits do not atone. 15 U.S.C. § 45(n). The complaint also specifically mentions Amazon's "stated policy is that all in-app charges are final." Dkt. No. 1, p. 10. Customer service representatives in Attachment D express this sentiment.

To the extent that it relates to the materials in the complaint—meaning, to the extent that it conveys the customer experience and expresses Amazon's policy—the Court finds that Attachment D is incorporated by reference into the complaint and considers it here. Attachment D is quoted, referenced, and much of its contents form the basis of the FTC's complaint.

The Court does not, however, rely on Attachment D to provide evidence of the existence of parental control functions: as previously mentioned, such features appear nowhere in the complaint. *See generally* Dkt.No 1; *see also infra* Part IV(B)(1).

## III.   THE FTC DOES NOT PLEAD UNDER A NOVEL LEGAL STANDARD

### A. Parties Dispute of "Express Informed Consent" v "Unauthorized"

Towards the end of the complaint, under the heading for the single count alleged ("Unfair Billing of In-App Charges"), the following language appears:

> "In numerous instances, Defendant has billed parents and other Amazon account holders for children's activities in apps that are likely to be used by children without having obtained the account holders' express informed consent."

Dkt. No. 1, p. 11 (emphasis added). Amazon argues that the phrase "express informed consent" attempts to create a new legal standard. Dkt. No. 7, pp. 1–2, 8–10. Elsewhere throughout the complaint, the FTC uses the words "unauthorized" or "consent" to discuss

ORDER DENYING DEFENDANT AMAZON'S
MOTION TO DISMISS
PAGE - 7

customer confusion around in-app charges. Dkt. No. 1, ¶¶ 8, 15, 23, 27, 28, 29, 30. At no other

time does the complaint use the phrase "express informed consent." Dkt. No. 1.

Amazon makes much of this word choice. Amazon argues that the FTC attempts to

"legislate by litigation," and asks the Court to be "sensitive to the statutory context" in which a

member of the U.S. House of Representatives once cautioned against an "overzealous FTC."

Dkt. No.7, pp. 1, 7. Amazon insists that to require express informed consent is "to hold Amazon

to a new and unjustified legal standard." *Id.* at 8.

The FTC argues that the use of the phrase "express informed consent" is harmless. Dkt.

No. 11, pp. 14–15. The FTC indicates that "the allegation that Amazon billed without 'express

informed consent' is another way of stating that it billed consumers for 'unauthorized' charges."

*Id.* at 14. The FTC further contends that the phrase "express informed consent" may legally be

used interchangeably with the concept of "authorization." *Id.* at 15.

Amazon disputes this assessment, arguing that the terms have independent legal

meanings and the confusion of terms renders the complaint fundamentally flawed such that

dismissal is proper. Dkt. No. 12, p. 2.

**B.  There is not a  Meaningful Legal Difference Between the Terms**

Courts routinely use the terms "consent" and "authorization" interchangeably. *See, e.g.*

*FTC v. Willms*, 2011 WL 4103542, at *9 (W.D. Wash. Sept. 13, 2011) (using the words

interchangeably while discussing the FTC Act); *FTC v. Kennedy*, 574 F. Supp. 2d 714, 719 (S.D.

Tex. 2008) (both words used throughout opinion regarding telemarketing practices); *FTC v.*

*Ideal Fin. Solutions, Inc.*, 2014 WL 2565688, at *5 (D. Nev. June 5, 2014) (quoting the FTC's

complaint and using the two words interchangeably without comment).

While Amazon contends that the words represent different legal standards, it cites only

ORDER DENYING DEFENDANT AMAZON'S
MOTION TO DISMISS
PAGE - 8

one unpublished judgment to support its claim. Dkt. No. 12, p. 2, n. 2 (citing *FTC v. Interbill and Wells*, slip op. No. CV-S-06-01644-JCM-PAL at *7 (D. Nev. 2009), *aff'd sub nom FTC v. Wells*, 385 F. App'x 712 (9th Cir. 2010). The *Interbill* judgment, however, does not define, let alone distinguish, the terms "authorization" and "express informed consent." *See Interbill* at *7. Rather, while listing potential acts that would be construed as "reasonable investigation," the court separately lists "confirming. . . customer authorizations" and "for transactions to which [the Telemarketing Sales Rule] applies, confirming. . . express informed consent." *Id.* The Court is not persuaded by this single citation.

The phrase "express informed consent" does not represent a new legal standard. The primary—and more appropriate—inquiry is whether the complaint pleads sufficient facts to state a claim under Section 5 of the FTC Act. 15 U.S.C. § 45(n) contains no requirement of authorization or consent, but sets forth a three-part test for unlawful activity. The Court now addresses this three-part test.

## IV.    THE COMPLAINT STATES A PLAUSIBLE CLAIM UNDER 15 U.S.C. § 45

Section 5 FTC Act provides, in relevant part:

> The Commission shall have no authority under this section . . . to declare unlawful an act or practice on the grounds that such act or practice is unfair unless <u>the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition</u> . . .

15 U.S.C. § 45(n) (emphasis added).

### A.  Substantial Injury

An act or practice may cause substantial injury either by doing "small harm to a large number of people, or if it raises a significant risk of concrete harm." *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1157 (9th Cir. 2010). Consumer injury can occur in "a variety of ways." *Id.* at 1156.

ORDER DENYING DEFENDANT AMAZON'S
MOTION TO DISMISS
PAGE - 9

1   While courts should look to any deception on the part of businesses, "the absence of deceit is not

2   dispositive." *Id.* Nor is actual knowledge on the part of the consumer a requirement to establish

3   substantial harm. *Id.*

4       Courts have repeatedly held that billing customers without permission causes injury for

5   the purposes of asserting a claim under Section 5 of the FTC Act. *See, e.g.*, *Neovi*, 604 F.3d. at

6   1153; *FTC v. Ideal Fin. Solutions, Inc.*, 2014 WL 2565688, at *5 (D. Nev. June 5, 2014); *FTC v.

7   Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1078 (C.D. Cal. 2012); *FTC v. Inc21.com Corp.*,

8   745 F. Supp. 2d 975, 1004 (N.D. Cal. 2010), *aff'd*, 475 F. App'x 106 (9th Cir. 2012); *FTC v.

9   Crescent Publ'g Group, Inc.*, 129 F. Supp. 2d 311, 322 (S.D.N.Y. 2001); *FTC v. J.K.

10  Publications, Inc.*, 99 F. Supp. 2d 1176, 1191–1192 (C.D. Cal. 2000); *FTC v. Willms*, 2011 WL

11  4103542, at *9 (W.D. Wash. Sept. 13, 2011); *FTC v. Kennedy*, 574 F. Supp. 2d 714, 719–720

12  (S.D. Tex. 2008).

13

14      Amazon contends that "the Complaint fail[s] to make a plausible showing that the in-app

15  purchases by children were unauthorized" and therefore "no showing of substantial injury is

16  possible." Dkt. No. 7, p. 18. As discussed below, however, Amazon has neither demonstrated

17  that the in-app purchases were authorized, nor that authorization precludes the possibility of an

18  unfair billing practice under Section 5 of the FTC Act.

19

20      1.  Authorization of In-App Purchases

21      Amazon argues that the disputed in-app purchases were authorized under agency

22  principles. Dkt. No. 7, pp. 13. According to Amazon, a child user possesses actual or apparent

23  authority to make in-app purchases on the account holder's behalf. *Id.* The FTC argues that the

24  application of agency principles is inappropriate because "state-law principles do not constrain

25  the scope of the FTC Act." Dkt. No. 11, p. 7. The FTC appears to conflate the relatively routine

26

use of general common law agency principles with the rarer, more discretionary use of state statutes and state judicial opinions in interpreting the FTC Act.

Courts may, but need not, rely on state judicial opinions in addressing a claim under the FTC Act. *See Neovi*, 604 F.3d at 1155–56; *Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1363 (11th Cir. 1988). The very existence of the FTC indicates congressional intent that its interpretations of 15 U.S.C. § 45 trump those provided by state law. *Orkin*, 849 F.2d at 1363 ("[Petitioner's] suggestion that we should rely on these [state] cases overlooks the fact that it is the Commission itself which is charged, by statute, with the duty of prescribing 'interpretative rules and general statements of policy with respect to . . . Section [5].'"). While the FTC devotes considerable discussion urging the Court not to apply state law, it does not rebut the notion that common law agency relationships may be considered in interpreting the FTC Act.

Amazon's rationale for applying agency principles appears strained at first glance: because Congress is "presumed to legislate against the background of the common law. . . there is no indication that Congress intended Section 5 to trump common law agency principles." Dkt. No. 7, p. 12. Yet, courts often consider agency liability under the FTC Act. While common law agency principles may be applied in interpreting liability under the FTC Act, courts generally employ such principles to consider whether defendants, not consumers, possessed agent authority. *FTC v. Stefanchik*, 559 F.3d 924, 930 (9th Cir. 2009); *Southwest Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1438–39 (9th Cir. 1986); *Perma-Maid Co. v. F.T.C.*, 121 F.2d 282, 284 (6th Cir. 1941); *Standard Distributors v. Fed. Trade Comm'n*, 211 F.2d 7, 13 (2d Cir. 1954) (concurring in part and dissenting in part) ("Unsuccessful efforts by the principal to prevent such [misconduct] by agents will not put the principal beyond the reach of the Federal Trade Commission Act.").

In its effort to apply agency principles to consumers, Amazon relies on the Second Circuit's opinion in *FTC v. Verity Intern., Ltd.*, 443 F.3d 48 (2d Cir. 2006). In *Verity*, the Second Circuit considered whether, when affected consumers connected phone lines to their computers, they provided apparent authority for the billing of charges to their phone line. *Id.* at 64. The Second Circuit found no apparent authority. *Id.*

Courts rarely find apparent authority proper on the consumer side of an FTC Act suit. The *Verity* opinion identifies only one such case, where extension of agency liability to consumers was justified by both "entrustment of a payment mechanism <u>and</u> specific customs of the aviation industry." *Verity*, 443 F.3d at 64 (emphasis added) (citing *Towers World Airways, Inc. v. PHH Aviation Sys., Inc.*, 933 F.2d 174, 177 (2d Cir. 1991)). In *Towers World*, the Second Circuit reasoned:

> Under the parameters established by Congress, the inquiry into "unauthorized use" properly focuses on whether the user acted as the cardholder's agent in incurring the debt in dispute. A cardholder, as principal, can create express and implied authority only through manifestations to the user of consent to the particular transactions into which the user has entered.

*Towers World*, 933 F.2d 174, 177 (2d Cir. 1991).

Ultimately, considering an agency relationship between account holders and child users is not appropriate at this time. The purpose of such an analysis would be to determine whether the in-app purchases were authorized, which depends largely on the terms and conditions set forth in Attachments A and B. The Court does not consider Attachments A and B in reviewing this motion to dismiss. *See supra* Part II(B)(1). The Court notes that it is not inclined to extend apparent authority to child users without more persuasive legal authority.

    2.  <u>Authorization Does Not Necessary Preclude a Cause of Action under Section 5</u>

1         Amazon argues, without providing legal authority, that "[t]o be unfair under Section 5,

2   the charges at issue must be *unauthorized*." Dkt. No. 7, p. 1 (emphasis in original). Notably, the

3   words "authorized" and "consent" do not appear in the relevant text of Section 5 of the FTC Act.

4   *See* 15 U.S.C. § 45(n). Amazon's own motion later states the law more accurately:

5   "[g]enerally. . . the cases that do not involve deception involve charges that consumers never

6   authorized at all. . ." *Id.* at 10. To demonstrate unfair billing practices likely requires a showing

7   of deception or a lack of authorization, but not necessarily.

8         Amazon has neither demonstrated that the in-app purchases were authorized, nor that

9   authorization precludes the possibility of an unfair billing practice under Section 5 of the FTC

10  Act.

11        The complaint alleges sufficient facts to state a plausible claim that Amazon customers

12  suffered substantial harm due to billing of in-app purchases by children. The legal and factual

13  questions regarding the authorization of these charges remain too tenuous and undeveloped to

14  warrant dismissal of the complaint under Fed. R. Civ. P. 12(b)(6).

15  **B. Reasonably Avoidable**

16        An injury is reasonably avoidable under Section 5 of the FTC Act if the consumer could

17  have made a "free and informed choice" to avoid it. *Neovi*, 604 F.3d at 1158. Amazon contends

18  that its customers could have mitigated damages either before an in-app purchase through

19  parental controls, or afterwards by pursuing a refund, and that the complaint thus fails to allege

20  sufficient facts that this harm was not reasonably avoidable. Dkt. No. 7, pp. 18–21.

21      1.  <u>Anticipatory Mitigation</u>

ORDER DENYING DEFENDANT AMAZON'S
MOTION TO DISMISS
PAGE - 13

Amazon argues that its customers have notice of in-app purchases and the opportunity to block purchases with parental controls, and therefore the injuries to customers were reasonably avoidable.

(a) Notice

The complaint acknowledges that users downloading apps subject to in-app purchases are notified of the possibility of in-app purchases. Dkt. No. 1, p. 6. This warning about in-app purchases occurs "below the fold," meaning users have to scroll down the screen to see it. *Id.* Attachment C(1), which the Court considers in reviewing the motion to dismiss, also includes the description of a particular app ("Pet Shop Story") and the existence of in-app purchasing. Dkt. No. 7, pp. 16, 58–59.

This acknowledgment, however, does not mean Amazon customers made a free and informed choice to submit themselves to the risk of in-app purchases. The complaint indicates that these "below the fold" warnings were unable to be seen by customers without scrolling down. Dkt. No. 1, p. 6. Only a year and a half after launching the Appstore did Amazon add an additional warning in the form of a "Key Details" popup. *Id.* There remains a factual question as to how well-informed customers were about which apps included in-app purchasing.

Furthermore, the complaint suggests not all users were aware of the in-app purchases they were making. An initial "Charge Popup" is displayed the first time an in-app purchase takes place, which a child can clear by clicking a button labeled "Get Item." Dkt. No. 1, p. 6. And, the complaint alleges, "[i]n many instances, once a user clears the Charge Popup, Amazon does not request any further action before it bills the account holder for the corresponding in-app charge." *Id.* Until March 2012, the complaint alleges, Amazon did not require a password to be entered by the account holder for an in-app purchase to go through. *Id.* at 7.

1

(b) Parental Controls

2

Amazon's argument that parental controls provide a means to avoid in-app purchases is

3

not validly considered on the motion to dismiss. The complaint makes no mention of parental

4

controls. *See generally* Dkt. No. 1. Nor is Attachment C(3), showing a "Parental Controls"

5

button, considered in the Court's review.[2]

6

7

Though notice of in-app purchases and the possibility of parental controls may have

8

enabled some customers to avoid in-app purchases, the facts presently before the Court do not

9

suggest so much care and clarity as to warrant dismissal. The FTC has sufficiently alleged that

10

the injury to Amazon customers was not reasonably avoidable.

11

2.  Mitigation After In-App Purchases

12

Amazon next argues that the injury alleged was reasonably avoidable due to its

13

customers' ability to seek a refund. Dkt. No. 7, p. 20–21. However, the possibility of—or even

14

issuance of—a refund does not foreclose an action under Section 5 of the FTC Act. *FTC v.*

15

*Direct Benefits Grp., LLC*, 2013 WL 3771322, at *17 (M.D. Fla. July 18, 2013) ("the fact that

16

many customers were able to—eventually—obtain refunds from Defendant[] does not render the

17

injury avoidable"); *Neovi*, 604 F.3d at 1158 ("Regardless of whether a bank eventually restored

18

consumers' money, the consumer suffered unavoidable injuries that could not be fully

19

20

mitigated.").

21

The complaint acknowledges that many Amazon customers were issued refunds. Dkt.

22

No. 1, p. 10; Dkt. No. 7, pp. 65–85. However, the complaint explains—and Attachment D

23

24

confirms—that customers had to take multiple steps involving e-mails and web-pages with

25

26

[2] While Attachment D acknowledges parental controls, the Court does not consider this portion of Attachment D on a motion to dismiss. *See supra* Part II(B)(4).

ORDER DENYING DEFENDANT AMAZON'S
MOTION TO DISMISS
PAGE - 15

mixed messages. Dkt. No. 1, p. 10. The facts may not be numerous, but it appears plausible that many Amazon customers may not have known about in-app purchases, did not know a refund was possible, or were dissuaded by the complexity of the process from seeking a refund. This is sufficient to survive a motion to dismiss.

The complaint sets forth sufficient facts to state a plausible claim that the injury to Amazon's customers was not reasonably avoidable under 15 U.S.C. § 45(n).

### C.  Countervailing Benefits

Finally, Amazon indicates that countervailing benefits outweigh any injury, warranting dismissal of the complaint. Dkt. No. 7, pp. 21–23. Amazon identifies two countervailing benefits: (1) the fact that "customers perceive [in-app purchases] as enhancing the app's operation. . . [and] want that enhancement immediately," and (2) the overall interest in innovation. *Id.* at 4, 21–23 ("Consumers benefit when innovators try different things, rather than being required to anticipate all potential problems before they occur or employ a one-size-fits-all solution.").

The FTC does not address a balancing of these countervailing benefits in its complaint, but merely alleges that they do not outweigh the injury to customers. Dkt. No. 1, p. 11. Amazon's point that this language is legally conclusory is well taken. The Court does not find this alone, however, to justify dismissal under Fed. R. Civ. P. 12(b)(6). The complaint as a whole alleges sufficient facts to depict the nature and extent of practices leading to alleged injury. The practice associated with this injury—billing adults for unauthorized in-app purchases by children—is considered both for the harm and the convenience it provides. The harm is sufficiently addressed by the FTC and the convenience is cursorily explained by Amazon as "enhancing the app's operation." Dkt. No. 7, p. 4.

ORDER DENYING DEFENDANT AMAZON'S
MOTION TO DISMISS
PAGE - 16

The complaint alleges sufficient facts to render it plausible that customer injuries were not outweighed by this vaguely articulated benefit.

## V.    INJUNCTIVE RELIEF

Amazon argues that injunctive relief is inappropriate because it took measures to improve its in-app purchasing experience. Dkt. No. 7, p. 23. The complaint acknowledges those measures. Whether or not the steps taken by Amazon since launching its Appstore have cured all related unfair billing practices is a question of fact not properly resolved on a motion to dismiss. Even if the unlawful practices have ceased, the Ninth Circuit has established that injunctive relief may still be appropriate. *Fed. Trade Comm'n v. John Beck Amazing Profits LLC*, 888 F. Supp. 2d 1006, 1012 (C.D. Cal. 2012) ("[I]t is well-established that the court's power to grant such relief survives discontinuance of the illegal conduct, and because the purpose is to prevent future violations, injunctive relief is appropriate when there is a cognizable danger of recurrent violation, something more than the mere possibility.")[3]

The specific terms of an injunction would be more properly resolved if necessary at the conclusion of litigation.

## VI.    CONCLUSION

Considering the complaint and the documents it incorporates by reference, the Court finds that the FTC does not bring this suit under a new legal principle, and that it alleges sufficient facts to create a plausible claim for relief under Section 5 of the FTC Act.

For the foregoing reasons, Defendant Amazon's motion to dismiss (Dkt. No. 7) is DENIED.

---

[3] Amazon quotes selectively from this opinion to argue that an injunctive relief is more difficult to obtain than legal precedent suggests.

ORDER DENYING DEFENDANT AMAZON'S
MOTION TO DISMISS
PAGE - 17

1    DATED this 1st day of December 2014.

2

3

4

5

6

7                                        _____

8                                        John C. Coughenour
                                         UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DENYING DEFENDANT AMAZON'S
MOTION TO DISMISS
PAGE - 18