UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>AMAZON.COM, INC.,<br><br>    Defendant. | **Case No. 2:14-cv-01038-JCC**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES**<br><br>NOTE ON MOTION CALENDAR:<br>Friday, July 3, 2015 |

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO COMPEL
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

There are two categories of discovery in dispute: (1) in-app charge data Amazon agreed to produce and now does not want to, attempting to revive objections it waived months ago; and (2) contact information for injured consumers Amazon refused to compensate.  Amazon would have this Court believe that compliance with the disputed discovery requests would involve "extraordinary intrusions."  Dkt. 32 at 3.  This is impressive hyperbole, in service of which Amazon misconstrues the applicable legal standards, the discovery at issue, and the parties' negotiations.  Given the correct standards and the scope and relevance of the disputed discovery, this Court should grant the FTC's motion to compel.

## I. The Court Should Compel Amazon to Produce Information it Previously Agreed to Produce in Response to Interrogatory No. 2 and Request for Production No. 37.

Through artful parsing of the parties' exchanges about Interrogatory No. 2 and Request for Production No. 37, Amazon attempts to reclaim relevance and burden objections it waived months ago.  Dkt. 32 at 12.  When Amazon said in January 2015 that there was "nothing to compel" on these requests, it apparently did not mean it.  Amazon insists that its agreement to produce the requested data "[d]espite the burden to do so" preserved—indefinitely—its objections, because of this caveat: "to the extent it is reasonably available."  Dkt. 32 at 12; *see* Dkt. 24 at 5-6, 105.  At the time, thinking a motion to compel necessary, the FTC broached this exact issue by email: "When Amazon says it will produce only 'reasonably available' documents or information, that's just another way of perpetually maintaining boilerplate burden objections without (as is required) explaining the alleged burden.  It unnecessarily obscures what Amazon will and will not produce and indefinitely delays production of the requested information."  Dkt. 24 at 104 (January 30, 2015 email from J. Adler to D. Foley).[1]  To eliminate doubt, the parties

---

[1] This has been Amazon's mode from the outset.  When pressed for a production deadline, Amazon committed to substantially complete its "rolling" production by May 15, 2015.  In May, it dumped over 160,000 pages of documents on the FTC and claimed it was "finalizing the review of the small amount of remaining documents and [would] produce these documents shortly[.]"  Dkt. 35 at 26.  Since then, it continues to make surprise multi-thousand page "clean-up" productions—most recently, custodial documents for depositions scheduled for *next week*. *See* Suppl. Decl. ¶¶ 2-3.

| PLAINTIFF'S REPLY IN SUPPORT OF | Federal Trade Commission |
|---|---|
| MOTION TO COMPEL | 600 Pennsylvania Avenue N.W. |
| Case No. 2:14-cv-01038-JCC | Washington, DC  20580 |
| 1 | (202) 326-3231 |

1  met and conferred on February 3, 2015—a call Amazon's opposition omits.  *See* Dkt. 32 at 12.
2  During that call, Amazon assured the FTC that it would produce all responsive data in its
3  possession for the agreed set of apps.  Dkt. 24 at 6; Suppl. Decl. ¶¶ 3-4.  Amazon evidently
4  changed course in the following months, but did not reveal its turnabout, let alone discuss the
5  alleged burden of producing the withheld data.  *See* Dkt. 24-1 at ¶ 14.  Amazon cannot revive
6  waived objections at this late stage.

   **A.     The Requested Data is Relevant.**

   Amazon insists the FTC must show the withheld data's relevance clears some unspecified threshold of importance before Amazon should have to complete its data production.  This turns relevance on its head.  Ordinarily, discovery is allowed "unless it is clear that the information sought can have no possible bearing upon the subject matter of th[e] action."  *Lauer v. Longevity Med. Clinic PLLC*, No. C13–0860–JCC, 2014 WL 5471983, at *3 (W.D. Wash. Oct. 29, 2014) (quoting *Ragge v. MCA/Universal Studios, Inc.*, 165 F.R.D. 601, 604 (C.D. Cal. 1995)).  That standard applies equally here.

   The data Amazon is withholding is relevant.  Interrogatory No. 2 seeks data about in-app charge attempts, including whether the charge was successful.  Dkt. 24 at 4-5.  When a charge is successful, the sequence of "metric events" Amazon logs will include everything from initiation to success.[2]  When it is not, the list of events will stop short of success with an event signifying failure.  Amazon attempts to misdirect the Court, arguing that the only data that could "possibly" be relevant is the data related to successful charges.  Dkt. 32 at 13.  But in-app charge attempts within children's apps that failed due to unsuccessful password entry can tell us, most notably, about unauthorized charges before Amazon implemented the various components of its cryptic and sporadic password-prompting scheme.  Dkt. 24 at 5; Ex. N at 18 (Amazon admitting "[a]

---

[2] Despite agreeing to define the metric events in the data it produced, Dkt. 32 at 22 (June, 17 2015 email from D. Foley), Amazon has not done so.  A full interrogatory response requires Amazon to say what these values mean.

| PLAINTIFF'S REPLY IN SUPPORT OF | Federal Trade Commission |
| MOTION TO COMPEL | 600 Pennsylvania Avenue N.W. |
| Case No. 2:14-cv-01038-JCC | Washington, DC  20580 |
| 2 | (202) 326-3231 |

large share of the failed password entries could be from children getting blocked by parental controls"). The frequency of failed password entry without ultimate success in children's apps is evidence of the frequency with which the same segment of charges were unauthorized before Amazon instituted the particular password prompt. This bears on both liability and relief. By any measure, the FTC has shown the withheld data is relevant.

### B. Amazon Has Not Shown That Completing Its Production Would Impose an Undue Burden that Outweighs the Likely Benefit.

Amazon argues that completing its response to Interrogatory No. 2 would impose a "[s]ubstantial" burden. Dkt. 32 at 13. But Amazon must show that the withheld data is "not reasonably accessible" due to *undue* burden or cost. Fed. R. Civ. P. 26(b)(2)(B). Notably, pursuant to the parties' ESI agreement, Dkt. 13 at 3, Amazon previously represented that *none* of its data sources were inaccessible. Suppl. Decl. ¶ 4. The fact that providing the withheld data would take time and resources does not mean the database at issue is not reasonably accessible. *Cf. Thomas v. Cate*, 715 F. Supp. 2d 1012, 1033-34 (E.D. Cal. 2010) (citing cases) (over one hundred hours of review time does not establish undue burden). Amazon dubs the database in question "archival," Dkt. 34 ¶¶ 6-7, but it is not a backup source; it contains recent data that is indexed and in use. *Cf. Starbucks Corp. v. ADT Sec. Servs., Inc.*, No. 08-CV-900-JCC, 2009 WL 4730798, at *6 (W.D. Wash. Apr. 30, 2009) (data reasonably accessible). Internally, Amazon regularly trades in in-app charge data, *see* Exs. I, N, and has analyzed the type of data we are seeking: failed in-app charges due to failed password entries. *E.g.*, Ex. N at 18.

Amazon's opposition further undermines its argument that the withheld data is not reasonably accessible. Amazon just finished accessing the *same* database to produce data about successful in-app charge attempts. Dkt. 34 ¶¶ 7, 9. And producing information about failed attempts apparently would be *less* time consuming than the search Amazon already has completed. *Id*. ¶¶ 11 (successful charges took two engineers several weeks to complete), 15 (failed charges would take one engineer several weeks to complete). Amazon insists that such

| PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL Case No. 2:14-cv-01038-JCC | Federal Trade Commission 600 Pennsylvania Avenue N.W. Washington, DC  20580 (202) 326-3231 |
|---|---|

1  production would be more difficult, however, in part because the search cannot be limited to
2  specific Order IDs.[3]  Dkt. 32 at 14.  But Amazon cannot use as a shield in discovery the fact that
3  it "has chosen a means to preserve the evidence which makes ultimate production of relevant
4  documents expensive."  *Starbucks*, 2009 WL 4730798, at *6 (internal quotation marks and
5  citation omitted); *see also Simon v. ProNational Ins. Co.*, No. 07-60757-CIV, 2007 WL
6  4893477, at *2 (S.D. Fla. Nov. 1, 2007) (defendant cannot claim undue burden by citing
7  deficiencies in its own filing system).

8  Even if Amazon could demonstrate that the requested data is not reasonably accessible,
9  there is good cause to compel production, considering the Rule 26(b)(2)(C) factors Amazon does
10  not.  The needs of the case (timely completion of written discovery), the amount in controversy
11  (at least tens of millions of dollars), the parties' resources (Amazon is a massive company with
12  ample resources), and the importance of the discovery (this is the only source Amazon identified
13  for the data) all counsel toward compelling production.  *Cf. Nat'l Union Fire Ins. Co. v.
14  Coinstar, Inc.*, No. C13-1014-JCC, 2014 WL 3396124, at *5 (W.D. Wash. July 10, 2014)
15  (granting motion to compel; responding party did not "apply the facts to the considerations set
16  out in Fed. R. Civ. P. 26(b)(2)(C)(iii), assuming the information is relevant").

17  **II.  The Court Should Compel Amazon to Produce Information Responsive to
18  Interrogatory No. 4.**

19  Amazon spends most of its brief claiming the FTC's motion implicates consumers'
20  "expressive content" and First Amendment interests, as if repetition will make it true.  *See* Dkt.
21  32 at 3-11, 14.  Amazon's argument ignores the interrogatory in question, which does not seek
22  expressive content.  Indeed, Interrogatory No. 4 does not even seek the name of any app or in-
23  app item.  It seeks (1) contact information for injured consumers who contacted Amazon but did

---

[3] Amazon repeatedly cites the *total* number of metric events, but says it already has produced events corresponding to successful charges in the agreed list of apps.  Dkt. 34 ¶ 9.  The FTC's motion asks Amazon to produce those events that correspond to null Order IDs within the agreed list of apps, not to repeat work it has completed.

PLAINTIFF'S REPLY IN SUPPORT OF                                      Federal Trade Commission
MOTION TO COMPEL                                                             600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-01038-JCC                                                    Washington, DC  20580
                                                    4                                           (202) 326-3231

1  not obtain refunds and (2) Amazon's basis for refund denials (e.g., its stated no-refund policy, an
2  unstated internal policy, a judgment call).  Dkt. 24 at 7.  This is not expressive content.
3        Amazon apparently concedes this, Dkt. 32 at 9 ("on its face Interrogatory No. 4 does not
4  ask for the associated content"), instead claiming that identifying injured consumers who were
5  denied refunds would somehow allow the FTC to cross-reference "previously disclosed
6  information" to unveil expressive content.  *See id.* at 6.  The mechanics of this are unclear, given
7  that Amazon has scrubbed its production to date of all consumer identifying information.[4]  Dkt.
8  32 at 4-6.  The FTC could not link a traditional response to Interrogatory No. 4 to the other
9  documents Amazon produced even if it wanted to.  *See* Dkt. 24 at 8-9.
10        Alternatively, Amazon argues that obtaining consumer contact information would allow
11  the FTC to contact consumers, who voluntarily could discuss the unauthorized charges at issue.
12  *Id*. at 9.  That is exactly right, and it is several levels below extraordinary.  As a consumer
13  protection agency, the FTC frequently contacts injured consumers, often using information
14  obtained from defendants or potential defendants.[5]  *E.g.*, *FTC v. Invention Submission Corp.*, No.
15  MISC.89-272(RCL), 1991 WL 47104, at *4 (D.D.C. Feb. 14, 1991), *aff'd*, 965 F.2d 1086 (D.C.
16  Cir. 1992) ("[A]ny other state of affairs would undermine the Commission's mandate to
17  investigate unfair business practices and allow any organization under investigation to escape
18  scrutiny" by withholding consumer information).  These consumers often choose to speak with
19  us and voluntarily submit affidavits documenting their experiences.  As detailed below, such
20  affidavits would be relevant to many issues in question.

21        **1.**    **The Requested Information is Relevant.**

22        Amazon claims the FTC must show not just relevance but a "compelling need" for the
23  consumer contact information requested in Interrogatory No. 4.  Because the interrogatory does

---

[4] Interrogatory No. 4 does not require Amazon to unredact consumer information from the documents it produced. Instead, Amazon can respond in the traditional way, with a written response rather than a pile of documents.
[5] The FTC takes its privacy responsibilities seriously and is adept at protecting confidential information it obtains. *See* 15 U.S.C. § 57b-2 ("Confidentiality"); 16 C.F.R. § 4.10 ("Nonpublic material").

| PLAINTIFF'S REPLY IN SUPPORT OF | Federal Trade Commission |
| MOTION TO COMPEL | 600 Pennsylvania Avenue N.W. |
| Case No. 2:14-cv-01038-JCC | Washington, DC  20580 |
| 5 | (202) 326-3231 |

1  not implicate the First Amendment, however, ordinary relevance applies.  The requested
2  information is relevant—even compellingly so.  *See* Dkt. 24 at 7; Dkt. 32 at 9.
3        Consumers whose children incurred unauthorized charges (and who requested but were
4  denied refunds) are potential fact witnesses in this case and are entitled to relief.  These
5  consumers likely have information about topics ranging from whether, as Amazon contends, they
6  understood that Amazon might bill them within children's games to the efforts involved in their
7  unsuccessful attempts to obtain a refund for unauthorized charges.  Amazon nonetheless
8  maintains the FTC must show it would be insufficient to obtain this information through other
9  means, such as by scouring social media for statements by injured consumers Amazon refused to
10 compensate.  Dkt. 32 at 10.  This is not a basis for denying discovery.  *See Microsoft Corp. v.*
11 *Hertz*, No. C04-2219C, 2006 WL 1515602, at *1 (W.D. Wash. May 24, 2006) (responding party
12 need not be only source for requested discovery).

          **2.**     **Amazon's Response to Interrogatory No. 4 is Insufficient.**

14       Putting contact information aside, Amazon's opposition illustrates that a Rule 33(d)
15 response would not suffice.  Amazon responded to Interrogatory No. 4 with a litany of
16 objections, Dkt. 24 at 10, and separately instructed the FTC to comb through hundreds of
17 thousands of pages of consumer complaints for the requested information.  As Amazon admits,
18 that information may not be in the documents: whether a refund request was denied may be
19 absent or inaccurate, Dkt. 32 at 5, 9-10 n.4, and the basis for the refund denial often requires
20 familiarity with several factors to "assess what the agent probably did and what the reasons most
21 likely were."  Dkt. 33 ¶ 3; *see* Dkt. 32 at 11-12 ("[A]nalysis of communications text and agent
22 annotations is necessary to identify the reason for a refund denial and, in many cases, to
23 determine whether a refund was requested or denied.").  This Court should compel Amazon to
24 respond to Interrogatory No. 4 in full.

PLAINTIFF'S REPLY IN SUPPORT OF  
MOTION TO COMPEL  
Case No. 2:14-cv-01038-JCC  

Federal Trade Commission  
600 Pennsylvania Avenue N.W.  
Washington, DC  20580  
(202) 326-3231

6

| | | |
|---|---|---|
| 1 | Dated: July 6, 2015 | /s/ Jason M. Adler |
| 2 | | JASON M. ADLER |
| | | DUANE C. POZZA |
| 3 | | HEATHER ALLEN |
| 4 | | JANE RICCI |
| | | COURTNEY A. ESTEP (admission pending) |
| 5 | | jadler@ftc.gov, dpozza@ftc.gov, hallen@ftc.gov, jricci@ftc.gov, cestep@ftc.gov |
| 6 | | Federal Trade Commission |
| 7 | | 600 Pennsylvania Avenue N.W., CC-10232 |
| | | Washington, DC  20580 |
| 8 | | P: (202) 326-3231, (202) 326-2042, (202) 326-2038, (202) 326-2269, (202) 326-2788 |
| 9 | | F: (202) 326-3239 |
| 10 | | LAURA M. SOLIS, WA Bar No. 36005 |
| | | lsolis@ftc.gov |
| 11 | | Federal Trade Commission |
| 12 | | 915 2nd Avenue, Suite 2896 |
| | | Seattle, WA  98174 |
| 13 | | P: (206) 220-4544 |
| | | F: (206) 220-6366 |
| 14 | | |
| 15 | | Attorneys for Plaintiff |
| | | FEDERAL TRADE COMMISSION |

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO COMPEL
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

7

**CERTIFICATE OF SERVICE**

I, Jason M. Adler, certify that on July 6, 2015, I electronically filed the foregoing Plaintiff's Reply in Support of Motion to Compel Discovery Responses with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

By: /s/ Jason M. Adler

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO COMPEL
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

8