THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>              Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC.,<br><br>              Defendant. | No. 2:14-CV-01038-JCC<br><br>**DECLARATION OF JEFFREY M. HANSON IN SUPPORT OF AMAZON.COM, INC.'S RESPONSE TO FTC'S MOTION FOR PROTECTIVE ORDER REGARDING 30(b)(6) DEPOSITION NOTICE**<br><br>NOTED ON MOTION CALENDAR:<br>Friday, September 11, 2015 |

Jeffrey M. Hanson declares:

    1.    I am an attorney at Perkins Coie LLP and one of the attorneys representing Defendant Amazon.com, Inc. ("Amazon") in the above-referenced action. I make this declaration based upon personal knowledge as to which I am competent to testify.

    2.    Attached hereto as **Exhibit A** is a true and correct copy of the FTC's Complaint issued in connection with *In re Apple Inc.*, No. 112-3108 (F.T.C. 2014). The document was produced by the FTC in this action.

DECLARATION OF JEFFREY M. HANSON
(No. 2:14-CV-01038-JCC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL127663517.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

3.      Attached hereto as **Exhibit B** is a true and correct copy of relevant excerpts from the FTC's Supplemental Responses and Objections to Amazon's First Set of Interrogatories, dated August 24, 2015.

4.      Attached hereto as **Exhibit C** is a true and correct copy of a July 9, 2014 letter from United States Senator Deb Fischer to FTC Chairwoman Edith Ramirez, which was produced by the FTC in this action.

5.      Attached hereto as **Exhibit D** is a true and correct copy of an August 12, 2014 letter from FTC Chairwoman Edith Ramirez in response to Senator Fischer's July 9, 2014 letter, which was produced by the FTC in this action.

6.      Attached hereto as **Exhibit E** is a true and correct copy of a printout from the FTC's website defining the practice of "phone bill cramming," which was downloaded at my direction on September 9, 2015.

7.      Attached hereto as **Exhibit F** is a true and correct copy of the FTC's Complaint in *FTC v. Jesta Digital, LLC*, No. 1:13-cv-01272 (D.D.C. 2013), which was downloaded from PACER at my direction on September 9, 2015.

8.      The parties agreed to change the deposition to September 11, 2015, and Amazon issued an Amended Notice of Deposition reflecting that change.  Attached as **Exhibit G** is a true and correct copy of Amazon's Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition of Plaintiff Federal Trade Commission, served on September 2, 2015.

9.      On September 1, 2015, I was contacted by Richard Cunningham (Gibson Dunn), an attorney representing Apple Inc. in connection with Amazon's Notice of Deposition to the FTC.  I also spoke with Mr. Cunningham the next day, and I informed him that Amazon would be willing to limit disclosure and distribution of Apple's competitively sensitive information to outside counsel and experts and to Amazon's inside counsel handling this litigation.

DECLARATION OF JEFFREY M. HANSON
(No. 2:14-CV-01038-JCC) − 1
LEGAL127663517.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

10.    On September 8, 2015, Amazon served a subpoena on Apple that mirrors the Apple-related discovery served on the FTC.

**I declare under penalty of perjury that the foregoing is true and correct.**

EXECUTED at Seattle, Washington, this 9th day of September, 2015.


_____*s/ Jeffrey M. Hanson*_____
Jeffrey M. Hanson

DECLARATION OF JEFFREY M. HANSON
(No. 2:14-CV-01038-JCC) − 2
LEGAL127663517.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

**CERTIFICATE OF SERVICE**

I certify that on September 9, 2015, I electronically filed the foregoing Declaration of

Jeffrey M. Hanson in Support of Amazon.com, Inc.'s Response to the FTC's Motion for

Protective Order Regarding 30(b)(6) Deposition Notice with the Clerk of the Court using the

CM/ECF system, which will send notification of such filing to attorneys of record.

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 9th day of September, 2015.

*s/ David J. Burman*
_____

DECLARATION OF JEFFREY M. HANSON
(No. 2:14-CV-01038-JCC) − 3
LEGAL127663517.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Exhibit A

Exhibit A

112-3108

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL TRADE COMMISSION**

COMMISSIONERS:        **Edith Ramirez, Chairwoman**
                      **Julie Brill**
                      **Maureen K. Ohlhausen**
                      **Joshua D. Wright**

| | |
|---|---|
| **In the Matter of**<br><br>**APPLE INC., a corporation.** | **DOCKET NO. C-4444** |

## COMPLAINT

The Federal Trade Commission, having reason to believe that Apple Inc. ("Apple" or "Respondent") has violated provisions of the Federal Trade Commission Act ("FTC Act"), and it appearing to the Commission that this proceeding is in the public interest, alleges:

1.      Respondent is a California corporation with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.

2.      Respondent has billed for charges related to activity within software applications ("apps") consumers download to their iPhone, iPod Touch, or iPad devices ("Apple mobile devices") from Respondent's app store.

3.      The acts and practices of Respondent alleged in this complaint have been in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act.

## RESPONDENT'S BUSINESS PRACTICES

4.      Apple offers thousands of apps for free or a specific dollar amount, including games that children are likely to play. In many instances, after installation, children can obtain virtual items within a game, many of which cost money. Apple bills charges for items that cost money within an app—"in-app charges"—to the parent. In connection with billing for children's in-app charges, Apple sometimes requests a parent's iTunes password. In many instances, Apple "caches" (that is, stores) the iTunes password for fifteen minutes after it is entered. During this process, Apple in many instances does not inform account holders that password entry will approve a charge or initiate a fifteen-minute window during which children using the app can incur charges without further action by the account holder. Through these practices, Apple often

FTC_AMZ_00000001

fails to obtain parents' informed consent to charges incurred by children. Since at least March 2011, tens of thousands of consumers have complained about unauthorized in-app charges by children, and many consumers have reported hundreds to thousands of dollars in such charges. Parents and other iTunes account holders therefore have suffered significant monetary injury.

### Background on Apple's App Store

5.      Apple offers apps through its App Store, a digital store preloaded on Apple mobile devices. Apps provide a wide variety of mobile computing functionality, allowing users to, for example, browse the Internet, check the weather, or play games.

6.      According to Apple's app developer guidelines, before it agrees to offer any app designed by a third-party developer in the App Store, it reviews the app's functionality, content, and user experience. Apple generally assigns each app it sells to at least one topical category, such as "Games" or "News." Certain categories expand into subcategories. The "Games" category, for instance, includes subcategories like "Family," "Kids," and "Strategy." Apple also groups apps by price, including the top "Free" apps and top "Paid" apps.

7.      Apple charges account holders for certain user activities within some apps. These in-app charges generally range from $0.99 to $99.99 and can be incurred in unlimited amounts. In many instances, the apps containing in-app charges are games that children are likely to play.

8.      Before consumers can install any app, Apple requires that consumers link their Apple mobile device to an iTunes account, funded by a credit card, PayPal account, gift certificates, prepaid cards, or allowance credits. Apple bills consumers' iTunes accounts for App Store transactions and in-app charges, and retains thirty percent of all revenue. According to Apple's stated policy, all App Store transactions (including in-app charges) are final.

### Installing an App from Apple's App Store

9.      To install an app, a parent or other account holder must first locate it by searching for the app by keyword (*e.g.*, the name of the app) or by browsing the various categories and subcategories within the App Store. If an account holder searches for an app by keyword, the search results display as scrollable tiles (referred to herein as "Search Tiles"). If an account holder finds an app listed in a category or subcategory, he or she can click on the name of the app to access additional information (displayed on an "Info" page).

10.     Each Search Tile and Info page contains a button (the "Price Button") labeled with the price of the app: either "FREE" or a specific dollar amount. Clicking on the Price Button—on either the Search Tile or the Info page—will begin the app installation process. A sample Search Tile (on the left) and Info page (on the right) appear below.

2

FTC_AMZ_00000002



As pictured above, Apple displays the words "Offers In-App Purchases" in small print on the Info pages (not the Search Tiles) of apps with in-app charges. Prior to spring 2013, Apple did not display that language. Neither the Search Tile nor the Info Page explain what "In-App Purchases" are (including that they cost real money or how much) or that entering the iTunes password within the app will approve a charge and initiate a fifteen-minute window during which children can incur charges without further action by the account holder.

11.    To initiate app installation, the account holder must press the Price Button on the app's Search Tile or Info page. When pressed, the Price Button changes so that it displays the word "INSTALL" instead of the price. If pressed again, the app installation process begins.

12.    Next, Apple prompts account holders for their iTunes account password before installation proceeds. This prompt (the "Password Prompt") is the same or similar to the ones depicted below.



3

The Password Prompt does not contain any information about in-app charges.  Once the account holder enters the iTunes account password and presses "OK," the app is installed on the device.

13.     As described in paragraph 4, Apple often caches the iTunes password for fifteen minutes after it is entered.  During this fifteen-minute window, Apple does not display the Password Prompt again.

## Incurring In-App Charges

14.     After an account holder installs an app, a user can incur in-app charges.  In many instances—particularly for apps that children are likely to play and that are, for example, rated as appropriate for four-year-olds—these users are children.  In many instances, parents have complained that their children could not or did not understand that their activities while playing the app could result in charges that cost real money.

15.     When a user engages in an activity associated with an in-app charge (*e.g.*, clicking on a button to acquire virtual treats for use in a game), Apple displays a popup containing information about the virtual item and the amount of the charge (the "Charge Popup").  A child, however, can clear the Charge Popup simply by pressing a "Buy" button.

16.     In many instances, during the fifteen-minute window following installation of an app (as described in paragraph 13 above), Apple has not displayed a Password Prompt for any in-app charges.  This has allowed children to incur in-app charges simply by pressing the "Buy" button on each Charge Popup displayed during that fifteen-minute period.  Regardless of the number or amount of charges incurred during this period, Apple has not prompted for additional password entry in these instances.

17.     In many other instances, Apple displays a Password Prompt—identical to the Password Prompt displayed prior to installation of the app—after a child clears the Charge Popup.  A sample Password Prompt appearing within an app is below.



The Password Prompt does not contain any information about in-app charges.  Once the account holder enters the iTunes account password and presses "OK," Apple bills the in-app charge to the linked iTunes account.  By default, entering the iTunes password and pressing "OK" triggers a fifteen-minute window during which Apple does not display the Password Prompt for

4

subsequent in-app charges, allowing children to incur charges without password entry for fifteen minutes.

18.    In September 2013, on devices running Apple's latest operating system, Apple reversed the order of the process described in paragraphs 15-17, displaying the Password Prompt before the Charge Popup. If the account holder enters the iTunes password and presses "OK," Apple displays the Charge Popup. Once a user clicks "Buy" on the Charge Popup, Apple bills the in-app charge to the linked iTunes account. By default, Apple also initiates a fifteen-minute window during which it does not display the Password Prompt for subsequent in-app charges.

19.    Neither the Password Prompt nor the Charge Popup explains that entering the iTunes password may approve the charge described on the Charge Popup and initiate a fifteen-minute window during which children can incur charges without further action by the account holder.

20.    In many instances, Apple does not obtain an account holder's informed consent before billing for in-app charges by children. In particular, nowhere during the processes described in paragraphs 9 through 19 does Apple inform account holders that password entry—whether at installation or before incurring a particular in-app charge—triggers a window during which users can incur unlimited charges without further action by the account holder.

**Apple Bills Many Parents for Unauthorized In-App Charges Incurred by Children**

21.    Many of the apps that charge for in-app activities are apps that children are likely to use. Indeed, many such apps, according to age ratings Apple uses in the App Store (4+, 9+, and 12+), are expressly described as appropriate for children. In addition to the age ratings, many apps that charge for in-app activities are listed in the "Kids" or "Family" categories in the App Store, are described or marketed as suitable for children, or are widely used by children.

22.    Many of these games invite children to obtain virtual items in contexts that blur the line between what costs virtual currency and what costs real money. The app "Dragon Story," for example, is a game in which children hatch, raise, and breed virtual dragons. Children use "gold," "coins," and "food" to play the game. The game sometimes informs children that they are "low on food!" and that a dragon is "hungry," and provides a link to a screen titled "Stock Up!" The "Stock Up!" screen sells "gold" (virtual currency that costs real money) alongside "coins" (virtual currency that can only be obtained with other virtual currency) and "food" (a virtual item that can only be obtained with virtual currency). Various quantities of gold cost various amounts of real money, with the largest amount (2900 gold) costing $99.99. The App Store describes Dragon Story, which is rated 4+, as the "BEST looking FREE dragon game" for Apple mobile devices.

23.    Similarly, the app "Tiny Zoo Friends" challenges children to build and maintain a zoo whose "Zoo Value" is described in terms of dollars. That figure, however, does not correspond to real money, and instead is a score that varies based on a child's progress within the game. By contrast, the prices of the game's virtual currency—"coins" and "bucks"—are also described in terms of dollars, but that currency costs real money to obtain. From a screen called

FTC_AMZ_00000005

"Zoo Bucks," for instance, a child may obtain various quantities of "bucks," including "10 Bucks" for $0.99 or "3,500 Bucks" (also called a "Mountain of Bucks") for $99.99.  Apple lists Tiny Zoo Friends with a rating of 4+.

24.     Since at least March 2011, Apple has received at least tens of thousands of complaints related to unauthorized in-app charges by children in these and other games.

25.     Many consumers report that they and their children were unaware that in-app activities would result in real monetary loss.  For example, one App Store reviewer complaining about $534 in unauthorized charges incurred in two days described Dragon Story as "sucker[ing] young children into spending huge amounts of money" without their parents' knowledge.  A parent whose seven-year-old incurred $500 in unauthorized charges playing Tiny Zoo Friends one afternoon commented that "children . . . cannot possibly understand" that they are spending real money.

26.     In many games with in-app charges, consumers report that Apple billed for in-app activities without obtaining their consent.  For example, one parent learned from her credit card company that her daughter had incurred $2600 in charges in the 9+ app "Tap Pet Hotel."  Another consumer reported that her niece incurred $113.46 in unauthorized charges while playing the 4+ app "Racing Penguin, Flying Free."  According to the consumer, her niece did not know the iTunes password, but was able to incur the charges inside the fifteen-minute window during which Apple does not prompt account holders for a password.  Apple has continued to receive complaints about millions of dollars of unauthorized in-app charges by children.

27.     Many children incur unauthorized in-app charges without their parents' knowledge.  Even parents who discover the charges and want to request a refund face a process that many consumers describe as cumbersome, involving steps that do not clearly explain whether and how a consumer can seek a refund for unauthorized in-app charges incurred by children.  Indeed, as noted in paragraph 8 above, Apple's stated policy is that all App Store transactions are final.

## COUNT I

### Unfair Billing of In-App Charges

28.     In numerous instances, Respondent bills parents and other iTunes account holders for children's activities in apps that are likely to be used by children without having obtained the account holders' express informed consent.

29.     Respondent's practices as described in paragraph 28 cause or are likely to cause substantial injury to consumers that consumers themselves cannot reasonably avoid and that is not outweighed by countervailing benefits to consumers or competition.

6

30.     Respondent's practices as described in paragraph 28 therefore constitute unfair acts or practices in or affecting commerce in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a) and (n).

**THEREFORE**, the Federal Trade Commission this twenty-fifth day of March, 2014, has issued this complaint against Respondent.

By the Commission, Commissioner Wright dissenting.


                                   Donald S. Clark
                                   Secretary

SEAL:

7

Exhibit B

Exhibit B

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

FEDERAL TRADE COMMISSION,

     Plaintiff,

     v.

AMAZON.COM, INC.,

     Defendant.

**Case No. 2:14-cv-01038-JCC**

**PLAINTIFF'S SUPPLEMENTAL
RESPONSES AND OBJECTIONS TO
AMAZON.COM, INC.'S FIRST SET
INTERROGATORIES**

11
12
13

Pursuant to Federal Rule of Civil Procedure 33, plaintiff Federal Trade Commission ("FTC") submits its supplemental responses and objections to defendant Amazon.com, Inc.'s ("Amazon's") First Set of Interrogatories.

14

**GENERAL STATEMENTS**

15
16
17
18

A.    The FTC states that these responses are its governmental response, pursuant to Fed. R. Civ. P. 33(b)(l)(B). Information necessary to prepare these responses has been supplied from a number of sources and these responses have been verified on the FTC's behalf by authorized representatives.

19
20
21
22
23
24
25
26

B.    To the extent required by Rule 26(e) of the Federal Rules of Civil Procedure, the FTC will supplement its responses to the First Set of Interrogatories.  The FTC reserves the right to supplement, revise, modify or otherwise change or amend its responses to the First Set of Interrogatories in light of any documents or information that it subsequently may obtain or discover.  Because discovery is ongoing, the FTC's responses should not be construed to limit the FTC's basis for any relief sought from Amazon in this action.  The FTC's responses to the First Set of Interrogatories represent the FTC's present knowledge based on its investigation, information, and preparation to date.

PLAINTIFF'S SUPPLEMENTAL FIRST RESPONSES
AND OBJECTIONS
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

1  illustrate, the FTC's settlement agreement with Apple Inc. concerning its billing practices for in-

2  app charges defines express informed consent in terms that allow considerable flexibility in the

3  precise process or procedure chosen for compliance.

4      7.    State the process and procedures you contend must be taken by a person offering

5  Apps for download, such as Amazon, in order to ensure that any in-App Charges are authorized

6  and/or supported by "express informed consent."

7  **RESPONSE:**

8      The FTC objects that this request, to the extent it seeks information about charges not at

9  issue in this action, is overbroad and seeks information that is neither relevant nor reasonably

10  calculated to lead to the discovery of admissible evidence.

11      Subject to and without waiving its objections, in general, the FTC does not contend that

12  there is one "process" or "procedure[]" to obtain express informed consent before billing

13  consumers.  To illustrate, the FTC's settlement agreement with Apple Inc. concerning its billing

14  practices for in-app charges defines express informed consent in terms that allow considerable

15  flexibility in the precise process or procedure chosen for compliance.

16      8.    Describe all relief that you seek in this matter and provide the complete basis for

17  each component of such relief, including a computation of each category of relief and a

18  description of all those materials bearing on the nature and extent of each category of relief.

19  **RESPONSE:**

20      The FTC objects to this request as overbroad and unduly burdensome to the extent it

21  seeks a description of each and every fact supporting the FTC's request for relief, including to

22  the extent it seeks to impose on the FTC obligations beyond those provided in Fed. R. Civ. P.

23  26(a)(1).  Requesting each and every fact supporting the FTC's request for relief, including a

24  description of "all" materials bearing on the requested relief, would improperly force the FTC to

25  marshal all its evidence and provide a narrative account about the requested relief.  The FTC

26  further objects that this request is premature, as discovery is in its initial stages.

PLAINTIFF'S SUPPLEMENTAL FIRST RESPONSES                    Federal Trade Commission
AND OBJECTIONS                                             600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-01038-JCC                                    Washington, DC  20580
                        10                                        (202) 326-3231

1    "Kindle E-Reader, Fire Tablet and Amazon Fire TV Return Policies," containing the language

2    "Purchases from the Amazon Appstore for Android . . . are not returnable after purchase."

3         The FTC will supplement this response as appropriate as discovery progresses.

4

5    Dated: August 24, 2015                    /s/ Jason M. Adler
                                              JASON M. ADLER
6                                             DUANE C. POZZA
7                                             HEATHER ALLEN
                                              JANE RICCI
8                                             jadler@ftc.gov, dpozza@ftc.gov, hallen@ftc.gov,
                                              jricci@ftc.gov
9                                             Federal Trade Commission
10                                            600 Pennsylvania Avenue N.W., CC-10232
                                              Washington, DC  20580
11                                            P: (202) 326-3231, (202) 326-2042, (202) 326-
                                              2038, (202) 326-2269
12                                            F: (202) 326-3239

13                                            LAURA M. SOLIS, WA Bar No. 36005
14                                            lsolis@ftc.gov
                                              Federal Trade Commission
15                                            915 2nd Avenue, Suite 2896
                                              Seattle, WA  98174
16                                            P: (206) 220-4544
                                              F: (206) 220-6366
17
                                              Attorneys for Plaintiff
18                                            FEDERAL TRADE COMMISSION

19

20

21

22

23

24

25

26

PLAINTIFF'S SUPPLEMENTAL FIRST RESPONSES            Federal Trade Commission
AND OBJECTIONS                                      600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-01038-JCC                          Washington, DC  20580
                        17                          (202) 326-3231

1

**CERTIFICATE OF SERVICE**

2   I, Jason M. Adler, certify that on August 24, 2015, I served the foregoing Plaintiff's

3 Supplemental Responses and Objections to Amazon.com, Inc.'s First Set of Interrogatories by

4 email on all counsel of record.

5         By: /s/ Jason M. Adler

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S SUPPLEMENTAL FIRST RESPONSES   Federal Trade Commission
AND OBJECTIONS           600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-01038-JCC         Washington, DC  20580
            (202) 326-3231

Exhibit C

Exhibit C

DEB FISCHER
NEBRASKA

COMMITTEES:
ARMED SERVICES
COMMERCE, SCIENCE, AND
TRANSPORTATION
ENVIRONMENT AND PUBLIC
WORKS
INDIAN AFFAIRS
SMALL BUSINESS AND
ENTREPRENEURSHIP

# United States Senate

WASHINGTON, DC 20510

July 9, 2014

The Honorable Edith Ramirez
Chairwoman
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580

Dear Chairwoman Ramirez:

As a member of the Senate Commerce Committee with oversight over the Federal Trade Commission ("FTC"), I write regarding the Commission's regulatory and enforcement activity in the technology sector. As you know, the technology sector is one of the brightest spots in the American economy, fueling economic growth, creating jobs, and providing consumers with better products and services through innovation. To achieve these successes, companies from start-ups to established industry leaders operate in a fast-moving and competitive environment that requires significant investment.

It is in this context that I read recent news accounts that the Commission may seek to penalize Amazon, Inc. for its "App Store" policies involving purchases made by children, requesting that the company pay significant fines and submit to twenty years of FTC control.[1] It appears that the FTC has devoted large amounts of time and resources to pursuing this case and others like it. What is not apparent from news reports is the actual harm that the Commission seeks to rectify through these costly actions.

Few, if any, doubt that the app marketplace established in recent years by Amazon and its competitors has fundamentally expanded and improved the American economy. To pursue enforcement against these companies for specific policies in place at the market's nascent stage would constitute a *de facto* tax on innovation that threatens future growth and opportunity. Moreover, I am concerned that pressuring companies into sweeping, multi-decade consent orders reflects an attempt by the Commission to gain by enforcement what has been withheld by Congress – namely, unchecked regulatory control over the technology sector.

---

[1] *See* "Amazon Resisting FTC on Policy Change for In-App Purchases," Greg Bensinger, WALL STREET JOURNAL (Jul. 2, 2014), *available at* http://online.wsj.com/articles/amazon-resisting-ftc-on-in-app-purchases-by-children-1404317383; "'Disappointed' Amazon Fights FTC Over Mobile In-App Buys," Diane Bartz, NEW YORK TIMES (Jul. 2, 2014), *available at* http://www.nytimes.com/reuters/2014/07/02/technology/02reuters-amazon-com-apps.html?hp&action=click&pgtype=Homepage&version=WireFeed&module=pocket-region&region=pocket-region&WT.nav=pocket-region&_r=1

440 North 8th Street, Suite 120
Lincoln, NE 68508
(402) 441-4600
(402) 476-8753 FAX

11819 Miracle Hills Drive, Suite 205
Omaha, NE 68154
(402) 391-3411
(402) 391-4725 FAX

FTC_AMZ_00003234

In light of the fixed resources Congress has appropriated to your agency to carry out its statutory authority, it is critically important that the FTC focus its priorities on resolving actual, concrete harms to consumers. To further explore these matters in exercise of oversight responsibilities, I ask for your prompt response to the following questions:

- Does the Commission intend to file a formal complaint against Amazon as was recently reported in the *Wall Street Journal*? If so, what does the Commission hope to achieve through this action? Please provide specific remedial steps or policy objectives.

- If the Commission is taking action, what statutory authority is it asserting to initiate its enforcement action against Amazon?

- What guidance has the Commission issued or provided to the technology sector related to the acts and practices under scrutiny by the Commission in this case?

- What current policies or practices of Amazon does the Commission deem in contravention of existing law or regulation? How did the Commission come to this conclusion? Please provide citations to any and all statutes, regulations, and case law as appropriate.

- What aspects of Amazon's current policies or practices have convinced the Commission that twenty years of extra-statutory oversight and control over the company is necessary?

- How does the Commission exercise its authority during a typical twenty-year consent order? Please provide specifics of the Commission's interactions with technology companies that have entered into such orders.

- How many hours and resources has the Commission devoted to investigating and stopping bad actors that develop and release fraudulent and deceptive apps into the marketplace?

- How many hours and resources has the Commission devoted to investigating and enforcing against well-known companies that operate well-regarded app platforms that facilitate millions of undeniably consumer-friendly interactions each day?

Thank you for your prompt attention to this matter. Should you have any questions, please contact Josh Lynch of my office at 202-224-6551.

Sincerely,

Deb Fischer
United States Senator

Exhibit D

Exhibit D



OFFICE OF THE
CHAIRWOMAN

UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

August 12, 2014

The Honorable Deb Fischer
United States Senate
Washington, DC 20510

Dear Senator Fischer:

Thank you for your letter of July 9, 2014 concerning Amazon.com, Inc. In your letter, you ask questions related to news reports from early July suggesting that the Federal Trade Commission might take legal action against Amazon.

Like you, I applaud innovation in the technology sector, including the mobile arena. The FTC's policy and enforcement work in connection with mobile technology emphasizes that innovation can flourish, and new technologies and business models can meet their full potential, only if marketplace participants abide by basic principles of consumer protection that apply in all contexts and mediums. One such principle is that companies should not charge consumers for goods or services without first obtaining their consent for those charges.

As you know, Congress has directed the Commission to protect consumers from deceptive or unfair acts or practices, pursuant to the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 41-58. Toward that end, on July 10, 2014, the Commission filed a complaint against Amazon in the United States District Court for the Western District of Washington, alleging that Amazon violated Section 5 of the FTC Act. *FTC v. Amazon.com, Inc.*, No. 2:14-cv-01038 (W.D. Wash. July 10, 2014). The complaint alleges that Amazon billed parents and other account holders for millions of dollars in unauthorized in-app purchases made by children in violation of the FTC Act's prohibition on unfair commercial acts or practices, 15 U.S.C. § 45(a). Below, I answer the specific questions in your letter based on publicly available information at this early stage of litigation:

- *Does the Commission intend to file a formal complaint against Amazon as was recently reported in the Wall Street Journal? If so, what does the Commission hope to achieve through this action? Please provide specific remedial steps or policy objectives.*

As noted above, on July 10, 2014, the Commission filed a complaint against Amazon. The complaint seeks restitution for consumers injured by Amazon's alleged violations of law, disgorgement for Amazon's ill-gotten gains, as well as a permanent injunction to

FTC_AMZ_00003150

The Honorable Deb Fischer – Page 2

prevent Amazon from billing consumers without their informed consent in the future.

- *If the Commission is taking action, what statutory authority is it asserting to initiate its enforcement action against Amazon?*

The Commission's complaint alleges that Amazon violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair or deceptive acts or practices in or affecting commerce."[1]  Specifically, the complaint alleges that Amazon engaged in unfair acts or practices by billing parents and other Amazon account holders for charges incurred by children within children's apps without account holder consent.

- *What guidance has the Commission issued or provided to the technology sector related to the acts and practices under scrutiny by the Commission in this case?*

The Commission's December 17, 1980 Policy Statement on Unfairness, appended to *Int'l Harvester Co.*, 104 F.T.C. 949, 1070 (1984), details the standard the Commission considers in assessing the unfairness of an act or practice.  In 1994, Congress added this standard to Section 5(n) of the FTC Act, 15 U.S.C. § 45(n).  In settlements,[2] litigation,[3] workshops, roundtables,[4] and consumer and business education,[5] the Commission consistently has emphasized the fundamental principle that companies cannot bill consumers without their consent.

- *What current policies or practices of Amazon does the Commission deem in contravention of existing law or regulation?  How did the Commission come to this conclusion?  Please provide citations to any and all statutes regulations, and case law as appropriate.*

As the Commission's complaint alleges, for over two and a half years after introducing

---

[1] Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers themselves cannot reasonably avoid and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

[2] *See, e.g., Apple Inc.*, No. C-4444 (F.T.C. 2014); *FTC v. Jesta Digital, LLC*, No. 1:13-cv-01372 (D.D.C. 2013).

[3] *See, e.g., FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975 (N.D. Cal. 2010), *aff'd*, 2012 WL 1065543 (9th Cir. Mar. 30, 2012); *FTC v. Crescent Pub. Group, Inc.*, 129 F. Supp. 2d 311 (S.D.N.Y. 2001).

[4] *See, e.g.*, Fed. Trade Comm'n, Examining Phone Bill Cramming:  A Discussion (May 11, 2011), *available at* http://www.ftc.gov/bcp/workshops/cramming; Fed. Trade Comm'n, Mobile Cramming Roundtable (May 8, 2013), *available at* http://www.ftc.gov/news-events/events-calendar/2013/05/mobile-cramming-ftc-roundtable.

[5] *See, e.g.*, Fed. Trade Comm'n, *Combating "cramouflage": What businesses can learn from the FTC's latest mobile case* (Nov. 21, 2013), *available at* http://business.ftc.gov/blog/2013/11/combatting-cramouflage-what-businesses-can-learn-ftcs-latest-mobile-case.

FTC_AMZ_00003151

The Honorable Deb Fischer – Page 3

in-app charges to its app store in November 2011, Amazon has billed parents or other Amazon account holders without consent for children's charges made within children's apps. During that time, Amazon recognized that parents were experiencing significant problems with unauthorized in-app charges by children but did not remedy the source of the problem. While Commission deliberations are privileged, I assure you this matter received careful consideration by the Commission before concluding that there was reason to believe Amazon had violated Section 5 of the FTC Act.

- *What aspects of Amazon's current policies or practices have convinced the Commission that twenty years of extra-statutory oversight and control over the company is necessary?*

The practices described above and in the complaint give the Commission reason to believe that Amazon has violated Section 5 of the FTC Act and that a lawsuit is in the public interest. Based on this determination, the Commission voted to authorize staff to file a complaint in federal court against Amazon. This action seeks a federal court order to provide full refunds to consumers injured by Amazon's practices and permanently enjoin Amazon from billing consumers without consent in the future. The Commission typically seeks compliance monitoring and recordkeeping provisions to ensure compliance with the order, and such relief has been recognized by courts as necessary and appropriate.[6]

- *How does the Commission exercise its authority during a typical twenty-year consent order? Please provide specifics of the Commission's interactions with technology companies that have entered into such orders.*

The Commission's Division of Enforcement in the Bureau of Consumer Protection is responsible for assessing a company's compliance with FTC orders in consumer protection matters. The duration of federal court orders must be approved by the court but final orders in FTC cases typically permanently enjoin companies from unlawful behavior and do not sunset. By contrast, FTC administrative orders, such as the agency's orders against Facebook (Decision & Order, *Facebook, Inc.*, Docket No. C-4365 (F.T.C. July 27, 2012)) and Google (Decision & Order, *Google Inc.*, Docket No. C-4336 (F.T.C. Oct. 13, 2011)), typically last twenty years.[7] Once a company is under order, the Division of Enforcement may receive information from the company or other sources that lead it to investigate whether the company is in compliance, and, where appropriate, the Commission will seek the aid of a court to hold of party liable for non-compliance with

---

[6] *See, e.g., FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 205, 216-17 (S.D.N.Y. 2002); *FTC v. Affiliate Strategies, Inc.*, 849 F. Supp. 2d 1085, 1119 (D. Kan. 2011); *FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 393 (D. Conn. 2009), *aff'd on other grounds*, 654 F.3d 359 (2d Cir. 2011).
[7] *See* Federal Trade Commission, Policy Statement Regarding Duration of Competition and Consumer Protection Orders, 60 Fed. Reg. 42569 (Aug. 16, 1995).

The Honorable Deb Fischer – Page 4

an order.[8]  Any such investigations, like the Commission's other consumer protection investigations, are typically nonpublic.

- *How many hours and resources has the Commission devoted to investigating and stopping bad actors that develop and release fraudulent and deceptive apps into the marketplace?*

The Commission has brought or resolved many Section 5 actions against entities that have developed or released mobile apps, including some that the agency charged with engaging in deceptive practices.  More information about these cases is available through the FTC's Mobile Technology Issues page, located at http://www.ftc.gov/news-events/media-resources/mobile-technology.  The Commission and its staff have devoted considerable hours and resources to these matters, as well as to investigations that are not public.

- *How many hours and resources has the Commission devoted to investigating and enforcing against well-known companies that operate well-regarded app platforms that facilitate millions of undeniably consumer-friendly interactions each day?*

The Commission has charged two operators of mobile app platforms with a failure to obtain consent before charging account holders for in-app purchases made by children – an action against Apple issued earlier this year[9] and the recent complaint against Amazon.  Rather than contest the charges, Apple chose to resolve the Commission's claims by agreeing to an order mandating full refunds to injured consumers and a prohibition on charging customers for in-app purchases without their express informed consent.  Before deciding to bring these separate actions, the Commission carefully reviewed numerous materials from a variety of sources, including Apple and Amazon.

Thank you again for your letter.  If you or your staff has additional questions or comments, please feel free to contact me or have your staff contact Jeanne Bumpus, the Director of our Office of Congressional Relations, at (202) 326-2946.

Sincerely,

Edith Ramirez
Chairwoman

---

[8] *See, e.g., United States v. Google, Inc.*, No. 3:12-cv-04177-SI (N.D. Cal. Nov. 16, 2012) (stipulated final order) (court-approved settlement resolving FTC charges that Google violated administrative order).
[9] *See supra* note 2.

FTC_AMZ_00003153

Exhibit E

Exhibit E



**FEDERAL TRADE COMMISSION**
**CONSUMER INFORMATION**
consumer.ftc.gov

# Mystery Phone Charges

Cramming happens when a company adds a charge to your phone bill for a service you didn't order or use. Cramming charges can be small, and they may sound like fees you do owe.

If you don't recognize or understand a charge on your phone bill, ask your phone carrier about it. Your carrier should be able to tell you more about the charge, and your statement should tell you how to dispute errors on your bill. If you suspect you've been a victim of cramming, file a complaint with the FTC online or by calling 1-877-FTC-HELP (1-877-382-4357).

- About Phone Bill Cramming
- Read Your Monthly Bill
- If You Suspect Cramming
- Reduce Your Risk of Cramming

## About Phone Bill Cramming

Cramming happens when a company uses your mobile or landline phone bill like a credit card, and adds a charge for services like trivia, ringtones, daily horoscopes or love tips to your bill that you didn't agree to or use. The most common dollar amount for a cramming charge is $9.99, a relatively small amount which is easy to overlook. Some charges sound like larger fees you do owe, making it tough to pick out the phony charges, especially if your mobile phone bill varies month to month.

## Read Your Monthly Bill

Make it a habit to check all charges on your phone bill each month for products and services you haven't ordered. Some charges may appear only once; others might be "subscription" charges that show up every month. Keep an eye out for generic-sounding services and fees like *Min. Use Fee, Activation, Member Fee, or Subscription*; as they may be services you haven't ordered.

Check out each section of your mobile phone bill, but note that crammers tend to target some "hot spots." Pay special attention to sections labeled "Miscellaneous," and the "third-party" charge sections on your bill. Mobile phone carriers allow third-parties to place charges on your phone bill, so these type of charges can be from anyone other

than your phone company.

Some mobile phone carriers send their customers short bills with few details, but may offer more detailed bills online or upon request. To check out a sample mobile phone bill with various charges explained, visit the Federal Communications Commission website.

## If You Suspect Cramming

Don't recognize or understand items or charges on your mobile phone bill? First, ask your phone carrier about it. Your carrier should be able to tell you more about the charge, and your statement should tell you how to dispute errors on your bill.

Then, take the final step in fighting a cramming charge: file a complaint. Even if you get a refund, if you suspect you've been a victim of cramming, file a complaint with the FTC online or by calling 1-877-FTC-HELP (1-877-382-4357).

## Reduce Your Risk of Cramming

Sometimes, there's nothing you can do to prevent a crammer from adding fake charges to your phone bill. However, you can avoid giving would-be scammers the opportunity by keeping these tips in mind:

- **Don't enter your mobile phone number on unsecured websites.** If you do, it's likely to be compromised.

- **Unsolicited text messages could be sign of a scam.** A text message from someone you don't know could be a signal that you might be signed up for a service you didn't order or agree to. Your best line of defense? Check your phone bill regularly for mystery charges.

- **Ask your phone carrier about services it offers to block third-party charges.** Mobile phone carriers allow third-parties to place charges on your phone bill. Many carriers offer this third-party blocking service for free.

December 2013

Exhibit F

Exhibit F

David C. Shonka
Acting General Counsel

Russell Deitch, CA Bar No. 138713
Arturo DeCastro, DC Bar No. 992023
Federal Trade Commission
600 Pennsylvania Avenue, NW, Room 288
Washington, DC 20580
Phone: (202)326-2585 (Deitch)
        (202) 326-2747 (DeCastro)
Fax: (202) 326-3395
Email: rdeitch@ftc.gov
        adecastro@ftc.gov

Attorneys for Plaintiff
Federal Trade Commission

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>600 Pennsylvania Avenue, NW<br>Washington, DC 20580,<br><br>                          Plaintiff,<br><br>v.<br><br>JESTA DIGITAL, LLC, also d/b/a<br>JAMSTER, a limited liability company,<br>6420 Wilshire Boulevard, Los Angeles, CA<br>90048,<br><br>                      Defendant. | Civ. No. |

COMPLAINT FOR PERMANENT INJUNCTION

AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.    The FTC brings this action under Section 13(b) of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. § 53(b) to obtain permanent injunctive relief, rescission or reformation

of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other

1

equitable relief for Defendant's acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. § 53(b).

## DEFENDANT

6.     Defendant Jesta Digital, LLC ("Jesta"), also doing business as Jamster, is a Delaware limited liability company with its principal place of business at 6420 Wilshire Blvd., Los Angeles, California 90048.   Jesta transacts or has transacted business in this district and throughout the United States.

## COMMERCE

7.     At all times material to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.


## DEFENDANT'S BUSINESS ACTIVITIES

### *Jesta's Bogus Anti-virus Scans*

8.     Since on or about August, 2011, Jesta has designed and caused to be disseminated banner ads that are seen by consumers playing the free version of the Angry Birds app on mobile

devices using the Android operating system, or are found elsewhere on the internet. Jesta designed these ads to look like warning messages generated by the Android operating system, alerting consumers that a virus has been detected on their mobile devices.

9.      The Android operating system is commonly denoted by the following robot logo:



10.     The banner ads contain a robot image that looks similar to the robot logo for the Android operating system, state "virus detected" or identify a number of viruses found on the mobile device, and include a "remove" button. For instance, Jesta ran the following two such banner ads:



11.     In reality, these warning messages are not generated by the Android operating system; they are advertisements designed and disseminated by Jesta.

12.     Furthermore, Jesta has not scanned the mobile devices before placing these ads. Nor has Jesta actually detected any viruses on the mobile devices.

13.     Moreover, clicking on the "remove" button does not actually remove any viruses from the mobile devices.

14.     Jesta uses the bogus anti-virus scans to dupe consumers into clicking on the banner ads.

15.     When consumers have clicked on the "remove" button to rid the non-existent viruses from their mobile devices, Jesta has proceeded to present them with a series of screens.

16.     First, Jesta has presented a screen touting a virus protection program:



17.    The initially viewable area of the screen ("above the fold") on one or more models of phones includes banners proclaiming "stop mobile virus now" and "protect your android today," along with three graphics that appear similar to the Android robot logo.  The page also includes a button labeled "get now."  The smallest print on the page is the only indication that there is a cost involved with whatever Jesta is marketing, stating "20 downloads for 9.99/mo."

18.    Although there is nothing in the initially viewable area of the screen to indicate that further information can be seen by scrolling down, Jesta has provided additional information "below the fold" (below the initially viewable area) on one or more models of phones.  This additional information is depicted, below:



19.     The below the fold information includes "click to get 20 downloads for $9.99/month," yet the screen fails to disclose the nature or purpose of the 20 downloads or whether they have anything to do with removing viruses from the mobile device.

20.     When consumers click on any of the colorful and prominent language in the initially viewable area of the screen relating to virus removal, Jesta presents them with another screen almost identical to the prior screen.  On this screen, however, the "get now" button is replaced with a "subscribe" button.

21.     Like the initially viewable area of the first screen, the above the fold information on this second screen includes banners labeled "stop mobile virus now" and "protect your Android today."  The screen also again includes three graphics similar to the Android robot logo.  And, while important cost information is included in small print below the fold, the initially viewable area of this screen does not even hint that additional information can be found by scrolling down.

22.     Below the fold, Jesta for the first time discloses the true nature of its scheme.  Jesta will charge consumers $9.99 per month for "20 credits to use on ringtones and more."  The below the fold disclosures are presented as follows:



23.     This disclosure concerning ringtones, which is in the smallest print appearing on the screen, is preceded by text and graphics that suggest the offer concerns a mobile anti-virus program.

24.     When consumers click on the subscribe button or elsewhere on the screen such as the "Block Mobile Virus Now" or "Protect Your Android Today" buttons, Jesta charges the consumer $9.99 per month using a billing technology or process called Wireless Application Protocol or "WAP" billing.   This technology captures a consumer's phone number from the subscriber identity module or "SIM" card in a consumer's mobile device.  Using WAP billing, Jesta arranges for its charges to be included on consumers' mobile device bills or deducted from consumers' prepaid mobile device accounts.

25.     In many instances, Jesta charged consumers for ringtones or other goods or services without their authorization or agreement.  Among other things, Jesta charged consumers who did not click on the subscribe button and charged consumers for products they did not order.

6

26.    Also, when consumers click the "Block Mobile Virus Now,"  "Protect Your Android Today," or "subscribe" buttons, Jesta presents them with either the landing page depicted below or the landing page depicted in paragraph 27:



The screen above includes language concerning "My Android Protection" and icons labeled "home," "ringtones," and other items.  It also includes a search box, although the purpose of this box is unclear.  The screen does not inform consumers that Jesta is charging them $9.99 a month for ringtones and other items unrelated to virus protection.

27.    The other screen presented to consumers after clicking on the buttons "Block Mobile Virus Now,"  "Protect Your Android Today," or "subscribe" buttons is depicted below:



This screen includes language concerning the download of software and a prominent graphic labeled "Artist of the Week."

28.     Consumers who attempt to download and install Jesta's anti-virus software are typically unsuccessful. According to an internal Jesta email, only 372 people out of 100,000 subscribers received a download link they could use to get the software. Moreover, in a January 20, 2012 email from the Vice President of Global Marketing Operations to the Director of Global Marketing, the Vice President explains that the download quota – the percentage of subscribers who downloaded the anti-virus app – had <u>improved</u> to two percent and that Jesta's business was presently a scam:

> I mentioned to you the work on the SIP flow for the security app that we were marketing in the US. Although the download quota has improved since the handset config was done, it still is only 2%. We wanted to see if we could optimize the download experience after the user subscribes. We are anticipating if more customers are able to get the content that they signed up for that this will lower refunds and churn, and increase lifetimes. I put the attached project overview together for you to see what we are thinking. This is something that is important to ... [Chief Marketing Officer of Jesta] since he is anxious to move our business out of being a scam and more into a valued service.

29.     Jesta's marketing of its goods or services generated a high level of consumer refund requests. Because of the large number of consumers requesting refunds, T-Mobile threatened to fine Jesta or suspend or cut off billing. Jesta's reaction was to consider asking T-Mobile to raise its threshold for taking action against Jesta to the level where refunds reached 18.5 percent of charges, the same maximum rate as AT&T, rather than change its marketing practices. One email of February 8, 2012 from the Director of Global Marketing to the Executive Vice President of Global Marketing states the following:

> If I got a bill for $9.99/mo and don't even remember downloading a shitty ringtone then I'd be more inclined to make sure I got my money back. Not just that, but they have a stronger case to plead ignorance if they didn't download anything. Maybe not directly correlated but still a terrible user experience. If refunds are not correlated with content redemption then it's because they are unaware of the fee...didn't know they were signing up etc. Pretty hard to do much about that unless we want to hurt conversion. We may need to though. Customer care gets the complaints...maybe we need to speak with T-Mo and suggest they increase the rate to 18.5% like AT&T. Even 17% may be doable...(ellipses in original).

8

30.    Jesta caused consumers to be billed a substantial amount of money on their phone bills. Additionally, Jesta received substantial revenue from the marketing practices and advertising described in the complaint.

## VIOLATIONS OF THE FTC ACT

31.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

32.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

33.    Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves, and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

### Count I

### Misrepresentation that Virus Detected on Mobile Device

34.    In numerous instances, Defendant has represented, expressly or by implication, that it has detected a virus on a consumer's mobile device.

35.    In truth, and in fact, in numerous instances, Defendant has not detected a virus on a consumer's mobile device.

36.    Therefore, Defendant's representation, set forth in Paragraph 34, is false or misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count II

### Misrepresentation that Anti-virus Program Will Be Provided to Purchasers

37.    In numerous instances, Defendant has represented, expressly or by implication, that it will provide purchasers of its service with software to protect their mobile devices from viruses.

38.    In truth, and in fact, in numerous instances, Defendant has not provided purchasers with software to protect their mobile devices from viruses.

39.    Therefore, Defendant's representation, set forth in Paragraph 37, is false or misleading

and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C.
§ 45(a).

### Count III

### Failure to Disclose the True Nature and Cost of its Service

40.  In numerous instances, Defendant has represented, directly or indirectly, expressly or
by implication, that when consumers touch or click on the "subscribe" button displayed on their
mobile device's screen,  Defendant will subscribe them to receive a good or service.

41.  In numerous instances in which Defendant has made the representation set forth in
Paragraph 40 of this Complaint, Defendant has failed to disclose, or disclose adequately,
material terms and conditions of the offer, including that consumers will be charged $9.99 per
month for ringtones and other items unrelated to virus removal.

42.  Defendant's failure to disclose, or disclose adequately, the material information
described in Paragraph 41 in light of the representation described in Paragraph 40 constitutes a
deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count IV

### Unfair Billing Practices

43.  In numerous instances, Defendant has caused consumers' mobile device accounts to be
billed without having previously obtained the consumers' express authorization or agreement.

44.  Defendant's actions cause or are likely to cause substantial injury to consumers that
consumers themselves cannot reasonably avoid and that is not outweighed by countervailing
benefits to consumers or competition.

45.  Therefore, Defendant's practices, as set forth in Paragraph 43 constitute unfair acts or
practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

### Count V

### Deceptive Representations that Consumers Are Obligated to Pay

46.  In numerous instances, Defendant has represented, directly or indirectly, expressly or
by implication, that consumers are obligated to pay for goods or services charged to their
telephone accounts.

47.     In truth and in fact, in numerous instances in which the Defendant has made the
representations set forth in Paragraph 46, consumers were not obligated to pay the charges
because consumers did not order, or knowingly order goods or services.  Defendant's
representations are material and have caused consumers to pay for unauthorized charges.

48.     Therefore, Defendant's representations as set forth in Paragraph 46 are false or
misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act,
15 U.S.C § 45 (a).

## CONSUMER INJURY

49.     Consumers have suffered and will continue to suffer substantial injury as a result of
Defendant's violations of the FTC Act.  In addition, Defendant has been unjustly enriched as a
result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendant is
likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

50.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant
injunctive and such other relief as the Court may deem appropriate to halt and redress violations
of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable
jurisdiction, may award ancillary relief, including rescission or reformation of contracts,
restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and
remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and
the Court's own equitable powers, requests that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act by Defendant;

B.     Award such relief as the Court finds necessary to redress injury to consumers resulting
from Defendant's violations of the FTC Act, including but not limited to, rescission or
reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-
gotten monies; and

C.    Award Plaintiff the costs of bringing this action, as well as such other and additional

relief as the Court may determine to be just and proper.


Respectfully submitted,


David C. Shonka
Acting General Counsel


Dated: August 15, 2013                  s/Russell Deitch
                                        Russell Deitch, CA Bar No. 138713
                                        Arturo DeCastro, DC Bar No. 992023
                                        Federal Trade Commission
                                        600 Pennsylvania Avenue, NW, Room 288
                                        Washington, DC 20580
                                        Phone: (202)326-2585 (Deitch)
                                               (202) 326-2747 (DeCastro)
                                        Fax: (202) 326-3395
                                        Email: rdeitch@ftc.gov
                                               adecastro@ftc.gov

                                        Attorneys for Plaintiff
                                        Federal Trade Commission

Exhibit G

Exhibit G

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

              Plaintiff,

    v.

AMAZON.COM, INC.,

              Defendant.

No. 2:14-CV-01038-JCC

**AMAZON'S AMENDED NOTICE OF
FED. R. CIV. P. 30(b)(6) DEPOSITION OF
PLAINTIFF FEDERAL TRADE
COMMISSION**

NOTICE OF FED. R. CIV. P 30(b)(6) DEPOSITION OF
PLAINTIFF FEDERAL TRADE COMMISSION
(No. 2:14-CV-01038-JCC)
24976-0374/LEGAL127596335.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, counsel for Amazon.com, Inc. ("Amazon") will take the deposition upon oral examination of Plaintiff Federal Trade Commission (the "FTC") on the topics listed below, commencing on Friday, September 11, 2015, at 9:30 a.m., and continuing from day to day thereafter until completed.  The deposition will take place at the offices of Perkins Coie LLP, 700 13th Street, NW, Suite 600, Washington, D.C. 20005-3960.

The FTC shall designate and produce one or more of its officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the topics set forth below.  Amazon requests that the FTC identify in writing at least one week before the start of the deposition the person or persons most knowledgeable about each of the topics listed below who will testify on the FTC's behalf.

The deposition will be taken both by videotape and stenographic means and before a Notary Public or other officer authorized to administer oaths.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used herein is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used herein, the following terms are to be interpreted in accordance with these definitions:

A.    "**1-Click Ordering**" shall mean the Amazon proprietary system of allowing customers to make online purchases with a single click of the computer mouse or finger tap (on supported devices) with the necessary payment and shipping information having been previously entered into the account holder's online profile or customer account.

B.    "**Amazon.com**" or "**Amazon**" shall mean the defendant in this action.

C.    "**Amazon Appstore**" shall mean Amazon's digital-distribution system for mobile Applications that allows account holders to browse and download Applications for use on Android and Kindle Fire Devices.

NOTICE OF FED. R. CIV. P. 30(b)(6) DEPOSITION
OF PLAINTIFF FEDERAL TRADE COMMISSION
(No. 2:14-CV-01038-JCC) – 1
24976-0374/LEGAL127596335.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

D.      "**And**" as well as "**or**" shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any specification in this Request all information that otherwise might be construed to be outside the scope of the specification.

E.      "**Any**" shall be construed to include "all," and "all" shall be construed to include "any."

F.      "**Apple**" shall mean Apple Inc., its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates; and all directors, officers, employees, agents, consultants and other Persons working for or on behalf of the foregoing.

G.      "**Application**," "**App**," or "**Apps**" shall mean any software application or code that can be transmitted or downloaded to any mobile computing device.

H.      "**Complaint**" shall mean the Complaint for Permanent Injunction and Other Equitable Relief filed by the FTC in this action.

I.       "**Consumer Complaint**" shall mean any consumer complaint received by, obtained by, or otherwise submitted to the FTC, either directly or from any third-party or other federal, state, or local governmental entity, whether received in writing, by phone call, by email, or by any other means of communication.

J.      "**Customer**" or "**Consumer**" shall mean any Person or Persons who has incurred an In-App Charge on a Mobile Device on which the Amazon Appstore and at least one App is installed.

K.      "**Describe**," shall mean to indicate fully and unambiguously each relevant fact of which you have knowledge.

L.      "**Document**" shall mean any designated documents or Electronically Stored Information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can

NOTICE OF FED. R. CIV. P. 30(b)(6) DEPOSITION
OF PLAINTIFF FEDERAL TRADE COMMISSION
(No. 2:14-CV-01038-JCC) – 2
24976-0374/LEGAL127596335.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. The term "**document**" includes any "**communications**," which shall be interpreted in the broadest manner possible and shall mean every conceivable manner or means of disclosure, transfer, or exchange of oral or written information between one or more persons or entities.

M.    "**Each**" shall be construed to include "every," and "**every**" shall be construed to include "each."

N.    "**Electronically Stored Information**" or "**ESI**" shall mean the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any electronically created or stored information, including electronic mail (whether active, archived, or in a deleted items folder), instant messaging, videoconferencing, or other electronic correspondence, word-processing files, spreadsheets, databases, and sound recordings, whether stored on cards, magnetic or electronic tapes, disks, computer files, computer or other drives, or other storage media, and such technical assistance or instructions as will enable conversion of such ESI into a reasonably usable form.

O.    "**Federal Trade Commission**," "**FTC**," or "**you**" shall mean the United States Federal Trade Commission, including the Bureau of Consumer Protection, Bureau of Economics, and Bureau of Competition, all Regional Offices, and all Commissioners, directors, officers, employees, agents, consultants, and other Persons working for or on behalf of the foregoing. The term shall include any descriptor used by the FTC in the ordinary course of its practices.

P.    "**Google**" shall mean Google, Inc.; its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates; and all directors, officers, employees, agents, consultants and other Persons working for or on behalf of the foregoing.

NOTICE OF FED. R. CIV. P. 30(b)(6) DEPOSITION
OF PLAINTIFF FEDERAL TRADE COMMISSION
(No. 2:14-CV-01038-JCC) – 3
24976-0374/LEGAL127596335.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Q.    "**Identify**" or "**the identity of**" shall be construed to require identification of (a) natural Persons by name, address, telephone number, and email address and (b) businesses or other organizations by name, address, telephone number, email address, as well as the identities of natural Persons who are officers, directors, or managers of the business or organization and contact information for those Persons.

R.    "**In-App Charge**" and "**In-App Purchase**" shall mean a charge that may be incurred by a customer or any other person while using an App.  An "In-App Charge" or "In-App Purchase" shall include any charge referred to by any person as an "In-App Charge" or "In-App Purchase" in the course of its own communications or business practices, including on that person's websites and in any terms and conditions.

S.    "**Mobile Device**" shall mean any Kindle Fire device or a device on which an Android mobile operating system is installed and includes access to the Amazon Appstore for Android.

T.    "**Person**" or "**Persons**" shall mean all natural persons, corporations, partnerships, or other business associations and all other legal entities, including all members, officers, predecessors, assigns, divisions, affiliates, and subsidiaries.

U.    "**Referring to**" or "**related to**" shall mean discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

V.    "**This action**" shall mean this civil action styled *FTC v. Amazon.com, Inc.*, 2:14-cv-01038-JCC (W.D. Wash.).

## TOPICS

1.    All relief that the FTC seeks in this matter and the components and complete basis for each component of such relief, including the nature, extent, and, as applicable, a computation of each category of relief, and the basis upon which the FTC seeks injunctive relief.

NOTICE OF FED. R. CIV. P. 30(b)(6) DEPOSITION
OF PLAINTIFF FEDERAL TRADE COMMISSION
(No. 2:14-CV-01038-JCC) – 4
24976-0374/LEGAL127596335.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

2.     The factual basis for the FTC's contention that any alleged injury to consumers resulting from the conduct alleged in the Complaint was substantial.

3.     The factual basis for the FTC's contention that any alleged injury to consumers resulting from the conduct alleged in the Complaint was not reasonably avoidable by consumers.

4.     The factual basis for the FTC's contention that any alleged injury to consumers resulting from the conduct alleged in the Complaint was not outweighed by countervailing benefits to consumers or competition.

5.     The date or dates on which the FTC concluded, believed, or had reason to believe that Amazon's practices with respect to In-App Charges, including Amazon's evolving practices regarding In-App Charges, violated the FTC Act as alleged in the Complaint.

6.     Studies, surveys, or analyses the FTC conducted, commissioned, considered, or otherwise made known to the FTC referring or related to In-App Charges, including but not limited to In-App Charges incurred on the following digital platforms operated by Amazon or Apple: (a) the Amazon "Appstore," or (b) Apple's App Store.

7.     The process and procedures that the FTC contends must be taken by a company offering purchases within Apps, such as Amazon, in order to ensure that In-App Charges comply with Section 5 of the FTC Act.

8.     The FTC's position with respect to consumers' responsibility for knowing the capabilities of the electronic devices they provide their children and the manner in which their children use those devices, and the basis for that position.

9.     The specific practices that the FTC contends Amazon was required to implement with respect to In-App Charges to comply with Section 5 of the FTC Act, including but not limited to the purchase disclosures and password controls necessary for compliance.

10.     The FTC's position regarding whether a practice is or is presumed by the FTC to be unfair under Section 5 of the FTC Act if that practice results in a certain number or percentage

NOTICE OF FED. R. CIV. P. 30(b)(6) DEPOSITION
OF PLAINTIFF FEDERAL TRADE COMMISSION
(No. 2:14-CV-01038-JCC) – 5
24976-0374/LEGAL127596335.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

of Consumer Complaints either to the FTC or the allegedly offending company, and the basis for that position.

11.     Whether the FTC contends that a company has adopted an unfair practice under Section 5 of the FTC Act if the practice results in a consumer subjectively understanding his or her responsibility regarding purchases made by the consumer's child and nonetheless entrusts the child with a device on which the consumer has set up 1-Click Ordering, and the basis for that contention.

12.     Identification and description of the enacted, proposed, planned, or otherwise contemplated rules, guidance, hearings, workshops, reports, studies, or other bodies of information the FTC contends pertain to or notify companies, including Amazon, whether their practices for In-App Charges comply with Section 5 of the FTC Act.

13.     Identification and description of the enacted, proposed, planned, or otherwise contemplated rules, guidance, hearings, workshops, reports, studies, or other bodies of information the FTC contends notify consumers about In-App Charges.

14.     The FTC's "Understanding Mobile Apps" webpage, available at http://www.consumer.ftc.gov/articles/0018-understanding-mobile-apps#kids, and the accompanying "Keeping Up With Kids' Apps" infographic, including the Persons who created and approved them for publication and the reasons for their creation and publication.

15.     The FTC's investigation of and settlement with Apple regarding In-App Charges incurred during use of Apps downloaded from Apple, including the FTC's position with respect to what is required by its consent decree with Apple to ensure that its practices for In-App Charges comply with Section 5 of the FTC Act.

16.     The FTC's position with respect to what is required by its consent decree with Google to ensure that its practices for In-App Charges comply with Section 5 of the FTC Act.

NOTICE OF FED. R. CIV. P. 30(b)(6) DEPOSITION
OF PLAINTIFF FEDERAL TRADE COMMISSION
(No. 2:14-CV-01038-JCC) – 6
24976-0374/LEGAL127596335.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

17.    The FTC's understanding of the amounts and percentages of In-App Charges that were refunded by Apple to customers prior to their settlements with the FTC.

18.    The age of a child at which it would no longer be unfair under Section 5 of the FTC Act for Amazon to charge a Customer for the In-App Purchases made by the child, even if the Customer had not given the child authority to make the In-App Purchase.

19.    The point(s) at which, according to the FTC, Amazon's evolving practices regarding In-App Charges complied with Section 5 of the FTC Act, and the basis for that conclusion.

20.    Any additional steps, messages, or practices the FTC contends Amazon must adopt to ensure that its practices for In-App Charges comply with Section 5 of the FTC Act.

21.    The various controls, protections, or notifications utilized by Apple from inception of In-App Purchasing to the present which were intended to avoid accidental purchases of In-App Charges (such as parental controls, password prompts, PINs, or other disabling tools or notifications to the customer that such a purchase had been transacted), including the date each such control or protection was implemented.

22.    Apple's customer-service policies and practices, including the various means and methods by which customers could seek and receive refunds from Apple for unauthorized or accidental In-App Charges, from inception of In-App Purchasing to the present.

NOTICE OF FED. R. CIV. P. 30(b)(6) DEPOSITION
OF PLAINTIFF FEDERAL TRADE COMMISSION
(No. 2:14-CV-01038-JCC) – 7
24976-0374/LEGAL127596335.1

DATED this 2nd day of September, 2015.

s/ Harry H. Schneider, Jr.
Harry H. Schneider, Jr., WSBA No. 9404
David J. Burman, WSBA No. 10611
Jeffrey M. Hanson, WSBA No. 34871
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
DBurman@perkinscoie.com
JHanson@perkinscoie.com

Attorneys for Defendant Amazon.com, Inc.

NOTICE OF FED. R. CIV. P. 30(b)(6) DEPOSITION
OF PLAINTIFF FEDERAL TRADE COMMISSION
(No. 2:14-CV-01038-JCC) – 8
24976-0374/LEGAL127596335.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

## CERTIFICATE OF SERVICE

On the 2nd day of September, 2015, I caused to be served upon the following, at the

address stated below, via the method of service indicated, a true and correct copy of the

foregoing document.

| Jason M. Adler | __ | Via hand delivery |
|---|---|---|
| Duane C. Pozza | __ | Via U.S. Mail, 1st Class, Postage Prepaid |
| Federal Trade Commission | __ | Via CM/ECF system |
| 600 Pennsylvania Ave NW, CC-10232 | __ | Via Overnight Delivery |
| Washington, DC  20580 | | Via Facsimile |
| jadler@ftc.gov | | |
| dpozza@ftc.gov | **X** | Via Email |

Attorneys for Plaintiff

| Laura M. Solis | __ | Via hand delivery |
|---|---|---|
| Federal Trade Commission | __ | Via U.S. Mail, 1st Class, Postage Prepaid |
| 915 Second Avenue, Suite 2896 | __ | Via CM/ECF system |
| Seattle, WA  98174 | __ | Via Overnight Delivery |
| lsolis@ftc.gov | | Via Facsimile |
| Attorney for Plaintiff | **X** | Via Email |

DATED at Seattle, Washington, this 2nd day of September, 2015.

*s/ Harry H. Schneider, Jr.*

NOTICE OF FED. R. CIV. P. 30(b)(6) DEPOSITION
OF PLAINTIFF FEDERAL TRADE COMMISSION
(No. 2:14-CV-01038-JCC) – 9
24976-0374/LEGAL127596335.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000