1

THE HONORABLE JOHN C. COUGHENOUR

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

FEDERAL TRADE COMMISSION,

No. 2:14-CV-01038-JCC

10

Plaintiff,

**AMAZON.COM, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

11

v.

NOTE ON MOTION CALENDAR:

12

AMAZON.COM, INC.,

Friday, February 26, 2016

13

Defendant.

ORAL ARGUMENT REQUESTED

14

15

16

17

18

19

20

21

22

23

24

25

26

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC)

24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

## TABLE OF CONTENTS

2
**Page**

3    I.     INTRODUCTION ........................................................................................ 1

4    II.    FACTUAL BACKGROUND ...................................................................... 2

5           A.    Amazon, the Appstore, and the Launch of In-App Purchasing ............................ 2

6           B.    In Response to Higher-than-Expected Refund Requests, Amazon Refined
                   In-App Purchasing Notices and Password Controls, While Providing
7                  Generous Refunds .................................................................................... 8

8    III.   ARGUMENT ............................................................................................ 17

9           A.    Legal Standard ........................................................................................ 17

10          B.    There Is No Evidence Warranting Prospective Injunctive Relief ....................... 17

11                1.    The FTC Concedes that Amazon Complied with Section 5 Before
                        the FTC Filed Its Complaint ............................................................ 17
12
                  2.    There Is No Evidence that Amazon Will Violate Section 5 ................... 19
13
14   IV.    CONCLUSION ......................................................................................... 24

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# I.      INTRODUCTION

The Federal Trade Commission seeks a permanent injunction against Amazon for an alleged problem it concedes ended before the FTC commenced this action.  Because the undisputed material facts demonstrate that Amazon already has voluntarily resolved the concerns that gave rise to the FTC's complaint and that there is no cognizable danger of harm to customers in the future, the Court should dismiss the FTC's claim for injunctive relief.

The FTC alleges that Amazon unfairly billed some of its "Appstore" customers for "in-app purchases" of digital content like gems, coins, and virtual weapons within games and other applications ("apps") on mobile tablets and phones.  Yet the FTC itself admits that Amazon resolved the issue no later than June 2014, when Amazon made a final, voluntary adjustment to the purchasing process for in-app purchases to ensure complete consistency with a separate settlement the FTC reached with Apple earlier that year resolving a similar claim against Apple. The FTC concedes that it is not challenging any ongoing activities:

- The FTC's Rule 30(b)(6) witness admitted that the FTC's position never has been that Amazon violated Section 5 of the FTC Act at any time after June 2014.

- The FTC seeks no restitution for any in-app purchases after June 2014.

- The FTC's liability expert offered no criticism of Amazon's approach to in-app purchasing implemented in June 2014, and the FTC instructed its damages expert to confine his analysis to in-app purchases through June 2014.

- Since filing its Complaint in July 2014, the FTC never has asked Amazon to change its billing practices and never has asked the Court to enter a TRO or a preliminary injunction.

Thus, it is undisputed that there is no current issue with Amazon's billing practices for in-app purchases.

Nor can the FTC demonstrate a likelihood of future harm to customers.  The undisputed material facts show that Amazon attempted in good faith to prevent the very issues about which the FTC now complains.  Amazon gave customers tools to prevent in-app purchases by children when it launched in-app purchasing, identified and took concrete steps to resolve

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 1
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  customer dissatisfaction with in-app purchasing well before the FTC even commenced its

2  investigation, and substantially reduced the refund rate such that it has largely remained low and

3  flat since at least October 2013.  The FTC cannot present any evidence that Amazon is likely to

4  turn around, now or ever, and implement changes that would increase the dissatisfaction of its

5  customers.  Because the FTC is seeking *prospective* relief for an alleged problem that occurred

6  solely in the *past* and that is not likely to occur in the future, injunctive relief is neither necessary

7  nor appropriate.

8          Dismissing the FTC's request for injunctive relief will also streamline resolution

9  of this action.  Amazon is confident that the evidence at trial will demonstrate that it acted

10  responsibly, proactively, voluntarily, expeditiously, and ultimately successfully to address an

11  unanticipated issue that affected only a small percentage of Appstore customers.  But,

12  recognizing that there are disputed factual issues that make it impossible to obtain summary

13  judgment on liability, Amazon is not seeking a liability ruling on this motion.  The FTC's

14  demand for a permanent injunction, however, need not await trial before being decided as a

15  matter of law based on the absence of ongoing harm and a cognizable threat of harm in the

16  future.  The Court should enter partial summary judgment now in favor of Amazon and dismiss

17  the FTC's claim for a permanent injunction.

18          **II.    FACTUAL BACKGROUND**

19  **A.    Amazon, the Appstore, and the Launch of In-App Purchasing**

20          Since its founding, Amazon's mission has been to be "Earth's most customer-

21  centric company."  Declaration of Aaron Rubenson ("Rubenson Decl.") ¶ 2, Ex. A; Declaration

22  of Harry H. Schneider, Jr. ("Schneider Decl.") Ex. C (Pieros Dep.) 17:22-25 ("[O]ur mission is

23  to truly be the world's most customer-centric company . . . .").[1]  Amazon has built its business on

24  _____

25  [1] Excerpts of deposition transcripts are attached to the accompanying Schneider Declaration at Exhibit A (Deposition of Aaron Rubenson), Exhibit B (Rule 30(b)(6) Deposition of Aaron Rubenson), Exhibit C (Deposition of Jeffrey D. Pieros), Exhibit  D (Deposition of Michael A. Lagoni), Exhibit E (Deposition of Nathan Glissmeyer),

26  Exhibit F (Deposition of Jennifer King), and Exhibit G (Rule 30(b)6) Deposition of FTC Attorney Malini Mithal). For ease of reading, references herein cite to the witness transcript without noting the declaration exhibit.

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 2
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   customer trust because that trust is essential to Amazon's business model, which relies

2   fundamentally on having customers turn to Amazon time after time when they seek convenient,

3   reliable purchases of a wide range of physical and digital products.  Rubenson Decl. ¶ 2.

4        Amazon has implemented this approach through such innovations as its well-

5   known "1-Click" purchasing system (which uses securely stored billing and shipping

6   information so customers can seamlessly make a purchase with a single click), Amazon Prime

7   membership (which provides free two-day shipping of physical products and free access to a

8   large volume of digital content), the Kindle e-reader (which enables customers to place an entire

9   library of books onto a single device), Kindle Fire tablets (which facilitate easy access to and

10  purchase of Amazon books, videos, music, apps, and other digital products), and award-winning

11  customer service.  *Id.* ¶ 3.

12       In 2011, Apple led the relatively new business of selling or offering apps for

13  download, many of which also offered digital items for purchase within the app.  *Id.* ¶ 4.

14  Examples of such "in-app purchases" for game apps include extra game levels, characters,

15  weapons, or other accessories.  *Id.*  Apple had popularized apps for its iPad and iPhone, and the

16  concept of in-app purchasing spread to other tablets and smartphones, particularly those based on

17  Google's Android operating system.  *Id.*  Google had its own app store.  *Id.*

18       Amazon started selling apps for other companies' devices in March 2011.  *Id.* ¶ 5.

19  Amazon first made in-app purchasing available to customers in November of that year, at the

20  same time that it introduced its Kindle Fire tablet, which evolved from Amazon's innovative

21  Kindle e-reader.  *Id.*  In developing its Appstore, Amazon designed in-app purchase screens (i.e.,

22  popup windows presented to a user when making an in-app purchase) to emphasize a seamless or

23  "friction-free" purchasing experience that was consistent with its customers' purchasing

24  experience with 1-Click on its website, Amazon's Kindle e-readers, and other digital content on

25

26

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 3
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  the Fire tablets.[2]  *Id.*  As a result, Amazon did not require customers to type a password for every

2  in-app purchase.  *Id.*

3       Amazon was aware that some customers would share tablets and smartphones

4  with children, so from the outset it made design choices to enable parents to avoid unwanted

5  purchases by children.  *Id.* ¶ 7; Rubenson 30(b)(6) Dep. 57:17-58:15 ("Our goal, frankly, was not

6  to speculate on what [parents] would want, but give them the tools from day one to protect

7  themselves if they wanted. . . .  And so we recognize that some parents might choose to go down

8  that path of wanting friction.  And we tried to provide – we thought we provided a great tool set

9  for that.").  For example, in May 2011 Amazon's Appstore design team circulated its Business

10  Requirements Document describing the proposed roadmap for in-app purchasing and its design

11  objectives.  Rubenson Decl. Ex. B.  The team observed that parents would want "[p]arental

12  controls," including the addition of a "PIN [or password] requirement" so that adults "buying for

13  children (or enabling their children to buy for themselves)" could choose to guard against large

14  or unexpected charges.  *Id.*  To meet that expectation, Amazon designed and implemented from

15  the outset a Parental Controls feature allowing customers to require a password or PIN for in-app

16  purchases.  Rubenson Decl. ¶ 8.

17       With Parental Controls enabled, a customer attempting an in-app purchase would

18  be presented with purchase prompts as indicated in Figure 1, which provides an example from

19  the popular game "Temple Run."

20

21

22

23

24

25

26

---

[2] Although the Amazon Appstore offered apps for other companies' Android-based products (such as Samsung tablets and smartphones), the substantial majority of in-app purchases has always been made on Amazon's Kindle Fire tablets.  Rubenson Decl. ¶ 6.

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 4
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**Figure 1: Purchase Prompts with Parental Controls Enabled**



Schneider Decl. Exs. H, I.  In the example, the customer is attempting to buy 2,500 Temple Run

Coins, which can be used in the game to buy additional characters, powers, or other features.

*See* Rubenson Decl. ¶ 4.  When the customer presses the button to buy the item for $0.99 (and

presses it a second time after the price button changes color), the Parental Controls password

window on the right opens.  *Id.* ¶ 8.  With Parental Controls turned on, the customer cannot incur

any charge without successful entry of the account holder's password.  *Id.*

Amazon informed customers about in-app purchasing and Parental Controls in

multiple ways.  For example, to download an app, a customer first has to visit the app's detail

page, which displays a description of the app and other information such as price and customer

ratings and reviews.  *Id.* ¶ 9.   For apps offering in-app-purchasing opportunities, the app

description included the notice in Figure 2.

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 5
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**Figure 2: Notice of In-App-Purchasing Opportunities**





Schneider Decl. Ex. J.  Amazon implemented this notice the first week after in-app purchasing

was launched, and although the exact wording changed slightly over time, it has always informed

customers that the app lets them make purchases using "actual money" and that they could

configure Parental Controls via the Settings menu.  Rubenson Decl. ¶ 9.  For some apps, this

notice wound up "below the fold" on the device's screen – that is, the customer had to scroll to

see the notice – because the app developer's description of the app did not fit on one screen.  *Id.*

But for all apps with in-app purchasing, this notice was part of and located in the same place

within the app's description; interested parents could learn how to avoid spending "actual

money" simply by reading the product's description before downloading it.  *Id.*  Amazon Help

Pages also provided information to customers about in-app purchasing and Parental Controls,

including a tutorial titled "In-App Purchasing 101."[3]  *Id.* ¶ 10.

Amazon's design decisions also took into account the fact that *each* in-app

purchase – like every purchase from Amazon – resulted in delivery of an immediate order-

---

[3] Amazon also enhanced the Parental Controls feature in December 2011 by making it easier to locate on Kindle Fire devices and providing users the option of turning off Wi-Fi altogether, which would have the effect of disabling all in-app purchasing.  Rubenson Decl. ¶ 18.

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 6
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  confirmation email receipt to the Amazon account holder.[4]  Rubenson Decl. ¶ 13.  Thus, if a

2  parent had not enabled Parental Controls and a child made an in-app purchase using a device

3  linked to the parent's Amazon account, the parent would immediately receive an order-

4  confirmation email.  *Id.*  If the child made five in-app purchases, the parent would receive five

5  separate emails.  *Id.*  (By contrast, Apple's practice was (and remains) to aggregate purchases

6  into a single email that is sent periodically.  *Id.* ¶ 14.)

7  Any Amazon account holders who did not make the in-app purchase themselves

8  immediately would be able to see in the confirmatory email the price paid and the source of the

9  charge, as evident from the sample in Figure 3.

10  **Figure 3: Order-Confirmation Email**



19
20  Schneider Decl. Ex. K.  Account holders reviewing the order-confirmation email also would see

a link to the Appstore Help Page, where two of the topics are "Set Parental Controls for In-App

21  Purchases" and "Turn Off In-App Purchasing."  Rubenson Decl. ¶ 13.  The email receipt also

22

23  ———————————
[4] As part of initial set up of a Kindle Fire tablet, customers associate the device with an Amazon account
and payment method.  Rubenson Decl. ¶ 11.  During setup, as a condition of using the Appstore, customers agree to

24  the Appstore Terms of Use, which inform the customer of the potential for in-app purchases and that purchases will
be completed using 1-Click.  *Id.* & Ex. C, ¶ 2.3.  Customers also agree to Amazon's Conditions of Use and "accept

25  responsibility for all activities that occur under your account or password."  *Id.* ¶ 12 & Ex. D (introductory
paragraph and "Your Account" paragraph).  Those same terms alert account holders that "Amazon does sell

26  products for children, but it sells them to adults, who can purchase with a credit card or other permitted payment
method."  *Id.* ("Your Account").  Android devices must also use an Amazon account and payment method.  *Id.* ¶ 11.

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 7
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   contains a "Your Apps and Devices" button, and this button and the "Help" link both lead to

2   webpages where there are links to contact customer service via email, phone, or online chat.  *Id.*

3      All of the above protections were in place when the Appstore first made in-app

4   purchasing available in mid-November 2011 (or within the first week).  *Id.* ¶ 15.

5   **B.** **In Response to Higher-than-Expected Refund Requests, Amazon Refined In-App Purchasing Notices and Password Controls, While Providing Generous Refunds**

6

7      Not long after in-app purchasing launched, it became apparent to Amazon that

    some parents who had not enabled Parental Controls had been surprised by in-app purchases

8   made by their children.  *Id.* ¶ 16.  An unexpected number and percentage of customers were

9   contacting Amazon customer service about such purchases.  *Id.*  Although the issue affected only

10  a small percentage of all in-app purchasers, it was unacceptable to Amazon.  The Director of the

11  Amazon Appstore explained that refunds for in-app purchases were inconsistent with Amazon's

12  business practices, not because of lost revenue, but because they indicated customer

13  dissatisfaction:  "[T]he amount of revenue being generated by the Appstore . . . was immaterial

14  to Amazon overall.  So our – our considerations at this step were, you know, having good

15  experience so that our customers would come back so that we could keep growing . . . ."

16  Rubenson 30(b)(6) Dep. 54:20-55:1.  Given the potential for customer dissatisfaction resulting

17  from unwanted in-app purchases, the Appstore Director deemed it a "near house on fire"

18  concern.  Rubenson Decl. ¶ 16; Pieros Dep. 95:2-14 (testifying that he and Appstore leaders left

19  their families on Christmas Day 2011 to answer Appstore questions by customers receiving

20  tablets as gifts and that "I have a hard time saying that the FTC investigation added any priority

21  to it as – as the team was already trying to fix it.").  Amazon promptly tried to resolve this

22  dissatisfaction in a manner that would protect customers who were having problems without

23  imposing unwanted consequences on the substantial majority of customers who were not and

24  who desired a seamless purchasing experience.  Rubenson Decl. ¶ 16.

25     To that end, even though the Appstore Terms of Use state that digital purchases –

26

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 8
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

which are immediately consumable – are not "returnable," Amazon's policy and practice has always been to provide refunds for accidental purchases.  Declaration of Jeffrey D. Pieros ("Pieros Decl.") ¶ 3.  Thus, consistent with its longstanding and widely recognized commitment to customer service, Amazon instructed its agents to refund all first-time "accidental" in-app purchases.  *Id.*  As part of the refund process, Amazon customer-service agents also instructed customers how to use Parental Controls to avoid future accidental purchases and sent follow-up emails with those instructions.  *Id.* ¶ 4.  In many instances, customer service was overly generous and provided additional refunds to customers who already had been refunded and educated, and whose subsequent purchases almost certainly were not accidental.  *Id.* ¶ 5; Rubenson Dep. 112:21-113:1 ("[W]e've been very consistent in giving people refunds when they ask for them, not just for the first accidental purchase request, but even for the second and third, sometimes many subsequent refund requests, for the good of the long-term relationship with Amazon.").

As Amazon's Operations Manager for Customer Service explained, "[O]ur associates are pretty well known for being customer obsessed.  And so if a customer called in and said, hey, my son's been ordering these, this upsets me, the default reaction of our associates is to go ahead and refund."  Pieros Dep. 166:15-19; *see also id.* 44:23-45:2 ("[A]t Amazon, we trust our customers.  There very well may have been some customers that had known about it, but when a customer told us in customer service, 'Hey, I didn't know about parental controls,' we believed them."); Lagoni Dep. 58:8-18 ("[Amazon is] regularly voted as the best customer service in the world, and everyone knows how to get ahold of Amazon and get a refund. . . .  And we had told the customer service team that if anyone calls about this issue, just give them the refund.  And so we tried to make it as easy as possible.  And so because of all that, we felt like if customers wanted a refund, they would get a refund.").  This generous refund policy continues to this day.  Pieros Decl. ¶ 6.

Amazon evaluated a range of options to curtail unwanted or accidental purchases by children.  Rubenson Decl. ¶ 16; Lagoni Dep. 229:19:22 ("And we certainly had the most

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 9
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

talented people in the organization working on trying to analyze and identify where these refunds were coming from and what we can do about it."). It based its evaluation on data relating to in-app purchasing. Rubenson Decl. ¶ 16; Rubenson Dep. 93:4-10 ("[O]ur approach to challenge[s] like this, is to look at data to try and identify where the problem is worst, what's causing it, and then implement solutions that address the problem, while at the same time being cognizant of not making a bad experience for all the other customers that are using a given program."). Amazon considered requiring a password for all in-app purchases, but that option was rejected because it would have imposed unwanted friction on the bulk of customers making in-app purchases (e.g., adults who had no children or who otherwise preferred a seamless purchase flow) given that Amazon's data showed that even at the height of this concern less than ██% of its in-app customers were complaining about in-app purchases. Rubenson Decl. ¶ 17; Rubenson 30(b)(6) Dep. 52:12-53:14 (explaining Amazon's mission to provide "the most convenient shopping experience" for customers). Instead, Amazon began an iterative cycle in which it implemented targeted refinements, analyzed data to determine if additional changes were warranted, evaluated potential changes, then identified additional refinements. Rubenson Decl. ¶ 17.

High-Price Items (January 2012; March 2012). After investigating and determining that high-price in-app items were generating disproportionately high refunds, Amazon addressed the issue in two steps. First, in January 2012 Amazon temporarily suspended the sale of all in-app items priced at $20 or higher. Rubenson Decl. ¶ 19. Then, in March 2012, Amazon implemented a password requirement for all in-app purchases of $20 or more. *Id.* After successful entry of the password, a purchase-confirmation popup such as in Figure 4 also notified the user if Parental Controls were currently on or off and included a hyperlink so the user could, if desired, immediately change the Parental Controls setting for future purchases less than $20.

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 10
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**Figure 4: Purchase-Confirmation Window**



Schneider Decl. Ex. L.  Additional password prompts that were implemented later (and discussed below) also used a similar confirmation popup to provide the status of Parental Controls and a hyperlink to change the setting.[5]  Rubenson Decl. ¶ 19.

> Kindle FreeTime (October 2012).  In October 2012, after over a year of development, Amazon released Kindle FreeTime.  Rubenson Decl. ¶ 20; Glissmeyer Dep. 43:19-44:8 (August 2011 meetings), 114:16-19.  This software allows parents to control tablet usage by children, including the ability to control what apps, books, videos, or other content a child can access and the duration of time a child can use the device.   Rubenson Decl. ¶ 20.  Within FreeTime, all in-app purchasing is disabled.  *Id.*; Glissmeyer Dep. 91:7-8; 145:1-13.  Amazon publicized FreeTime widely.  Glissmeyer Dep. 57:2-58:2 & 137:23-138:14 (describing marketing efforts such as email, website displays, print media, device ads).  FreeTime is available on all Kindle Fire tablets sold since September 2012 and has received favorable reviews as a valuable tool for parents.[6]  Rubenson Decl. ¶ 20.

---

[5] The same notice of Parental Controls status and a hyperlink to change that setting was also displayed on the confirmation popup after each in-app purchase that did not require a password.  Rubenson Decl. ¶ 19.  In July 2013, based on Amazon's analysis of data indicating a disproportionate frequency of refunds for in-app items priced at $19.99, Amazon reduced the threshold for the high-price password from $20.00 to $19.99 and higher.  *Id.* ¶ 27.

[6] *See, e.g.*, Schneider Decl. Ex. M  (NBCNews.com) ("One of the most child-friendly tablets on the market is getting even child-friendlier with Amazon's announcement of Kindle FreeTime Unlimited . . . ."); Ex. N (Common Sense Media) ("[W]ith Amazon's FreeTime parental controls, it's a breeze to manage your kids' usage.").

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 11
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    <u>High-Frequency Password (February 2013)</u>.  Refund rates declined after

2 implementation of the high-price password as Amazon had hoped, but they remained higher than

3 acceptable to Amazon.  Rubenson Decl. ¶ 21.  Amazon's analysis of data in mid-2012 indicated

4 that high-frequency purchasing (i.e., multiple in-app purchases within a short time period) were

5 resulting in higher refund rates, so Amazon began developing another targeted solution:

6 requiring a password for rapid purchases.  *Id.*  Amazon had in fact identified this improvement

7 internally before the FTC commenced its investigation of Amazon's in-app purchasing billing

8 practices, which temporarily derailed implementation of the improvement.  Rubenson Decl. ¶ 22.

9    In February 2013, on its own initiative, Amazon implemented its previously

10 identified refinement to require a password for high-frequency purchases.  *Id.*  Upon a

11 customer's second attempt to make an in-app purchase within a five-minute period, the customer

12 was presented with a password prompt – that is, similar to Figure 1, a screen would pop up and

13 require the customer to enter a password before the purchase would be permitted – even if

14 Parental Controls were disabled.  *Id.*; Schneider Decl. Ex. L.  Correctly inputting the account

15 password would open a 60-minute window in which purchases could be made without additional

16 password entry.[7]  Rubenson Decl. ¶ 22.

17    <u>High-Risk Password (May 2013)</u>.  In May 2013, Amazon further analyzed its data

18 and identified those apps that were experiencing high refund rates for in-app purchases.  Amazon

19 began to require a password for all in-app purchases made within those apps as well as apps

20 designed for use by children, as determined from information provided by the third-party

21 developer of an app.  Rubenson Decl. ¶ 24.  For those categories of apps, once the customer

22 entered a password for an in-app purchase, a 15-minute purchasing window opened.[8]  *Id.*; *see*

---

23

24    [7] Because Amazon had stopped selling first-generation devices in August 2012, those devices no longer
received software updates.  Rubenson Decl. ¶ 23.  As a result, the high-frequency password, high-risk password,
Key Details Legend, and first-time purchase prompts, *see infra*, were not implemented on first-generation devices.

25 *Id.*  In October 2013 Amazon imposed a password requirement for purchases of $1 or more coming from first-
generation devices; unlike other changes, this change did not require an on-device software solution.  *Id.*

26    [8] Neither this purchasing window nor the high-frequency purchasing window applied to attempted
purchases of high-priced in-app items, which always required entry of a password.  Rubenson Decl. ¶ 24.

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 12

24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*also* Schneider Decl. Ex. L (high-frequency password prompt, which is visually the same as the high-risk password prompt).

<u>First-Time Purchase Prompt (May 2013)</u>.  Also in May 2013, Amazon added a password requirement for all first-time in-app purchases on Kindle Fire devices.   Rubenson Decl. ¶ 25.  As evident in Figure 5 below, this "Confirm In-App Purchase" prompt further explained in-app purchasing and required entry of a password to proceed.  The prompt also informed the user that "If you'd like to require a password for future in-app purchases, please turn on Parental Controls" and included a hyperlink for the user to do so.  *Id.*

**Figure 5: First-Time Purchase Prompt (May 2013)**



Schneider Decl. Ex. O.

<u>Key Details Legend (June 2013)</u>.  In June 2013, Amazon enhanced the detail pages for apps with in-app purchasing by including a "Key Details" legend located at the top and to the right of the app description.  Rubenson Decl. ¶ 26.  Tapping on the legend produces a popup window, and the user can scroll down to view a further explanation of in-app purchasing and Parental Controls.  *Id.*  Examples of the Key Details legend and popup screen are provided in Figure 6.

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 13
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**Figure 6: Key Details Legend and Popup Window**



Schneider Decl. Ex. P.  The in-app notice in the Key Details legend was in addition to the

original notice of in-app purchasing ("PLEASE NOTE") appended to an app description.

Rubenson Decl. ¶ 26.

      Amazon's voluntary course of iterative refinements from launch successfully

resolved the issue of customer dissatisfaction related to unwanted in-app purchases.  As the chart

in Figure 7 shows, the monthly refund rates for in-app purchases had declined from early periods

and have largely remained flat since at least October 2013.  Rubenson Decl. ¶ 31 (even

considering Amazon's generous refund practices, between May 2013 and August 2015, the

monthly rate of customer refunds for in-app items has ranged between ▇% and ▇%; monthly

refund rates between October 2013 and August 2015 have ranged between ▇% and ▇% of in-

app units sold).

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 14
24976-0374/129600467

**Figure 7: Refund Rates for In-App Purchases**



Rubenson Decl. Ex. E.  (The increase in refunds in March and April 2012 resulted from a fraud campaign by third parties related to multiple in-app purchases made within a particular game. Rubenson Decl. ¶ 31.)

Revised First-Time Purchase Prompt (June 2014).  In January 2014, the FTC announced a settlement with Apple regarding in-app purchasing and for the first time revealed what it believed was necessary to ensure "informed purchasing consent" for in-app purchases. Schneider Decl. Ex. Q.  (Over the course of its investigation of Amazon, the FTC did not provide any specific guidance to Amazon on how Amazon should revise it in-app-purchase screens. Rubenson Decl. ¶ 22.)  Amazon's system already met the provisions of the consent decree in almost all respects, and its iterative improvements had already reduced the unacceptably high refund rates experienced at launch.  But in June 2014 Amazon nevertheless voluntarily refined its first-time purchase prompt to make its Appstore consistent with the terms in the Apple settlement.  *Id.* ¶ 28 (Amazon informed the FTC in March 2014 of its plan to make those

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 15
24976-0374/129600467

1   changes.  *Id.*).  As seen in Figure 8, the June 2014 first-time purchase prompt asks account

2   holders to select whether they want to require a password for future in-app purchases.

3   **Figure 8: Revised First-Time Purchase Prompt (June 2014)**



15  Schneider Decl. Ex. R.  If the account holder chooses to require a password, the device enables

16  Parental Controls.  Rubenson Decl. ¶ 28.  In order to authorize the specific purchase and the

17  password selection for future purchases, the account holder must enter his or her password.  *Id.*

18          Notably, however, implementation of the June 2014 first-time purchase prompt

19  did not result in significant further reduction in refunds.  *Id.* ¶ 32.  For example, in April and

20  May 2014, respectively, only ██% and ██% of in-app units sold were refunded; in July and

21  August 2014, ██% and ██% were refunded, respectively.  *Id.*  This fact confirms that Amazon

22  had already resolved the issue before changing its practices again in order to track the precise

23  terms of the FTC's settlement with Apple.  Most fundamentally, however, whether or not

24  Amazon had already resolved the issue before making those changes, what is dispositive for this

25  motion is that it is undisputed that Amazon had voluntarily resolved this issue for customers

26  before the FTC filed suit in July 2014.

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 16
24976-0374/129600467

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### III.    ARGUMENT

**A.    <u>Legal Standard</u>**

The purpose of summary judgment is to avoid unnecessary trials or, as here, trials of unnecessary issues when there is no dispute as to the material facts before the Court and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).

**B.    <u>There Is No Evidence Warranting Prospective Injunctive Relief</u>**

Permanent injunctive relief under Section 13(b) of the FTC Act requires "proper proof" that the alleged harm is ongoing or likely to occur in the future.  "Past wrongs are not enough for the grant of an injunction; an injunction will issue only if the wrongs are ongoing or likely to recur."  *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) (internal citations and quotation marks omitted).  In denying Amazon's motion to dismiss, the Court concluded that it was unclear from the Complaint whether Amazon had ceased the alleged unfair practices or whether there was "a cognizable danger of recurrent violation, something more than the mere possibility." Dkt. 14 at 17.  At summary judgment, however, the FTC cannot rest on its allegations but must submit evidence that Amazon is violating or is likely to violate the FTC Act. The FTC now admits that Amazon complies with Section 5 and has complied since before the FTC filed this lawsuit.  Moreover, the undisputed evidence of Amazon's good-faith efforts to address its customers' concerns prior to the FTC's involvement demonstrates there is no risk of a future violation.  Accordingly, to narrow the issues for trial, the Court should rule that the FTC is not entitled to the prospective permanent injunction it seeks.  *See* Fed. R. Civ. P. 56(a), (g).

**1.    <u>The FTC Concedes that Amazon Complied with</u>**
        **<u>Section 5 Before the FTC Filed Its Complaint</u>**

The FTC now admits that, even under its broad view of "unfairness," any alleged violation of the FTC Act by Amazon ended in June 2014 – one month *before* the FTC filed its complaint – when Amazon voluntarily modified its first-time purchase prompt to be consistent

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 17
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   with terms in the Apple consent decree publicly announced earlier that same year.[9]

2           The FTC's Rule 30(b)(6) witness admits, for example, that the alleged violation

3   by Amazon concerns only practices occurring prior to June 2014.  Mithal 30(b)(6) Dep. 9:1-4

4   ("Amazon introduced a password prompt that taken together with its entire practice and purchase

5   flow *obtained parental consent* at that time" (emphasis added)); *see also id.* 14:17-19 ("And

6   when we filed the complaint, [the FTC's] position was that in June 2014 Amazon began

7   changing its framework so that parents could provide consent."); *id.* 142:11-12 ("In June 2014,

8   the – Amazon has a mechanism for consumers being able to consent to future charges.").

9           The FTC's sole liability expert concludes that Amazon's June 2014 password

10  prompt "gives the user multiple relevant options, clearly states what is being purchased and its

11  cost, describes the action that will occur after entering one's password, and then implements the

12  action directly rather than forcing the user to leave the current flow."  Schneider Decl. Ex. S

13  (King Report) at 39; King Dep. 22:5-11 (testifying that she did not identify in either of her expert

14  reports any "concerns" with the June 2014 prompt), 189:24-190:2 ("[I]t is my understanding that

15  this particular password prompt, figure 10 in my report, the 2014 iteration, is not the source of

16  the FTC's concern.").  Consistent with her opinion, counsel for the FTC confirmed that the FTC

17  would not seek monetary relief for any in-app charges incurred after June 2014.  Schneider Decl.

18  Ex. T (FTC Email, Sept. 25, 2015) ("[W]e're not planning to seek as part of monetary relief

19  charges incurred after June 2014 by consumers who faced the June 2014 prompt.").  Similarly,

20  the FTC instructed its damages expert to limit his analysis through June 2014.  Schneider Decl.

21  Ex. U (Hamermesh Report) at 5; *see also* Schneider Decl. ¶ 25 (damages estimate limited to

22  transactions through June 3, 2014).

23          The FTC's acknowledgment that Amazon has complied with Section 5 since at

24  least June 2014 is further confirmed by the undisputed fact that the FTC has not since filing its

25

26          [9] Amazon disputes that the terms of the Apple consent decree are necessary to comply with the FTC Act. Amazon will contest that issue and the issue of liability at trial.

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 18
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   Complaint asked Amazon to change any of its in-app billing practices.  Schneider Decl. ¶ 26.

2   Nor has the FTC asked this Court to enter a temporary restraining order or a preliminary

3   injunction ordering Amazon to alter its current billing practices.  There is no genuine issue as to

4   any material fact regarding whether Amazon's current practices comply with Section 5 or

5   whether Amazon's practices for the prior 18 months complied.  They do, and they did.

6             **2.**      **There Is No Evidence that Amazon Will Violate Section 5**

7          The Complaint includes a boilerplate allegation that Amazon is likely to violate

8   Section 5 in the future.  But there is no evidence, and the FTC has made no effort to develop any,

9   suggesting there is cognizable risk of a future violation.

10         The FTC cannot rely on a remote possibility or unsupported speculation about

11   future conduct to justify the extraordinary remedy of an injunction, particularly where, as here,

12   there is no current violation.  *See, e.g.*, *United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854

13   (9th Cir. 1995) ("A district court cannot issue an injunction unless there exists some cognizable

14   danger of recurrent violation.  The determination that such danger exists must be based on

15   appropriate findings supported by the record." (internal quotation marks and citations omitted)).

16   Instead, the FTC must come forward with credible evidence that there is more than a "mere

17   possibility" that Amazon will violate Section 5 in the future.  *FTC v. Accusearch Inc.*, 570 F.3d

18   1187, 1201 (10th Cir. 2009) ("When, as in this case, a defendant has ceased offending conduct,

19   the party seeking injunctive relief must demonstrate to the court that there exists some

20   cognizable danger of recurrent violation, something more than the mere possibility which serves

21   to keep the case alive." (internal quotation marks omitted)).  The FTC has not and cannot do so.

22         In fact, the *possibility* that Amazon *may* violate Section 5 in the future is all the

23   FTC has disclosed in discovery.  The FTC's Rule 30(b)(6) deposition witness testified that an

24   injunction to prevent future harm is necessary only because Amazon "would be free to resume or

25   continue any violative practices absent such an order" and that "Amazon can charge consumers

26   without their consent . . . without an order".  Mithal 30(b)(6) Dep. 54:1-55:2.  But that

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 19
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    speculative allegation is insufficient as a matter of law to support injunctive relief; otherwise,

2    nearly every case would demand a permanent injunction because parties can always change their

3    practices.  Yet the FTC offers nothing more and in fact has refused to answer questions about

4    what facts make an injunction appropriate and what specific injunctive relief it seeks from the

5    Court.  When asked, "[W]hat does the FTC contend Judge Coughenour must order Amazon to

6    do with injunctive relief to be in compliance?" the FTC instructed the witness, "Don't answer."

7    Mithal 30(b)(6) Dep. 29:21-30:6; *see also id.* 26:24-27:16, 30:23-31:1 (refusing to answer "If

8    Amazon is in compliance today, what injunctive relief is necessary?").

9          Moreover, the undisputed facts preclude the FTC from demonstrating that

10   Amazon is likely to violate Section 5 in the future (assuming there even was a prior violation,

11   which Amazon denies).  Where the allegedly offending conduct has ceased, courts consider a

12   variety of factors to determine whether prospective injunctive relief is warranted, including the

13   degree of the defendant's scienter, the sincerity of the defendant's assurances against future

14   violations, and the genuineness and success of efforts to comply.  *Accusearch*, 570 F.3d at 1201;

15   *In re Nat'l Credit Mgmt. Grp. LLC*, 21 F. Supp. 2d 424, 440 (D.N.J. 1998); *see also Sears,*

16   *Roebuck & Co. v. FTC*, 676 F.2d 385, 392 (9th Cir. 1982) ("Two factors or elements frequently

17   influence our decision [to issue an injunction under Section 5] – the deliberateness and

18   seriousness of the present violation, and the violator's past record with respect to unfair

19   advertising practices.").

20         Here, none of the undisputed material facts supports imposition of injunctive

21   relief; to the contrary, they confirm that there is no risk of a future violation.  Amazon has acted

22   in good faith towards its customers from the outset of in-app purchasing.  Amazon ensured that

23   parents had tools available to disable in-app purchasing at their discretion, disclosed the

24   existence of in-app purchasing and the means to avoid it in the description of every app that

25   offered it, provided online help pages describing in-app purchasing and Parental Controls, sent

26   immediate notification to account holders of those purchases via email receipts, and provided

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 20
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   refunds and education to customers who asserted that their child had made an accidental or

2   unwanted in-app purchase.  When Amazon itself identified the issue of accidental in-app

3   purchases by some customers after launch, it voluntarily improved its notices and password

4   controls through a series of data-driven, iterative restrictions that focused on addressing the

5   dissatisfaction of the small percentage of customers without imposing unwanted restrictions on

6   the vast majority of customers who expressed no concerns at all about in-app purchasing.

7   Indeed, the FTC admits that it has never alleged Amazon intended to deceive its customers.  *See*

8   Schneider Decl. Ex. V (FTC Response to Request for Admission 25).

9          The fact that Amazon promptly and voluntarily began addressing the issue *before*

10   the FTC launched its investigation further confirms that Amazon is not likely to violate Section 5

11   in the future.  *Cf. Fedders Corp. v. FTC*, 529 F.2d 1398, 1403 (2d Cir. 1976) (upholding FTC

12   cease and desist order because abandonment of offending conduct "was not a voluntary action

13   but came about as a result of [defendant's] awareness of the Commission's investigation of its

14   advertising.") (internal quotation marks omitted)).  The FTC first served a civil investigative

15   demand on Amazon at the end of August 2012.  Schneider Decl. ¶ 24.  Long before then,

16   Amazon was already helping its customers avoid unwanted in-app purchasing:  it launched in-

17   app purchasing with tools to prevent unwanted purchases; notified account holders of in-app

18   purchases before and after the transaction; refunded first-time "accidental" in-app purchases

19   (while also refunding customers who had previously received refunds and whose subsequent

20   purchases were almost certainly not accidental); educated those customers how to enable

21   Parental Controls to avoid unwanted purchases in the future; and developed Kindle FreeTime,

22   which makes it even easier to manage kid's app usage and disable in-app purchasing.  The

23   undisputed facts demonstrate that Amazon also had already self-identified the issue of customer

24   dissatisfaction (even then affecting only a small percentage of customers) and had taken concrete

25   steps to address it, first by temporarily suspending those in-app purchases where complaints were

26   highest (over $20) and then requiring a password for all such purchases.  Moreover, Amazon

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 21
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

continued to study its data and was in the process of implementing a password for multiple purchases made within a short period of time when the FTC commenced its investigation. Amazon later voluntarily implemented this change.

During its investigation, the FTC did not provide any specific guidance to Amazon on what else, if anything, the FTC believed Amazon should be doing to comply with Section 5.  Despite the absence of any meaningful assistance from the FTC, Amazon implemented additional, targeted refinements.  Amazon added password prompts for multiple in-app purchases made within a short time and purchases from apps directed at children or with high refund rates.  Amazon lowered the price at which all in-app-purchases required a password. Amazon added a "Key Details" legend to the app-description page to provide further notice of in-app purchasing.  Amazon added a password prompt for all first-time in-app purchases on a device, which repeated to account holders that they could turn on Parental Controls at their discretion to require a password for future in-app purchases.  The effectiveness of Amazon's voluntary improvements is borne out by the monthly refund rates for in-app purchases, which declined from early periods and have largely remained flat since at least October 2013.

When the FTC in early 2014 announced its settlement with Apple, Amazon voluntarily modified its first-time-purchase prompt to be consistent with terms included in that settlement – despite the absence of any evidence showing that those terms would make any difference in preventing accidental purchases by children.  Amazon continues to use that password prompt, which the FTC now admits complies with Section 5.  Moreover, Amazon still maintains the *additional* notices and password controls that go above and beyond the June 2014 prompt.  And Amazon has since implemented additional features to help customers understand and customize their app experience, including Amazon Underground, a feature that provides to Amazon customers a large selection of premium apps and *all* their in-app purchases for free.

Although the FTC appears to have studiously avoided asking any of the many Amazon witnesses whether Amazon has any plans to revert to its pre–June 2014 notices and

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 22
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  password prompts for in-app purchases, the answer to that question is not in dispute.  There is no

2  threat, much less a cognizable one, that Amazon will risk increasing customer dissatisfaction by

3  abandoning the improvements it voluntarily implemented to reduce that dissatisfaction.  *See*

4  Rubenson Decl. ¶ 33.   The evidence is consistent and undisputed that Amazon took actions that

5  successfully minimized dissatisfaction over in-app purchases in order to reduce refund requests

6  and alleviate customer concerns.  Having achieved those goals, it would be irrational and

7  counterproductive – not to mention inconsistent with Amazon's core philosophy – for Amazon

8  to now jeopardize that achievement and its customers' trust by making any changes in the future

9  other than further improvements that would be as effective, or more effective, than those now in

10  place.  *Id.*  The evidence supports no other conclusion with regard to potential future harm to

11  Amazon's customers.  *See generally* Rubenson Decl.

12          In this regard, this case is profoundly different from those FTC unfairness cases in

13  which courts have granted permanent injunctions based upon findings that the defendants'

14  egregious, reckless, and often deceptive behavior was likely to be repeated in the future.  In *FTC*

15  *v. Verity International, Ltd.*, for example, the court entered a permanent injunction in an unfair-

16  practices case because the "defendants' fraud was calculated and substantial," "[t]hey preyed

17  upon consumers," they "deliberately and willfully defied the Court's order," and "repeat of their

18  past conduct would again result in further consumer injury that is virtually irreparable."  335 F.

19  Supp. 2d 479, 500 (S.D.N.Y. 2004).  Similarly, in *FTC v. Inc21.com Corp.*, the court entered a

20  permanent injunction because there was "compelling proof" that the defendants' "abused the

21  privileges" of the "fraud-friendly [billing] practice," "falsified information," and "lied to

22  [companies] regarding 'action plans' to reduce unauthorized billing."  745 F. Supp. 2d 975, 1009

23  (N.D. Cal. 2010); *see also FTC v. Neovi, Inc.*, 2009 WL 56130, at *8 (S.D. Cal. Jan. 7, 2009)

24  (entering permanent injunction in unfair-practices case because "the evidence clearly

25  demonstrates that [the defendants] were well aware of the fraud and profited from the fraudulent

26  use," and their "pattern of conduct demonstrates a significant disregard for check fraud and a

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 23
24976-0374/129600467

significant likelihood of future violation."); *FTC v. Accusearch, Inc.*, 2007 WL 4356786, at *9 (D. Wyo. Sept. 28, 2007) (entering permanent injunction in unfair-practices case because defendants "caused others to use false pretenses and other fraudulent means to obtain confidential consumer phone records," "that practice was necessarily accomplished through illegal means," and the phone records were "obtained surreptitiously"); *FTC v. Windward Mktg., Inc.*, 1997 WL 33642380, at *12-*13 (N.D. Ga. Sept. 30, 1997) (entering permanent injunction because defendants "provided substantial assistance" to others' "deceptive scheme," "continued unabated to deposit the unauthorized bank drafts on the consumer accounts" despite repeated warnings, and either "knew" about the fraud or "consciously avoided learning the truth").

In those cases in which courts have entered permanent injunctions, the evidence revealed intentional or reckless misconduct, a history of recidivism, or extreme disregard for consumer welfare. No similar evidence exists in this case. There is no evidence that Amazon falsified information, lied about plans to reduce accidental in-app purchases, continued a pattern of misconduct, engaged in fraud or surreptitious behavior, preyed on customers, disobeyed the Court's orders, facilitated a deceptive scheme, or consciously avoided customer concerns or refund requests. The undisputed evidence confirms the opposite – Amazon self-identified refund rates to be too high on an innovative product despite its best efforts to launch with effective controls and systematically developed and deployed enhancements to address those concerns and preserve customer trust.

There is no evidence showing a cognizable risk of future harm that would warrant a permanent injunction in this case. Amazon has demonstrated its voluntary, good-faith, responsible commitment to resolve the issue since the launch of in-app purchasing – both long before and continuing after the FTC began its investigation – through today.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment in favor of Amazon with respect to the FTC's request for a permanent injunction.

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 24
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  DATED:  February 2, 2016

2

3  *s/ Harry H. Schneider, Jr.*                    *s/ J. Douglas Baldridge*
   Harry H. Schneider, Jr. WSBA No. 9404           J. Douglas Baldridge WSBA No. 37247

4  David J. Burman WSBA No. 10611                  Danielle R. Foley (admitted *pro hac vice*)
   Jeffrey M. Hanson WSBA No. 34871                **Venable LLP**

5  Attorneys for Defendant Amazon.com, Inc.        575 7th Street, NW
   **Perkins Coie LLP**                            Washington, DC 20004

6  1201 Third Avenue, Suite 4900                   Telephone: (202) 344-4000
   Seattle, WA  98101-3099                         Facsimile: (202) 344-8300

7  Telephone:  206.359.8000                        jbaldridge@venable.com,
   Facsimile:  206.359.9000                        drfoley@venable.com

8  HSchneider@perkinscoie.com
   DBurman@perkinscoie.com

9  JHanson@perkinscoie.com

10

11                        *Attorneys for Defendant Amazon.com, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 25
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**CERTIFICATE OF SERVICE**

2       I certify that on February 2, 2016, I electronically filed the foregoing Motion for Partial

3   Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send

4   notification of such filing to attorneys of record.

5       I certify under penalty of perjury that the foregoing is true and correct.

6

7       DATED this 2nd day of February, 2016.

8                                        *s/ Harry H. Schneider, Jr.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AMAZON'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 26
24976-0374/129600467

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000