UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

FEDERAL TRADE COMMISSION,

      Plaintiff,

  v.

AMAZON.COM, INC.,

      Defendant.

**Case No. 2:14-cv-01038-JCC**

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
Friday, February 26, 2016

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………...……...iii

SUMMARY OF UNDISPUTED FACTS ................................................................................. 1

APPLICABLE LEGAL STANDARDS .................................................................................. 14

ARGUMENT ........................................................................................................................... 15

    I.      THE FTC IS ENTITLED TO SUMMARY JUDGMENT. ..................................................... 15

        A.    Amazon Caused Substantial Injury to Consumers. ................................................ 15

            1.    The large volume of unauthorized charges, amounts billed, and affected consumers establish substantial injury. ....................................................................................... 15

            2.    Other undisputed facts further demonstrate substantial injury................................. 16
                a.    Complaints about in-app charges by children were pervasive............................. 17
                b.    Amazon experienced high refund rates for in-app charges by children. .............. 18
                c.    The time and effort consumers spent seeking refunds or attempting to seek refunds constitute additional injury. ............................................................................. 20

        B.    Consumers Could Not Reasonably Avoid the Harm................................................. 21

            1.    Amazon's injured consumers could not reasonably avoid unauthorized charges..... 21

            2.    Other undisputed facts further demonstrate that injured consumers did not have a free and informed choice to incur in-app charges. .................................................... 22
                a.    Parents downloading kids' apps did not have an informed choice to incur in-app charges. ......................................................................................................................... 22
                b.    Parents confirming one in-app charge did not have an informed choice to incur subsequent charges................................................................................................ 25

        C.    The Injury Amazon's Consumers Suffered Was Not Outweighed by Any Countervailing Benefits to Consumers or Competition....................................................... 25

    II.    AMAZON IS LIABLE FOR INJUNCTIVE AND EQUITABLE MONETARY RELIEF................ 26

        A.    Injunctive relief preventing Amazon from billing consumers without express informed consent is warranted. ....................................................................................... 27

        B.    Monetary relief equal to unauthorized charges minus refunds is warranted............. 28

    III.    THERE IS NO GENUINE DISPUTE OF FACT ABOUT ANY AFFIRMATIVE DEFENSE........ 28
    IV.    CONCLUSION ................................................................................................................. 30

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT       Federal Trade Commission
Case No. 2:14-cv-01038-JCC                600 Pennsylvania Avenue N.W.
                                                Washington, DC 20580
                    ii                            (202) 326-3231

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................... 14

*Apple Inc.*, Docket No. C-4444 (F.T.C. Mar. 25, 2014) ................................................................. 27

*Blakeney v. Karr*, No. C13-5076, 2013 WL 2446279 (W.D. Wash. June 5, 2013) .................... 29

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 14

*CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612 (3d Cir. 2013) ................................................. 29

*Cox v. Cont'l Cas. Co.*, No. C13-2288 MJP, 2014 WL 6632371 (W.D. Wash. Nov. 21, 2014) . 29

*FDIC v. Crosby*, 774 F. Supp. 584 (W.D. Wash. 1991) ................................................................ 30

*FTC v. Accusearch, Inc.*, No 06-CV-105-D, 2007 WL 4356786 (D. Wyo. Sept. 28, 2007)........ 20

*FTC v. Affordable Media*, 179 F.3d 1228 (9th Cir. 1999) ........................................................... 30

*FTC v. EDebitPay, LLC*, No. CV-07-4880 ODW AJWX, 2011 WL 486260 (C.D. Cal. Feb. 3, 2011) aff'd 695 F.3d 938 (9th Cir. 2012). ............................................................................. 24

*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997)................................................................................ 28

*FTC v. Global Mktg. Group*, 594 F. Supp. 2d 1281 (M.D. Fla. 2008) ........................................ 16

*FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199 (D. Nev. 2011), *aff'd in part and vacated in part on other grounds*, 763 F.3d 1094 (9th Cir. 2014) ............................................................. 18

*FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982) ............................................................. 26

*FTC v. Ideal Fin. Sols., Inc.*, No. 2:13-CV-00143-JAD, 2015 WL 4032103 (D. Nev. June 30, 2015) ....................................................................................................................................... 14, 15

*FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975 (N.D. Cal. 2010) .................................... 15, 21, 26

*FTC v. Int'l Computer Concepts, Inc.*, No. 5:94CV1678, 1994 WL 730144 (N.D. Ohio Oct. 24, 1994) ............................................................................................................................................ 25

*FTC v. Ivy Capital*, No. 2:11–CV–283 JCM (GWF), 2013 WL 3270534 (D. Nev. June 26, 2013), *aff'd in part and vacated on other grounds*, 616 F. App'x 360 (9th Cir. 2015)...................... 27

*FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000) ..................................... 21, 26

*FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp. 2d 1006 (C.D. Cal. 2012)..................... 27

*FTC v. Kennedy*, 574 F. Supp. 2d 714 (S.D. Tex. 2008) ............................................................. 22

*FTC v. Medicor LLC*, No. CV011896CBMEX, 2001 WL 765628 (C.D. Cal. June 26, 2001).... 30

*FTC v. Millenium Telecard, Inc.*, No. 11-2479 (JLL), 2011 WL 2745963 (D.N.J. July 12, 2011) ......................................................................................................................................... 24

*FTC v. Neovi, Inc.*, 598 F. Supp. 2d 1104 (S.D. Cal. 2008) ............................................ 16, 20, 21

*FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010), *amended* by No. 09-55093, 2010 WL 2365956 (9th Cir. June 15, 2010) ................................................................. 14, 15, 20, 21

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994)................................................................ 26

*FTC v. Stefanchik*, No. C04-1852RSM, 2007 WL 1058579 (W.D. Wash. Apr. 3, 2007) *aff'd*, 559 F.3d 924 (9th Cir. 2009) ........................................................................................................... 25

*FTC v. Verity Int'l, Ltd.*, 335 F. Supp. 2d 479 (S.D.N.Y. 2004) .......................................... 15, 24

*FTC v. Willms*, No. C11-828 MJP, 2011 WL 4103542 (W.D. Wash. Sept. 13, 2011) ......... 14, 18

*FTC v. Windward Mktg.*, No. 1:96-CV-615F, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997)... 16

*FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d. Cir. 2015).............................................. 29

*FTC v. Loewen*, No. C12-1207 MJP, 2013 WL 5816420 (W.D. Wash. Oct. 29, 2013) .............. 27

*FTC v. T-Mobile USA, Inc.*, 2:14-cv-00967-JLR (W.D. Wash. Dec. 22, 2014) ………………..27

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

*Google Inc.*, Docket No. C-4499 (F.T.C. Dec. 2, 2014) ............................................................ 27

*In re In-app Purchase Litig.*, 855 F. Supp. 2d 1030 (N.D. Cal. 2012) ...................................... 26

*Int'l Harvester Co.*, 104 F.T.C. 949 (1984) ............................................................................... 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).................................. 14

*Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314 (S.D. Fla. 2005)........... 30

*Orkin Exterminating Co. v. FTC*, 849 F.2d 1354 (11th Cir. 1988) .............................................. 16

*Removatron Int'l. Corp. v. FTC*, 884 F.2d 1489 (1st Cir.1989) .................................................. 24

*Rivera v. Philip Morris, Inc.*, 395 F.3d 1142 (9th Cir. 2005) ...................................................... 14

*United States ex rel. FTC v. Larkin*, 841 F. Supp. 899 (D. Minn. 1993).................................... 30

*United States v. Brien*, 617 F.2d 299 (1st Cir. 1980).................................................................. 19

*United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199 (1968) .................... 30

*United States v. Offices Known As 50 State Distrib. Co.*, 708 F.2d 1371 (9th Cir. 1983)........... 19

**Statutes**

15 U.S.C. § 45(a)(1) ................................................................................................................. 14

15 U.S.C. § 45(n) ................................................................................................................ 14, 29

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................................ 14

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  
Case No. 2:14-cv-01038-JCC

Federal Trade Commission  
600 Pennsylvania Avenue N.W.  
Washington, DC  20580  
(202) 326-3231

iv

Amazon billed parents and other account holders millions of dollars without their consent for charges children incurred while playing games on mobile devices. Billing for unauthorized charges is an unfair practice under the traditional three-prong test set forth in Section 5 of the FTC Act, 15 U.S.C. § 45. There is no genuine dispute about the facts necessary to sustain the FTC's claim and request for relief: consumers have suffered significant monetary harm that they could not reasonably avoid and that was not outweighed by any benefits to consumers or competition. Nor is there any genuine dispute about Amazon's defenses. This Court should grant the FTC's motion and enter the proposed final judgment and order for permanent injunction and other equitable relief, filed concurrently.

## SUMMARY OF UNDISPUTED FACTS

1.     Amazon sells applications ("apps") in the Amazon Appstore, a digital store accessible from Amazon's Kindle Fire mobile devices ("Fire") and available for installation on certain other mobile devices. Answer ¶ 9 (Dkt. 15.) The Fire is a multipurpose mobile device that can run apps for entertainment, including watching television shows or playing games. *Id.*

2.     Amazon marketed the Fire to families, targeting "███████████" in particular. Ex. 152 at Amz_FTC_0005744 (identifying "████████████████████"); Ex. 153 at Amazon_00016241 ███████████████████████"); *see* Ex. 507 at 227:4-10 ("████████████████.."). Amazon sells and makes money from game apps that can be purchased from the Appstore and played on the Fire. Answer ¶¶ 8, 12. Many of these apps are games that children are likely to play (referred to here as "kids' apps" or "kids' games"). *Id.* ¶¶ 8, 11, 24.

3.     Amazon offers these apps as "free" or for a specific price, but Amazon bills users for charges, known as "in-app charges" (or "in-app purchases," "IACs," or "IAPs"), within the apps. *Id.* ¶ 11. Individual in-app charges generally range from $0.99 to $99.99. *Id.*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

1

4.      Amazon controls the billing process for in-app charges, bills the consumer's credit card or other payment method linked to the user's Amazon account, and retains 30% of the revenue from each in-app sale. *Id*. ¶¶ 11-12.

5.      Parents and other account holders[1] may download the games, but children often play them. *Id*. ¶¶ 16-17; Ex. 105 at Amazon_00230531 (acknowledging the ' ███████████ ███████████████████████████████████ ). In many kids' games, children can acquire virtual items—sometimes for virtual currency and sometimes for money, billed to the parents' account. Answer ¶ 26; Declaration of Patrick Eagan-Van Meter ("PEVM Decl.") ¶¶ 37-38. Virtual items that cost virtual currency have included a sea turtle, a hamster, and gold coins. PEVM Decl. ¶ 37. Virtual items that cost money have included a boatload of doughnuts, a can of stars, and bars of gold. *Id*. ¶ 38.

6.      Before introducing in-app charges to the Amazon Appstore, ███████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████ Ex. 130 at Amz_FTC_0037823. Amazon also was aware that ███████████████████████ ███████████████████████████████ . Ex. 500 (30(b)(6)) at 219:17-23 ███████████ ███████████████████████████ ."); Ex. 44; Ex. 502 at 52:25-53:6.

7.      When Amazon launched the Appstore and in-app charges in November 2011, by default, it did not require account holder approval for in-app charges through password entry or other means. Answer ¶¶ 8, 19; Ex. 502 at 37:23-38:24; Ex. 503 at 44:7-23 (███████████ ███████████████████████ ). Instead, Amazon allowed children—including those with little to no understanding of money—to incur charges merely by clicking through popups in the app

---

[1] For simplicity, this brief often refers to the "parents and other Amazon account holders" subject to the FTC's claim as just "parents," though the consumers at issue also include grandparents, aunts, uncles, and others whose Amazon Appstore devices may be used by children.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

2

detailing the charges. Answer ¶¶ 18-19; *e.g.*, Ex. 415 at 6:10-17, 8:10-17 ("[Y]oung kids don't really realize that that's going to be charging a card."); Ex. 417 at 5:23-6:10, 7:8-10 ("[M]ost kids don't even realize they're spending real money"); Ex. 411 at 11:9-12:3 (children "don't even know they're doing it . . . these games are a little bit misleading" because they do not know they are purchasing "points" for money); Ex. 412 at 6:9-12 ("[I]f you have like a little one that's using it, it might not look like real money that's being charged and that's pretty much how that happens from time to time"); Ex. 449 at 6:12-17 (son did not realize popup was for coins that cost money rather than coins that cost only in-game currency).

8.      Weeks after it introduced in-app charges, Amazon began receiving voluminous complaints from parents about unauthorized in-app charges by children. These complaints reached levels an Amazon Appstore director described as "near house on fire," noting that "we're clearly causing problems for a large percentage of our customers." Answer ¶¶ 8, 27; Ex. 52 at AMZ_FTC_000043534, 43529-31; Ex. 154 at Amz_FTC_0073366 (███████████ ██████████████████████████████████████████████); *see* Ex. 500 (30(b)(6)) at 220:19-21 (at launch, █████████████████████████████████ ████████████████████).

9.      Amazon Appstore employees were aware that parents were complaining that children were incurring in-app charges without consent. Ex. 503 at 44:24-45:1 (████████ ████████████████████████████████); Ex. 506 at 23:5-8 (████████ █████████████████████████████████); Ex. 507 at 183:8-19 (████████ ████████████████████████████████████████████ ██████████████████████████████████████████"); Ex. 508 at 109:21-23 (noting cases where "████████████████████████████████████"); Ex. 509 at 101:15-23 ██████████████████████████████████████ █████); Ex. 510 at 71:2-19 (acknowledging ███████████████████ ███████████████████████); Ex. 511 at 30:23-31:17 (acknowledging ████████

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

3

1

2   Ex. 502 at 98:17-25 (reviewed ████████████████████████████████████

3   ████████████████ ).

4       10.     From the launch of in-app charges until this case was filed, Amazon distributed

5   apps through the Amazon Appstore. Within the Appstore, available apps were displayed using

6   individual pages ("detail pages") containing information relating to the app. Answer ¶ 14; PEVM

7   Decl. ¶ 7. Each detail page contained a button at the top of the page (or left side if the device was

8   held horizontally) marked with the price of the app: "FREE" if the app was free, or a specific

9   dollar amount if the app cost a specific price to download. PEVM Decl. ¶ 8. From November

10  2011 through June 2013, the only information about in-app charges on the app detail pages was

11  appended to the end of lengthy app descriptions (the "Note").[2] Answer ¶ 15; PEVM Decl. ¶ 15;

12  Ex. 54 at Amz_FTC_0077738 ██████████████████████████████████████

13  ████████████████████ "). Screenshots of app detail pages including the Note are

14  attached at PEVM Decl. ¶¶ 17-18. Amazon displayed the Note in the same font and color as

15  preceding text and placed it such that it flowed directly from the text before it (without line

16  breaks) and could appear "below the fold." Answer ¶ 15; PEVM Decl. ¶¶ 14, 16; Ex. 31 at

17  Amz_FTC_0013746 ("██████████████████████████████████████

18  ████████ ); Ex. 61 at Amazon_00296456 ██████████████████████

19  ████████████████████████ ); Ex. 500 (30(b)(6)) at 145:8-14; 146:11-147:10;

20  see also Declaration of Jennifer King ("King Decl."), Ex. A at 23-25. Amazon employees

21  thought ████████████████████ . Ex. 54 at Amz_FTC_0077738; Ex. 511 at 199:4-

22  200:3 (████████████████████████████ "); Ex. 509 at 170:5-11.

23

24

_____

25  [2] ████████████████████████████████████████████

    ████████████ . Ex. 511 at 222:21-223:14 ("████████████████████

26  ████████

11.     Amazon did not disclose on the app detail pages that, by default, children could incur in-app charges without password entry or that password entry approving a single in-app charge could open a billing window during which additional, unlimited charges could be incurred.[3] PEVM Decl. ¶¶ 17-18; Ex. 502 at 192:10-13 (Q: "[D]oes this detail page disclose to consumers that an in-app purchase within the app would not trigger a password prompt?" A: "███████████.").

12.     In January 2012, two months after launching in-app charges, Amazon analyzed consumer complaints about in-app charges and concluded the "███████████" was "███████████."[4] Ex. 154 at Amz_FTC_0073364. Amazon was aware ███████████" Ex. 52 at Amz_FTC_0043532. Amazon also was aware ███████████ Ex. 53 at Amazon_00292349 ███████████).

13.     In considering how to address complaints from parents about unauthorized in-app charges by children, one of Amazon's Appstore directors suggested Amazon "███████████" Ex. 53 at Amazon_00292348.

14.     In March 2012, Amazon introduced a password prompt only for individual charges of $20 and over. Answer ¶ 20. Amazon did not implement a password prompt for in-app charges under $20, or sub-$20 charges that in combination exceeded $20.[5] Id. ¶ 20; Ex. 502 at

___

[3] Instead, the Note obliquely references "parental controls," ███████████ Ex. 500 (30(b)(6)) at 97:22-23 ███████████, Ex. 124 at Amazon_0021483 ███████████ Specifically, the Note says that users "can" enable parental controls, not that they must to prevent charges without account holder consent. PEVM Decl. ¶ 15.
[4] Amazon employees ███████████ Ex. 502 at 25:22-26:4. ███████████ Charges at the $19.99 price point ███████████. Ex. 511 at 118:22-119:1; Ex. 202 at Amazon_00292354. Amazon's senior product manager considered ███████████. Ex. 511 at 118:22-119:14. ███████████ Id. at 119:5-14.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

5

133:7-134:2 (█████████████████████████████████████████); *see* Ex. 52 at AMZ_FTC_0043528 ("[I]t's much easier to get upset about Amazon letting your child purchase a $99 product without any password protection than a $20 product.").

15.     Amazon began seeking password entry for charges of $20 and up to ensure that those charges were incurred "by the actual accountholder and not someone without permission," according to an internal document. Answer ¶ 20; Ex. 520 at Amz_FTC_0042067.

16.     Though Amazon was aware ███████████████████████████████ ████████████████ it billed for such charges without requiring password entry. Ex. 502 at 95:2-18 (███████████████████████████████████████ ; Ex. 504 at 61:8-16, 62:21-63:11 (███████████████████████████ █████████████).

17.     In July 2012, Amazon's app manager again described the problem of unauthorized charges by children as a "house on fire" situation. Answer ¶ 27; Ex. 62 at Amazon_00265240 ("███████████████████████████████████████ ██████████████████████████████ *see* Ex. 65 at Amazon_00219710 (████████████████████████████████).

18.     In February 2013, Amazon began adding password prompts that would appear for some in-app charges but not others. Answer ¶ 21. The prompts operated in different ways for different apps and different account holders, and often opened billing windows (lasting up to an hour) in which further charges could be incurred without password entry. *Id*.; Ex. 176 at Amazon_00245048; Ex. 218 at Amazon_00010791-10792; Ex. 500 (30(b)(6)) at 69:4-15; PEVM Decl. ¶ 46.

19.     Amazon has not publicly disclosed how or when it seeks account holder authorization for in-app charges; its password-prompting scheme was ████████████" and █ █████████████████████. Ex. 506 at 42:22-43:4; Ex. 502 at 167:23-168:4 ██████████ ████████████████████████████████████████████████

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

6

████████████████████████████████████████████████████████

█████████████████████████████████ Ex. 500 (30(b)(6)) at 157:13-25 (noting that ██

██████████████████████████████████████████s); Ex. 218 at

Amazon_00010792 ██████████████████████████████████████████

███████████████████████████████████████ Ex. 179 at

Amazon_00244141 ███████████████████████████ Ex. 180 at

Amazon_00245052.

     20.     Amazon's prompts often instructed account holders to enter their Amazon password to "Confirm In-App Purchase" (*singular*) and did not explain that entering a password meant that Amazon could bill consumers for *multiple* charges without seeking further password entry. Answer ¶ 22; PEVM Decl. ¶¶ 45-46; Ex. 500 (30(b)(6)) at 69:13-15. ████████

████████████████████████████████████████████████████████

██████████████████████████████ s. Ex. 506 at 46:3-6; *see* Ex. 500 (30(b)(6)) at 69:13-15.

     21.     In March 2013, Amazon created a list of "High-Risk" apps classifying certain apps, including apps that ████████████████████████████████████

████████████████████████████, as "high risk." Ex. 500 (30(b)(6)) at 66:23-67:6, 68:13-24

(████████████████████████████████████████████████████████

████████████"). Amazon implemented ████████████████████████████

████████ *See* Ex. 502 at 164:164-7, 167:23-168:4.

     22.     By June 2013, Amazon collapsed the app descriptions (including the appended Note) such that the full text typically would not be visible unless a consumer clicked "See All" or "Read More." At that time, Amazon also placed the words "In-App Purchasing" on the lower right side of the page in smaller text than the app description.[6] Answer ¶ 15; PEVM Decl. ¶ 21; *see, e.g.,* Ex. 188 at Amazon_00008777-78, Amazon_00008828-29. The section of the app detail

---

[6] ████████████████████████████████████████████████. Ex. 506 at 164:1-18.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

7

pages in which the words "In-App Purchasing" were located was clickable, though it was not styled to indicate as much. PEVM Decl. ¶¶ 23-24 (same color as other text, not same color or format as other hyperlinked text). If clicked, a popup appeared that users would have to scroll through to find information about in-app charges, none of which told parents that, by default, children could incur in-app charges without password entry or that password entry approving a single in-app charge could open a billing window during which additional, unlimited charges could be incurred. PEVM Decl. ¶¶ 25-27; *see also* King Decl., Ex. A at 29.

23.    Amazon has billed consumers at least $████████ for in-app charges in kids' apps.[7] Miller Decl. ¶ 23. Amazon billed consumers for more than $██████ (nearly ██% of the *total* billed during that timeframe) for in-app charges without requiring consent through password entry or another method.[8] Consumers sought refunds for more than $██████ in charges incurred in kids' apps before this case was filed. *Id.* ¶ 23.

24.    Amazon tracked consumer complaints and refunds using classification codes such as wrap-up codes and refund reason codes, with ████████████████████████████████████ ████████████████████████████████ Ex. 302; Ex. 501 (30(b)(6)) at 133:22-140:10. Since November 2011, Amazon has classified ██████consumers' complaints about ██████ in-app charges as "████████████████████████. Miller Decl. ¶¶ 18-19.

25.    Customer service representatives commented that complaints about unauthorized in-app charges by children were common. Ex. 411 at 11:9-12 ("This isn't the first time this has happened."); Ex. 439 at 9:11-12 ( "Yeah, it happens all the time, so don't worry about it at all."); Ex. 443 at 13:24-14:2 ("These things happen all the time. It can happen so fast and so random.");

<hr />

[7] The attached declaration of FTC employee Julie Beth Miller ("Miller Decl.") summarizes transactional and aggregate data produced by Amazon. Miller Decl. ¶ 3. The transactional data relates to "High-Risk" apps (or apps that would have qualified as "High-Risk"), *see* Facts ¶ 21. Ms. Miller used "High-Risk" apps (excluding apps categorized as "Casino") to complete her calculations. Miller Decl. ¶ 5. When discussing Ms. Miller's summary of the data, the FTC uses "kids' apps" to refer specifically to "High-Risk" apps other than "Casino" apps. *See id.* ¶ 5.
[8] From the introduction of in-app charges until February 5, 2013, when Amazon changed its password-prompting scheme, the company billed consumers $33,106,387.77 in kids' apps without requiring password entry. Miller Decl. ¶¶ 6-8. It billed consumers $44,481,990 in all apps from November 2011 through January 2013. *Id.*, Ex. A (row 12).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

8

Ex. 448 at 11:11-18 (CS Rep 1: "I've got a transfer for you . . . It's actually his mother.  He's an eight-year-old child.  . . . You probably know where this call is heading, right?" CS Rep 2: "Yep."); *see also* Ex. 305 at Amazon_00298739-42 (████████████████████████████ ████████████); Ex. 501 (30(b)(6)) at 172:4-14.

26.     Consumer feedback about unauthorized in-app charges by children was visceral and revealing, displaying the depth of consumer confusion about Amazon's practices. *E.g.*, Ex. 411 at 6:25-7:1 ("I have been sick. I just saw it and I'm like, oh, my God, what is all this."); Ex. 448 at 8:1-2 ("I had like all these overdraft charges. And I'm like, well, where is this coming from?"). Consumers complained that they did not know what in-app charges were or how to avoid them. Ex. 410 at 5:17-20 ("I didn't purchase anything and it's popping up for—what is it, bottle of stars? . . . I don't even know what that is . . ."); Ex. 415 at 5:19-22 ("So, I just saw this thing show up in my digital orders . . . and I don't know what it is."); Ex. 417 at 6:18-20 ("What is the in-app purchasing? I'm not understanding anything you're saying."); Ex. 421 at 17:10 ("What is—what are in-app purchases?"); Ex 457 at Amazon_00185793 ("Do you know what in app purchases are? No."); Ex. 15 at Amz_FTC_0003710 (██████████████████ ████████████████████████████████████████████ ████████████████████████████"); Ex. 12 at Amazon_00012647 ████████████ ████████████████████████████████████████████"); *see* King Decl., Ex. A at 62-64.

27.     Others complained that they did not know such charges were possible within "free" games. Ex. 412 at 6:14-16 ("My daughter she came and asked me if she could get the app and it said it was free. So, I let her get it."); Ex. 418 at 7:4-5 ("I think that [Pet Shop Story] was one that my son and nephew just got, but it was free."); Ex. 443 at 5:25-6:3 ("[I]t's for the Monster game that she was playing . . . on our end, it says free."); Ex. 444 at 6:19-22 ("But Temple Run . . . it was a free app."); *see* Ex. 431 at 6:5-22, 23:7-17; Ex. 447 at 7:16; Ex. 458 at Amazon_00186814.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

28.     Still others complained that they did not understand that Amazon would bill them for charges without asking for their password or account information. Ex. 15 at Amz_FTC_0003710 ███████████████████████████████████████████ ███████); Ex. 305 at Amazon_00298742 ("███████████████████████████ ████████████████████); Ex. 522 at AMZ_CSC_0013144 ("I am shocked there is no password protection on the Kindle."); Ex. 450 at 6:25-7:6 ("I thought that you would have to put in a password to be able to purchase things."); Ex. 461 at Amazon_00188664.

29.     Many parents first learned about unauthorized in-app charges children had incurred after Amazon billed them. Ex. 11 at Amazon_00220712 ("████████████████ ██████████████████████████████████"); Exs. 410-88 (consumer complaints). Individual consumers have complained about hundreds of dollars of unauthorized charges incurred at a time. *E.g.*, Ex. 436 at 1; Ex. 450 at 6:13-16; Ex. 521 at Amazon_00156632.

30.     Consumer complaints about unauthorized in-app charges by children ███████ ███████. Ex. 52 at Amz_FTC_0043529, 0043534 (December 2011); Ex. 154 at Amz_ FTC_0073362 (January 2012); Ex. 14, 15 at Amz_FTC_0003691-92 (July 2012); Ex. 62 at Amazon_00265240 (July 2012); Ex. 145 at Amazon_00241596-97 (August 2012); Ex. 124 at Amazon_00214383 (March 2013); Ex. 209 at Amazon_00344645 (November 2013); Ex. 186 at Amazon_00244358 (April 2014).

31.     In June 2014, shortly before the FTC filed its lawsuit, Amazon began seeking consent on its newer devices by asking first-time users of in-app charges to choose whether to be prompted for a password for subsequent in-app charges. PEVM Decl. ¶ 50. ███████████ ██████████████████████████████████████ Ex. 506 at 164:1-18.

32.     Amazon acknowledged ████████████████████████████████████████ ████████ Ex. 500 (30(b)(6)) at 66:19-22 (████████████████████████████████████ ██████████████████████ Ex. 98 at 1; Ex. 510 at 145:12-25; *see also* Ex. 500 (30(b)(6)) at 78:7-10.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

10

33.     Amazon's corporate designee on customer communications was not aware ████████ ██████████████████████████████████████████████████. Ex. 501 (30(b)(6)) at 177:1-5, 178:3-18. Consumers did not ████████████████████ ████████████████████████. Ex. 510 at 106:5-107:7; 139:23-140:3 (████████████ ████████████████████). Amazon admitted that "██████████████████████ █████████████████████████████████████████████████████████ ████████████████████████████████████████████████." Ex. 500 (30(b)(6)) at 91:20-24.

34.     Employees and app developers considered ███████████████████ █████ Ex. 112 ("████████████████████████████████████████████ ████████████████████████") , Ex. 121 at Amazon_00018516 (███████████ ████████████████████), Ex. 123 at Amazon_00018514 (████), Ex. 145 at Amazon_00241596-97; Ex. 503 at 57:8-15 ███████████████████████████ ████████████████████████████████); Ex. 507 at 99:1-9 ("██████████████ ████████████████████); Ex. 509 at 151:3-16 (██████████████████████ ██"); Ex. 511 at 162:13-18, 164:7-9 ("████████████"); Ex. 500 (30(b)(6)) at 128:1-18 (████████████████████████████); Ex. 502 at 109:19-25 ("██████████████ ██").

35.     Amazon's refund rates for in-app charges from kids' apps have been ████████ █████████ apps themselves, *compare* Miller Decl. ¶ 23 *with* Ex. 527 at Amazon_00294148, Ex. 528 at Amazon_00372830, Ex. 529 at Amazon_00377625, in-app charges within other types of apps, Miller Decl. ¶ 22, and "█████████████" than other digital products. Ex. 500 (30(b)(6)) at 199:6-12; Ex. 17 at Amazon_00245988 and 91; Ex. 508 at 118:21-23; *compare* Miller Decl. ¶ 24 *with* Ex. 30. Amazon cited ██████████████████████████████ ██████████████████████████████████████. Ex. 500 (30(b)(6)) at 199:17-18.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

36. Amazon acknowledged that ███████████████████████████████. Ex. 501 (30(b)(6)) at 71:9-72:4, 23:10-13; Ex. 500 (30(b)(6)) at 120:18-22; Ex. 503 at 51:5-25, 60:23-61:21; Ex. 504 at 115:18-116:10; Ex. 507 at 184:3-21; Ex. 509 at 94:24-95:11 ██████████████████ *see also* Ex. 505 at 25:20-26:8. Amazon employees also acknowledged ████████████████████████ ███████████████████████ Ex. 141 at Amazon_00236443,[9] and that ████████████████████████████████ ████████ Ex. 107 at Amazon_00302453; Ex. 508 at 135:12-15.

37. Amazon's stated policy is that all in-app charges are final. Ex. 299 at Amazon_00000242.[10] Nothing on Amazon's website states that in-app charges are refundable.[11] The confirmation email Amazon sends to consumers following an in-app charge is consistent with this policy: it does not provide any information about whether refunds for in-app charges are available or how to obtain one. Ex. 501 (30(b)(6)) at 57:15-18; *see, e.g.*, Ex. 308; King Decl., Ex. A at 44-45. The email ████████████████████████████ ████████████████████. Ex. 308; Ex. 500 (30(b)(6)) at 160:1-12; Ex. 504 at 221:10-25 ██████████████████████████ ███).

38. During an eight-month period in 2015, forty-three percent of the emails sent to account holders for digital purchases went unopened. Ex. 530 at 3.

---

[9] See also Ex. 140 at Amazon_00295040 (███████████████████████████ Ex. 507 at 184:3-23 (███████████████████████████████████████); Ex. 502 at 101:3-10 ██████████████████████████████████████████████.

See also Ex. 28 at Amazon_00246010 (████████████████████████████████████ ████████); Ex. 510 at 52:17-20 (████████████████████████████████████████).
See Ex. 523 at FTC_AMZ_00003250; King Decl., Ex. A at 51 ███████████████████████ ████").

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

12

39.     Amazon consumers seeking a refund for an in-app charge from Amazon must contact Amazon customer service directly. The "click-through return" process available for returning physical goods via Amazon's website and that some customers may expect or find familiar is not available for in-app charges. Ex. 501 (30(b)(6)) at 35:18-21, 37:5-17; Ex. 301 at 16-17. Consumers using the Amazon website or their Amazon device to contact customer service can only reach Amazon's "Contact Us" page or "Customer Service portal" by successfully navigating through multiple levels of menus and links. *See* King Decl., Ex. A at 48-56.[12]

40.     Consumers who have reached an Amazon customer service representative by phone often could not receive a refund without being placed on hold and transferred to another representative, *e.g.*, Exs. 440, 442, 453, and in 2012, ███████████████ ██████████████████████████████████ Ex. 349 at Amazon_00388489. Based on a sample of call recordings, consumers seeking a refund for unauthorized in-app charges spent an average of 11.5 minutes on the phone with Amazon. Declaration of Elizabeth Kwok ("Kwok Decl.") ¶ 6. Extrapolating across all calls in which consumers were *not* denied refunds (and assuming, conservatively, an additional 5 minutes per call to account for time spent discovering the charge and figuring out how to contact Amazon)[13] leads to a total of over ███ ███ spent by consumers obtaining refunds from Amazon. *Id.* ¶ 7.

41.     Some consumers who contacted Amazon about unauthorized in-app charges were denied refunds by Amazon. Kwok Decl. ¶ 5 (███████████████████████████). Some consumers who contacted Amazon's app developers about unauthorized in-app charges were

---

[12] *See also* Ex. 301 at 10 n.2 (listing ten ways a consumer could get to the "Contact Us" page through the Amazon.com "Help" button, all of which require the consumer to navigate through at least three levels of links, and nine of which require four levels of links); *id.* at 13-14 (reaching the "Customer Service portal" on a Kindle Fire, which allows a user to contact an Amazon representative using phone or email, also requires the consumer to navigate four levels of links).

[13] In a study conducted by Amazon's expert Dr. Rosenberg, whose opinions are subject to separate motions to exclude by the FTC, the average respondent spent 5.26 minutes figuring out how to contact Amazon. Ex. 322 at 47.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

13

denied refunds by the app developers.[14] *E.g.*, Exs. 474-488. Amazon also ████████████
█████████████████████████████████████████████████████████████████████████████████████
████████. Kwok Decl. ¶ 9.

<h1 style="text-align:center">APPLICABLE LEGAL STANDARDS</h1>

Summary judgment must be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A genuine dispute means

"sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party "must do more

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita

Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Material facts are "those

which might affect the outcome of the suit[,]" *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146

(9th Cir. 2005), which is determined by reference to substantive law. *Liberty Lobby*, 477 U.S. at

248.

Section 5 of the FTC Act, the substantive law here, prohibits "unfair or deceptive acts or

practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Acts or practices are unfair under the

FTC Act if (i) they cause or are likely to cause substantial injury to consumers, (ii) the injury is

not reasonably avoidable by consumers, and (iii) the injury is not outweighed by any

countervailing benefits to consumers or competition. 15 U.S.C. § 45(n); *FTC v. Neovi, Inc.*, 604

F.3d 1150, 1153 (9th Cir. 2010), *amended* by No. 09-55093, 2010 WL 2365956 (9th Cir. June

15, 2010). Courts routinely find unauthorized billing to be unfair under the FTC Act. *Id.* at 1157-

59; *FTC v. Ideal Fin. Sols., Inc.*, No. 2:13-CV-00143-JAD, 2015 WL 4032103, at *8 (D. Nev.

June 30, 2015); *FTC v. Willms*, No. C11-828 MJP, 2011 WL 4103542, at *9 (W.D. Wash. Sept.

13, 2011) ("Courts have found a violation of Section 5(a) where the defendant has withdrawn

---

[14] App developers typically did not process refunds for in-app charges. *See, e.g.*, Ex. 488 at GLU_FTC00000025
("Unfortunately we are not able to process a refund as we have a no refund policy").

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

14

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

money from a consumer's bank account without informed consent."); *FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1003-05 (N.D. Cal. 2010); *FTC v. Verity Int'l, Ltd.*, 335 F. Supp. 2d 479, 498-99 (S.D.N.Y. 2004).

**ARGUMENT**

## I. The FTC Is Entitled to Summary Judgment.

To establish its unfairness claim, the FTC must show that: (1) consumers sustained or were likely to sustain substantial injury from Amazon's practices; (2) the injury was not reasonably avoidable; and (3) the injury was not outweighed by countervailing benefits to consumers or competition. The evidence proves each element of the FTC's claim and leaves no genuine dispute about any material fact.

### A. Amazon Caused Substantial Injury to Consumers.

Substantial injury entails small harm to a large number of consumers or a significant risk of concrete harm. *Neovi*, 604 F.3d at 1157; FTC Policy Statement on Unfairness at 3, appended to *Int'l Harvester Co.*, 104 F.T.C. 949, 1073 (1984). The undisputed facts show that Amazon billed tens of thousands of consumers millions of dollars for children's in-app charges without obtaining account holder consent. While that alone satisfies the FTC's burden, additional undisputed facts support a finding of substantial injury: widespread consumer complaints, significant refund rates attributable to unauthorized in-app charges by children, and the considerable effort consumers expended resolving unauthorized charges.

#### 1. The large volume of unauthorized charges, amounts billed, and affected consumers establish substantial injury.

Where, as here, a defendant has billed consumers for charges they did not authorize, courts routinely find substantial injury. *E.g.*, *Neovi*, 604 F.3d at 1157 (finding unauthorized withdrawals caused substantial injury because consumers were "injured by a practice for which they did not bargain"); *Ideal Fin. Sols.*, 2015 WL 4032103, at *8 ("[T]aking consumers' funds without authorization causes substantial injury, even when the amount taken is relatively

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

15

small."). The uncontroverted facts here, including the sheer volume of consumer complaints Amazon received and sums it refunded, establish substantial injury. More than ████ consumers have complained to Amazon about nearly ████ in-app charges that Amazon itself classified as ████" in-app charges by children. Facts ¶ 24. Individual charges ranged from $0.99 to $99.99 apiece, and individual consumers have complained about hundreds of dollars of unauthorized charges incurred at a time. *Id.* ¶¶ 3, 29. In total, Amazon has billed consumers at least $████ for in-app charges in children's games, including more than $████ of which it billed without any mechanism (such as a default password prompt) requiring account holder consent. *Id.* ¶ 23. Consumers sought refunds for more than $████ in charges incurred in kids' apps before this case was filed. *Id.*

These facts alone prove substantial injury. Courts do not require more. *See, e.g.*, *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988) (substantial injury demonstrated by small injury to large number of customers); *FTC v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1115 (S.D. Cal. 2008) (substantial consumer injury resulted from unauthorized charges to tens of thousands of consumers), *aff'd*, 604 F.3d 1150 (9th Cir. 2010); *FTC v. Global Mktg. Group*, 594 F. Supp. 2d 1281, 1288-89 (M.D. Fla. 2008) (millions of dollars in unlawful charges demonstrated substantial injury); *FTC v. Windward Mktg.*, No. 1:96-CV-615F, 1997 WL 33642380, at *11 (N.D. Ga. Sept. 30, 1997) (harm to large number of consumers sufficient to establish substantial injury).

### 2. Other undisputed facts further demonstrate substantial injury.

While the facts discussed above are sufficient to find substantial injury, there are more: (i) Amazon admits that ████████████████████████████████████████; (ii) Amazon's refund rates for in-app charges—which understate the extent of the problem—████ ████████████████████████████████████; and (iii) the time and effort expended by ████████ consumers who were forced to seek refunds due to Amazon's

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

16

billing practices constitutes additional injury. For these reasons as well, the undisputed facts show substantial injury.

### a. Complaints about in-app charges by children were pervasive.

Since introducing in-app charges to the Amazon Appstore, Amazon has received a significant and concededly alarming volume of complaints about in-app charges incurred by children without permission. Employees used a litany of adjectives to characterize the disputed charges—"████████" (Ex. 511 at 44:12-16; Ex. 508 at 57:16-24), █████l," (Ex. 506 at 28:4-20; Ex. 507 at 123:16-124:1, 132:12-23; Ex. 510 at 40:1-9; 169:9-21, Ex. 509 at 193:20-194:3), "█████d," (Ex. 502 at 72:12-25, 95:2-18), "█████" (Ex. 503 at 157:21-158:9)—but the core issue was constant: Amazon was billing parents for charges children incurred without their consent. Facts ¶ 9. Consumers complained that they did not know what in-app charges were, that they did not know such charges were possible within "free" games, and that they did not understand that Amazon would bill them for charges without asking for their password or account information. Facts ¶¶ 26-28.

Amazon employees recognized ████████████████████████
████████████████████. By December 2011, the month after Amazon introduced in-app charges, an Appstore director commented that "we're clearly causing problems for a large percentage of our customers," describing the situation as "near house on fire." Facts ¶ 30. In January 2012, an internal analysis identified "████████████████████████
████████████████" *Id*. In July 2012, another internal analysis concluded ████████
████████████████████. *Id*. That same month, the Appstore director stated that "[w]e should officially treat this as a 'house on fire' situation." *Id*. In August 2012: "█
████████████████████████████
████████████████████" *Id*. In March 2013: ████████████
████████████████████████." *Id*. In November 2013: ████████████

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

17

1  █████████████).” *Id*. Just months before this case was filed, in April 2014: "███

2  ████████████████████████████████████████████████████████████████████

3  ███████████████████████" *Id*.

   **b.    Amazon experienced high refund rates for in-app charges by children.**

There is no dispute that Amazon's refund rates for in-app charges have been high,

standing alone or compared to relevant benchmarks. *Id*. ¶ 35. These rates further illustrate the

extent of the injury. *See FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1121-22 (D. Nev.

2011), *aff'd in part and vacated in part on other grounds*, 763 F.3d 1094 (9th Cir. 2014)

(looking to high refund rates as evidence of FTC Act violation); *Willms*, 2011 WL 4103542, at

*2 (looking to high chargeback rates as same). Amazon conceded that ████████████████

████████████ Facts ¶ 34, and its rates were █████████████████████████████

████████████████████ Miller Decl. ¶ 23. These rates were "█████████████"

than other categories of digital products, Facts ¶ 35, a comparison Amazon's own expert ████

████████████████████████████████████████. Ex. 505 at

180:6-19, 181:10-182:2. Indeed, Amazon's refund rates for in-app charges (██ % in 2012,

██ % in 2013) ████████████████████████████████████ (██ % in 2012,

██ % in 2013) and ████████ (██ % in 2012, ██ % in 2013).[15] Facts ¶ 35. They were

consistently ███████████████████████████ (██ % in 2012, ██ % in 2013). *Id*. And

refund rates for in-app charges within kids' apps were ██████████████████████████

████████████████████████████████████████████████████████

████████████. *Id*.

---

[15] Amazon conceded that ████████████████████████████████████████████████

████████ *See* Ex. 500 (30(b)(6)) at 199:17-18 ████████████████████████████████████

████████████████████████).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

These refund rates understate the extent of the harm because, as Amazon admits, ████
████████████████████████████████████████████████████. Facts ¶ 36. Indeed,

consumer complaints and refund requests are often just the tip of the iceberg. *See United States*

*v. Offices Known As 50 State Distrib. Co.,* 708 F.2d 1371, 1374-75 (9th Cir. 1983) (quoting

*United States v. Brien,* 617 F.2d 299, 308 (1st Cir. 1980) (noting that actual consumer complaints

represent only the "tip of the iceberg" when it comes to consumer harm)); Facts ¶ 8 (Ex. 52)

(███████████████████████████████████████████████████████████████████

████████

　　　There are many reasons why consumers did not always seek or obtain refunds from

Amazon for unauthorized charges. First, some consumers never noticed the charges: nearly half

the emails Amazon sent to account holders after an in-app charge incurred were unopened, and

████████████████████████████████████████████████████████████████████

████████. *Id.* ¶¶ 36, 38. Second, as Amazon admits, ████████████████████████

████████████████████████████████████████████████████████████████████

████████████. Ex. 501 (30(b)(6)) at 23:10-13 ████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████); *see also* Facts ¶ 37. Third, consumers ████████████████████

████████████████████████████████████████████████████████████████. *Id.* ¶

36. Fourth, some consumers who may have wanted to seek a refund from Amazon were likely

thwarted by the unclear refund process.[16] *Id.* ¶¶ 37-39. Finally, ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████. *Id.* ¶ 41. In fact, the rate of abandoned password attempts

when Amazon sought password entry, *see* part II(B) below, shows that ████████████████

████████████████████████████████████████████████████████████████████.

---

[16] In fact, in a usability study conducted by one of Amazon's experts, which the FTC is seeking to exclude on other
grounds, 48% of respondents found it difficult or very difficult to contact Amazon. Ex. 322 at 48.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

19

### c. The time and effort consumers spent seeking refunds or attempting to seek refunds constitute additional injury.

Consumers who noticed and sought a refund for unauthorized in-app charges spent time and effort recovering—or attempting to recover—such charges. *Neovi*, 604 F.3d at 1158 (internal quotation marks omitted) ("Even if the consumer did notice [unauthorized charges], obtaining reimbursement required a substantial investment of time, trouble, aggravation, and money."). "[T]he time consumers spent in these efforts was valuable" and entails additional injury caused by Amazon's billing practices. *Neovi*, 598 F. Supp. 2d 1104 at 1115 (noting that "harm need not be monetary to qualify as injury" and finding time consumers spent contesting unauthorized checks and "attempting to get their money back" contributed to substantial injury); *FTC v. Accusearch, Inc.*, No 06-CV-105-D, 2007 WL 4356786, at *8 (D. Wyo. Sept. 28, 2007) ("lost time" associated with upgrading account security is harm). As discussed above, Amazon's confirmation emails fail to inform consumers that they are being billed for an in-app charge (or even the name of the app associated with the charge) and provide no guidance on how to seek a refund. Facts ¶ 37. The only information about in-app charge returns on Amazon's website states that such charges cannot be refunded. *Id*. Even based on Amazon's own proffered expert evidence, subject in part to a separate motion to exclude, the process of seeking a refund was time-consuming in total: injured consumers spent approximately ▮▮▮▮▮▮ figuring out how to contact Amazon or on the phone with Amazon customer service attempting to resolve unauthorized in-app charges. *Id*. ¶ 40. Using the FTC's expert Daniel Hamermesh's estimate of the value of consumers' time spent engaging in this activity, forcing consumers to seek refunds to correct Amazon's billing practices after the fact resulted in at least another $▮▮▮▮▮ in consumer injury.[17]

---

[17] Dr. Hamermesh concluded that a conservative estimate of the value of an Amazon consumer's time spent remedying unauthorized charges is $10.08/hour. Hamermesh Decl., Ex. A at 13. Multiplying $10.08 times ▮▮▮▮ hours equals ▮▮▮▮▮. This does not count consumers who contacted Amazon by chat or other means, who first spent time contacting an app developer, or who contacted their banks to resolve unauthorized charges. Consumers

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

20

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

**B.    Consumers Could Not Reasonably Avoid the Harm.**

Injury is not reasonably avoidable unless consumers have a "free and informed choice" to avoid the harm. *Neovi*, 604 F.3d at 1158. Consumers do not have a free and informed choice to avoid charges they do not authorize. Moreover, Amazon's practices—during both the app installation process and while the app was in use—obscured the existence of in-app charges and the consequences of password entry.

**1.    Amazon's injured consumers could not reasonably avoid unauthorized charges.**

Where, as here, consumers have been billed for charges they did not authorize, courts regularly find that consumers did not have a choice to avoid the injury before it occurred. *E.g.*, *Neovi*, 598 F. Supp. 2d at 1116; *Inc21.com*, 745 F. Supp. 2d at 1004 ("As other courts have wisely concluded, the burden should not be placed on defrauded customers to avoid charges that were never authorized to begin with."). There is no dispute that Amazon often billed consumers for in-app charges without any mechanism (such as a password prompt) to require account holder approval of the charges. Facts ¶¶ 7, 14, 16, 18, 22-23. And there is no dispute that many consumers first learned of these charges after they had been billed. *Id.* ¶ 29. Consumers cannot avoid charges they did not choose to incur or do not discover until they are billed. *Cf. Neovi*, 598 F. Supp. 2d at 1115 (harm not reasonably avoidable where many consumers learned of unauthorized transactions from bank statements).

These facts alone are sufficient to show that the injury was not reasonably avoidable. Courts do not require separate proof that injured consumers were unable to do more to prevent companies from billing them without their consent. *Inc21.com*, 745 F. Supp. 2d at 1004; *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1192, 1202-03 (C.D. Cal. 2000) ("finding unauthorized

who ███████████████████████████████████████████████████. Ex. 501 (30(b)(6)) at 126:11-20.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

21

credit card billing practices to be unfair even though many cardholders "do not pay much attention to their statements and therefore never noticed the unauthorized charges").

> **2.** **Other undisputed facts further demonstrate that injured consumers did not have a free and informed choice to incur in-app charges.**

While the above is enough to find consumers were unable to reasonably avoid the harm, there is more. From app installation to the point at which Amazon billed consumers for in-app charges, Amazon's practices frustrated reasonable consumers' ability to avoid the harm.

> **a.** **Parents downloading kids' apps did not have an informed choice to incur in-app charges.**

Each kids' app in the Amazon Appstore has its own "detail page" containing graphics and information about the app, ranging from gameplay screenshots to user ratings. At the top of each detail page, Amazon placed an orange button used to install the app (the "price button"). Amazon labeled many price buttons for kids' apps with a specific price or the all-caps descriptor "FREE."[18] Amazon did not include any information about the potential for in-app charges in conjunction with the price it displayed for the app. Facts ¶ 10. It is not reasonable to expect parents to avoid charges they are not aware of in "FREE" apps. *Cf. FTC v. Kennedy*, 574 F. Supp. 2d 714, 720-21 (S.D. Tex. 2008) (consumers charged without express informed consent for web services could not reasonably avoid harm when told that websites were "free"); King Decl., Ex. A at 21 (in September 2015, Amazon began offering certain apps without in-app charges as "actually free", conceding "Many apps and games that are marked as 'free' turn out not to be completely free.").

Instead, while prominently representing that these apps were free or cost a specific price, Amazon buried an incomplete and ineffective disclaimer about in-app charges on the app detail page ("Note"). Amazon's Note, which it appended to the end of app descriptions, omitted material information about in-app charges. Amazon did not tell parents that, by default, children could incur in-app charges without password entry. Facts ¶ 11. Amazon did not tell parents that

---

[18] Facts ¶ 9. If the app costs a specific price such as $.99 to install, Amazon labeled the button $.99. *Id.*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

22

password entry approving a single in-app charge could open a billing window during which additional, unlimited charges could be incurred. *Id.*

Amazon's Note also was demonstrably and indisputably ineffective. ███████████ ███ the FTC's human-computer interaction expert Jennifer King agreed that the Note's placement and formatting—at the end of lengthy app descriptions,[19] in the same font as preceding text, and sometimes "below the fold"—███████████████. Facts ¶ 10 ███ ███████████████████████"); King Decl., Ex. A at 23-24 ("[G]iven the varying lengths of app descriptions the Note could easily appear at the end of multiple paragraphs of text, significantly reducing the likelihood that it will be viewed at all."). Employees described the Note as "████████████████," "███████████," and "████████." Facts ¶ 10.

The ineffectiveness of the Note bore out in ████████████████████ ██████████████████, part I(A)(2)(b) *supra*, as well as consumer complaints about in-app charges. When Amazon's customer service team ███████ ███████████████████████████████ ███████████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ██████ among others. Facts ¶ 25 (Ex. 305); *see also id.* ¶¶ 26-29. These are not the hallmarks of informed consumers.

About a year and a half after Amazon began billing and receiving complaints about in-app charges, it collapsed app descriptions (including the appended Note) and placed the words "In-App Purchasing" on the lower right side of the page in text smaller than the other text on the

---

[19] The character limit for app descriptions on mobile devices was ███, Ex. 526 at Amazon_00008902, or about ████. App descriptions could ████████. *See id.*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

23

page, including the app description. *Id.* ¶ 22. Even for consumers who saw the words "In-App Purchasing" on the app detail page and knew what in-app charges were, those words failed to convey the same information missing from the Note, as discussed above.[20] *Id.*

Buried, unclear information—even if it had explained how consumers could avoid unauthorized in-app charges—would not absolve Amazon of liability. *E.g.*, *Removatron Int'l. Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir.1989) ("Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression."); *FTC v. Millenium Telecard, Inc.*, No. 11-2479 (JLL), 2011 WL 2745963, at *8 (D.N.J. July 12, 2011) (granting preliminary injunction where disclaimer "not sufficiently unambiguous to leave an accurate impression as to the specific circumstances under which the various fees will be imposed"). The FTC Act does not allow companies to impose on consumers the responsibility of ferreting out material aspects of payment systems or anticipatorily evading unauthorized charges, whether through use of parental controls, locking devices away, or other means. *See FTC v. Verity Int'l, Ltd.*, 124 F. Supp. 2d 193, 203 (S.D.N.Y. 2000) (finding FTC likely to prove "that avoiding misuse of their telephones by children of line subscribers and others with access to their lines imposes an unreasonable burden on many consumers, especially in comparison with the easy alternative sought by the Commission—a bar on imposing liability on line subscribers absent a verifiable agreement to be responsible for the charges"). Injured consumers could not reasonably avoid charges they did not know about until they were billed for them.

---

[20] The words "In-App Purchasing" were clickable, though they were not styled to indicate as much. Facts ¶ 22. Burying a disclosure inside a clickable element—especially one that does not appear clickable—is inadequate. *See FTC v. EDebitPay, LLC*, No. CV-07-4880 ODW AJWX, 2011 WL 486260, at *6 (C.D. Cal. Feb. 3, 2011) *aff'd* 695 F.3d 938 (9th Cir. 2012) (hyperlinked disclosure not sufficiently noticeable for an ordinary consumer to read and comprehend).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

24

### b.    Parents confirming one in-app charge did not have an informed choice to incur subsequent charges.

When Amazon launched the Appstore, it billed consumers for in-app charges without requiring account holder involvement through a password prompt or other mechanism. When Amazon began sometimes seeking password entry, it used password prompts titled "Confirm In-Purchase" (singular), from which reasonable consumers would understand that they were approving a single charge, not exposing their credit cards or bank accounts to additional, unlimited charges. *FTC v. Stefanchik*, No. C04-1852RSM, 2007 WL 1058579, at *5 (W.D. Wash. Apr. 3, 2007) *aff'd*, 559 F.3d 924 (9th Cir. 2009) ("Reasonable consumers are not required to doubt the veracity of express representations[.]"); *FTC v. Int'l Computer Concepts, Inc.*, No. 5:94CV1678, 1994 WL 730144, at *12 (N.D. Ohio Oct. 24, 1994) ("Consumer reliance on express claims is [] presumptively reasonable."). Sometimes, password entry approved a single charge. Sometimes, Amazon treated approval of a single charge as acceptance of future charges potentially without password entry. Sometimes, password entry opened a billing window during which further, unlimited charges could be incurred. Sometimes that billing window extended for fifteen minutes. Sometimes it extended for an hour. None of the password prompts explained to consumers that by entering a password, they were authorizing not only one charge, but potentially unlimited charges within an undisclosed period of time. Nor did Amazon explain this framework to consumers at any other step in the in-app charge process. Facts ¶ 19. Amazon employees readily admitted ████████████████████████████████████████████ ████████████████. *Id*. ¶ 20. Injured consumers could not reasonably avoid charges within billing windows not disclosed to them.

### C.    The Injury Amazon's Consumers Suffered Was Not Outweighed by Any Countervailing Benefits to Consumers or Competition.

Amazon's practice of billing adults for unauthorized in-app charges by children did not produce offsetting benefits to consumers or competition that outweighed the ██████████ in consumer injury. Billing parents and other account holders for virtual items they did not

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

25

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

purchase does not benefit consumers or competition. *See, e.g.*, *Inc21.com*, 745 F. Supp. 2d at 1004 ("[I]t cannot be said that defendants' 'customers' benefitted at all from services that they never agreed to purchase, didn't know were being provided to them, and never wanted in the first place."). The cost of Amazon's practice, on the other hand, is significant and concrete: monetary loss amounting to ██████ of dollars in total. The cost–benefit prong of the unfairness test is "easily satisfied" where, as here, "a practice produces clear adverse consequences for consumers that are not accompanied by an increase in services or benefits to consumers or by benefits to competition." *J.K. Publ'ns, Inc.*, 99 F. Supp. 2d at 1201; *see also In re In-app Purchase Litig.*, 855 F. Supp. 2d 1030, 1041 (N.D. Cal. 2012) (denying motion to dismiss unfair practices claim where plaintiffs adequately pled costs outweighed benefits).

In fact, over time, Amazon itself recognized that ████████████████████ ████████████████████████████████████████████. Facts ¶ 32. And Amazon estimated ████████████████████████████████████████ ████████████████████████████████████████████. *Id.* (Ex. 98; Ex. 510 at 145:12-25). Amazon was not aware ████████████████████ ████████████████ *Id.* ¶ 33. Consumers did not ████████████████ ████████████████████████████████. *Id.* ¶ 33. There is no cognizable benefit to consumers or competition in failing to obtain consent for in-app charges, and there is certainly none that would exceed the costs discussed above.

## II. Amazon is Liable for Injunctive and Equitable Monetary Relief.

Pursuant to Section 13(b) of the FTC Act, this Court may grant permanent injunctive relief for violations of any provision of law enforced by the FTC, and has broad equitable authority "to grant any ancillary relief necessary to accomplish complete justice." *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982); *see also FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994). Such relief includes equitable monetary relief such as restitution, rescission of contracts, or disgorgement. *See Pantron*, 33 F.3d at 1102. The FTC's proposed

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

26

order, modeled after those routinely entered in FTC district court litigation, contains provisions that would prevent Amazon from engaging in the conduct in dispute, allow monetary redress for injured consumers, and subject Amazon to standard monitoring and reporting requirements.[21]

### A. Injunctive relief preventing Amazon from billing consumers without express informed consent is warranted.

The proposed order requires Amazon to obtain express informed consent to in-app charges before billing them, consistent with previous FTC orders requiring companies to obtain consent before billing consumers. *See, e.g.*, *FTC v. T-Mobile USA, Inc.*, 2:14-cv-00967-JLR (W.D. Wash. Dec. 22, 2014) (Stipulated Order at 6), available at https://www.ftc.gov/system/files/documents/cases/141218tmobileorder.pdf . The injunctive provisions also track the FTC's settlements with Apple Inc. and Google Inc. concerning similar conduct.[22] In addition to requiring that Amazon obtain express informed consent to in-app charges before billing for them, the order allows consumers to revoke consent to prospective in-app charges at any time. As defined in the proposed order, express informed consent includes two key components: (1) an affirmative act communicating authorization of an in-app charge (such as entering a password) made proximate to (2) a clear and conspicuous disclosure of material information about the charge. The act and disclosure must be reasonably calculated to ensure that the person providing consent is the account holder (as opposed to the child). (Definition 5, first proviso.) These provisions would ensure that Amazon obtains informed consent before charges are incurred.

---

[21] The standard monitoring and reporting requirements are familiar to FTC law enforcement matters; they assist the agency with consumer redress and prevent future violations of law. Each of these provisions has been accepted by many courts, including this one. *See, e.g., FTC v. Loewen*, No. C12-1207 MJP, 2013 WL 5816420 (W.D. Wash. Oct. 29, 2013) (requiring compliance reporting, recordkeeping, compliance monitoring); *FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp. 2d 1006, 1016 (C.D. Cal. 2012) (imposing 20-year order acknowledgment, compliance reporting, and recordkeeping requirements); *FTC v. Ivy Capital*, No. 2:11–CV–283 JCM (GWF), 2013 WL 3270534, at *3 (D. Nev. June 26, 2013) (imposing twenty-year compliance reporting requirements), *aff'd in part and vacated on other grounds*, 616 F. App'x 360, 361 (9th Cir. 2015).

[22] *Apple Inc.*, Docket No. C-4444 (F.T.C. Mar. 25, 2014) (consent order), *available at* http://www.ftc.gov/system/files/documents/cases/140327appledo.pdf; *Google Inc.*, Docket No. C-4499 (F.T.C. Dec. 2, 2014) (consent order), *available at* http://www.ftc.gov/system/files/documents/cases/141205googleplaydo.pdf.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

27

**B.    Monetary relief equal to unauthorized charges minus refunds is warranted.**

To make a claim for equitable monetary relief, the FTC must show calculations that "reasonably approximate[] the amount of consumers' net losses[.]" *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997). A reasonable and conservative approximation of the losses associated with Amazon's practices, based on undisputed facts and therefore susceptible to resolution on summary judgment, is $2█████████. The FTC has identified the proportion of billed charges that were most likely to have been unauthorized in-app charges incurred by children. First, the FTC identified in-app charges incurred without password entry in kids' apps. Miller Decl. ¶¶ 6-9. Second, the FTC calculated the rate at which users of kids' apps faced a password prompt and abandoned the in-app charge attempt by failing at password entry. *Id.* ¶¶ 10-13. After Amazon implemented a sporadic password-prompting scheme between February 2013 and May 2013, it began ████████████████████████████████████████████████████████████ ██████████████████████████████. When such abandoned attempts occurred in kids' apps, these users were likely children who otherwise would have incurred an unauthorized charge. Applying the rate of abandoned attempts in kids' apps (the "Unauthorized Charge Rate", approximately █%, Miller Decl. ¶ 13) to the total pool of in-app charges Amazon billed in such apps *without* prompting users for a password ($████████, Miller Decl. ¶ 9) gives us a conservative[23] floor for consumer injury: $3████████. Miller Decl. ¶ 14. Subtracting refunds from that same pool gives us $████████ *Id*. ¶15.

**III.    There Is No Genuine Dispute of Fact About Any Affirmative Defense.**

There is no genuine dispute of fact about Amazon's nine defenses (Dkt. 15 at 9-10), which generally can be rejected as a matter of law because they are not affirmative defenses,

---

[23] This is a conservative estimate of harm. For example, when Amazon prompted consumers for a password purportedly for a single in-app charge, then billed them for additional in-app charges without a password for an undisclosed period of time, all of those charges were unauthorized. Nevertheless, the estimate includes only █% of those charges. It also includes charges billed without consent on ████████████████████.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

28

they already have been adjudicated, or they otherwise fail as a matter of law.

Amazon's fifth through eighth defenses (that the charges were authorized, there is no injury, injury was reasonably avoidable, and injury was outweighed by countervailing benefits) are negative, not affirmative, defenses. *Blakeney v. Karr*, No. C13-5076, 2013 WL 2446279, at *1 (W.D. Wash. June 5, 2013) (denials of plaintiff's case are negative defenses). Amazon's fourth defense, that the FTC's requested monetary relief be offset by refunds paid, also is not an affirmative defense, *see Cox v. Cont'l Cas. Co.,* No. C13-2288 MJP, 2014 WL 6632371, at *11 (W.D. Wash. Nov. 21, 2014) ("[a]ttacking the method that plaintiffs propose to calculate damages is not an affirmative defense"), and is moot. *See* Part II(B) *supra*.

Amazon's first defense (failure to state a claim) is not an affirmative defense, *Blakeney*, 2013 WL 2446279, at *1 ("a claim that a plaintiff has failed to state a claim for which relief can be granted is not viewed as a proper affirmative defense"), and has already been resolved in the FTC's favor. (Dkt. 14.); *Cox*, 2014 WL 6632371, at *11 (granting motion for summary judgment on failure to state a claim defense where court denied motion to dismiss).

Amazon's second defense ("fair notice") has already been resolved in the FTC's favor, (Dkt. 14 at 7), and the FTC has provided fair notice that unauthorized billing can violate Section 5 of the FTC Act. Fair notice of an FTC Act violation is satisfied as long as the company can "reasonably foresee that a court could construe its conduct as falling within the meaning of the statute." *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 255-56 (3d. Cir. 2015). Fair notice is lacking only when the relevant standard is "so vague as to be no rule or standard at all." *Id*. (*citing CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 631-32 (3d Cir. 2013) (internal quotation marks omitted)). Amazon had more than ample notice that billing consumers without consent could violate Section 5 of the FTC Act. The three-prong test applicable to the FTC's claim was codified in 1994, 15 U.S.C. § 45(n), and in the decades since, the FTC has frequently alleged that billing consumers without consent is unfair. *See supra* at 14-15; Dkt. 14.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

29

Amazon's third defense (consumers' failure to mitigate damages) fails because the FTC is seeking equitable relief, not damages. *FTC v. Medicor LLC*, No. CV011896CBMEX, 2001 WL 765628, at *2 (C.D. Cal. June 26, 2001). Moreover, the FTC brings this suit in its own name, and defenses asserted against consumers—who are not parties to the case—are inapplicable. *See generally United States ex rel. FTC v. Larkin*, 841 F. Supp. 899, 907 (D. Minn. 1993) ("The fact that the FTC [acted] in pursuit of its statutory mandate to protect consumers does not transform this into a suit on behalf of private individuals."). In any event, there can be no mitigation defense without a duty. *FDIC v. Crosby*, 774 F. Supp. 584, 587 (W.D. Wash. 1991); *see Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1319 (S.D. Fla. 2005) (striking mitigation defense where statute at issue did not require mitigation). The FTC Act does not impose on consumers a duty to mitigate damages.

Amazon's ninth defense (that the request for injunctive relief is moot) incorrectly argues that its unfair practices have ceased, mooting the FTC's claim for injunctive relief. They have not. Facts ¶ 30. Voluntary cessation of an alleged illegal activity would not moot the FTC's claim for injunctive relief anyway. *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968). To the contrary, the test for mootness "is a stringent one," and defendants must show that "subsequent events have made it absolutely clear that the allegedly wrongful behavior *cannot* reasonably be expected to recur." *FTC v. Affordable Media*, 179 F.3d 1228, 1238 (9th Cir. 1999) (emphasis added). Amazon has changed its practices frequently, only began seeking consent on its newer mobile devices on the eve of litigation, Facts ¶¶ 14, 18, 21-22, 31, and without injunctive relief, is free to continue tweaking its practices as it sees fit.

## IV.  Conclusion

There is no dispute of material fact. The FTC respectfully requests that the Court grant the FTC's Motion for Summary Judgment and enter the proposed final judgment and order for permanent injunction and other equitable relief, filed concurrently.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

30

| | |
|---|---|
| Dated: <u>February 2, 2016</u> | <u>/s/ Jason M. Adler</u> |
| | JASON M. ADLER |
| | HEATHER ALLEN |
| | JANE M. RICCI |
| | MIYA RAHAMIM |
| | KATHARINE ROLLER |
| | HELEN WONG |
| | jadler@ftc.gov, hallen@ftc.gov, jricci@ftc.gov, |
| | mrahamim@ftc.gov, kroller@ftc.gov, |
| | hwong@ftc.gov |
| | Federal Trade Commission |
| | 600 Pennsylvania Avenue N.W., CC-10232 |
| | Washington, DC 20580 |
| | P: (202) 326-3231, (202) 326-2038, |
| | (202) 326-2269, (202) 326-2351, (202) 326-3582, |
| | (202) 326-3779 |
| | F: (202) 326-3239 |
| | |
| | LAURA M. SOLIS, WA Bar No. 36005 |
| | lsolis@ftc.gov |
| | Federal Trade Commission |
| | 915 2nd Avenue, Suite 2896 |
| | Seattle, WA 98174 |
| | P: (206) 220-4544 |
| | F: (206) 220-6366 |
| | Attorneys for Plaintiff |
| | FEDERAL TRADE COMMISSION |

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

31

1

**CERTIFICATE OF SERVICE**

I, Jason M. Adler, certify that on February 2, 2016, I electronically filed the foregoing Plaintiff's Motion for Summary Judgment, Declaration in Support, Exhibits, and Proposed Order with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

By: /s/ Jason M. Adler

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

32