THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

               Plaintiff,

    v.

AMAZON.COM, INC.,

               Defendant.

No. 2:14-CV-01038-JCC

**AMAZON.COM, INC.'S OPPOSITION TO THE FTC'S MOTION FOR SUMMARY JUDGMENT AND AMAZON'S REQUEST TO STRIKE**

NOTED ON MOTION CALENDAR:

Friday, February 26, 2016

ORAL ARGUMENT REQUESTED

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................... 1

II. FACTUAL BACKGROUND ................................................................. 1

    A.    The FTC's Purported "Undisputed Facts" Are Disputed ..................... 1

    B.    The FTC Omits Critical Evidence .......................................................... 6

III. ARGUMENT ....................................................................................... 9

    A.    Legal Standard ........................................................................................ 9

        1.    Summary Judgment ................................................................... 9

        2.    Unfair Practices under Section 5 of the FTC Act .................... 9

    B.    The FTC Cannot Establish Liability On Its Three-Factor Test ......................... 10

        1.    Disputed Material Facts Preclude a Finding of Substantial Injury .......... 10

            a.    The Number of Complaints by Customers – Nearly All of Whom Received Full Refunds – Does Not Establish Substantial Injury .......................................................... 11

            b.    Time Spent by Customers to Obtain Refunds Does Not Constitute Substantial Injury .......................................... 14

            c.    The FTC Has Failed to Offer Any Admissible or Credible Evidence on Other Allegedly Harmed Customers ...................... 16

                (i)    The Court Should Strike the Portions of the Miller Declaration Calculating Injury and Requested Relief ...................................................... 16

                (ii)    Ms. Miller's Estimate Is Speculative and Based on Implausible Assumptions ................................ 18

        2.    Any Injury Related to In-App Purchasing by Children Was Reasonably Avoidable by Account Holders .......................... 21

            a.    Any Injury Was Reasonably Avoidable Before Charges Were Incurred .................................................. 23

            b.    Any Injury Was Reasonably Avoidable After Charges Were Incurred .................................................. 27

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – i
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF CONTENTS**
**(continued)**

| | | | | Page |
|---|---|---|---|---|
| | | 3. | Any Risk of Injury to Customers Was Outweighed by the Benefits to both Consumers and Competition | 30 |
| | C. | | The FTC Is Not Entitled to Its Requested Relief | 32 |
| | | 1. | There Is No, and Never Was Any, Basis for Prospective Injunctive Relief | 32 |
| | | 2. | The FTC's Request for Monetary Relief Is Speculative and Wrong | 35 |
| | D. | | This Case Represents a Fundamental and Unwarranted Expansion of the FTC's Unfairness Authority | 35 |
| IV. | | | CONCLUSION | 36 |

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – ii
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

4

*Am. Fin. Servs. Ass'n v. FTC,*
    767 F.2d 957 (D.C. Cir. 1985) .................................................................10, 30

5

6

*AMC Entm't, Inc.,* 549 F.3d 760 (9th Cir. 2008) .............................................37

7

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...................................................................................10

8

9

*Christopher v. SmithKline Beecham Corp.,*
    132 S. Ct. 2156 (2012) ...............................................................................36

10

*Davis v. HSBC Bank Nevada, N.A.,*
    691 F.3d 1152 (9th Cir. 2012) ....................................................... passim

11

12

*FTC v. Accusearch, Inc.,*
    007 WL 4356786 (D. Wyo. Sept. 28, 2007) *aff'd,* 570 F.3d 1187 (10th Cir.
    2009) .........................................................................................................16

13

14

*FTC v. Crescent Pub. Grp., Inc.,*
    129 F. Supp. 2d 311 (S.D.N.Y. 2001) .......................................................30

15

16

*FTC v. Evans Prods. Co.,*
    775 F.2d 1084 (9th Cir. 1985) ...................................................................33

17

18

*FTC v. Febre,*
    128 F.3d 530 (7th Cir. 1997) .....................................................................35

19

*FTC v. Glob. Mktg. Grp., Inc.,*
    594 F. Supp. 2d 1281 (M.D. Fla. 2008) ....................................................12

20

21

*FTC v. Grant Connect, LLC,*
    827 F. Supp. 2d 1199 (D. Nev. 2011), *vacated in part,* 763 F.3d 1094 (9th Cir.
    2014) .........................................................................................................12

22

23

*FTC v. Ideal Fin. Sols., Inc.,*
    2015 WL 4032103 (D. Nev. June 30, 2015)...........................................12, 30

24

25

*FTC v. Inc21.com,*
    688 F. Supp. 2d 927 (N.D. Cal. 2010) ......................................................30

26

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – iii

24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*FTC v. Inc.21.com*,

4

745 F. Supp. 2d 927 (N.D. Cal. 2010) ...........................................................27, 32

*FTC v. Ivy Capital, Inc.*,

5

2013 WL 3270534 (D. Nev. June 26, 2013)....................................................34, 35

6

*FTC v. John Beck Amazing Profits LLC*,

7

888 F. Supp. 2d 1006 (C.D. Cal. 2012) ...............................................................35

8

*FTC v. Kennedy*,

9

574 F. Supp. 2d 714 (S.D. Tex. 2008) ......................................................12, 27, 30

*FTC v. Loewen*,

10

2013 WL 5816420 (W.D. Wash. Oct. 29, 2013) ..................................................35

11

*FTC v. Neovi, Inc.*,

12

598 F. Supp. 2d 1104 (S.D. Cal. 2008), *aff'd* 604 F.3d 1150 (9th Cir. 2010) ................ passim

13

*FTC v. Willms*,

2011 WL 4103542 (W.D. Wash. Sept. 13, 2011).................................................12

14

*FTC v. Wyndham Worldwide Corp.*,

15

799 F.3d 236 (3d Cir. 2015)..................................................................................11

16

*Hoffman v. Constr. Protective Servs., Inc.*,

17

541 F.3d 1175 (9th Cir. 2008) ...............................................................................17

18

*In re Apple Inc.*,

19

No. 112-3108, 2014 WL 253519 (F.T.C. Jan. 15, 2014) (Statement of
Commissioner Maureen K. Ohlhausen).................................................................36

20

*In re Int'l Harvester Co.*,

21

104 F.T.C. 949 (1984)....................................................................................10, 31

22

*In re LabMD, Inc.*,

No. 9357, 2015 WL 7575033 (Nov. 13, 2015)......................................................11

23

*FTC v. J.K. Publications*,

24

99 F. Supp. 2d 1176 (C.D. Cal. 2000) .............................................................27, 32

25

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,

26

804 F.3d 930 (9th Cir. 2015) ...............................................................................23

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – iv
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

## TABLE OF AUTHORITIES
### (continued)

Page

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ..................................................................23

*Orkin Exterminating Co. v. FTC*,
   849 F.2d 1354 (11th Cir. 1988) ....................................................28, 29, 31

*Rabago v. Deutsche Bank Nat'l Trust Co.*,
   2011 WL 2173811 (C.D. Cal. June 1, 2011) ............................................22

*Sears, Roebuck & Co. v. FTC*,
   676 F.2d 385 (9th Cir. 1982) ....................................................................35

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010) ..................................................................23

*United States v. Kozminski*,
   487 U.S. 931 (1988) ..................................................................................36

*United States v. Laerdal Mfg. Corp.*,
   73 F.3d 852 (9th Cir. 1995) ......................................................................33

*Wash. State Republican Party v. Wash. State Grange*,
   2011 WL 92032 (W.D. Wash. Jan. 11, 2011) (Coughenour, J.)................23

*Yeti by Molly v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ..................................................................17

STATUTES

15 U.S.C § 45 (Section 5 of the FTC Act).............................................. passim

RULES

Fed. R. Civ. P. 37(c)(1)................................................................................17

Fed. R. Evid. 701 .........................................................................................18

Civ. Local Rule 7(g) ....................................................................................17

Fed. R. Civ. P. 26........................................................................................17, 18

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – v

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

24976-0374/LEGAL129985395.1

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

**REGULATIONS**

4

FTC Policy Statement, 104 F.T.C. 949...........................................................................22

5

**OTHER AUTHORITIES**

6

Wright, Joshua D. & John Yun, *Stop Chug-a-lug-a-lugin 5 Miles an Hour on*

7

*Your International Harvester*, 83 GEO. WASH. L. REV. 2130 (2015) .....................................36

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – vi
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## I.      INTRODUCTION

The FTC asks the Court to circumvent the bulk of the factual record, and to bypass entirely the testimony and exhibits that controvert its version of the facts, to grant summary judgment on the ultimate issue of whether Amazon violated Section 5 and to award injunctive and monetary relief.  On a factual record that is both plainly disputed and legally insufficient to support the relief sought, the summary judgment standard precludes that effort.

Among other things, the evidence at trial will demonstrate that Amazon included simple product features at the launch of its Appstore that would prevent accidental purchases if used by the account holder, that Amazon voluntarily responded to an unexpectedly high rate of refund requests with additional features that even the FTC concedes satisfy its current standards, that Amazon promptly refunded virtually all customers with legitimate complaints, and that Amazon's voluntary efforts over time (and well before this case was filed) have eliminated its customers' concerns.  Moreover, Amazon's expert witnesses will explain that Amazon's actions were reasonable when launching an innovative new digital product, and will identify the foundational flaws in the report of the sole expert upon whom the FTC rests much of its case. The crimped collection of soundbites the FTC presents in support of its motion omits disputed, material facts.  The motion provides no basis for summary judgment, much less the unprecedented expansion of Section 5 authority the FTC now seeks.

The Court should deny the FTC's motion in its entirety.

## II.      FACTUAL BACKGROUND

Amazon's Motion for Partial Summary Judgment (Dkt. 93) explains Amazon's development, launch, and continuous refinement of in-app purchasing, including post-launch innovations that addressed the issue of unwanted or accidental purchases by children.  Those facts, and the facts the FTC mischaracterizes and omits, preclude summary judgment.

### A.      The FTC's Purported "Undisputed Facts" Are Disputed

By selectively quoting from a number of customers who complained about

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 1
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Amazon's in-app-purchasing, the FTC has crafted several lead soundbites to suggest that none of Amazon's notices or tools were effective and that in-app purchasing has been an unmitigated failure for parents.  The facts do not support that curated view.  Since the launch of Amazon's Appstore, in-app purchasing has been popular with millions of Amazon customers and families: Since 2013, an average of more than ████ customers purchased in-app products each month, with more than ████ new customers added each month on average.  Werner Decl. ¶ 4. Amazon customers have purchased over ████ in-app units since launch, with only ██ percent refunded (with only a portion of those refunds related to purchases by children).  *Id.*  It is inevitable that some customers will misunderstand a product or service, particularly a new one,[1] and there will always be some customer complaints when purchase volume is so large.  The FTC does not, and cannot, show that its quoted customers are representative of a typical Amazon customer or the Ninth Circuit's reasonable consumer.[2]

The FTC also ignores that of the 62 customer contacts from which it selectively quotes,[3] *all* were able to contact Amazon, *all* received a full or partial first-time refund, and *all* received education about in-app purchasing or Parental Controls.[4]  Werner Decl. Ex. C.  The FTC ignores that Amazon provided refunds even though several of the customers had received prior refunds.  *Id.*  The FTC ignores that more than a third of those customers made *additional* purchases thereafter.  *Id.*  The FTC ignores that many of those customers *praised* Amazon *during* those same contacts or acknowledged full or partial responsibility:

---

[1] Callahan Decl. ¶ 3 (Callahan Report) (Dkt. 146-1) at 27 (explaining that "refund rates tend to increase in situations in which customers are unfamiliar with the experience" and that "the introduction of a new device (Kindle Fire), a new store (Appstore), and a new good (in-app purchases) would be expected to generate a higher refund rate while customers' confidence developed in the experience.").

[2] In fact, many customers seek refunds for reasons unrelated to accidental purchases.  *See* Dhar Rpt. 46 (identifying many reasons why customers seek refunds despite their awareness of in-app purchasing, including simple buyer's remorse).

[3] The FTC quotes 64 customers, but two contacted the app developer, not Amazon.  Ex. 474-75.

[4] Only one of the customers the FTC cites was denied a refund, but that refund was denied because the customer had already received a prior refund.  Werner Decl. ¶ 13 & Ex. C.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 2
24976-0374/LEGAL129985395.1

- "That is perfect.  Thanks very much.  That's great."  Ex. 415.

- "Awesome, no, this is great."  Ex. 439.

- "You guys are so awesome, by the way."  Ex. 452.

- "Thank you so much for your prompt and satisfactory resolution.  Is there a survey where I can provide positive feedback?"  Ex. 456.

- "So, that was kind of my fault too."  Ex. 418.

- "The nine-year-old got a Kindle for his birthday, and we told that him he needs to ask permission for these things, and evidently he has not been asking."  Ex. 423.

- "Oh, no, it's not your fault."  Ex. 429.

And the FTC ignores the volumes of additional positive customer feedback praising Amazon's tablets, its Appstore, its notices and Parental Controls, its tools to help manage children's tablet usage, and its easy-to-contact and award-winning customer service. *See, e.g.*, Rubenson Decl. ¶ 30; Callahan Rpt. at 21 (2013 Foresee Survey:  "Amazon is a perfect example and is truly setting the standard for an excellent mobile customer experience.  To achieve such high customer satisfaction scores and to continue to improve them year after year is a remarkable feat that remains unmatched by any other e-retailer.").[5]

In a telling example, the FTC sets up its argument pronouncing that Amazon "targeted 'soccer parents'" as "low-hanging fruit," implying that Amazon identified those customers as easily deceived. Mot. ¶ 2.  The cited exhibit shows nothing of the sort.  That study was performed over a year *after* Amazon launched in-app purchasing, assessed the strengths and weaknesses of Amazon's entire tablet (not just in-app purchasing), and identified parents not because they are vulnerable consumers but because they *love* Amazon products, *including*

---

[5] The reports of Amazon's expert witnesses were attached to the Declaration of Danielle R. Foley In Support of Amazon.com, Inc.'s Opposition to FTC's Motion in Limine to Exclude Expert Testimony (Dkt. 146-1, 146-2, 149, 150): Ravi Dhar Rpt. (Ex. B), Ravi Dhar Rebuttal Rpt. (Ex. C), Donna Hoffman Rpt. (Ex. E), Michael Callahan Rpt. (Ex. F), Craig Rosenberg Rpt. (Ex. G), Barry A. Sabol Rpt. (Ex. I), Andrew L. Sears Rpt. (Ex. J). Those expert witnesses have incorporated their reports via the declarations filed in support of this opposition brief.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 3
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Amazon's Fire tablet.  FTC Ex. 153 (identifying target audience "given existing affinity with the

2    Amazon brand and [first-generation] device sales"); *see also* Rubenson 30(b)(6) Dep. 171:2-6

3    ("We thought, and think, our devices are best for families with children because of the features

4    we've built.  So certainly some of the marketing is designed to be appealing to families, yes.");

5    Dkt 93 at 4 (noting Amazon's desire to give parents "tools from day one," including Parental

6    Controls, so they could manage their children's tablet use as they desired).

7           The FTC then contends that Amazon launched in-app purchasing without

8    "requir[ing] account holder approval for in-app charges through password entry or other means."

9    Mot. ¶ 7.  But all account holders had to first associate their device with their Amazon account

10   and payment method by entering a password.  Moreover, the "Amazon Appstore for Android

11   Terms of Use" informed customers of the availability of in-app purchasing, and, under

12   Amazon's  "Conditions of Use," account holders agreed to "accept responsibility for all activities

13   that occur under your account or password."  Parental Controls were also always available to

14   disable in-app purchasing.  Rubenson Decl. ¶¶ 5.1, 7.1, 7.2 & Exs. J-K; Dkt. 93 at 4, 7 n.1.

15          Just after it launched in-app purchasing, Amazon further disclosed in-app

16   purchasing on the app-description page and later enhanced that page.  Although the FTC implies

17   that Amazon's enhanced app description diminished notices of in-app purchases, Mot. ¶ 22, the

18   opposite is true.  The enhanced page added the phrase "In-App Purchasing" so that it is *always*

19   "above the fold," meaning no user had to scroll to read the full description, and *always* at the top

20   and to the right of the description text to ensure prominence on the page.  Dkt. 93 at 13-14.

21   Implying that the phrase was difficult to read because it was smaller than other text, the FTC

22   fails to mention that directly above the phrase is the title "Key Details," in larger and bolder font

23   to draw attention.  *Id.*  Clicking the phrase provides yet *another* detailed description of in-app

24   purchasing.  *Id.*  The FTC says that "none" of the information told parents that in-app purchases

25   were available without a password, Mot. ¶ 22, but the notice specifically explained how to

26   "configure in-app purchasing parental controls," Dkt. 93 at 14.  Additionally, the enhanced page

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 4
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   included a hyperlink telling customers they could "Read More" information about the app, which

2   specifically addressed the FTC's criticism that some users may not have understood they could

3   scroll down to read more information. *Id.* Clicking the "Read More" option allows the account

4   holder to view the original notice of in-app purchasing ("PLEASE NOTE") that has always been

5   appended to app descriptions. *Id.*

6           The FTC says Amazon "bills users for charges" from free apps, Mot. ¶ 3, and that

7   "there is no dispute" Amazon "often" charged consumers "without any mechanism (such as a

8   password prompt) to require account holder approval," Mot. 21. But there have *always* been

9   mechanisms for account-holder oversight and password prompts, not the least of which is

10  Parental Controls. Dkt. 93 at 4-5. There was never any hidden fee the payment of which was

11  required to use those free apps. Customers were able to use without charge any app labeled

12  "free"; no account holders were billed a cent unless they chose to activate *additional* features.

13  *See* Rubenson Decl. ¶ 4.1. As the FTC knows, the vast majority of customers never make a

14  purchase within a "free" app.

15          The FTC repeatedly says the apps at issue are "kids" apps used predominantly, if

16  not exclusively, by children. The opposite is true: Many of the apps for which the FTC seeks

17  relief are used by significant numbers of adults and often appeal *primarily* to adults. Rubenson

18  Decl. ¶¶ 3.2-3.3; Ex. B (2011 *Economist* study: "Today the average age of [videogame] players

19  in America, the biggest market, is 37."), Ex. C ("Unlike popular belief that the heaviest [app]

20  gamers will consist of a majority of younger smartphone users, nearly half (45 percent) of all

21  heavy gamers are aged between 25 and 35 years of age. . . . Also, one fourth of all heavy [app]

22  gamers are over 35 years of age."). The FTC includes in this case, for example, universally

23  popular apps like Angry Birds, the primary players of which are over age 35. Ex. A ("Nielsen

24  reveals most popular Android apps by age. Angry Birds appeals most to over 35s."). And many

25  of the apps with the highest refund rates specifically target "all ages," teenagers or "mature"

26  audiences, not young children. *Id.* ¶ 3.2.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 5
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    The FTC also misconstrues Amazon's "no return" policy as a "no refund" policy,

2    suggesting that Amazon as a matter of policy told customers they could not receive a refund for

3    accidental purchases.  Mot. ¶ 37.  Unlike physical products that can be returned to Amazon and

4    then resold, digital products are immediately consumable (e.g., the game was played) and

5    therefore not physically "returnable."  Dkt. 93 at 8-9; Rubenson Decl. ¶ 27.1.  But Amazon's

6    policy and practice has always been to provide "refunds" for accidental purchases of any

7    product, including refunds for "unreturnable" digital products.  *Id.*  The FTC contends – without

8    any evidence – that customers consulted that written return policy and were dissuaded from

9    seeking a refund, yet it is more reasonable to infer – especially on summary judgment – that

10   those customers either did not read the policy or were not dissuaded by it.  Similarly, it is not

11   reasonable to infer that customers declined to contact Amazon customer service in the face of an

12   unrecognized charge simply because the email receipt did not explicitly state that a refund was

13   available.  Indeed, the evidence shows the contrary: nearly ████ customers contacted Amazon

14   and received a refund by December 2014.  Werner Decl. ¶ 4.

15       All told, Amazon disputes nearly all of the so-called undisputed facts in the FTC's

16   motion.  *See* Rubenson Decl. ¶¶ 3-30; *see also* Schneider Decl. Exs. K-S.

17   **B.    The FTC Omits Critical Evidence**

18       The FTC's purported "summary of undisputed facts" also omits significant

19   critical evidence, disregards key features and tools Amazon implemented to enable tablet owners

20   to manage their children's usage, fails to discuss Amazon's generous refund practices and award-

21   winning customer service, and barely mentions Amazon's experts' opinions.

22       For example, the FTC omits the fact that Amazon recognized that parents would

23   want to control the purchases by their children and included Parental Controls as a simple-to-use

24   tool from the earliest planning stages of in-app purchasing.  Dkt. 94, ¶¶ 7-8.

25       The FTC also omits evidence that in response to customer feedback and data –

26   and before the FTC first announced what it believes is required to comply with Section 5 –

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   Amazon added a password requirement for *all* first-time in-app purchases on second-generation

2   and newer Kindle Fire devices, even though the majority of customers did not want to be asked

3   for a password to make purchases.  Dkt. 93 at 13.  The FTC omits that Amazon's prompt

4   explained in-app purchasing, required entry of a password to proceed, and explicitly told account

5   holders, "If you'd like to require a password for future in-app purchases, please turn on <u>Parental</u>

6   <u>Controls</u>," a hyperlinked term that took the account holder to the Parental Controls settings.  *Id.*

7        The FTC omits all evidence about Kindle FreeTime, the software that helps

8   parents manage children's tablet usage, including control over what apps, books, videos, or other

9   content a child can access and the duration a child can use the device.  *Id.* at 11.  The FTC omits

10  that with FreeTime all in-app purchasing is disabled, that Amazon publicized FreeTime widely,

11  that FreeTime is included on all Kindle Fire tablets sold since September 2012, and that

12  FreeTime has been favorably reviewed as a tool for parents.  *Id.* & n.6.  Effective in 2013,

13  account holders navigating their first-time user experience with a Kindle Fire are explicitly

14  queried during their set-up as to whether minor children will be using the device.  If answered

15  affirmatively, the account holder is encouraged to either enable traditional Parental Controls or to

16  use FreeTime to control content and purchasing by children, another example of Amazon

17  encouraging its customers to use the features designed to avoid accidental purchases.  Schneider

18  Decl. Ex. L (Glissmeyer Dep.) at 136-37, Ex. M (Glissmeyer 30(b)(6) Dep.) at 61-64.

19       The FTC omits evidence of Amazon's generous refund practices and award-

20  winning customer service.  As discussed below, Amazon generously provided refunds,

21  instructing its agents to refund all first-time "accidental" in-app purchasers.  Pieros Decl. (Dkt.

22  96) ¶¶ 3-5.  Amazon often over-refunded, providing subsequent refunds even after customers had

23  received multiple refunds and for purchases that almost certainly were not accidental.  *Id.* ¶ 5.

24  As part of the refund process, Amazon instructed customers how to use Parental Controls and

25  sent follow-up emails of those instructions.  *Id.* ¶ 4.  Amazon does so to this day, despite the

26  FTC's concession that Amazon's current practices comply with Section 5, thus eliminating the

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 7

24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  need for refunds.  *Id. ¶* 6.

2  And the FTC omits any mention of all but one of Amazon's expert witnesses:

3  Dr. Ravi Dhar, a professor at the Yale School of Management and an expert in

4  consumer decision making, will opine that Amazon used reasonable practices to inform

5  customers about in-app purchasing and made reasonable data-based refinements to minimize

6  refunds for accidental in-app purchases.  Dhar Rpt. ¶¶ 12.1-9.

7  Dr. Andrew Sears, a dean at The Pennsylvania State University with nearly 30

8  years of experience in human-computer interaction – the same field in which the FTC's expert,

9  Jennifer King, is still seeking her degree – has opined that the methods and practices Ms. King

10  uses are inconsistent with accepted methods and practices; that her opinions are not informed by

11  more reliable user testing or surveys; and that she fails to recognize the variety of tasks and users

12  at issue and the context of the marketplace and device.  Sears Rpt. ¶¶ 10-20.

13  Dr. Craig Rosenberg, a Ph.D. with over 25 years of experience in the fields of

14  human factors, user-interface design, and software development conducted a usability test, the

15  results of which confirm that the availability of in-app purchases was  clearly communicated and

16  understood by Kindle Fire users, including that Parental Controls would prevent accidental in-

17  app purchases.  Rosenberg Rpt. 59-60.

18  Dr. Donna Hoffman, co-director of the Center for the Connected Consumer, has

19  opined that customers prefer a seamless online or mobile experience, that Amazon's customers

20  have come to expect Amazon to provide such an efficient purchase flow, and that Amazon's

21  approach to in-app purchasing appropriately balanced the possibility of accidental purchases by

22  children in a small percentage of its customer base imposing inconvenience or friction on the

23  vast majority of Amazon's customers.  Hoffman Rpt. ¶¶ 16-18.

24  Michael Callahan, an expert in customer-service best practices, has opined that

25  Amazon has consistently been ranked among the best companies in the country for exceptional

26  customer satisfaction that Amazon makes it easy for customers – including in-app purchasers –

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 8

24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    to contact Amazon for refunds, that ,and that Amazon customers are well aware of Amazon's

2    outstanding reputation for customer service.  Callahan Rpt. 3-4.

3            Dr. Barry Sabol, a 30-year expert in conducting and analyzing consumer-research

4    studies, conducted a survey of over 1,200 *actual* Amazon customers, which results confirmed

5    that the vast majority of Amazon digital-product purchasers (94%), *including those who made in-*

6    *app purchases (97%)*, found it easier or no more difficult to contact Amazon's customer service

7    than experienced with other companies.[6]  Sabol Rpt. ¶¶ 6-7.

8                                    **III.    ARGUMENT**

9    **A.    Legal Standard**

10           **1.    Summary Judgment**

11           The Court's function at summary judgment is not to "weigh the evidence and

12   determine the truth of the matter but to determine whether there is a genuine issue for trial."

13   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The evidence of the non-movant is

14   to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

15           **2.    Unfair Practices under Section 5 of the FTC Act**

16           In response to the FTC's expanded activity that engendered "criticism of the

17   vagueness and breadth of the unfairness doctrine," in 1980 Congress suspended the FTC's

18   rulemaking authority over commercial advertising practices.  *Am. Fin. Servs. Ass'n v. FTC*, 767

19   F.2d 957, 969 (D.C. Cir. 1985).  Thereafter, the FTC outlined three limitations to which it would

20   adhere when exercising its authority to challenge allegedly "unfair" practices, as set forth in a

21   policy statement "delineating the Commission's view of the *boundaries of its consumer*

22   *unfairness jurisdiction.*"  FTC Policy Statement on Unfairness, appended to *In re Int'l Harvester*

23   *Co.*, 104 F.T.C. 949, *76 (1984) (emphasis added).

24   ———————————
         [6] Notably, despite the FTC's heavy-handed attack on nearly all of Amazon's experts in its Motion in
25   Limine, it begrudgingly admits that Drs. Sears and Dhar may testify at trial.  *See* Dkt. 104 (seeking to exclude only
     parts of Drs. Sears's and Dhar's testimony).  And the Court has already addressed and allowed the referenced
26   opinions of Drs. Rosenberg and Sabol.  Dkt. 139.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 9
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    These three requirements limiting the FTC's enforcement authority were

2    eventually codified: "The Commission *shall have no authority* . . . to declare unlawful an act or

3    practice on the grounds that such act or practice is unfair unless the act or practice causes or is

4    likely to cause [1] substantial injury to consumers which is [2] not reasonably avoidable by

5    consumers themselves and [3] not outweighed by countervailing benefits to consumers or to

6    competition." 15 U.S.C. § 45(n) (emphasis added). Although courts often cite the three-

7    identified requirements as *the* elements of an unfair-practices claim, Section 5(n) establishes

8    necessary but not sufficient prerequisites for unfairness. *See FTC v. Wyndham Worldwide Corp.*,

9    799 F.3d 236, 244 (3d Cir. 2015) ("While the provision forbids the FTC from declaring an act

10   unfair 'unless' the act satisfies the three specified requirements, it does not answer whether these

11   are the *only* requirements for a finding of unfairness.");[7] *In re LabMD, Inc.,* No. 9357, 2015 WL

12   7575033, *37-*38 (Nov. 13, 2015) (citing *Wyndham* and explaining that the three prongs of

13   Section 5(n) "establish an outer limit to the Commission's authority to declare an act or practice

14   unfair" and constitute "a legal precondition" to finding a defendant liable for unfair conduct).

15   **B.    The FTC Cannot Establish Liability On Its Three-Factor Test**

16   Even if the Court were to conclude that the provisions of Section 5(n) fully define

17   rather than limit when a business practice is unfair, the Court still should deny the FTC's motion

18   because it cannot show the absence of a genuine dispute over any of those three provisions.

19   **1.    Disputed Material Facts Preclude a Finding of Substantial Injury**

20   The FTC cannot demonstrate substantial injury because (1) nearly all customers

21   who complained about accidental purchases received full refunds; (2) time spent by customers to

22   seek a refund does not qualify as substantial harm; and (3) the FTC's estimate of allegedly

23   harmed customers who did not seek a refund is inadmissible, speculative, and not credible.

24

25   _____

26   [7] The Third Circuit acknowledged this question but did not answer it because it rejected defendants'
     proposed additional requirements or deemed them satisfied by the FTC's allegations.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 10
24976-0374/LEGAL129985395.1

1

### a.   The Number of Complaints by Customers – Nearly All of Whom Received Full Refunds – Does Not Establish Substantial Injury

2

3        The FTC first contends that the substantial-injury prong is satisfied based –

4   ironically – on the amount of refunds Amazon voluntarily provided, insisting – wrongly – that

5   "[c]ourts do not require more."  Mot. 16.  The FTC's attempt to use Amazon's generous refund

6   practice as evidence for substantial injury is illogical, inconsistent with public policy

7   encouraging responsible corporate behavior, and unsupported even by the FTC's cited cases.

8   *See FTC v. Kennedy*, 574 F. Supp. 2d 714, 720 (S.D. Tex. 2008) (substantial injury shown

9   where, "[w]hen consumers requested refunds, they did not immediately receive them[; t]ens of

10  thousands of consumers never obtained refunds"); *FTC v. Neovi, Inc.*, 598 F. Supp. 2d 1104,

11  1115 (S.D. Cal. 2008) (substantial injury shown when victims of fraud received "minimal

12  information" when contacting defendant, "and thereby made it difficult for [consumers] to

13  investigate and stop fraudulent activity on their bank accounts"), *aff'd* 604 F.3d 1150, 1153-54

14  (9th Cir. 2010).[8]

15        Moreover, the FTC misleadingly cites raw figures without context to suggest that

16  the alleged "injury" was much larger than it actually was.  For example, the FTC says that

17  ████████ customers "complained to Amazon about nearly ████████ in-app charges that

18  Amazon itself classified as 'accidental' in-app charges by children."  *Id.*; Dkt. 99 ¶ 18-19.  Even

19        [8] *See also FTC v. Ideal Fin. Sols., Inc.*, 2015 WL 4032103, at *1, *3-4, *8  (D. Nev. June 30, 2015) (tens of
20  millions of dollars in charges for financial products customers did not purchase or receive constituted substantial
    injury where customers contacting the company were falsely told they had authorized the charges, and "many
21  consumers who requested a refund never received one"); *FTC v. Glob. Mktg. Grp., Inc.*, 594 F. Supp. 2d 1281, 1285
    & n.4, 1288-89 (M.D. Fla. 2008) (substantial injury shown where "more than $26 million [was withdrawn] from
22  unsuspecting consumers' bank accounts" and consumers suffered $8.6 million in net harm, *even after* crediting
    "extraordinarily high returns").  Nor do  *FTC v. Willms*, 2011 WL 4103542, at *1-2 (W.D. Wash. Sept. 13, 2011) or
23  *FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1210 (D. Nev. 2011), *vacated in part*, 763 F.3d 1094 (9th Cir.
    2014), support the FTC's argument that high refund rates are sufficient to show substantial injury.  In granting a
24  preliminary injunction for deceptive and unfair practices against a defendant alleged to have moved funds offshore,
    *Willms* identified high "chargebacks" by credit-card companies (as high as 23%) for fraudulent transactions, as well
25  as defendants' efforts to conceal charges and evidence that refunds were "extremely difficult to obtain."  2011 WL
    4103542, at *2, *9.  The claim in *Grant Connect* was for *deceptive* practices, so it has no relevance to the
26  substantial-injury prong or this case.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 11

24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    if these totals accurately reflect accidental in-app purchases by children – which they do not[9] –

2    they represent a very small percentage of total in-app purchases by Amazon customers: merely

3    ▉ of customers who had made an in-app purchase during that period and only ▉ of in-app

4    items purchased.  *See* Dkt. 99, Ex.  A.[10]

5              The FTC also inaccurately states that "Amazon has billed consumers at least

6    ▉ for charges in *kids' apps*."  Mot. ¶ 23 (emphasis added).  The data from which the

7    FTC derives its calculation include all purchases from within approximately 6,000 so-called

8    "High-Risk apps," yet the criteria for inclusion are not limited to what the FTC calls "kids'

9    apps."  In addition to apps the third-party developer identified as "child-directed," the list

10   includes all apps – regardless of target audience – with a refund rate of 15% in any given month

11   and all apps that offer in-app items priced at $20 or more.  Dkt. 93 at 12-13 & Rubenson Decl.

12   ¶ 21.1.  These criteria alone confirm that the list of apps at issue are not exclusively "kids'

13   apps."  Additionally, the list includes many apps that young children are highly unlikely to use

14   (beyond the "casino apps" the FTC excluded), such as accounting or navigation apps.  Further, as

15   described above, even those apps that *appear* to be played by children are in fact played often, if

16   not predominantly, by adults.  Rubenson Decl. ¶¶ 3.2-3.3.  That so many refund requests came in

17   situations where no child was likely involved suggests that the refund rate was not just or

18   primarily due to purchases by children.

19             Similarly, the FTC's assertions that Amazon refunded "more than ▉ in

20   charges incurred in kids' apps before this case was filed" and that "refund rates for in-app

21

22        [9] *See* Dkt. 99, 110 ¶ 18, tbl. 6 (FTC including customer-contact "wrap-up codes" that do not reflect
     purchases by children).  In addition, the FTC's figure includes refunds for apps not likely to be used by children, *see*
23   Rubenson Decl. ¶ 3.2-3.3, and Amazon customer-service agents are trained to take the customer's word as true and
     have no way of knowing if a customer stating that a child made a purchase is in fact telling the truth, Schneider
24   Decl. Ex. R (Pieros 30(b)(6) Dep.) 156:10-18.

25        [10] By contrast, cases relied upon by the FTC involved a much larger percentage of unauthorized
     transactions, in addition to fraudulent or near-fraudulent conduct.  *See , e.g.*, *Neovi*, 604 F.3d at 1157 (more than half
26   of total value of all checks drawn came from accounts later frozen for fraud).

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

charges within kids' apps were . . . nearly four times as high" are erroneous.  Mot. 16, 18.  The FTC includes refunds for orders that not only were subject to passwords[11] but also involved customer-contact codes indicating the refunds had nothing to do with children.  In fact, applying the same criteria the FTC elsewhere used to identify potential child-related refunds[12] – an already inflated calculation – reduces the FTC's estimate by at least 30%.  *See* Werner Decl. Ex. D.  As Figure 1 shows, the refunds Amazon provided because of allegedly accidental orders were not four times as high as other refunds and were always only a small portion of overall sales.

**Figure 1:  In-App Purchases and Refunds**



Werner Decl. ¶ 15 & Ex. D.

---

[11] *Compare* Mot. 16, *with* Dkt. 99 ¶ 9, tbl. 3 (FTC estimate of ███████ in refunds through June 3, 2014, after excluding a portion of orders that were subject to passwords).

[12] *See* Dkt. 99, 110 ¶¶ 16-17 (limiting calculation of accidental child purchases to potentially relevant customer-service classification codes).

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Yet even if the FTC's refund calculations accurately represented accidental

2    purchases by children, they would still not support a finding of substantial injury.  The figures

3    represent not only a small percentage of all in-app purchases but also *customers who have*

4    *already been fully reimbursed* for any accidental purchases by children.  As the data confirm, the

5    overwhelming majority of customers who contacted Amazon about an accidental purchase by a

6    child received a refund.  Amazon instructed customer-service agents to provide full refunds for

7    all first-time "accidental" in-app purchases and educate those customers about Parental Controls,

8    and it routinely granted additional refunds to customers after this Parental Controls education.

9    Dkt. 93 at 8-9.   The FTC does not seriously contend otherwise; at most the FTC notes only that

10   "some [c]onsumers who contacted Amazon about unauthorized in-app charges were denied

11   refunds by Amazon."  Mot. 13 (citing to the 1,573 customers).  The FTC does not even attempt

12   to argue that these 1,573 customers denied refunds – which amount to merely ███████ (less than

13   ████████) of the more than ████████ customers who had made in-app purchases over that

14   same period – could constitute "substantial" harm, especially given that more than half of those

15   requests were denied because the customer had *previously received* one or more refunds.[13]  *See*

16   Werner Decl. ¶¶ 4, 17; Dkt. 96 ¶ 4.

        **b.    Time Spent by Customers to Obtain Refunds
              <u>Does Not Constitute Substantial Injury</u>**

17

18       The FTC also contends that customers suffered additional injury measured as the

19   value of lost time spent seeking a refund.  Mot. 20.  Understandably, the FTC does not argue that

20   this routine inconvenience satisfies the substantial-injury prong by itself, nor would the two cases

21   it cites support such a position.  The "reasonable" in "reasonable avoidability" makes clear that

22   de minimis amounts of time obtaining a refund are not substantial injury.

23       Specifically, in *Neovi*, the additional injury was not, as here, merely time spent

24

25   _____
        [13] The 1,573 figure includes 161 customers whose denied request for a refund occurred in July 2014 or
26   later, after introduction of the password prompt the FTC concedes complies with Section 5.  *See* Werner Decl. ¶ 16.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 14
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   obtaining a refund from a current customer.  Instead, those consumers who were victims of

2   "fraudsters" "often spent a considerable amount of time and resources contesting [fraudulent]

3   checks at their banks, protecting their accounts, and attempting to get their money back."  598 F.

4   Supp. 2d at 1109, 1115.  They "also expended a considerable amount of time, effort, and money

5   in opening new bank accounts[, which] usually required the consumer to incur additional

6   expenses in purchasing new checks and changing various existing payment arrangements with

7   creditors."  *Id.* at 1115.  Similarly, in *FTC v. Accusearch, Inc.*, the court found the substantial-

8   injury prong satisfied, not because of time spent procuring refunds but because of "the severe

9   harm experienced by some consumers from stalkers and abusers who procured the consumers'

10   phone records" and the costs "associated with changing telephone carriers and addressing

11   necessary upgrades to the security of the accounts."  2007 WL 4356786, at *8 (D. Wyo. Sept. 28,

12   2007) *aff'd*, 570 F.3d 1187 (10th Cir. 2009).

13              Even if the FTC's "lost time" theory is credited, the injury is minimal, not

14   substantial.  The FTC asserts that Amazon customers have been injured the equivalent of

15   $305,000 as a result of lost time spent seeking and obtaining a refund, or $2.77 for each of

16   approximately 110,000 customers.  Mot. 20.  Put in context, $305,000 represents just ████

17   ████████████ of total in-app sales for the period covered by the FTC's calculation.  *See*

18   Werner Decl. ¶ 4.  And the FTC's number is inflated because it includes (1) time spent procuring

19   refunds unrelated to accidental purchases by children, (2) time spent procuring refunds even

20   though the customers previously received refunds, and (3) time spent by customer-service agents

21   educating customers about Parental Controls.

22              Finally, the FTC's calculation of alleged injury fails to account for the fact that

23   when Amazon provides a refund for an in-app purchase, the customer *retains* the in-app item.

24   *See* Rubenson Decl. ¶ 27.3.  In other words, customers receive a full refund *and* they or their

25   children still (or already did) enjoy the benefit of the item they purchased.

26

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 15
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2

### c.     The FTC Has Failed to Offer Any Admissible or Credible Evidence on Other Allegedly Harmed Customers

What remains of the FTC's substantial-injury argument is a set of customers who allegedly were harmed but failed to seek a refund for unauthorized in-app charges by a child. Mot. 19.  Asserting that "consumer complaints and refund requests are often just the tip of the iceberg," the FTC offers speculation based on disputed facts and a declaration of a lay witness first disclosed when the FTC filed its Motion for Summary Judgment – months after relevant case deadlines – and whose opinions are based on implausible assumptions.

### (i)     The Court Should Strike the Portions of the Miller Declaration Calculating Injury and Requested Relief

The FTC estimates that Amazon's practices caused at least ███████ in consumer injury and that, after subtracting refunds, the Court should award approximately $26.3 million in monetary relief.  Mot. 28.  The FTC's sole evidence submitted in support of its calculations is the Declaration of Julie Beth Miller, a "lead data analyst" with the FTC.  Dkt. 99 ¶ 1.  Pursuant to Local Rule 7(g), Amazon asks that the Court strike Paragraphs 6-15 ("Injury and Relief Calculations") of the Miller Declaration because (1) she was not timely disclosed as a witness, (2) the FTC's injury and relief computations were also untimely, and (3) the FTC refused to provide discovery on the damages theory expressed in the Miller Declaration.[14]

If a party fails to identify a witness or provide information as required by Rule 26(a) or (e), that party is not allowed to use that witness or information to supply evidence on a motion.  Fed. R. Civ. P. 37(c)(1).  A party's failure to disclose a computation of each category of damages, as required by Rule 26(a)(1)(A)(iii), is a basis for sanctions under Rule 37.  *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008).  As this Court has already held in this matter, "a party failing to provide information required by Rule 26(a) or (e) is not allowed to use that information to supply evidence on a motion, at a hearing, or at a trial, unless

---

[14] Although all portions of Ms. Miller's declaration are inadmissible because she was not timely disclosed as a witness, Amazon's request focuses on the injury/relief estimates due to the prejudice suffered.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 16
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    the failure was substantially justified or is harmless,"[15] which sanction is "self-executing."  Order

2    on Plaintiff's Motion to Exclude Expert Witnesses (Dkt. 139) at 3.

3            Here, the FTC first disclosed Ms. Miller as a lay witness *when it filed its motion*

4    *for summary judgment*, four months *after* the fact-discovery cutoff.  Schneider Decl. ¶ 10.

5    Further, despite its obligations under Rules 26(a)(1)(A)(iii) and 26(e) and an interrogatory served

6    on October 23, 2014, the FTC did not provide even a rudimentary computation of its requested

7    relief until *fourteen months later*, less than a month before the summary-judgment deadline, and

8    even then did not disclose Ms. Miller, the source of the computation.  *Id.* ¶ 7 & Ex. D.  Amazon

9    promptly asked the FTC for the opportunity to depose a witness knowledgeable about the

10   calculation, but the FTC refused.[16]  *Id.* ¶¶ 8-9 & Exs. E-F.

11           Although the FTC's submission of Ms. Miller's declaration finally disclosed her

12   identity and her computation, Amazon had already suffered substantial prejudice.  Not only was

13   Amazon denied the opportunity to depose Ms. Miller about her computation – which required

14   her use of a sophisticated statistical software package to analyze over a billion rows of data –

15   Amazon was presented with only these past few weeks to analyze her methodology.  *See*

16   Dkt. 99, 110 ¶ 4.  Amazon has also been harmed because had Ms. Miller's computation been

17   timely disclosed, Amazon could have engaged an expert to critique the analysis.  Schneider Decl.

18   ¶ 11 (Amazon had engaged an expert witness to rebut an expected-but-never-disclosed FTC

19   damages expert).  And, as evident from the discussion below, the complex, password-related

20

21           [15] The FTC carries the burden to prove harmlessness or justification.  *Yeti by Molly v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

22           [16] As discussed in the Schneider Declaration, the FTC tried to justify the delay by pointing to the timing of

23   Amazon's productions of data.  ¶ 9.  By the end of last August, however – more than four months before the FTC first disclosed its calculation – Amazon had produced to the FTC all fields for the password data used by Ms. Miller. *Id.* ¶ 3.  Consistent with Amazon's ongoing discovery obligations, and as is common in almost all litigation, limited

24   additional data and corrected data were produced over the next six weeks, but such productions did not include any new data fields.  The FTC merely had to update the calculations, not alter its formulas.  Moreover, at no point did

25   the FTC inform Amazon that disclosure of its remedy calculation would be delayed or that it desired relief from a case deadline as a result.  *Id.*

26

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    data upon which Ms. Miller relies necessarily requires expert analysis rather than the

2    unreasonable assumptions the FTC's counsel directed her to employ.  *See* Fed. R. Evid. 701,

3    advisory committee's note ("[The rule] ensures that a party will not evade the expert witness

4    disclosure requirements . . . by simply calling an expert witness in the guise of a layperson.").

(ii)    **Ms. Miller's Estimate Is Speculative and**
5                **Based on Implausible Assumptions**

6            Even if considered, Ms. Miller's estimate is fundamentally flawed and cannot

7    support a finding of substantial injury.  The FTC estimated "Injury" by (1) calculating an

8    "Unauthorized Charge Rate" of approximately ▮▮▮ using data relating to successful and

9    unsuccessful password entries, and (2) applying that rate to approximately ▮▮▮▮▮ in sales

10   that the FTC contends represent "in-app charges incurred without password entry in kids' apps."

11   Mot. 28; Dkt. 99, 110 ¶¶ 6-14.  The FTC's estimate, which is highly speculative and based on

12   implausible assumptions, is disputed and precludes a finding of substantial injury.

13          Ms. Miller derives the FTC's rate from data supplied by Amazon identifying

14   when customers enter their passwords to complete in-app purchases.  Ms. Miller limits the data

15   to three password-challenge types that are described in Amazon's Motion for Partial Summary

16   Judgment: the high-price, high-frequency, and high-risk password requests.  Dkt. 99, 110

17   ¶¶ 10-14; Dkt. 34 ¶ 5; Dkt. 93 at 10-13.  Ms. Miller takes the number of password "failures" for

18   those three prompts and divides by the total number of password prompts.  Dkt. 99, 110

19   ¶¶ 10-13.  Ms. Miller then takes the resulting rate and *assumes that every single password failure*

20   *was an attempt by a child that would otherwise have been a completed in-app purchase.  See*

21   Dkt. 99, 110 ¶¶ 13-14.  In support of this remarkable assumption, the FTC and Ms. Miller offer

22   only the following: "When such abandoned attempts occurred in kids' apps, these users were

23   likely children who otherwise would have incurred an unauthorized charge."  Mot. 28.  The FTC

24   offers no evidence to support this inference, which alone precludes it from supporting summary

25   judgment.  Among the many flaws in the rate used by the FTC are the following:

26

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 18
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

- From its unsupported speculation that password failures are *likely* attempts by children, the FTC assumes that *100%* are attempts by children.

- The FTC assumes *only* children play the High-Risk apps (misleadingly termed "kids' apps" by the FTC), when in fact substantial numbers of teens and adults play them, as discussed above.

- Children do not exclusively enter wrong passwords. Adults and teens often forget or type passwords incorrectly, particularly on mobile devices. For example, on average, more than 100,000 Amazon customers reset their passwords each day.

- The FTC assumes that *every* "metric event" for a password failure ("IapPurchaseChallengeFailed") represents a user's failed attempt to enter a password. But a password success is recorded only if (1) the user successfully enters the password, (2) the device successfully transmits the password to an Amazon server, (3) the server authenticates the password, and (4) the purchase is completed. A password failure is recorded for anything short of a success, including the following, nonexhaustive list of possible failures other than incorrect password entry:

  o A user closes a password prompt without inputting a password.

  o A user enters the correct password but the Appstore app closes before the purchase is authenticated.

  o A user correctly inputs a password but, because of a lost or slow Internet connection, the dialog box closes before getting an authentication response from the server.

- The FTC assumes that *none* of the password failures were attempts by children with parental approval to make the purchase, including children who forgot a password provided by a parent.

- The FTC assumes that *none* of the password failures were attempts that a parent would have later approved.

- The FTC includes password failures by account holders who affirmatively chose *not* to require a password for future in-app purchases when presented with the May 2013 or June 2014 first-time purchase prompts; these customers presumably did not have concerns about accidental purchases by children and their password failures should be excluded.

- The FTC assumes that *none* of the password failures are attempted purchases by adults who changed their minds and declined to complete in-app purchases after presented with password prompts, perhaps because they resented the inconvenience.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 19
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

- The FTC assumes *none* of the password failures reflect a user canceling an attempted purchase they accidentally initiated.

- The FTC's rate is inflated because it treats, for example, a dozen failed password attempts as a dozen would-be purchases, but a far more likely result is that a single successful purchase and the order-confirmation email would lead the parent to enable Parental Controls, which would block the eleven subsequent attempts.

- The FTC includes password failures during times when children are typically asleep or in school, indicating those failures were performed by adults.

Werner Decl. ¶¶ 10(a)-(g).  Due to the errors and implausible assumptions identified above (among others), the FTC's proffered ▇ "Unauthorized Charge Rate" lacks all credibility.

Also fundamentally flawed is Ms. Miller's calculation of revenues against which she applies the rate.  The identified revenues ▇ are improperly inflated for many reasons.  As an initial matter, the FTC's calculation sets June 3, 2014, as the end date for all purchases (other than on the first-generation Kindle Fire) because the FTC concedes that Amazon's June 2014 first-time purchase prompt complies with Section 5.  But Amazon's May 2013 first-time purchase prompt was *at least as effective* as the June 2014 prompt, as demonstrated by the refund rates from mid-2013 onward and the results of the usability test conducted by Amazon expert Craig Rosenberg.  *See* Werner Decl. Exs. A, E; Dkt. 93 at 15-19; Rosenberg Rpt. at 38-45, 53-55, 59-60.  Even under the FTC's theory of liability, there is no sound basis to include transactions after May 2013, which would reduce by approximately ▇ the revenues against which the FTC applies its rate.  Werner Decl. ¶ 11(a).

The FTC's revenues are also inflated for the following additional reasons:

- The FTC includes approximately ▇ in transactions for customers who had previously received a refund for an in-app purchase and thus had been educated about Parental Controls by customer service and were on notice of the potential risk.

- The FTC includes transactions for customers who had previously demonstrated an awareness of Parental Controls by setting up Kindle FreeTime ▇

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 20
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

- The FTC includes at least ███████ in transactions that were subject to password prompts but not excluded by Ms. Miller (password data are available for only a subset of orders and the rate of successful orders subject to a password should be applied to the portion of orders without password data).

- The FTC includes ███████ in purchases within apps rated mature or adult, apps in categories not of interest to children (e.g., accounting, navigation), and other apps directed to teens or adults (e.g., "shooter" games). This does not account for the large number of other apps that are played in significant numbers by teens and adults.

- The FTC includes at least ███████ in purchases made during hours when children are typically asleep (conservatively limited to between 11 pm and 3 am Pacific Time).

- The FTC includes more than ███████ in sales within the first-generation Kindle Fire that were priced at $19.99 and subject to a high-price password prompt.

Werner Decl. ¶¶ 11(a)-(g).

In sum, the FTC has failed to offer any admissible, credible evidence of alleged injury to customers who did not seek a refund. At a minimum, disputed material facts preclude a finding of substantial injury.[17]

### 2. Any Injury Related to In-App Purchasing by Children Was Reasonably Avoidable by Account Holders

Even if a business practice causes substantial injury, it is not unfair if consumers can reasonably avoid the injury. The purpose of the "reasonable avoidability" standard is to halt "seller behavior that unreasonably creates or takes advantage of an obstacle to the free exercise of consumer decisionmaking." FTC Policy Statement, 104 F.T.C. 949, at *97. It simultaneously shields companies from liability simply because some consumers will inevitably overlook

---

[17] The FTC's proffered evidence for the existence of an "iceberg" is invalid or at least involves disputed facts (and in any event cannot support any inference about the number of affected customers). For example, the FTC's reliance on evidence that 43% of Amazon digital customers did not open email order confirmations does not support its position. Mot. 19. For one, it is unnecessary to open the email to recognize that an Amazon purchase had been made, given the email subject line and viewable preview text. Rubenson Decl. ¶ 28.1. And those who just made a purchase would be less likely to open an order-confirmation email (i.e., part of the 43%), whereas a customer surprised by an unknown and unexpected purchase would be far more likely to open it. Also, the FTC's speculation that "some" customers were dissuaded from seeking a refund due to Amazon's refund policies and process does not attempt to quantify the number and is rebutted by testimony of experts Sabol, Callahan, and Dhar.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 21
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   notices of potential harm, fail to investigate further when presented with information they do not

2   understand, or disregard available measures to avoid harm.  *See, e.g.*, *Rabago v. Deutsche Bank*

3   *Nat'l Trust Co.*, 2011 WL 2173811, at *5 (C.D. Cal. June 1, 2011) (finding that although

4   plaintiff claimed he "was confused and puzzled by the lack of explanations and no one explained

5   the ramifications of the documents," he "provides neither an explanation why he did not

6   investigate nor why it would have been unreasonable for him to investigate").

7           Reasonable avoidability is an objective standard that necessarily contemplates

8   effort by *reasonable consumers* to identify and sidestep a potential injury, particularly where, as

9   here, Amazon provided notices of in-app purchasing as well as tools to disable it, Amazon

10  immediately sent email receipts, and Amazon has always provided generous refunds.  Indeed, in

11  a situation with far more significant consequences than here, this Court held that reasonableness

12  requires that a person read provided instructions before engaging in the instructed activity:

13          The political parties additionally argue that not all voters read the
            ballot instructions or the instructional material included with the
14          ballot. That may be true, *but a voter who ignores or refuses to read*
            *basic ballot instructions is no longer a reasonable voter*, and
15          surely not a well-informed one.  The Court cannot and will not
            consider the constitutionality of I-872 from the viewpoint of such
16          an unreasonable, uninformed voter.

17  *Wash. State Republican Party v. Wash. State Grange*, 2011 WL 92032, at *7 (W.D. Wash.

18  Jan. 11, 2011) (Coughenour, J.) (emphasis added).

19          More particularly, the Ninth Circuit has held that a reasonable Amazon customer

20  is accustomed to online shopping.  *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930,

21  939 (9th Cir. 2015) ("[I]t is highly unlikely that a reasonably prudent consumer accustomed to

22  shopping online would be confused as to the source of the goods offered for sale on Amazon's

23  web page."); *see also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137,

24  1152 (9th Cir. 2011) ("[T]he default degree of consumer care is becoming more heightened as

25  the novelty of the Internet evaporates and online commerce becomes commonplace."); *Toyota*

26  *Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010) ("[O]ur focus must be

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 22
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

on the reasonably prudent consumer in the marketplace. . . .  Unreasonable, imprudent and

inexperienced web-shoppers are not relevant.").

          a.       **Any Injury Was Reasonably Avoidable**
                      **Before Charges Were Incurred**

Applying textbook circular reasoning, the FTC contends that the alleged injury

could not have been reasonably avoided because "[c]onsumers do not have a free and informed

choice to avoid charges they do not authorize."  Mot. 21.  But one of the primary issues for trial

is whether Amazon customers in fact had a free and informed choice or had reason to anticipate

in-app purchasing when they chose not to enable available Parental Controls to require a

password for purchases and allowed their children without supervision to use their credit-card-

connected devices for apps that had previously informed parents that in-app purchasing was

available (but never compulsory).

The Ninth Circuit's decision in *Davis v. HSBC Bank Nevada, N.A.* – which the

FTC ignores – is particularly applicable and controlling.  691 F.3d 1152 (9th Cir. 2012).  In

*Davis*, the Ninth Circuit applied Section 5 and held that a consumer could have reasonably

avoided a credit-card fee because the advertisement marketing the credit card included the

"disclaimer, 'other restrictions may apply,' which would have motivated a reasonable consumer

to consult the terms and conditions" that disclosed the fee.  *Id.* at 1169.  The Court further held

that even if that minimal notice "were not enough," the online application "in boldface font at

least twice as large as the other text on the page" alerted the consumer to the "Important Terms

& Disclosure Statement."  *Id.*  And even though the terms that followed were displayed in a

"scrolling rectangular text box, the contents of which were only partially visible because one

would need to scroll down to view the whole statement," *id.* at 1158, the "disclaimer and the

terms and conditions were enough to give a reasonable consumer 'reason to anticipate' the

possibility of fees," *id.* at 1169.

The multiple notices and tools available to Amazon customers here were far more

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 23

24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    robust than the advertisement in *Davis* that said merely "other restrictions may apply."  As a

2    condition of using the Appstore, customers agree to the Amazon Appstore for Android Terms of

3    Use.  Rubenson Decl. ¶ 5.1.  In "boldface font at least twice as large as the other text on the

4    page" (like in *Davis*), Amazon identifies its "**AMAZON APPSTORE FOR ANDROID**

5    **TERMS OF USE**."  Rubenson Decl. Ex. J.  Also in "boldface font at least twice as large" as the

6    remaining text on the page, Amazon identifies the terms for "**Using and Downloading Apps**,"

7    which explain that "In-App Products" are available for purchase[18] and are "intended to be

8    accessed or used within an App."  *Id.*  Customers also agree to Amazon's Conditions of Use and

9    "accept responsibility for all activities that occur under your account or password."  *Id.* ¶ 7.1,

10   Ex. K.  Those terms also confirm that "Amazon does sell products for children, but it sells them

11   to adults, who can purchase with a credit card or other permitted payment method."[19]  *Id.* Ex. K.

12            Applying *Davis*, these notices alone were more than sufficient to give a

13   reasonable consumer "reason to anticipate" that in-app purchasing was available.  But even if

14   they somehow "were not enough," Amazon's *additional* notices and tools certainly were.  As

15   Amazon outlined in its Motion for Partial Summary Judgment, prior to launch Amazon

16   anticipated that some parents would desire and use Parental Controls, and Parental Controls have

17   always been available for parents to require a password for in-app purchases.  Dkt. 93 at 4.  From

18   the start Amazon identified and described each app offering in-app purchasing with a notice

19   highlighted by the capitalized phrase "PLEASE NOTE."  *Id.* at 5-6.  In response to higher-than-

20   expected refund requests by a small percentage of customers,[20] Amazon added a variety of

21   password requirements for certain purchases and included a framed "Key Details" legend

22   indicating when "In-App Purchasing" was offered.  *Id.* at 8-15.  Well before the FTC first

23

24       [18] Unlike the mandatory annual fee in *Davis*, in-app purchasing on Amazon devices was merely an option.

         [19] Android devices must also use an Amazon account and payment method. Dkt. 93 at 7 n.4.

25       [20] *See* FTC Ex. 12 (identifying the "small but vocal group" of customers complaining about in-app

26   purchases made by children).

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 24
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  disclosed what it believes is required under Section 5, Amazon also required a password for all

2  first-time in-app purchases per device and released Kindle FreeTime for even easier oversight of

3  child activities on Amazon tablets.  *Id.*  These features sufficiently put reasonable customers on

4  notice that in-app purchases were available, gave them a variety of tools to avoid those purchases

5  if desired and *facilitated* (not hindered) customers' free and informed choice of whether to make

6  such purchases or allow their children to do so.[21]  *See also* Dkt. 93, at 5-16 (screenshots).

7          Ignoring *Davis*, the FTC offers Ms. King, a graduate student who identifies

8  "information privacy" as her "primary research focus."  King Rpt. 70.  In assessing Amazon's

9  notices and tools, Ms. King simply declares that "many, if not most" customers would never see

10  or understand the notices – even though only a small percentage of customers ever complained

11  about insufficient notice.  Setting aside the multiple flaws with her approach[22] (including her

12  opinion that consumers would not understand that the simple terms "real money" or "actual

13  money" refer to U.S. currency, even though the FTC uses the same term "real money" in its

14  infographic teaching parents how to manage children's use of apps[23]), Ms. King admits that she

15  did *not* apply the Ninth Circuit's reasonable-consumer standard: "Within HCI [human-computer

16  interaction], I don't think we have a map to the reasonable consumer.  I wouldn't say that we

17  have a reasonable user, for example.  And I myself have concerns about the term 'reasonable

18  consumer.'"  King Dep. 217:20-23.  Ms. King might not think "reasonable consumer" is the right

19  standard, but the Ninth Circuit does.

20

21      [21] Even the FTC identified simple ways for parents to supervise their children's use of apps.  Schneider
Decl. Ex. G (FTC Infographic: "Keeping Up With Kids' Apps") ("Look at screen shots," "Read the description,"

22  "Talk to your kids about your rules for using apps," "Change your settings," "Set a password so your kids can't buy
stuff without it," and "Turn off Wi-Fi").

23      [22] The flaws in Ms. King's approach are numerous and material, including that she applied a subjective
"usability inspection" (or "heuristic" evaluation) that is considered the "most informal" method available to evaluate

24  usability, failed to apply that method according to established standards, and conducted no user testing or customer
survey (despite the preferred reliability of those methods).  Schneider Decl. Ex. H; Sears Rpt. 3-5.

25      [23] King Dep. 109:20-110:11 ("'[A]ctual' or 'real money' . . . it's a term that I would argue is likely
unfamiliar to most people."); King Rpt. 37; Schneider Decl. Ex. G.

26

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 25

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    At trial, Amazon will present the testimony of experts who challenge nearly every

2 conclusion she draws.  It is the opinion of Dr. Sears that the methods and practices Ms. King

3 uses are inconsistent with accepted and reliable methods and practices and that her opinions

4 ignore the variety of tasks and users at issue and the context of the marketplace and device.

5 Sears Rpt. ¶¶ 53-83.  Dr. Rosenberg's usability test shows that in-app purchases were

6 communicated to and understood by Kindle Fire users and that users understood the purpose of

7 Parental Controls.  Rosenberg Rpt. at 3-4.  And Dr. Dhar has opined that Amazon used

8 reasonable practices to inform customers about in-app purchasing and made reasonable data-

9 based refinements to minimize refunds for accidental in-app purchases.  Dhar Rpt. ¶¶ 53-102.

10    Finally, the cases on which the FTC relies are wholly inapposite.  In *FTC v.*

11 *Kennedy*, the consumers could not reasonably avoid fees because they "were intentionally

12 misled" that a free-trial website "would be cancelled automatically after a trial period," yet "the

13 website was not automatically cancelled" and even consumers who "refused the service" were

14 charged a setup fee.  574 F. Supp. at 717, 720 (emphasis added).  In *Neovi*, consumers were the

15 victims of "fraud" who "had no opportunity or ability to avoid the fraudulent unauthorized

16 [charges], . . . were not [defendant's] customers, had never requested goods or services from

17 [defendant], and only learned about the unauthorized access after the injury had occurred."  598

18 F. Supp. 2d at 1109.  In *Inc21.com*, the sales were "fabricate[d]" and "manipulated" and 96

19 percent of customers "received no services from defendants or their products."  745 F. Supp. 2d

20 at 987, 990, 1004.  And in *J.K. Publications*, consumers could not avoid the harm related to their

21 stolen credit-card numbers from companies using "fictitious business names" because the

22 "customer service department was overwhelmed with complaints" and understaffed and an

23 "astonishing 40% to 50%" of all contacts were from customers who "did not have a computer

24 and had not given their card numbers to anyone."  99 F. Supp. 2d at 1191-92, 1202-03.

25    All told, the evidence raises a genuine dispute that a reasonable consumer who

26 gives a credit-card enabled media-consumption device to a child would first read available

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 26
24976-0374/LEGAL129885395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    notices about the opportunity to make additional purchases or at least inquire about the

2    availability of a mechanism to disable those purchase options.  None of Amazon's notices

3    contained false or incomplete information; indeed, the FTC has not asserted a claim for

4    deceptive practices.  Nor were consumers presented with a take-it-or-leave-it choice in which

5    they had to risk their children making unauthorized in-app purchases or give up their Kindle Fire

6    tablet.  The opposite is true; parents had a "free and informed choice" that allowed them to

7    disable all such purchasing if they wanted.  *See Neovi*, 598 F. Supp. 2d at 1115.  And they had

8    "reason to anticipate" that in-app purchasing was available and were provided many "means to

9    avoid" accidentally making those purchases.  *Davis*, 691 F.3d at 1168.

### b.      Any Injury Was Reasonably Avoidable After Charges Were Incurred

10
11
12          The FTC also flagrantly omits from its motion any discussion of the

12   overwhelming evidence confirming that even if Amazon customers could not have avoided the

13   injury before incurring charges, they could have reasonably avoided those charges afterwards.

14   The FTC has twice told the Court that Amazon's generous refunds to customers who made

15   accidental in-app purchases "cannot" as a matter of law render avoidable any alleged injury.

16   Dkt. 112 (FTC Mot. to Exclude Amazon Experts) 11, 14-15 ("has no bearing" on reasonable

17   avoidability); Dkt. 11 (FTC Resp. to Amazon Mot. to Dismiss) 11-12 ("does not render the

18   injury avoidable").  But the FTC is categorically wrong.

19          The Ninth Circuit has expressly held that under Section 5 of the FTC Act, a

20   practice is not unfair if consumers can reasonably avoid the injury either before *or after* the fact,

21   including where the consumer can address the injury through *post-purchase mitigation efforts* –

22   for example, by seeking a refund.  *Davis* 691 F.3d at 1168 ("An injury is reasonably

23   avoidable . . . if consumers are aware of, and are reasonably capable of pursuing, potential

24   avenues toward mitigating the injury after the fact."); *Neovi*, 604 F.3d at 1158 (reviewing the

25   district court's analysis of pre- and *post-harm* reasonable avoidability); *see also Orkin*

26

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 27

24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    *Exterminating Co. v. FTC*, 849 F.2d 1354, 1365 (11th Cir. 1988) ("Consumers may . . . seek to

2    mitigate the damage afterward if they are aware of potential avenues toward that end.").

3              Courts have routinely evaluated whether an alleged injury was reasonably

4    avoidable by considering the availability and ease with which a consumer could obtain a refund.

5    *Davis* is again controlling.  The Ninth Circuit held that even if the consumer could not have

6    avoided the credit-card fee before enrolling, he could have reasonably avoided it after because

7    "the annual fee was completely *refundable* if [plaintiff] closed his account within 90 days

8    without using the card."  691 F.3d at 1169 (emphasis added).  Even though closing the account to

9    obtain the refund would have a "negative impact" on the consumer's credit score, the question of

10   post-harm reasonable avoidability "was not whether subsequent mitigation was *convenient or*

11   *costless*, but whether it was 'reasonably possible.'"  *Id.* (emphasis added).

12             The ability to defend against an FTC charge by providing refunds or other post-

13   harm relief exists for good reason: companies should be encouraged to voluntarily remedy

14   consumer harm.  Where companies do so, the FTC should not be able to declare practices

15   "unfair" after the fact, particularly where the remedy is nearly 100% effective.  Similar to the

16   concept of standing, where there is no injury there is no harm to redress.

17             To that end, there is without question a genuine dispute requiring trial because

18   substantial evidence shows that Amazon's generous refunds were not just "reasonably possible"

19   but *easy* to obtain.  *See, e.g.*, Callahan Rpt. 28 (citing study showing that "Amazon issues

20   refunds faster than any other online retailer.").  Amazon's customer-service practice has always

21   been to provide a refund for all first-time, accidental in-app purchases.  Dkt. 93 at 9; Dhar

22   Rebuttal Rpt. 24 (noting that of the 400 customer contacts reviewed in Ms. King's report, there

23   was not a "single case where customer service agents refused to provide a refund").  Often

24   Amazon was even more generous and provided refunds even after multiple refund requests from

25   the same customer, for purchases that almost certainly were not accidental.  Dkt. 93 at 9.

26   Amazon granted refunds to nearly every consumer who requested them.  Werner Decl. ¶¶ 16-17.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 28

24976-0374/LEGAL129985395.1

1        In addition to the several Amazon witnesses who have testified about Amazon's

2   customer-centric refund policies and practices – including that each in-app purchase, like every

3   purchase from Amazon, resulted in delivery of an immediate order-confirmation email to the

4   account holder – the Court will hear the testimony of expert witness Michael Callahan.  Mr.

5   Callahan has opined that independent researchers and surveys reveal that Amazon consistently

6   ranks among the best companies for exceptional customer satisfaction and that Amazon makes it

7   easy for customers, including in-app purchasers, to contact and receive generous refunds.

8   Moreover, in response to Ms. King's untested contention that *some* avenues[24] to reach Amazon's

9   customer service were, in her view, hard to find or follow, Dr. Sabol's survey shows that 94% of

10  digital-product purchasers and in-app purchasers found it easier or no more difficult to contact

11  Amazon's customer service than they had experienced with other companies.[25]

12       All told, Amazon's refund practices stand in stark contrast to those determined

13  insufficient in other unfair-practices cases.  In *FTC. v. Inc21.com Corp.*, the injury was not

14  reasonably avoidable after the fact because "consumers, even after recognizing that they are

15  being charged by [defendants], *cannot cancel their services or obtain refunds from defendants*

16  *despite reasonable efforts*."  688 F. Supp. 2d 927, 939 (N.D. Cal. 2010) (emphasis added).  And

17  in *FTC v. Ideal Fin. Sols., Inc.*, the defendant's customer-service staff "were instructed to push

18  the financial services that the consumers had purchased *and avoid refunds or chargebacks*."

19  2015 WL 4032103, at *8 (D. Nev. June 30, 2015) (emphasis added); *see also FTC v. Kennedy*,

20  574 F. Supp. 2d 714, 720-21 (S.D. Tex. 2008) (finding that "consumers were forced to expend

21  substantial time and effort to obtain refunds and cancellation of the service" and that "[w]hen

22

23  [24] Among the several avenues Ms. King did not evaluate:  Googling "contact Amazon" or typing "contact Amazon" into the search bar above Amazon's website immediately displays in large font Amazon's toll-free number, which is not true for other online retailers.  Rubenson Decl. ¶ 29.1.  And Amazon provides a mechanism by which it will call the customer, rather than the customer waiting on hold.

24

25  [25] Sabol Rpt., at 4.  The results of Dr. Rosenberg's usability test similarly show that all subjects successfully contacted Amazon to request a refund.  Rosenberg Rpt., at 47.

26

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 29
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1     consumers requested refunds, they did not immediately receive them."); *FTC v. Crescent Pub.*

2     *Grp., Inc.*, 129 F. Supp. 2d 311, 322 (S.D.N.Y. 2001) ("[C]onsumers have had difficulty in

3     avoiding or reversing defendants' bills.  Some consumers have been unable to determine who

4     was billing them, what they were being billed for, and how to contest the charges.").

5           Accordingly, because there is a genuine dispute regarding whether Amazon

6     customers could have reasonably avoided the alleged injury both before and after in-app charges

7     were incurred, the Court should deny the FTC's motion for summary judgment.

8        **3.**     **Any Risk of Injury to Customers Was Outweighed by the**

9              **Benefits to both Consumers and Competition**

10         Nor has the FTC presented any analysis showing that the risk of injury to Amazon

11    customers was not outweighed by the benefits to both consumers and competition.  The FTC

12    says simply that billing customers for charges they did not authorize confers no benefit.  Mot.

13    25-26.  But that conclusory assertion misses the point; the purpose of assessing countervailing

14    benefits is to determine whether the practice is "injurious in its net effects" – which involves

15    weighing the benefits conferred – such as "an increase in the level of service provided or an

16    enhancement of its quality," *Orkin Exterminating*, 849 F.2d at 1365 – against the risk of harm,

17    *Int'l Harvester*, 104 F.T.C. 949 (1984) (assessing countervailing benefits "against the risks of

18    injury").  Here, the FTC ignores the significant benefits of Amazon's purchasing experience and

19    the costs of the remedy it would impose.

20         The FTC overlooks, for example, the expert opinion of Dr. Hoffman, who opines

21    that customers prefer a seamless, efficient mobile experience; that Amazon's customers have

22    come to expect Amazon to provide such a seamless purchase flow; and that Amazon's notices

23    and refinements appropriately balanced the issue of accidental purchases by a small percentage

24    of customers without imposing unnecessary friction on the vast majority of customers.  Hoffman

25    Rpt. ¶¶ 16-18.  Dr. Hoffman's opinions are unrebutted and confirm that seamless purchasing is

26    important to Amazon's ability to compete.  Amazon has long endeavored to balance the friction

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 30

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  from additional password prompts against the desire of most of its customers for a seamless

2  purchase experience,[26] which is precisely the type of cost-benefit analysis the FTC expects all

3  business to conduct without incurring liability under Section 5.  1980 Policy Statement ("Most

4  business practices entail a mixture of economic and other costs and benefits for purchasers.").

5  Without acknowledging this evidence, and without the support of any expert,[27]

6  the FTC simply assumes that its approach "would produce a net benefit to consumers" because

7  Amazon acknowledged it could lower its costs by reducing customer-service contacts related to

8  accidental in-app purchases.  Mot. 26 (citing Ex. 98).  But the FTC ignores that Amazon

9  estimated those savings (in a single department) from its data-driven refinements tailored to the

10  small percentage of customers who were contacting Amazon, while limiting adverse effects on

11  the overwhelming majority of customers who did not desire additional passwords.  *Id.*  The FTC,

12  on the other hand, has performed no analysis showing that its text-heavy, one-size-fits-all

13  approach is any more effective at informing customers about in-app purchases than Amazon's

14  earlier approach, that it makes any meaningful difference in further reducing refund rates,[28] and

15  that it does not create *greater* harm overall by discouraging Amazon customers from making

16  desired in-app purchases or encouraging those customers to shop elsewhere.[29]

17

18  [26] *See, e.g.,* Ex. 53 (noting that by adding password prompts, "we are optimizing for a very small
percentage of customers and making a worse experience for the larger percentage (4% and 96% to be exact)"); Ex.

19  54 (discussing advantage of a password for in-app purchases of $20 or more rather than enabling Parental Controls
by default because that will "give us a lever that we can adjust over time as we get smarter about this problem and
will also only put a small number of customers through the additional friction of the password"); Ex. 105 ("[A]

20  solution to this problem must carefully balance using technology to reduce 'friendly fraud' orders without inhibiting
the one-click purchase process.  Only 5% of our customers have sought refunds, so our solution must not interfere

21  with the majority of users.").

22  [27] *See Neovi*, 604 F.3d at 1158-59 (affirming absence of countervailing benefits where the FTC's *expert*
showed that defendant's services were "less convenient" than its competitors, who offered "the same services at a

23  cheaper price and with greater security").

24  [28] Notably, as Amazon explained in its Motion for Partial Summary Judgment, implementation of the
FTC's approach in June 2014 did not result in significant further reduction in refunds.  Dkt. 93 at 16.

25  [29] Nor do the FTC's cited cases support its position.  In *Inc21.com*, there was no countervailing benefit for
the "fabricate[d]" sales because "nearly 97 percent of defendants' 'customers' never wanted these [illusory]
'benefits' in the first place" and "96 percent of defendants' 'customers' stated that they received no services from

26  defendants or their products."  745 F. Supp. 2d at 990, 1004.  In *J.K. Publications*, the absence of a countervailing

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 31

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Moreover, consumers and competition benefit when companies are free to

2 respond quickly to consumer demand for new and innovative products, and to adjust their

3 offerings to improve the customer experience in response to data-driven feedback.  Such

4 innovation is discouraged when Section 5 liability is stretched to cover instances where a

5 company's innovation results in unanticipated consumer dissatisfaction, the company responds

6 to that dissatisfaction in good faith, and voluntarily provides remedies to its customers.  If

7 companies must eliminate in advance every possible consumer complaint without being

8 permitted to rely on a reasonable set of tools to avoid those complaints, innovation will suffer.

9 The FTC fails to weigh these considerations in its cursory discussion of countervailing benefits,

10 despite the fact that Commission members have identified the harmful consequences of failing to

11 account for such benefits.  *See* [Former FTC Commissioner] Joshua D. Wright & John Yun, *Stop*

12 *Chug-a-lug-a-lugin 5 Miles an Hour on Your International Harvester*, 83 GEO. WASH. L. REV.

13 2130, 2134 (2015) ("[I]t is incredibly important that regulators implement the correct economic

14 tools to ensure that consumer protection enforcement and policy initiatives actually promote

15 consumer welfare rather than stifle innovation and leave consumers worse off.").

16    Accordingly, there remains a genuine dispute that any risk of any injury was not

17 outweighed by the benefits of its purchasing experience to both consumers and competition.

18 **C.    The FTC Is Not Entitled to Its Requested Relief**

19    **1.    There Is No, and Never Was Any, Basis for Prospective Injunctive Relief**

20    As Amazon outlined in its Motion for Partial Summary Judgment, there is no

21 evidence supporting prospective injunctive relief.  Confirming Amazon's position, the FTC in its

22 motion says absolutely nothing about Amazon's current practices that would justify a 20-year

---

25 benefit was "easily satisfied" because the harm was so egregious:  defendants used "fictitious business names" to
extract membership fees for adult-content websites, "stole" credit-card numbers, and "did not run legitimate
26 operations."  99 F. Supp. 2d at 1202-03.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 32
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

permanent injunction with heavy and unwarranted government oversight.[30] *FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) ("Past wrongs are not enough for the grant of an injunction; an injunction will issue only if the wrongs are ongoing or likely to recur."); *United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854 (9th Cir. 1995) (requiring "some cognizable danger of recurrent violation . . . based on appropriate findings supported by the record").

Notably, as reflected in the following chart, Amazon's voluntary refinements from launch have resolved the issue; the monthly refund rates for in-app purchases have remained low and flat since mid-2013:

**Figure 2: Refund Rates for In-App Purchases (through December 2015)**



---

[30] Any reliance the FTC may be placing on sales from Amazon's first-generation device to support a 20-year injunction is misplaced.  *See* Mot. 28. n23.  Amazon discontinued selling that device over three years ago, all remaining purchases over $0.99 from the device are subject to a password prompt, and in-app-purchase sales under $1 from the device currently amount to less than 0.1% of total sales.  Rubenson Decl. ¶ 11.1; Werner Decl. ¶19 & Ex. F..

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 33
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Werner Decl. Ex. E.

2              Instead of acknowledging those efforts, in a single paragraph the FTC asks the

3    Court to impose a permanent injunction (without trial) and merely refers the Court to *negotiated*

4    settlements the FTC has with *other* companies, one of which does not even sell in-app products.

5    Those settlements shed no light on the question here.[31]  The FTC has provided neither Amazon

6    nor the Court with any information by which it could evaluate whether the terms of those

7    settlements have any bearing on the necessity of an injunction here, including those companies'

8    efforts, if any, to curtail accidental in-app purchases;[32] their refund policies or practices; the

9    deliberateness or seriousness of their alleged violations; or their history of compliance with

10   consumer-protection laws.  *See Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 392 (9th Cir. 1982)

11   ("Two factors or elements frequently influence our decision [to issue an injunction under Section

12   5] – the deliberateness and seriousness of the present violation, and the violator's past record

13   with respect to unfair advertising practices.").

14             Nor do any of the cases the FTC cites support a 20-year monitoring and reporting

15   injunction.  In *FTC v. Loewen*, the court entered an injunction in the "deception" case because

16   defendants – who the court earlier sanctioned and who did not even respond to the FTC's motion

17   – used a "telemarketing scheme that defrauded the sellers of vehicles" and injunctive relief was

18   necessary "to prevent Defendants from continuing to engage in the heretofore lucrative deception

19   they have been practicing."  2013 WL 5816420, at *1, *7  (W.D. Wash. Oct. 29, 2013).  In *FTC*

20

21             [31] In one case the FTC cites to support injunctive relief, the FTC told the court to *ignore* other settlements –
22   in the *same multiparty case* – precisely because those settlements resulted from "a negotiated agreement," a point
     the court noted was "well-taken."  *FTC v. Ivy Capital, Inc.*, 2013 WL 3270534, at *3 (D. Nev. June 26, 2013).
23   Moreover, the FTC's reliance on those settlement agreements is ironic: the FTC challenged Amazon's ability to
     obtain information about Apple's and Google's in-app purchasing practices.  Even with respect to discovery on
24   those specific settlement agreements, the FTC refused to answer questions or discovery requests.  *See* Mithal
     30(b)(6) Dep. 58:16-22 (instructing witness not to answer "[H]ow do[] Amazon's current practices compare with
     what's required of Apple in that consent order?"), 144:5-11, 179:2-16.

25             [32] In fact, as referenced below, the FTC Commissioners concluded that, unlike Amazon, Apple did nothing
26   for more than two-and-a-half years despite tens of thousands of complaints.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 34
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*v. John Beck Amazing Profits LLC*, the court entered an injunction in a $500 million telemarketing "deception" case because defendants had a "long history of blatantly disregarding the law" and their violations were "serious, pervasive, and continuous," including "even as this litigation was pending." 888 F. Supp. 2d 1006, 1010 (C.D. Cal. 2012). And in *FTC v. Ivy Capital, Inc.*, the court entered an injunction because defendants "bilked consumers" out of $130 million with a telemarketing "scam." 2013 WL 3270534, at *1 (D. Nev. June 26, 2013). None of those cases reflect the evidence in this case and none support imposition of an injunction here.

### 2. The FTC's Request for Monetary Relief Is Speculative and Wrong

For the reasons discussed in Part III.B.1.c above, the FTC has failed to submit any admissible, credible, or unrebutted evidence supporting its request for $26.3 million in monetary relief, and it has not met its burden to "show that its calculations reasonably approximated the amount of customers' net losses." *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997).

### D. This Case Represents a Fundamental and Unwarranted Expansion of the FTC's Unfairness Authority

With respect to cases alleging unauthorized billing, as here, "in the vast majority of cases, the defendant either has intentionally concealed from consumers the fact that they would be billed or has fraudulently billed consumers without any pretense of obtaining permission. Other unauthorized billing cases involve conduct falling just short of complete fraud . . . ." Wright, *supra*, at 2146-47 & nn. 77-78 (citing representative cases). This case departs from those prior unfair-practices cases where defendants intentionally or recklessly created or took advantage of consumer confusion and profited from unauthorized charges. Unlike Amazon, none of those defendants made voluntary good-faith attempts to correct the problem for the future or provided refunds for the past. *Cf. In re Apple Inc.*, No. 112-3108, 2014 WL 253519, at *27 (F.T.C. Jan. 15, 2014) (Statement of Commissioner Maureen K. Ohlhausen) ("The complaint challenges only one billing issue of which *Apple became well aware but failed to address in subsequent design iterations*." (emphasis added)) *Id.*

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 35
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    The FTC's allegations amount to a theory that Amazon should be liable for

2    implementing notices and tools that fall short of what the FTC deems in hindsight to be best

3    practices.  But due process requires "fair notice to ordinary people who are required to conform

4    their conduct to law," *United States v. Kozminski*, 487 U.S. 931, 949 (1988), and an agency's

5    interpretation of the law undermines due process where, as here, it results in "unfair surprise,"

6    *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2159 (2012).

7    The FTC seeks to hold Amazon liable for standards of conduct that it, at best, first

8    disclosed in January 2014 when it announced a settlement with Apple.  When pressed, the FTC

9    admits that there is not "one 'process' or 'procedure' to obtain express informed consent before

10   billing consumers,"[33] it refused to answer whether Amazon's practices complied with even

11   Apple's negotiated settlement, and for nearly two years after initiating its investigation declined

12   to provide Amazon guidance on what Amazon must do, if anything, to comply with the FTC

13   Act.  Dkt. 93 at 22.  Had the FTC provided even minimal guidance during its investigation

14   (during which Amazon twice presented the FTC with its current and upcoming in-app practices),

15   this lawsuit and any alleged "injury" could have been avoided.  *See AMC Entm't, Inc.*, 549 F.3d

16   760, 769 (9th Cir. 2008) (expressing "frustration that the government could have solved this

17   problem, without time- and cost-consuming litigation, by merely clarifying [the regulation]

18   through amendment or some other form of public pronouncement" and "declin[ing] to require

19   [defendant] to have determined the precise meaning of the regulation when the government did

20   not do so.").

## IV.    CONCLUSION

22   The Court should strike Paragraphs 6-15 of the Miller Declaration and deny the FTC's

23   motion for summary judgment.

---

[33] Schneider Decl. Ex. C (FTC Response to Amazon Interrogatory 6) at 8.

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 36

24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2    DATED:  February 22, 2016

3

4    *s/ Harry H. Schneider, Jr.*                    *s/ J. Douglas Baldridge*
     Harry H. Schneider, Jr. WSBA No. 9404          J. Douglas Baldridge WSBA No. 37247
5    David J. Burman WSBA No. 10611                 Danielle R. Foley (admitted *pro hac vice*)
     Jeffrey M. Hanson WSBA No. 34871               **Venable LLP**
6    Attorneys for Defendant Amazon.com, Inc.       575 7th Street, NW
     **Perkins Coie LLP**                           Washington, DC 20004
7    1201 Third Avenue, Suite 4900                  Telephone: (202) 344-4000
     Seattle, WA  98101-3099                        Facsimile: (202) 344-8300
8    Telephone:  206.359.8000                       jbaldridge@venable.com,
     Facsimile:  206.359.9000                       drfoley@venable.com
9    HSchneider@perkinscoie.com
     DBurman@perkinscoie.com
10   JHanson@perkinscoie.com

11

12                          *Attorneys for Defendant Amazon.com, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AMAZON'S OPPOSITION TO THE FTC'S                              **Perkins Coie LLP**
MOTION FOR SUMMARY JUDGMENT                              1201 Third Avenue, Suite 4900
(No. 2:14-CV-01038-JCC) – 37                                Seattle, WA  98101-3099
Phone:  206.359.8000
                                                              Fax:  206.359.9000

1

**CERTIFICATE OF SERVICE**

2

3        I certify that on February 22, 2016, I electronically filed the foregoing Amazon.com, Inc.

Response to the FTC's Motion for Summary Judgment with the Clerk of the Court using the

4

CM/ECF system, which will send notification of such filing to attorneys of record.

5        I certify under penalty of perjury that the foregoing is true and correct.

6

7        DATED this 22nd day of February, 2016.

8

9                                         *s/ Harry H. Schneider, Jr.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AMAZON'S OPPOSITION TO THE FTC'S
MOTION FOR SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 38
24976-0374/LEGAL129985395.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000