1
2
3
4
5
6
7   UNITED STATES DISTRICT COURT
8   WESTERN DISTRICT OF WASHINGTON

9   FEDERAL TRADE COMMISSION,            **Case No. 2:14-cv-01038-JCC**
10
            Plaintiff,                    **PLAINTIFF'S REPLY IN SUPPORT**
11                                        **OF ITS MOTION FOR SUMMARY**
     v.                                   **JUDGMENT**
12
13  AMAZON.COM, INC.,                     NOTE ON MOTION CALENDAR:
                                          Friday, February 26, 2016
14          Defendant.
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................iii

BACKGROUND ..........................................................................................1

ARGUMENT ...............................................................................................3

I.    AMAZON CAUSED SUBSTANTIAL INJURY TO CONSUMERS. ..............................3

    A.    Amazon caused injury even though it issued refunds. ...................................4

    B.    The time and effort consumers spent attempting to resolve unauthorized
charges constitutes additional injury. ...........................................................5

II.    CONSUMERS COULD NOT REASONABLY AVOID THE HARM. ...........................6

    A.    Amazon's injured consumers could not reasonably avoid unauthorized
charges before they were incurred.................................................................6

    B.    The unadvertised availability of a possible one-time exception to Amazon's
no-refund policy does not make injury reasonably avoidable......................9

        1.    The mere possibility of a refund does not make injury reasonably avoidable. ............9
        2.    Injured consumers did not have a free and informed choice to fully avoid the
harm by seeking a refund after the fact. ........................................9

III.    THE INJURY AMAZON'S CONSUMERS SUFFERED WAS NOT OUTWEIGHED BY
ANY COUNTERVAILING BENEFITS TO CONSUMERS OR COMPETITION. ....................11

IV.    AMAZON IS LIABLE FOR THE REQUESTED INJUNCTIVE AND EQUITABLE
MONETARY RELIEF. ..................................................................................12

    A.    The FTC's requested injunctive relief is justified.....................................12

    B.    The FTC met its burden of reasonably approximating monetary relief. ....................13

    C.    Amazon's objections to the FTC's evidence are meritless. .......................16

V.    AMAZON HAD FAIR NOTICE THAT UNAUTHORIZED BILLING VIOLATES THE
FTC ACT...................................................................................................18

CONCLUSION ..........................................................................................18

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION        Federal Trade Commission
FOR SUMMARY JUDGMENT        600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-01038-JCC        Washington, DC  20580
ii        (202) 326-3231

**TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................... 1

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ...................................... 8, 11

*FTC v. Accusearch, Inc.*, No. 06-cv-105-D, 2007 WL 4356786 (D. Wyo. Sept. 28, 2007) .......... 5

*FTC v. Commerce Planet*, 878 F. Supp. 2d 1048 (C.D. Cal. 2012) ..................................... 3, 4, 15

*FTC v. Crescent Publ'g Grp.*, 129 F. Supp. 2d 311 (S.D.N.Y. 2001) ........................................ 10

*FTC v. Direct Benefits Grp., LLC*, No. 6:11-cv-1186-Orl-28TBS, 2013 WL 3771322 (M.D. Fla. July 18, 2013) ........................................................................................................................... 9

*FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1 (1st Cir. 2010) ................................................. 13

*FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d 202 (D. Mass. 2009) ............................... 13

*FTC v. Directv, Inc.*, No. 15-CV-01129-HSG (MEJ), 2015 WL 7775274 (N.D. Cal. Dec. 3, 2015) .............................................................................................................................................. 17

*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997) ........................................................................... 13, 14

*FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001) ................................................................................... 12

*FTC v. Ideal Fin. Sols., Inc.*, No. 2:13-cv-00143-JAD-GWF, 2015 WL 4032103 (D. Nev. June 30, 2015) ........................................................................................................................................ 5

*FTC v. Inc21.com Corp.*, 475 F. App'x 106 (9th Cir. 2012) .............................................. 6, 9, 15

*FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975 (N.D. Cal. 2010) ........................................... 6, 13

*FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000) ........................................... 4, 11

*FTC v. Neovi, Inc.* ("*Neovi I*"), 598 F. Supp. 2d 1004 (S.D. Cal. 2008) ..................................... 5

*FTC v. Neovi, Inc.* ("*Neovi II*"), 604 F.3d 1150 (9th Cir. 2010) ...................................... passim

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) ................................................................. 4

*FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168 (9th Cir. 1997) ......................................... 1

*FTC v. QT, Inc.*, 512 F.3d 858 (7th Cir. 2008) .......................................................................... 15

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) ........................................................................ 1

*FTC v. Verity Int'l, Ltd.*, 124 F. Supp. 2d 193, 203 (S.D.N.Y. 2000) ........................................ 8

*FTC v. Windward Mktg., Ltd.*, No. Civ.A. 1:96-CV-615F, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) .................................................................................................................................. 5, 11

*FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015) ............................................. 18

*In re In-app Purchase Litig.*, 855 F. Supp. 2d 1030 (N.D. Cal. 2012) ...................................... 11

*Mabrey v. Wizard Fisheries, Inc.*, No. C05-1499L, 2007 WL 1795033 (W.D. Wash. June 8, 2007) .............................................................................................................................................. 18

*Maharaj v. Cal. Bank & Trust*, 288 F.R.D. 458, 463 (E.D. Cal. 2013) ...................................... 18

*Orkin Exterminating Co. v. FTC*, 849 F.2d 1354 (11th Cir. 1988) ................................... 9, 10, 11

*Orkin Exterminating Co.*, 108 FTC 263 (1986) ..................................................................... 7, 10

*SEC v. Amazon Natural Treasures, Inc.*, 132 F. App'x 701 (9th Cir. 2005) ............................. 17

*SEC v. Badian*, 822 F. Supp. 2d 352 (S.D.N.Y. 2011) *amended on reconsideration in part*, No. 06 CIV. 2621 LTS, 2012 WL 2354458 (S.D.N.Y. June 20, 2012) ........................................ 17

*SEC v. First City Fin. Corp.*, 890 F. 2d 1215 (D.C. Cir. 1989) .................................................. 15

*United States ex rel. Parikh v. Premera Blue Cross*, No. C01-0476 MJP, 2006 WL 2927699 (W.D. Wash. Oct. 11, 2006) ...................................................................................................... 17

*United States v. Laerdal Mfg. Corp.*, 73 F.3d 852 (9th Cir. 1995) ........................................... 13

*Wash. State Republican Party v. Wash. State Grange*, No. C05-0927-JCC, 2011 WL 92032 (W.D. Wash. Jan. 11, 2011) ........................................................................................................ 7

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

iii

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

**Rules**

Fed. R. Civ. Pro. 26(a)(1) ..................................................................................... 16, 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

iv

1 Nothing in Amazon's response to the FTC's motion for summary judgment precludes

2 resolution of this case before trial. Rather than dispute the facts material to liability, Amazon

3 argues with the law and attempts to defeat the FTC's claim with peripheral and irrelevant

4 information. The undisputed facts show that Amazon billed many ████ of consumers for

5 unauthorized in-app charges by children within kids' games. There remains no genuine issue of

6 material fact about the FTC's claim, request for relief, or Amazon's defenses.

7 Much of Amazon's argument rests on the unsupported proposition that companies can

8 bill consumers for unauthorized charges as long as they return at least some of the charges later.

9 In Amazon's view, injury must be irreversible to be unfair, its "award-winning" customer service

10 allows it to engage in unauthorized billing with impunity, and rampant refund requests absolve it

11 of liability rather than show the extent of the violation. The mere possibility of remedying injury

12 has never been a defense to an FTC action before. The law is no different here.

### LEGAL AND FACTUAL BACKGROUND

14 "Once the FTC has made a prima facie case for summary judgment," as it has here, "the

15 defendant . . . must produce *significant probative evidence* that demonstrates that there is a

16 genuine issue of material fact for trial." *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168,

17 1170 (9th Cir. 1997) (emphasis added). In attempting to meet this burden, a defendant cannot

18 rely on "bald assertions or a mere scintilla of evidence in his favor." *FTC v. Stefanchik*, 559 F.3d

19 924, 929 (9th Cir. 2009). Nor are "conclusory, self-serving affidavit[s], lacking detailed facts and

20 any supporting evidence" sufficient to withstand summary judgment. *Publ'g Clearing House,*

21 *Inc.*, 104 F.3d at 1171. Even if genuine, "[o]nly disputes over facts that might affect the outcome

22 of the suit under the governing law will properly preclude the entry of summary judgment.

23 Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty*

24 *Lobby, Inc.,* 477 U.S. 242, 248 (1986).

25 Amazon insists "nearly all" of the FTC's facts are disputed, but its brief does not discuss

26 most of them, and the employee declaration it submits in support confirms the opposite. Opp'n at

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

6. Amazon does not dispute the material facts. It disagrees with what they "imply[.]" Opp'n at 3. The Court need not rely on implications to find liability here. Among other facts, there remains no dispute that Amazon billed many ███████ of consumers for ██████ of dollars in children's in-app charges, Mot. for Summ. J. ("MSJ") at ¶¶ 23-24 (Dkt. 98); that Amazon recognized that children were likely to use the Fire devices and play many of the games, *id.* ¶¶ 2, 5; that parents were confused about in-app charges and complained they were not aware of them or that Amazon would bill such charges without asking for a password or account information, *id.* ¶¶ 9, 25-30; that Amazon's own employees criticized the ineffectiveness of the disclaimer language on which Amazon relied to notify consumers of in-app charges, *id.* ¶ 10; and that its "parental controls" were a little-used feature that many injured consumers did not know about.[1] *Id.* ¶ 11 n.3. Amazon asserts that adults used "many" of the apps at issue, Opp'n at 5, but it remains undisputed that complaints and refund rates were driven by kids' charges. MSJ ¶ 12; Rubenson Decl. ¶ 12 (Dkt. 171) (not disputing Amazon's "primary root cause" analysis).

While Amazon contends that the FTC misconstrued a "no return" policy as a "no refund" policy, Opp'n at 6, it does not dispute that Amazon describes the charges as "final" and nowhere states that they are refundable. MSJ ¶ 37. Instead, Amazon argues that its public-facing statements "do not accurately describe customers' ability to obtain refunds from Amazon." Rubenson Decl. ¶ 27.1. While Amazon's practice may have been different when actually contacted by consumers, there is no dispute about its public-facing policy. Indeed, Amazon employees frequently referred to in-app charges as "not refundable" under the stated policy.[2]

---

[1] Among the controls Amazon touts was an app called FreeTime that had a range of functions primarily unrelated to in-app charges. Opp'n at 7. It is undisputed that Amazon did not disclose that its controls had to be activated to avoid unauthorized in-app charges. MSJ ¶ 11 n.3. Moreover, despite Amazon's claim that FreeTime was linked to a first-time user experience in 2013, Opp'n at 7, the cited testimony actually states that this change began in the fall of 2014. Schneider Decl., Ex. M at 63:2-22.

[2] *See, e.g.,* Ex. 510 to MSJ at 52:17-20 ("Yeah, that's the – that's our official policy, is digital content's not refundable."); Ex. 548 at 37:10-15 ("Generally . . . the published policy was that there were no refunds on digital purchases."); Ex. 420 to MSJ at 6:10-14 ("Normally, digital content is nonrefundable."); Ex. 442 to MSJ at 15:21-24 ("[T]hese types of purchases are traditionally nonrefundable . . . ."); Ex. 444 to MSJ at 18:18-20 ("Normally, those charges aren't refundable . . . ."); Ex. 453 to MSJ at 18:5-7 ("[N]ormally we don't refund in-app purchases."); *see also* Ex. 550 ("Normally, in-app purchases are not refundable . . . .").

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

2

And there is no dispute that Amazon employees acknowledged that some consumers would not notice the charges or seek refunds, and some consumers unsuccessfully sought refunds from app developers rather than contacting Amazon. MSJ ¶¶ 36, 41.

Amazon makes much of the six expert witnesses it retained, supposedly to rebut the "sole expert upon whom the FTC rests much of its case." Opp'n at 1, 8-9. This characterization does not reflect the FTC's motion, which cites expert testimony only a handful of times and only to corroborate undisputed facts, because expert testimony is unnecessary to resolve the FTC's claim.[3] Amazon lists its various experts' areas of testimony, often without explaining how that testimony could create a dispute about any relevant fact. None of it does, *see* Dkt. 104, and the FTC addresses such testimony where relevant to any actual element of its claim.

Rather than dispute the facts showing liability, Amazon spends much of its brief attempting to discredit the FTC's calculations of relief by quibbling with the precise magnitude of harm. This is not sufficient to withstand summary judgment.

## ARGUMENT

The FTC has shown that: (1) consumers sustained or were likely to sustain substantial injury from Amazon's practices; (2) the injury was not reasonably avoidable by consumers themselves; and (3) the injury was not outweighed by countervailing benefits to consumers or competition. There remains no genuine issue of fact material to these elements.

### I. Amazon Caused Substantial Injury to Consumers.

The facts showing substantial injury—███████ of dollars billed in kids' apps without any mechanism requiring consent, ████████████ of consumers specifically complaining about unauthorized charges, significant refund rates, and time spent recovering the charges—remain undisputed. These facts are sufficient to sustain the FTC's claim. Amazon argues that (1)

---

[3] Though Amazon repeatedly derides Ms. King, she is a well-qualified expert in her field, as Amazon implicitly admitted when it did not seek to exclude her testimony. Her work is relevant and reliable and has been credited as such before. *FTC v. Commerce Planet*, 878 F. Supp. 2d 1048, 1068 (C.D. Cal. 2012) ("[T]he Court finds the expert testimony of Jennifer King to be on-point and persuasive.").

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

3

refunded charges do not count as injury; and (2) time spent resolving unauthorized charges does not count as injury. These are not disputes of fact, let alone material fact. At best, they are disagreements with the law, which does not support Amazon's arguments.

### A. Amazon caused injury even though it issued refunds.

The fact that many consumers were forced to seek refunds for unauthorized in-app charges is injurious in itself. MSJ at 20; part I(B), *infra*. Yet Amazon argues that the charges it billed to these consumers cease to count as injury as soon as they are refunded. Opp'n at 11-14. Showing substantial injury requires showing small harm to a large number of consumers or a significant risk of concrete harm.[4] *FTC v. Neovi, Inc.* ("*Neovi II*"), 604 F.3d 1150, 1157 (9th Cir. 2010). It does not also require showing that such harm is irreversible. As is typical in FTC jurisprudence, refunds limit the scope of *relief*—as they do here, *see* part IV(B), *infra*—but are no defense to liability. *See FTC v. Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir. 1994) (money-back guarantee no defense); *Commerce Planet*, 878 F. Supp. 2d at 1078, 1090 (finding substantial injury even though millions of dollars of refunds were provided); *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1192, 1203 (C.D. Cal. 2000).

Amazon's argument also wrongly conflates consumer complaints, which are *evidence* of injury, with the full universe of injury. Even Amazon does not contend that complaining consumers were the *only* parents Amazon billed for kids' in-app charges without consent. *See* MSJ ¶ 36; Rubenson Decl. ¶ 26 (not disputing that not all consumers sought refunds). The FTC, consistent with the undisputed facts, calculated the total amount of injury, ██████████████ ██████. MSJ at 28. The FTC is not required to provide a to-the-penny injury figure to prove substantial injury, though it estimated one here. *See FTC v. Neovi, Inc.* ("*Neovi I*"), 598 F. Supp.

---

[4] Amazon incorrectly imputes into the substantial injury element the notion that the injury must be substantial in comparison to the company's in-app business as a whole. Opp'n at 11-12. The FTC Act does not allow companies to inflict ██████ of dollars of injury on ██████ of consumers simply because the injury affects a small percentage of its total customer base or product offerings. As long as injury is substantial in terms of raw numbers, it does not matter whether it constitutes five percent of a company's business or fifty.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

4

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

2d 1004, 1116 (S.D. Cal. 2008) (injury was "millions of dollars"); *FTC v. Ideal Fin. Sols., Inc.*, No. 2:13-cv-00143-JAD-GWF, 2015 WL 4032103, at *8 (D. Nev. June 30, 2015) (injury was "tens of millions"). Amazon insists this calculation "cannot" support a finding of substantial injury because it is supposedly overinclusive and includes revenue Amazon contends is "inflated." Opp'n at 19-21. But these are critiques about the precision of the calculation, not the injury framework or magnitude. Even taking all of Amazon's speculative criticisms as true and deducting the overlapping segments of revenue it unjustifiably insists must be excluded, unrefunded injury still would remain substantial.

> **B.** **The time and effort consumers spent attempting to resolve unauthorized charges constitutes additional injury.**

The facts remain undisputed that, taken together, consumers spent substantial time attempting to resolve unauthorized charges Amazon billed. This is injury. *Neovi I*, 598 F. Supp. 2d at 1115; *FTC v. Accusearch, Inc.*, No. 06-cv-105-D, 2007 WL 4356786, at *18 (D. Wyo. Sept. 28, 2007). Amazon does not challenge the notion that consumers value that time or that they value it at the rate cited in the FTC's motion. Instead, Amazon claims that consumers' wasted time does not constitute injury[5] and that the time spent is inflated and insubstantial on its own. Both arguments fail.

First, Amazon's attempt to diminish this segment of consumer harm by distinguishing the law is unavailing. Injury may result from any "practice for which [consumers] did not bargain." *Neovi II*, 604 F.3d at 1157 (citing *FTC v. Windward Mktg., Ltd.*, No. Civ.A. 1:96-CV-615F, 1997 WL 33642380, at *11 (N.D. Ga. Sept. 30, 1997)). Amazon does not argue that consumers bargained for the opportunity to incur unauthorized charges and spend time seeking refunds. Second, Amazon's unsupported speculation that the FTC's number is "inflated" raises no issue

---

[5] The FTC does not consider thousands of hours spent resolving unauthorized charges to be "de minimis" or mere "routine inconvenience." *See* Opp'n at 14. Moreover, Amazon's assertion that the "reasonable" in "reasonable avoidability" somehow sets a floor for the amount of injury cognizable under the "substantial injury" prong of the unfairness test conflates the two elements and makes little sense. *See id.*

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

5

of fact. Opp'n at 15. The FTC's calculation is based on complaints about unauthorized in-app charges by children; the fact that a consumer may need to contact Amazon multiple times to obtain a full refund for a batch of unauthorized charges makes Amazon's conduct more harmful, not less; and time spent being instructed how to prevent future unauthorized charges is not something consumers "bargained for."[6]

## II. Consumers Could Not Reasonably Avoid the Harm.

Reasonable avoidance requires that consumers have a free and *informed* choice to avoid harm. The undisputed facts show injured consumers did not. MSJ ¶ 19; Rubenson Decl. ¶19 (not disputing that Amazon has not disclosed to its customers its unpredictable password-prompting scheme). Amazon argues that (1) consumers could have avoided injury because of Amazon's terms and conditions, buried disclosures, and parental controls; and (2) consumers could have "avoided" injury retroactively, by obtaining a refund for the unauthorized charges. These, again, are not disputes of material fact. The mere existence of disclosures or controls does not render harm reasonably avoidable under the FTC Act. And the contention that consumers could fully "avoid" injury after the fact by trying to recover unauthorized charges from a company representing that refunds are unavailable is incorrect.

### A. Amazon's injured consumers could not reasonably avoid unauthorized charges before they were incurred.

The undisputed facts show that many consumers were not informed about in-app charges or how to avoid them. MSJ ¶¶ 10-11, 22, 25-29. Consumers were not informed that in-app charges could be incurred within free apps, that such charges could be incurred without password entry, or that (when password entry was required) Amazon could open a billing window during which additional charges could be incurred without account holder involvement. *See* Rubenson Decl. (not disputing MSJ ¶¶ 25-29 about complaints). The pervasive nature of Amazon's

---

[6] Similarly, Amazon's insistence that consumers extract a "benefit" from in-app items foisted upon them is not relevant to the injury analysis. *See FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1004 (N.D. Cal. 2010) ("[I]t cannot be said that defendants' 'customers' benefitted at all from services that they never agreed to purchase, didn't know were being provided to them, and never wanted in the first place."), *aff'd*, 475 F. App'x 106 (9th Cir. 2012) .

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

6

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

unauthorized billing, affecting well over ███ parents, *see* MSJ ¶ 24, is evidence that injury was not reasonably avoidable. Amazon does not dispute that these consumers did not have the information they needed to avoid the harm. Instead, in one broad stroke, Amazon dismisses them *all* as unreasonable. Opp'n at 21-23. Amazon suggests Fire owners are under a heightened standard of reasonableness requiring them to "inquire" into the company's practices.[7] *Id*. at 22, 26-27. These are legal arguments, not fact disputes, and they are not supported by Amazon's manipulation of the law.

Harm is not reasonably avoidable unless consumers have the information they need to prevent it and nonetheless choose not to. *Neovi II*, 604 F.3d at 1158; *Orkin Exterminating Co.*, 108 FTC 263 at *80 (1986) ("Whether some consequence is 'reasonably avoidable' depends not just on whether people know the physical steps to take in order to prevent it, but also whether they understand the *necessity* of actually taking those steps." (emphasis added)), *aff'd*, *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354 (11th Cir. 1988). Amazon marketed the Fire to parents as a child-friendly tablet, regardless of whether it now characterizes it as "a credit-card enabled media-consumption device." MSJ ¶ 2. Amazon distributed apps as "FREE" while burying disclosures about in-app charges in remote terms-and-conditions documents, below the fold, or behind seemingly unclickable text.[8] *Compare* MSJ ¶¶ 10 (employees thought the Note was buried), 22; Rubenson Decl. ¶ 10.1 (Note "wound up 'below the fold'"), ¶ 22 (not disputing that language appeared unclickable) *with Wash. State Republican Party v. Wash. State Grange*, No. C05-0927-JCC, 2011 WL 92032, at *4 (W.D. Wash. Jan. 11, 2011) (ballot included "prominent, unambiguous, explicit statement"). There remains no evidence that *any* consumer saw or understood the fine print at issue during the relevant time period. Parents were under no special duty to investigate what they had to do to prevent Amazon from causing them harm. *See* MSJ at

---

[7] Amazon also claims that reasonable consumers here are all "accustomed to online shopping." Opp'n at 22. The cases it cites do not support that proposition, and consumers' general familiarity with online shopping does not tell the Court anything about whether reasonable parents would understand that Amazon could bill them without consent for children's in-app charges within free games.

[8] Indeed, Amazon's opposition only attempts to defend the "enhanced" disclosure it made in June 2013, a year and a half after in-app charges were launched. Opp'n at 4-5.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

7

24 (citing *FTC v. Verity Int'l, Ltd.*, 124 F. Supp. 2d 193, 203 (S.D.N.Y. 2000)). Even if they had unearthed the fine print, Amazon's disclosures were incomplete and ineffective, MSJ ¶¶ 10-11, 22; MSJ at 24, failing to disclose that children could incur in-app charges without password entry or that parents had to activate parental controls to avoid that contingency.[9] That Amazon's own Appstore Director can explain Amazon's byzantine password-prompting scheme does not create a fact dispute about whether consumers understood it. *See* Rubenson Decl. ¶ 11.

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012), which Amazon claims to be "particularly applicable," only illustrates the extent to which Amazon failed to give consumers an informed choice to avoid the harm. In *Davis*, a single plaintiff alleged he was unaware of a credit card's annual fee disclosed in a terms and disclosure statement he chose not to read when he applied for the card, despite explicit instruction to do so ("read the notice below carefully") and his express agreement to it.[10] *Id.* at 1169. He paid the annual fee for five years after defendant told him about it. *Id.* at 1158. The court found that the annual fee was reasonably avoidable, given that the plaintiff could have learned about it by reading the statement as instructed and as he affirmatively indicated he had read. *Id.* at 1169. Here, by contrast, parents were not directed to the terms and conditions on app detail pages or elsewhere, let alone asked to affirmatively agree to anything. Even parents who discovered the terms would learn only that "In-App Products" were "available" and that—separately, and misleadingly given Amazon's widespread billing for children's in-app charges—"Amazon does sell products for children, *but it sells them to adults*." Rubenson Decl. Ex. J; Ex. K (emphasis added). Neither Amazon's terms and conditions nor the limited disclosures on app detail pages informed consumers that in-app charges could be billed without account holder involvement. *Id.*; MSJ ¶¶ 10-11, 22.

---

[9] When Amazon's expert Dr. Rosenberg conducted a test in which participants were asked an open-ended question about what information was provided by app detail pages (which, unlike the versions existing before this case was filed, did not describe the apps as "FREE"), nearly every participant failed to identify the possibility of in-app charges in their responses. Craig Rosenberg Rpt. (Dkt. 146-2, Ex. G) at 29-37; Ex. 329 at 2, 4.

[10] Unlike here, the defendant in *Davis* did not claim the card was "free."

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

8

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

**B.** **The unadvertised availability of a possible one-time exception to Amazon's no-refund policy does not make injury reasonably avoidable.**

Amazon contends that its "generous" practice of refunding unauthorized in-app charges exculpates it from liability under the FTC Act. The possibility of a refund does not make injury reasonably avoidable, and even if it could, consumers here did not have a free and informed choice to fully mitigate the harm.

### 1. The mere possibility of a refund does not make injury reasonably avoidable.

As this Court correctly held at the outset of this litigation, "the possibility of—or even issuance of—a refund does not foreclose an action under Section 5 of the FTC Act." (Dkt. 14 at 15.) Injury under the FTC Act is not reasonably avoidable simply because it is possible for consumers to get their money back. *Neovi II*, 604 F.3d at 1158; *Orkin*, 849 F.2d at 1365-66; *Direct Benefits*, 2013 WL 3771322, at *17 ("[T]he fact that many customers were able to— eventually—obtain refunds from Defendant[] does not render the injury avoidable."). Indeed, consumers should not bear the burden of "avoid[ing] charges that were never authorized to begin with." *Inc21.com Corp.*, 745 F. Supp. 2d at 1004.

### 2. Injured consumers did not have a free and informed choice to fully avoid the harm by seeking a refund after the fact.

Even if refunds could make injury reasonably avoidable, the question would be whether consumers have a free and *informed* choice to avoid the harm *in full*. *Neovi II*, 604 F.3d at 1158 (reasonable avoidance requires "free and informed" choice; affirming district court finding that charges not reasonably avoidable where harm "not fully mitigated" although refunds possible). Here, (i) Amazon did not inform consumers that it offered a one-time exception to its stated no-refund policy for in-app charges; and (ii) full mitigation of the injury was not possible given that consumers spent significant uncompensated time and effort seeking refunds for charges they did not choose to incur.

It remains undisputed that Amazon outwardly represented that it did not offer refunds for in-app charges (unlike physical goods), and Amazon provided refunds only to consumers who

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

9

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

contacted the company despite that policy. *Cf. Orkin*, 108 FTC 263 at *80 (no reasonable avoidance; company "granted exceptions only to those customers who complained" to "control any particularly strong adverse consumer reaction and to minimize any consequent loss of customers and good will"). It also remains undisputed that Amazon's post-charge emails did not give consumers any information about whether refunds for in-app charges were available, how to obtain a refund, or even the name of the app in which the charges were incurred. *Cf. FTC v. Crescent Publ'g Grp.*, 129 F. Supp. 2d 311, 322 (S.D.N.Y. 2001) (no reasonable avoidance; "Some consumers have been unable to determine who was billing them, what they were being billed for, and how to contest the charges."). And it remains undisputed that some consumers would not have opened the emails or noticed the charges. *Cf. Neovi II*, 604 F.3d at 1158 (no reasonable avoidance; "It is likely that some consumers never noticed the unauthorized withdrawals."). Finally, it remains undisputed that █████████ of consumers expended thousands of hours of time and effort to recover charges they never chose to incur.[11] MSJ ¶ 40.

There is no authority for the proposition that consumers can reasonably avoid harm by seeking a refund where the defendant's stated policy is that refunds are unavailable. Informed consumers, not the mere prospect of reimbursement, are critical to the question of whether consumers can *reasonably* avoid the harm. *Orkin*, 849 F.2d at 1366 ("Given that consumer information is central to this prong of the unfairness inquiry, it was proper for the Commission to determine summarily that the 'accommodation program' did not provide . . . customers with any real opportunity to mitigate their injuries."). Even in cases unlike this one, where defendants tell consumers refunds *are* available, courts find the time, trouble, and aggravation of seeking a refund to mean that the injury is not reasonably avoidable. *Neovi II,* 604 F.3d at 1158 (holding that regardless of whether a consumer eventually had their funds restored, "the consumer

---

[11] Amazon's expert Dr. Rosenberg's test directed participants to contact Amazon to request a refund. Craig Rosenberg Rpt. (Dkt. 146-2, Ex. G) at 47-48. Even with that direction, eleven of the twenty-three participants reported it was "difficult" or "very difficult" to do so. *Id.*

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

10

suffered unavoidable injuries that could not be fully mitigated"). Amazon's unstated exception to its stated policy did not give consumers an informed choice to fully avoid harm from unauthorized charges. *Compare Orkin*, 849 F.2d at 1365-66 (rejecting reasonable avoidance argument where consumers "were not directly informed" that refunds were available) *and* Opp'n at 27-28 (citing cases about consumer "aware[ness]" of mitigation option) *with Davis*, 691 F.3d at 1169 (finding annual fee reasonably avoidable where plaintiff learned of fee, defendant told him he could cancel his card to avoid it, but he chose not to and paid fee for five years because he was concerned it might affect his credit score to cancel the card).

### III. The Injury Amazon's Consumers Suffered Was Not Outweighed by Any Countervailing Benefits to Consumers or Competition.

The cost–benefit prong of the unfairness test is "easily satisfied" where, as here, "a practice produces clear adverse consequences for consumers that are not accompanied by an increase in services or benefits to consumers or by benefits to competition." *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1201 (C.D. Cal. 2000) (quoting *Windward Mktg.*, 1997 WL 33642380, at *31-32); *see also In re In-app Purchase Litig.*, 855 F. Supp. 2d 1030, 1041 (N.D. Cal. 2012). Billing parents for unauthorized in-app charges by children does not benefit consumers. Rather than identify a concrete benefit to that practice, Amazon recycles the vaguely articulated benefits it cited at the outset of this case. (*See* Dkt. 14 at 16.) Amazon extols the benefits of a "seamless" purchasing experience, innovation, and the ability to respond to "unanticipated consumer dissatisfaction." Opp'n at 30-32.

But the FTC's claim does not impugn or threaten the possibility of a "seamless purchase experience," innovation, or responses to unanticipated problems.[12] The claim here is simple: Amazon, like every other market participant, cannot bill consumers without their consent.

---

[12] Responding to unanticipated problems is a not a benefit of the practice at issue. In any event, Amazon's suggestion that it did not anticipate that children could incur unauthorized in-app charges is belied by the undisputed fact that Amazon was aware prior to launch that its competitors had the same problem, which it experienced on its own platform immediately after launch. *See* MSJ ¶¶ 6, 8; Rubenson Decl. ¶¶ 6.1, 8.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

11

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

Obtaining consent need not "impos[e] unnecessary friction on the vast majority of consumers" or require Amazon to implement a "text-heavy, one-size-fits-all approach." Opp'n at 30-31; *see* Resp. in Opp'n to Amazon's Mot. for Partial Summ. J. ("FTC Resp.") at 9 (Dkt. 156). Instead, Amazon must ask the account holder to approve a charge or charges before billing. Amazon can accomplish that by requiring password entry, but does not need to do so every transaction or even every time a consumer opens an app. Amazon can do it once, clearly and conspicuously. In doing so, Amazon's in-app billing process could be both more "seamless" and more informative than its historic practice of prompting consumers for password entry at unpredictable intervals.

Amazon's evidence says nothing to the contrary. Dr. Hoffman does not suggest that requiring password entry to seek consent for charges in any particular circumstances would be harmful to consumers. *See generally* Hoffman Rpt. (Dkt. 146-1, Ex. E). This is unsurprising, as it would be extreme to opine that asking consumers once to authorize charges by entering a password would unduly interfere with consumers' purchasing experience. *Cf.* Ex. 500 (30(b)(6)) to MSJ at 91:20-24 ("[F]or a reasonable consumer, it probably doesn't seem like too much of a non sequitur that they might have to enter their password to complete a transaction. It's related to the thing they're doing."). Amazon has not introduced evidence of even *one* consumer complaining about its password prompts or interruptions to seamless purchasing. Indeed, Amazon admitted it was beneficial to ask consumers at least once for consent before billing. Ex. 500 (30(b)(6)) to MSJ at 66:19-22. This is all the law—and the proposed order—requires.

**IV.     Amazon Is Liable for the Requested Injunctive and Equitable Monetary Relief.**

   **A.     The FTC's requested injunctive relief is justified.**

Given Amazon's years-long—and, in some instances, ongoing[13]—practice of billing for

---

[13] It is undisputed that Amazon continues to bill for charges of less than $1 on First Generation Kindle Fire devices without seeking consent. Opp'n at 33 n.30, FTC Resp. at 4. That fact alone is sufficient to justify injunctive relief. *FTC v. Gill*, 265 F.3d 944, 957 (9th Cir. 2001). Amazon attempts to downplay the significance of its ongoing conduct by comparing the volume of such charges to all in-app charges across all apps, but tellingly fails to cite any support for its assertion that injunctive relief should not be imposed when some but not all of the conduct at issue has ceased. Opp'n at 33 n.30.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

12

in-app charges without obtaining consent, the tailored injunctive relief sought by the FTC is necessary and appropriate to prevent future violations of the FTC Act. *See* FTC Resp. at 8-19 (Dkt. 156). Amazon makes much of its so-called "voluntary refinements" to its billing practices, but it is undisputed that Amazon took *years* to implement such changes—nearly all of which were implemented after the FTC began its investigation. *See id.* at 14-15. And Amazon continues to assert that its conduct was justifiable, which is "sufficient to show a likelihood of future violation." *United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 856 (9th Cir. 1995); *see* FTC Resp. at 18. Finally, proof of fraud is not, as Amazon appears to argue, a prerequisite to imposing standard monitoring and reporting provisions. *See* Opp'n at 34. The FTC Act does not require such a showing, *see* FTC Resp. at 6 n.5, and these provisions are routinely included in FTC orders to ensure compliance with the substantive injunctive relief.

**B.     The FTC met its burden of reasonably approximating monetary relief.**

On its motion for summary judgment, the FTC "reasonably approximated" equitable monetary relief, satisfying its burden. *See FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997). "Once that showing is made, the burden shifts to defendants to show both that the estimate is inaccurate and what the proper estimate should be." *FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d 202, 214 (D. Mass. 2009), *aff'd*, 624 F.3d 1 (1st Cir. 2010); *see Inc21.com Corp.*, 745 F. Supp. 2d at 1013. Amazon critiques the FTC's approximation, but does not attempt to meet its own burden.[14] Opp'n at 35. As long as the Court finds the FTC has reasonably approximated consumer harm, entry of a judgment in the amount sought by the FTC is warranted.

Using available data, the FTC took reasonable, principled steps to calculate consumer harm caused by Amazon's practice of billing parents without consent for in-app charges by children. First, to identify apps likely to be used by children, the FTC used a list of apps Amazon

---

[14] The sole exception is at Werner Decl. ¶ 11(g), which identifies charges that should have been excluded as password-prompted. The FTC submits the attached supplemental declaration from Ms. Miller removing those charges, which adjusts injury to ███████ and, subtracting refunds, relief to $26,242,025.30. Supp. Decl. of Julie Beth Miller ("Supp. Miller Decl.") ¶¶ 4-5.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

13

created that includes apps it admits are child-directed.[15] Second, to remove any authorized charges from the pool, the FTC excluded any charge for which Amazon required password entry. Third, to identify the proportion of remaining revenue attributable to unauthorized charges by children, the FTC used data relating to the password prompts Amazon purposely implemented to limit unauthorized in-app charges by children. The rate at which users faced with such prompts in a kids' app failed to enter the correct password *and* abandoned the charge attempt[16] (the "Unauthorized Charge Rate") is a reasonable proxy for the rate at which children would incur an in-app charge without consent in a kids' app when password entry was *not* required. This is because kids' app users who fail to enter the correct password and abandon the charge attempt are likely children acting without permission, not account holders choosing to make a charge.

Amazon insists the FTC's "Unauthorized Charge Rate" is "speculative" and "wrong" merely because it assumes that "*all* of these password failures represent attempts by children" that would have been unauthorized in the absence of a password prompt. Werner Decl. ¶ 10. But an approximation of relief need not be perfect to be reasonable, and any deficiencies in the data fall on Amazon, not consumers. *Febre*, 128 F.3d at 535 ("[T]he risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty." (alteration in original) (quoting *SEC v. First City Fin. Corp.*, 890 F. 2d 1215, 1232 (D.C. Cir. 1989))); *Commerce Planet*, 878 F.

---

[15] From this list, the FTC excluded "Casino" apps. This favors Amazon. Simply because an app appears in the "Casino" category in the Appstore does not mean it is unlikely to be used by children (e.g., "Puppy Slots"). Amazon's assertion that Angry Birds—the only app mentioned in Amazon's brief—is used "primar[ily]" by adults over age 35 is wholly unsupported. Opp'n at 5. The sole article misleadingly cited by Amazon is based on a September 2011 survey that compares app use across *adult* age groups; it does not compare app use between adults and children. Rubenson Decl. Ex. A; "App-Happy with Android The Most Popular Android Apps By Age," *available at* http://www.nielsen.com/us/en/insights/news/2011/app-happy-with-android-the-most-popular-android-apps-by-age.html. In Exhibit B to the declaration of Amazon Finance Director Jonathan Werner (Dkt. 169), Mr. Werner lists apps that he hypothesizes are "Not Likely of Interest to Children"—many of which have been the subject of complaints about unauthorized IACs by kids. *See, e.g.,* Ex. 550 ("hundreds of dollars" of kids' charges in "Crime City" app); Ex. 551 ("small child" made unauthorized IACs in "Monster Shooter" app). Even if Mr. Werner's entire list of apps were excluded from the relief calculation, however, the effect would be minimal: Mr. Werner calculated that the total revenue of over ▆▆▆▆▆ would be reduced by ▆▆▆▆▆. Werner Decl. ¶ 11.e.
[16] Amazon suggests the FTC's rate may include adults merely typing their passwords incorrectly, Werner Decl. ¶ 10(b), but typos followed by correct password entry are not counted as failures. Ex. 547 to FTC Resp. at 1.c.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

14

Supp. 2d at 1089 ("A reasonable estimate, rather than an exact amount, is proper . . . ."). Amazon offers no evidence showing that such an assumption would be unreasonable and no alternative estimate. *FTC v. Inc21.com Corp.*, 475 F. App'x 106, 110 (9th Cir. 2012) ("[D]efendants offered no evidence to rebut the FTC's approximation."); *FTC v. QT, Inc.*, 512 F.3d 858, 864 (7th Cir. 2008) (defendants "should have produced their own figures").

Amazon separately argues that the relief calculations should exclude whole categories of revenue, with little to no explanation of why it is unreasonable to include them.[17] Most notably, Amazon perfunctorily claims that there is "no sound basis" to include *any* charges after May 2013, when Amazon began displaying a password prompt once in the lifetime of some Fire devices. The FTC, based on available evidence, excluded the charges for which the May 2013 prompt appeared. But it did not assume, as Amazon seems to, that *every* charge after May 2013 was authorized, whether or not Amazon required password entry to approve the charge. Amazon describes the prompt as requiring consumers to "affirmatively cho[o]se *not* to require a password for future in-app purchases." Opp'n at 19. It does not. Titled "Confirm In-App Charge" (singular), it asks consumers to "complete [their] purchase" (singular) by entering a password. Below the password entry field, it says, "If you'd like to require a password for future in-app purchases, please turn on Parental Controls." Decl. of Patrick Eagan-Van Meter ¶ 47 (Dkt. 100). It does not tell consumers that unless they activate parental controls, subsequent in-app charges can be incurred without their involvement. It does not tell them that password-prompting is the exception, not the rule. Amazon's Appstore Director and the FTC's expert agreed this prompt did not require consumers to choose whether a password must be entered for subsequent in-app charges.[18] Ex. 549 at 186:10-187:8; Decl. of Jennifer King, Ex. A at 36-38 (Dkt. 102).

---

[17] For example, Amazon argues the FTC should not have included charges incurred on devices for which a consumer had previously received a refund for any in-app charge, assuming (without evidence) that every one of those consumers was "educated how to avoid a subsequent accidental purchase." Werner Decl. ¶ 11(b). Amazon's calculation of this figure is wrong, overstating it by almost ███████ dollars. Supp. Miller Decl. ¶ 6.

[18] Contrary to Amazon's assertion, Dr. Rosenberg's test does not demonstrate the "effective[ness]" of the May 2013 prompt. Opp'n at 20. Instead, when asked what the purpose of that prompt was, participants believed it was

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

15

C.      **Amazon's objections to the FTC's evidence are meritless.**

The FTC submitted a declaration "summariz[ing] certain data produced by Amazon," Miller Dec. ¶ 3, as Federal Rule of Evidence 1006 permits. The declaration does not contain separate facts or opinions. It includes relief calculations the FTC disclosed in supplemental initial disclosures pursuant to Rule 26(a)(1).[19] Amazon argues that the FTC's injury and relief calculations should be stricken, claiming the FTC failed to properly disclose the declarant and the summary. But the FTC's disclosures were timely, despite Amazon's willful failure to comply with this Court's discovery order and properly produce the data on which those calculations are based until after fact discovery closed.

The facts relevant to the FTC's efforts to obtain the disputed data are set forth in the attached declaration of counsel, and are sufficient to defeat Amazon's argument. Declaration of Jason Adler ("Adler Decl.") ¶¶ 2-16. The summary is based on data Amazon did not finish producing until October 14, 2015, over ten *months* after it was initially due, *two months* after the date on which this Court's order required Amazon to produce the data, *two weeks* after the close of fact discovery, and *two days* before expert disclosures were due. Adler Decl. ¶¶ 3, 9-13. Amazon's position is self-defeating: it argues that the FTC failed to disclose its summary witness's name until after fact discovery, though it did not finish producing the data she summarized until after fact discovery closed; that it could have engaged an expert to critique the analyses, though it finished producing the data two days before expert disclosures were due, preventing even the FTC from furnishing such data to any expert; and that the data "necessarily" requires expert analysis, though its lay witness Mr. Werner is testifying about it. Opp'n at 17-18.

---

primarily to "confirm an in-app purchase," not to "affirmatively cho[o]se *not* to require a password for future in-app purchase." Craig Rosenberg Rpt. (Dkt. 146-2, Ex. G) at 39. Consumers only indicated otherwise when prodded further. *See id.* at 39-45.

[19] Rule 26(a)(1)(A)(iii) requires parties to disclose computations of relief, not relief and *injury*, so Amazon's argument that the FTC's computation of injury is "untimely" has no basis in law.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

16

Summary witnesses are not fact witnesses, *SEC v. Badian*, 822 F. Supp. 2d 352, 367 (S.D.N.Y. 2011) *amended on reconsideration in part*, No. 06 CIV. 2621 LTS, 2012 WL 2354458 (S.D.N.Y. June 20, 2012), and disclosing the name of a summary witness before the summary is created and before the witness even has access to the data being summarized finds no support in the Federal Rules.[20] Amazon's contention that the calculations themselves are untimely fares no better. "A party must make its initial disclosures *based on the information then reasonably available to it*," including its initial disclosures with respect to calculation of monetary relief. Fed. R. Civ. P. 26(a)(1)(E) (emphasis added). The FTC supplemented its disclosures repeatedly and promptly, as soon as was practicable given Amazon's intransigence. Adler Decl. ¶¶ 11, 15. Amazon cites no authority for the proposition that the FTC was required to disclose a detailed computation of damages based on data to which it had no access, which is unsurprising, given that "a party is 'not expected to provide a calculation of damages which depends on information in the possession of another party or person.'" *United States ex rel. Parikh v. Premera Blue Cross*, No. C01-0476 MJP, 2006 WL 2927699, at *1 (W.D. Wash. Oct. 11, 2006) (quoting Fed. R. Civ. P. 26(a) advisory committee's note) (alterations omitted); *see FTC v. Directv, Inc.*, No. 15-CV-01129-HSG (MEJ), 2015 WL 7775274, at *5 (N.D. Cal. Dec. 3, 2015) (holding that disclosure by FTC that it would seek "the amount of money paid by the consumers to [defendant] stemming from its alleged misconduct, less refunds made" was appropriate while FTC awaited discovery from defendant allowing more detailed calculations).

---

[20] It is unclear what disclosure requirements apply to the FTC and Ms. Miller that do not apply to Amazon, Mr. Werner (the finance director opining about adult password entry behavior and children's sleeping patterns), and the unnamed economist who prepared analyses at his behest. Ms. Miller, by contrast, does not possess separate facts or evidence—just, as of filing, the evidence Amazon produced—and does not provide opinions, lay or otherwise. Ms. Miller's experience with data analysis gives confidence in the accuracy of her calculations, which Amazon does not challenge, but does not transform rote calculations into expert testimony. *See SEC v. Amazon Natural Treasures, Inc.*, 132 F. App'x 701, 703 (9th Cir. 2005) (SEC accountant's testimony properly admitted as summary because "[i]t involved the organization and presentation of voluminous financial records, not the application of interpretive expertise to financial records").

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

17

Even if the FTC had not complied with its disclosure obligations, exclusion would not be appropriate. Any untimely disclosure was both substantially justified and harmless. *See Mabrey v. Wizard Fisheries, Inc.*, No. C05-1499L, 2007 WL 1795033, at *1 (W.D. Wash. June 8, 2007) (finding "belated disclosure" to be "substantially justified" and thus not grounds for exclusion where disclosure was made "as soon as was practicable"). Amazon was not prejudiced by the timing of the FTC's disclosures because Amazon already had the information on which the FTC's computation was based. *See Maharaj v. Cal. Bank & Trust*, 288 F.R.D. 458, 463 (E.D. Cal. 2013) (finding failure to disclose computation "harmless since the information on which these damages are calculated is already in Defendant's possession").

**V.    Amazon Had Fair Notice That Unauthorized Billing Violates the FTC Act.**

Amazon continues to express surprise that its practice of unauthorized billing could be considered unfair. Opp'n at 35-36. The "standards of conduct" were disclosed well before the FTC's settlements with Amazon's competitors: billing consumers without obtaining informed consent can violate the FTC Act. (Dkt. 14 at 9.) That Amazon too must abide by that principle is not a due process issue. *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 253-4 (3d Cir. 2015) ("The relevant question is not whether [defendant] had fair notice of the *FTC's interpretation* of the statute, but whether [defendant] had fair notice of what the *statute itself* requires.").

Amazon does not address any of its remaining defenses, and the Court should grant the FTC summary judgment on all of them. *See* MSJ at 28-30.

CONCLUSION

This Court should grant the FTC's motion for summary judgment on its claim and Amazon's affirmative defenses, enter the proposed order (Dkt. 98-1), and deny Amazon's request that the Court strike the summary declaration of Julie Beth Miller.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

18

| | |
|---|---|
| Dated: <u>February 26, 2016</u> | <u>/s/ Jason M. Adler</u> |
| | JASON M. ADLER |
| | HEATHER ALLEN |
| | JANE M. RICCI |
| | MIYA TANDON |
| | KATHARINE ROLLER |
| | HELEN WONG |
| | jadler@ftc.gov, hallen@ftc.gov, jricci@ftc.gov, mtandon@ftc.gov, kroller@ftc.gov, hwong@ftc.gov |
| | Federal Trade Commission |
| | 600 Pennsylvania Avenue N.W., CC-10232 |
| | Washington, DC 20580 |
| | P: (202) 326-3231, (202) 326-2038, (202) 326-2269, (202) 326-2351, (202) 326-3582, (202) 326-3779 |
| | F: (202) 326-3239 |
| | |
| | LAURA M. SOLIS, WA Bar No. 36005 |
| | lsolis@ftc.gov |
| | Federal Trade Commission |
| | 915 2nd Avenue, Suite 2896 |
| | Seattle, WA 98174 |
| | P: (206) 220-4544 |
| | F: (206) 220-6366 |
| | Attorneys for Plaintiff |
| | FEDERAL TRADE COMMISSION |

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**CERTIFICATE OF SERVICE**

I, Jason M. Adler, certify that on February 26, 2016, I electronically filed the foregoing Plaintiff's Reply in Support of Its Motion for Summary Judgment, Declaration in Support, and Exhibits with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

By: /s/ Jason M. Adler

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

20