THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>AMAZON.COM, INC.,<br><br>　　　　　Defendant. | No. 2:14-CV-01038-JCC<br><br>**AMAZON.COM, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>NOTED ON MOTION CALENDAR:<br><br>Friday, February 26, 2016<br><br>ORAL ARGUMENT REQUESTED |

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC)
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | The FTC Misstates the Legal Standard | 1 |
| | B. | Lack of a Password for 99-Cent Items on Amazon's Discontinued First-Generation Device Does Not Constitute an Unfair Business Practice | 3 |
| | | 1. The FTC Is Grasping at Straws | 3 |
| | | 2. There Is No Ongoing Section 5 Violation Based on the Sale of 99-Cent Items that Represent a Trivial and Declining Number of Transactions | 5 |
| | C. | There Is No Threat of a Recurring Violation that Warrants a Permanent Injunction | 7 |
| | | 1. Amazon Actively Addressed the Issue of Accidental In-App Purchases Before and During the FTC's Investigation | 8 |
| | | 2. Amazon Resolved the Issue Before the FTC First Disclosed What It Thinks Is Necessary to Comply with Section 5 | 10 |
| | | 3. Permanent Injunctions Are Not "the Norm" | 11 |
| III. | CONCLUSION | | 12 |

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – i
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)..................................................................................................3, 12

*FTC v. Accusearch Inc.*,
    570 F.3d 1187 (10th Cir. 2009) ..............................................................................................2

*FTC v. Commerce Planet, Inc.*,
    878 F. Supp. 2d 1048 (C.D. Cal. 2012) ................................................................................12

*FTC v. Evans Prods. Co.*,
    775 F.2d 1084 (9th Cir. 1985) ................................................................................................2

*FTC v. Gill*,
    265 F.3d 944 (9th Cir. 2001) ................................................................................................12

*FTC v. Inc21.com*,
    745 F. Supp. 2d 975 (N.D. Cal 2010) ..................................................................................12

*FTC v. Loewen*,
    2013 WL 5816420 (W.D. Wash. Oct. 29, 2013) ..................................................................12

*FTC v. Stefanchik*,
    2007 WL 1058579 (W.D. Wash. Apr. 3, 2007).....................................................................12

*Sheely v. MRI Radiology Network, P.A.*,
    505 F.3d 1173 (11th Cir. 2007) ..............................................................................................2

*United States v. Laerdal Mfg. Corp.*,
    73 F.3d 852 (9th Cir. 1995) ....................................................................................................2

*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953)................................................................................................................3

**OTHER AUTHORITIES**

Beales, J. Howard, *The FTC's Use of Unfairness Authority: Its Rise, Fall and
    Resurrection* 5-6 (2003)..........................................................................................................1

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – ii
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## I. INTRODUCTION

The FTC admits that Amazon has obtained "express, informed consent" for in-app purchases through its "newer devices" since at least June 2014. The FTC has not offered any evidence that Amazon is likely to change that approach. Instead, the FTC attempts to justify issuance of an injunction subjecting Amazon's design decisions to government oversight for 20 years because (1) Amazon does not require a password for 99-cent items sold on a device that was discontinued three-and-a-half years ago and whose in-app sales now constitute less than ▇% of total in-app purchases, and (2) the FTC believes there is a mere possibility that Amazon may violate Section 5 in the future. Neither proposition warrants the relief the FTC seeks.

The undisputed evidence demonstrates that Amazon actively addressed the issue of accidental in-app purchases long before the FTC began its investigation and *resolved* the issue well before the FTC finally disclosed what it *thinks* is necessary to comply. Its requested injunction is nothing more than an attempt to impose hindsight-driven views of best practices without any balanced consideration of the net effects to consumers.[1] But, for an injunction to be granted, the FTC must still prove that recurrence is likely. It cannot, and the Court should dismiss the FTC's claim for injunctive relief.

## II. ARGUMENT

### A. The FTC Misstates the Legal Standard

The FTC contends that Amazon assumes an "exceptional posture" and must "finesse the law" in order to "moot a request for injunctive relief." Opp'n 1. The only exceptional posture here is that taken by the FTC, as it yet again asserts the wrong legal standard and attempts to shift its burden of proof to Amazon. The FTC says that Amazon has not met its "heavy" burden of proving mootness. Opp'n 1, 7. But Amazon is *not* asserting mootness;

---

[1] *See* [Former FTC Director] Beales, J. Howard, *The FTC's Use of Unfairness Authority: Its Rise, Fall and Resurrection* 5-6 (2003) ("[T]he Commission should not be in the business of trying to second-guess market outcomes when the benefits and costs of a policy are very closely balanced or when the existence of consumer injury is itself disputed.").

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 1
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

indeed, Amazon agrees there must be a trial regarding liability for past conduct. Independent of liability, however, Amazon is entitled to partial summary judgment on the FTC's request for a *prospective permanent injunction* because the FTC cannot meet *its* burden of showing "a cognizable danger of recurrent violation, something more than the mere possibility." Dkt. 14 at 17; *see also United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854 (9th Cir. 1995) ("A district court cannot issue an injunction unless there exists some cognizable danger of recurrent violation. The determination that such danger exists must be based on appropriate findings supported by the record.").

The standards for mootness and a permanent injunction are "strikingly different." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 n.10 (11th Cir. 2007). Whereas a defendant seeking "dismissal on mootness grounds" bears a heavy burden "of showing that it is absolutely clear that he will not revert to his old ways[,] . . . whether a permanent injunction is appropriate . . . turns on whether *the plaintiff can establish by a preponderance of the evidence that this form of equitable relief is necessary*." *Id.* (emphasis added); *see also FTC v. Accusearch Inc.*, 570 F.3d 1187, 1201 (10th Cir. 2009) ("When, as in this case, a defendant has ceased offending conduct, *the party seeking injunctive relief* must demonstrate to the court that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." (emphasis added)).

The undisputed material facts demonstrate that the FTC cannot meet its burden here because – aside from its meritless and newly articulated claim that Amazon is currently violating Section 5 because it does not require a password for 99-cent purchases on its discontinued first-generation Kindle Fire devices – the FTC does no more than rely on Amazon's alleged past violations as proof that Amazon will violate the law in the future, which is insufficient. *See FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) ("Past wrongs are not enough for the grant of an injunction; an injunction will issue only if the wrongs are ongoing or likely to recur." The FTC cannot dispute that refund rates for in-app purchases have

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 2
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

been low and flat since at least October 2013 (long before the FTC filed its Complaint) and that the FTC's approach *did not* further reduce the refund rate, both of which materially undermine the FTC's claim that injunctive relief is suddenly imperative. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000) ("[A]lthough the defendant's voluntary cessation of the challenged practice does not moot the case, such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice."); *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("effectiveness of the discontinuance" is a factor in assessing likelihood of recurrence).

### B. Lack of a Password for 99-Cent Items on Amazon's Discontinued First-Generation Device Does Not Constitute an Unfair Business Practice

With nothing else to point to, the FTC now claims that a 20-year injunction covering *all* of Amazon's in-app purchasing practices is warranted because Amazon does not require a password for 99-cent purchases on its first-generation Kindle Fire device. These trivial sales could not support such relief even if they were creating the injury the FTC claims, which they are not.

#### 1. The FTC Is Grasping at Straws

The FTC concedes that Amazon's June 2014 first-time purchase prompt complies with Section 5 but nevertheless contends that Amazon is currently violating Section 5 based solely on in-app purchases priced under $1 on Amazon's first-generation Kindle Fire device. *See* Opp'n 10-11. But Amazon stopped selling that device in August 2012. It has released four subsequent versions of the Kindle Fire, all of which have the first-time purchase prompt that the FTC does not challenge. That prompt does not appear on the first-generation device because the device no longer receives software updates. Declaration of Aaron Rubenson (Dkt. 94) ("Rubenson Decl.") ¶ 23. Moreover, in October 2013 Amazon had already implemented a password requirement on the first-generation device for *all* in-app purchases priced at $1 or more. *Id.* In-app purchases without a password on that device presently account for ▮% of all

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 3
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

in-app purchases from Amazon. Declaration of Jonathan M. Werner (Dkt. 168, 169) ("Werner Decl.") ¶ 19.

Not surprisingly, the FTC did not make those purchases the focus of its investigation, did not identify them in its Complaint, and did not during discovery identify them as a basis for injunctive relief. *See* Rubenson Decl. ¶ 22;[2] Compl. (Dkt. 1). But with the FTC facing summary judgment, those purchases suddenly assume center stage. The FTC's Opposition points to vague allegations and statements to argue that it never *conceded* Amazon was currently in compliance, from which Amazon was apparently expected to divine that the FTC claimed those particular 99-cent purchases were "unfair." Opp'n 11. During discovery, however, when asked specifically if Amazon was in compliance or needed to make changes, the FTC *refused* to answer or identify those purchases.[3] Until its Opposition, the FTC never made clear its view that the absence of a password on those minimal purchases was unlawful.[4]

The FTC professes to find it "baffling" that Amazon would rely on the FTC's refusal to identify any ongoing violation as evidence that the FTC concedes Amazon's practices currently comply with the law. Opp'n 12. Hardly. If the FTC truly believed that customers were continuing to suffer substantial harm because of 99-cent purchases on a discontinued

---

[2] The Court should reject the FTC's request to strike Aaron Rubenson's statement that the FTC failed to provide specific guidance on potential changes to its in-app billing practices over the course of the FTC's investigation. Opp'n 15 n.11; Rubenson Decl. ¶ 22. As the FTC knows, Mr. Rubenson participated in multiple in-person and telephonic discussions with the FTC during its investigation. Mr. Rubenson has personal knowledge of the FTC's lack of guidance during those discussions. And, tellingly, the FTC does not deny the statement or offer evidence to rebut Mr. Rubenson.

[3] Declaration of Harry H. Schneider, Jr. ("Schneider Decl.") Ex. A (Mithal 30(b)(6) Dep.) 29:19-30:6 (instructing witness not to answer "What else, if anything, does Amazon need to do to make sure that it's in compliance? . . . . What does the FTC contend Judge Coughenour must order Amazon to do with injunctive relief to be in compliance?"); *see also id.* 24:6-25:14, 102:21-105:2 ("The FTC has not taken a public position on whether Amazon is [currently] complying" with Section 5. . . . The FTC has no position on whether [Amazon is] currently obtaining consent.").

[4] For example, in a follow-up discussion after Amazon's deposition of the FTC's Rule 30(b)(6) witness, the FTC refused to state simply that it was challenging Amazon's $1 password as violating Section 5, but instead wrote that the FTC was "not planning to seek as part of monetary relief charges incurred after June 2014 by consumers who faced the June 2014 prompt." 2/2/2016 Declaration of Harry H. Schneider, Jr. (Dkt. 97), Ex. T.

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 4
24976-0374/130003919

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

device, one would expect (or at least hope) that the consumer-protection agency would prioritize stopping the unfair conduct rather than waiting to raise it in its Opposition.[5] Instead, the FTC chose not to give fair notice of its position. The fact that the FTC did not and cannot now point to any other possible "ongoing violation" of the FTC Act speaks volumes about the FTC's claims and the dubious pursuit of an injunction here.[6]

### 2. There Is No Ongoing Section 5 Violation Based on the Sale of 99-Cent Items that Represent a Trivial and Declining Number of Transactions

Whatever the explanation for the FTC's litigation tactics, its argument that Amazon is currently violating Section 5 because it does not require a password for 99-cent items on its first-generation device is meritless. Even setting aside that customers can reasonably avoid any alleged injury by enabling Parental Controls, supervising their child, or seeking a refund after receipt of the immediate order-confirmation email, Rubenson Decl. ¶¶ 7-15, any harm from these purchases cannot constitute substantial injury. Today, sales of 99-cent in-app items on the first-generation device are insubstantial and steadily decreasing, and refunds have remained exceedingly low, as is evident in Figure 1 below and the following:

- December 2015 sales of 99-cent items on the first-generation device constitute less than ▆% (▆▆▆▆▆▆ percent) of total in-app purchases on all devices.

- For each month since August 2015, refunds (for any reason) of 99-cent items purchased on the device have been *less than $▆ total*.

- In December 2015, merely ▆ of Amazon's customers making an in-app purchase received refunds (for any reason) for 99-cent items purchased on that device, amounting to $▆ *total*. That amount corresponds to ▆▆ % of all in-app purchases for the month (just over $▆▆▆▆▆▆ in in-app purchases).

---

[5] Further confirming that the FTC does not believe there is any ongoing harm related to these purchases, the FTC never sought a temporary restraining order or a preliminary injunction to stop the alleged harm before trial.

[6] The FTC's new assertion – sarcastically written in a footnote – that it could not earlier identify the alleged injury from these purchases because Amazon disobeyed a court order is both wrong and offensive. *See* Opp'n 12 n.9. The FTC has always known about these purchases, and nothing in the produced transactional data first revealed them. Further, Amazon fully complied with the Court's order by timely producing the data at issue in the FTC's motion to compel (relating to unsuccessful purchase transactions). Schneider Decl. ¶ 2.

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 5
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Figure 1: Sales and Refunds of 99-Cent In-App Items on First-Generation Device**



*See* Werner Decl., Ex. F; Dkt. 99 Ex. A.

Even these figures are overstated. They represent *all* sales and refunds for 99-cent items on the first-generation device. They are not limited to purchases by children (whether by restricting to apps potentially played by children or customer-service codes relevant to accidental purchases by children). They are not limited to customers making their first 99-cent purchase. And they are not limited to customers who have never previously received a refund (and accompanying education about Parental Controls). *See* Amazon Opp'n to FTC Mot. for Summ. J. (Dkt. 167, 179) 11-14. Given that Amazon stopped selling its first-generation device in August 2012, the number of new customers making a 99-cent purchase on that device for the first time is negligible and steadily diminishing.

The FTC's cited refund rate for those 99-cent purchases covers only the period from June 4 through December 1, 2014, and does not reflect *current* data. Mot. 5. It also suffers from the same defects as the FTC's estimate in its motion for summary judgment. For example, the FTC includes refunds coded as having nothing to do with children, includes refunds for

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 6
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

purchases within apps not likely to be used by children, and includes refunds to customers who previously received refunds and therefore were on notice of Parental Controls and how to avoid accidental purchases by their children. *See* Dkt. 167, 179 at 12, 13 & fig. 1, 20-21; Werner Decl. ¶¶ 11, 14-15 & Ex. D. The FTC's calculation of refunds for 99-cent purchases for November 2014 is just $■■■ – less than ■% of total in-app purchases by all Amazon customers for the month – hardly the stuff of a Section 5 violation in need of injunctive relief. *See* Dkt. 99, Ex. A.

In fact, of the few customers seeking refunds for purchases from the first-generation device, more customers currently seek refunds for items for which they had *entered a password* than seek refunds for those 99-cent purchases: The refund rates for items $1 and up since November 2013 – all subject to a password – have *exceeded* the refund rates for items under $1 (■% of customers compared to ■%; ■% of units compared to ■%). *See* Werner Decl. Ex. F.[7]

In sum, undisputed material facts compel the conclusion that Amazon's in-app purchasing practices currently comply with Section 5.

## C. There Is No Threat of a Recurring Violation that Warrants a Permanent Injunction

The FTC attempts to salvage its position by contending that Amazon "dragged its feet for years" before implementing "haphazard and fragmented changes" that were merely "stopgap" measures. Opp'n 13-14. The FTC's hyperbole is contrary to the undisputed facts. As in its Motion for Summary Judgment, the FTC knowingly omits critical evidence, disregards key features and tools Amazon implemented before the FTC's investigation, and fails to acknowledge the changes Amazon was evaluating and designing before the FTC's investigation.

---

[7] Nor is there evidence of an "iceberg" below the surface of 99-cent purchasers who were harmed but did not seek a refund. In contending that "consumers may be less likely to seek refunds for low-dollar charges," the FTC selectively cites portions of witness testimony. Opp'n 5 (citing Dkt. 98, ¶ 36). For example, after testifying that, in general, customers "are more motivated to . . . figure out what happened in a higher-dollar purchase," a former Amazon employee emphasized that the time *cost* to seek a refund from Amazon is "dramatically less" than seeking one from a brick-and-mortar retailer. Schneider Decl. Ex. B (Paleja Dep.) 94:24-97:12.

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 7
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

### 1. Amazon Actively Addressed the Issue of Accidental In-App Purchases Before and During the FTC's Investigation

The undisputed facts do not support the FTC's contention that during the first eight months after launch "the only change Amazon made" was requiring a password for purchases of $20 or more. To the contrary, during that period Amazon analyzed data, reviewed customer feedback, and implemented several refinements – well before Amazon was even aware that the FTC would commence an investigation. *See, e.g.*, Pieros Dep. (Dkt. 97, Ex. C) 95:2-14 (noting that Appstore senior executives left their families on Christmas Day 2011 to answer questions by customers receiving tablets as gifts). In addition to the Terms and Conditions of Use, Parental Controls, and instant email receipt all available since launch, within the first week after launch Amazon added to the description page for each app offering in-app-purchasing an additional notice of those opportunities ("PLEASE NOTE"). Rubenson Decl. ¶¶ 8-9, 11-13. Amazon also instructed its customer-service agents to refund all first-time "accidental" in-app purchases and, as part of the refund process, had those agents instruct customers how to use Parental Controls to avoid future accidental purchases and sent follow-up emails with those instructions. 2/2/2016 Declaration of Jeffrey D. Pieros (Dkt. 96) ¶¶ 3-5; FTC Ex. 17.

Immediately recognizing the refund issue within the first month after launch, Amazon analyzed the source of the issue and determined that high-price in-app items were generating disproportionately high refunds. *See, e.g.*, FTC Ex. 15 ("There's a unique, concentrated purchase behavior which generates disproportionate refunds to a small group of customers."). In response, Amazon *suspended* the sale of all in-app items priced at $20 or higher – at a financial loss to Amazon and the app developers. Rubenson Decl. ¶ 19. Amazon restored those purchasing opportunities but only after requiring a password. *Id.* These changes, and those that followed, were not "piecemeal"; they were rigorously analyzed, surgical, and preferred by Amazon customers. *See, e.g.*, FTC Ex. 154 ("To protect our customers in the short-term, we took a number of corrective actions. . . . We'll continue to track refunds and contact rates on [in-

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 8
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

app] purchases carefully, and we can adjust the threshold as appropriate based on the data.").[8]

The FTC also ignores the undisputed facts showing that Amazon had been evaluating and designing additional refinements before the FTC began its investigation. In an internal memorandum titled "In-App Purchasing: Returns Analysis & Solutions Proposal," *prepared before the FTC's investigation*, Amazon observed that although the $20 password "has successfully reduced the refund rate," Amazon's "goal is to lower the return rate even further." FTC. Ex. 17. Amazon summarized its ongoing, voluntary approach as follows:

> - The solution should not interfere with the ▮% of customers that do not seek refunds, while reducing the problem for the ▮% of customers that do;
> - Our customer service policies should be focused on educating customers and remain lenient on customers seeking first-time refunds;
> - The technical solution should not inhibit the one-click ordering experience for the majority of customers;
> - The technical solution should be flexible, allowing Amazon to adjust Password / PIN thresholds as we learn more about customer behavior.

*Id.* at 2. The memorandum recommended, among other things, that Amazon require a password "if a user attempted to make a second purchase within 5 minutes of a previous IAP purchase" – the same "High-Frequency Password" Amazon later implemented in response to refund data. Rubenson Decl. ¶¶ 21-22.[9] Before the FTC investigation, Amazon also identified that most refund requests were generated from purchases within certain apps, FTC Ex. 15 ("Returns are concentrated on 10 apps"; "10 apps generate ▮% of total refunds"), and Amazon later implemented the "High-Risk Password" to address that concentration of refunds, Rubenson

---

[8] *See also* Rubenson Decl. ¶ 27 (explaining that in response to further data analysis, Amazon reduced the high-price password to items at $19.99); FTC Ex. 15 ("Smartly add/revise policies as we learn"; "Conduct quarterly concession reviews").

[9] Citing two exhibits from lower-level Amazon employees – both of whom the FTC chose not to depose – the FTC contends that Amazon implemented the High-Frequency Password in response to FTC pressure. Opp'n 14-15. But Amazon had identified the issue and proposed the solution *before* the FTC began its investigation. In fact, the FTC knows from the depositions it took that the FTC's investigation did not add any priority to Amazon addressing the issue. *See* Schneider Decl. Ex. C (Pieros Dep.) 92:6-13 ("I don't agree about the FTC investigation [motivating Amazon's response]. . . . [W]e were talking about in-app purchasing as early as, you know, Christmas of 2011, going into 2012, trying to figure out ways to make things better for our customer."); Pieros Dep. (Dkt. 97, Ex. C) 95:2-14 ("[B]ased on that, my experience with this business team and how engaged they were in the customer experience, I have a hard time saying that the FTC investigation added any priority to it as – as the team was already trying to fix it.").

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 9
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Decl. ¶ 24. Moreover, for nearly a year before the FTC's investigation, Amazon was developing FreeTime, the software that allows parents to further control tablet usage by children and that disables all in-app purchasing. Rubenson Decl. ¶ 20; Glissmeyer Dep. (Dkt. 97, Ex. E) 43:19-44:8. Amazon launched FreeTime in October 2012. Rubenson Decl. ¶ 20. The FTC nowhere acknowledges this innovation.

The FTC's assertion that Amazon was slow to respond, aimless in its refinements, or motivated only by the FTC's later investigation is belied by the undisputed evidence. Amazon made these refinements because its reputation with its customers is essential to its ongoing business and because it wanted to eliminate customer dissatisfaction. That record of responsible conduct confirms there is no "cognizable danger of recurrent violation."

### 2. Amazon Resolved the Issue Before the FTC First Disclosed What It Thinks Is Necessary to Comply with Section 5

The FTC oddly asserts that a permanent injunction is warranted because "Amazon's introduction of the June 2014 prompt on certain devices was also motivated by FTC action." Opp'n 15. Of course it was. Amazon did not know what the FTC believes was required to comply with Section 5 before the FTC *first disclosed it* (in its settlement with Apple). Prior to the Apple settlement the FTC had never indicated whether it would insist on a password in front of every purchase or whether a one-time election would suffice. Rubenson Decl. ¶ 22, 28. In fact, the FTC consistently rejected data-based analysis showing that Amazon's voluntary refinements had *already* successfully resolved the issue of customer dissatisfaction related to accidental in-app purchases since at least October 2013. Dkt. 167, 169 at 33, fig. 2. Nonetheless, almost immediately after the FTC disclosed its Apple settlement, Amazon in good faith told the FTC it would make the minor changes necessary to comport its current practice to the terms of that unrelated settlement even though there was *no evidence* suggesting that change would further reduce the already-low refund rate Amazon had achieved on its own – and undisputed data now confirm that the FTC's approach *did not* further reduce the refund rate.

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 10
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Rubenson Decl. ¶ 28 & Ex. E; Dkt. 167, 169 at 33, fig. 2.

The FTC appears intent on subjecting an entire (and new) industry to long-term governmental oversight. But it must actually prove the likelihood of recurrence before the Court can impose a contested permanent injunction, as opposed to a negotiated consent decree. Here, Amazon's undisputed, successful efforts to resolve voluntarily its customers' dissatisfaction preclude a finding that it is likely to violate Section 5 in the future.[10]

### 3. Permanent Injunctions Are Not "the Norm"

Knowing that it cannot survive summary judgment by relying on de minimis sales from Amazon's discontinued first-generation device or attacking Amazon's voluntary efforts that successfully resolved any customer dissatisfaction, the FTC contends that a permanent injunction must issue because it is "the norm" and because Amazon "justif[ies] its in-app billing practices without acknowledging its unlawful conduct." Opp'n 1, 18. Neither argument prevails.

The courts granting permanent injunctions did so because, unlike here, those defendants' deceptive and ongoing schemes warranted such relief,[11] not because granting

---

[10] In an apparent attempt to grab headlines, the FTC refers to testimony from an Amazon employee about a conversation he had with Amazon CEO Jeff Bezos, misleadingly making it appear as though it is directly quoting Mr. Bezos. Opp'n 17. But the FTC omits that the same witness explained that Mr. Bezos "was interested in making sure that things were . . . better for parents and kids" and that he "wanted to create an experience that parents trusted." FTC Ex. 540 at 48:24-49:10. Yet again the FTC contradicts itself. It has repeatedly said that Section 5 compliance does not require entry of a password for all purchases, Dkt. 11 at 16, yet here it criticizes Mr. Bezos for suggesting that a password should not be required for all purchases.

[11] *See, e.g.*, the FTC's cited cases: *FTC v. Gill*, 265 F.3d 944, 947, 950, 957 (9th Cir. 2001) (affirming permanent injunction where defendants were "preying on individuals" via "deceptive" practices, had violated the terms of a preliminary injunction, and were likely to reoffend because of the "systematic nature of the misrepresentations," the "continued operation" of the scheme, and the "continued transmission of the same false and misleading letters."); *FTC v. Loewen*, 2013 WL 5816420 (W.D. Wash. Oct. 29, 2013) (entering permanent injunction in a "deception" case where defendants – whom the court earlier sanctioned – used a "telemarketing scheme that defrauded the sellers of vehicles" and injunctive relief was necessary "to prevent Defendants from continuing to engage in the heretofore lucrative deception they have been practicing."); *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1086 (C.D. Cal. 2012) (entering permanent injunction because defendant "engaged in sustained and continuous conduct that perpetuated the deceptive marketing . . . for over two years" and "obdurately insisted that at no time did he ever believe consumers were misled."); *FTC v. Inc21.com*, 745 F. Supp. 2d 975, 990, 1004, 1009 (N.D. Cal 2010) (entering permanent injunction after earlier entry of a TRO and preliminary injunction because the sales were "fabricate[d]" and "manipulated," 96 percent of customers "received no services from defendants or their products," and there was "mountains of evidence that defendants' telemarketing activities were laced with fraud" and "compelling proof" that defendants "falsified information" and "lied"); *FTC v. Stefanchik*,

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 11
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

permanent injunctions is standard practice or "the norm." *See, e.g.*, *Friends of the Earth*, 528 U.S. at 192-93 ("A federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law. . . . [F]ederal courts should aim to ensure the framing of relief no broader than required by the precise facts."). As Amazon outlined in its opposition to the FTC's motion for summary judgment, the FTC has provided neither the Court nor Amazon any facts that would allow for an informed comparison of the conduct at issue here with that at issue in its settlements with Apple and Google. *See* Dkt. 167, 179 at 34.[12] What is known and undisputed is that the conduct here does not demonstrate any ongoing injury or a cognizable threat of such harm in the future.

Nor does the FTC's prosecutorial Catch-22 justify long-term judicial oversight. On the one hand, the FTC says Amazon should admit it previously violated the law and acquiesce to a 20-year permanent injunction to prevent future violations. On the other hand, the FTC says that because Amazon disagrees that it ever violated the law, it should be subject to a 20-year permanent injunction for refusing to take responsibility. The FTC cannot have it both ways, and neither argument suffices to excuse the FTC from carrying its burden of proving that Amazon is "likely" to violate Section 5 in in the future.

### III.  CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment in favor of Amazon with respect to the FTC's request for a permanent injunction.

---

2007 WL 1058579 (W.D. Wash. Apr. 3, 2007) (entering permanent injunction in "deceptive acts or practices" case in which defendants used "false and misleading" representations to sell bogus materials for a get-rich-quick scheme for which the court previously entered a preliminary injunction).

[12] The FTC ignores, for example, that Amazon was more generous than Apple and Google in granting refunds. Schneider Decl. Ex. D (Lagoni Dep.) 212:4-17 ("[The app developers] said, Amazon's customer service policies are way too lenient. Why can't you be more strict like what Apple and Google were doing at the time? Which, you just couldn't get a refund. I even tried it myself personally . . . and I tried making in-app purchases and tried do go through the process of getting a refund from Apple and got rejected. And so the developers, when I would bring it up with them, they always thought that Amazon was being way too friendly to the customers . . . .").

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 12
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

DATED: February 26, 2016


| | |
|---|---|
| *s/ Harry H. Schneider, Jr.* | *s/ J. Douglas Baldridge* |
| Harry H. Schneider, Jr. WSBA No. 9404 | J. Douglas Baldridge WSBA No. 37247 |
| David J. Burman WSBA No. 10611 | Danielle R. Foley (admitted *pro hac vice*) |
| Jeffrey M. Hanson WSBA No. 34871 | **Venable LLP** |
| Attorneys for Defendant Amazon.com, Inc. | 575 7th Street, NW |
| **Perkins Coie LLP** | Washington, DC 20004 |
| 1201 Third Avenue, Suite 4900 | Telephone: (202) 344-4000 |
| Seattle, WA 98101-3099 | Facsimile: (202) 344-8300 |
| Telephone: 206.359.8000 | jbaldridge@venable.com, |
| Facsimile: 206.359.9000 | drfoley@venable.com |
| HSchneider@perkinscoie.com | |
| DBurman@perkinscoie.com | |
| JHanson@perkinscoie.com | |

*Attorneys for Defendant Amazon.com, Inc.*

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 13
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## CERTIFICATE OF SERVICE

I certify that on February 26, 2016, I electronically filed the foregoing Amazon.com, Inc.'s Reply In Support of Its Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to attorneys of record.

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 26nd day of February, 2016.

*s/ Harry H. Schneider, Jr.*

AMAZON'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT
(No. 2:14-CV-01038-JCC) – 14
24976-0374/130003919

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000