THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

FEDERAL TRADE COMMISSION,

CASE NO. C14-1038-JCC

10

Plaintiff,

11

ORDER ON THE FTC'S MOTION *IN LIMINE*

v.

12

AMAZON.COM, INC.,

13

Defendant.

14

15      This matter comes before the Court on the FTC's Motion *in Limine* to Exclude Expert

16  Testimony (Dkt. Nos. 104 and 112[1]) and Amazon's Opposition (Dkt. No. 145). Having

17  thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument

18  unnecessary and hereby GRANTS the motion in part and DENIES it in part for the reasons

19  explained herein.

20  **I.      BACKGROUND**

21      The above-captioned matter is brought by the Federal Trade Commission ("FTC")

22  alleging that Amazon's practices related to in-app purchases are unfair under Section 5 of the

23  FTC Act, 15 U.S.C. § 45(n). (Dkt. No. 1, p. 11; *see also* Dkt. No. 48 at 1.) Specifically, this case

24  pertains to unauthorized purchases made by children while using apps. (*Id.*) Amazon asserts that

25

26  [1] The Court refers to both the redacted version of the FTC's motion (Dkt. No. 104) and the sealed,
unredacted version (Dkt. No. 112) as it addresses both with this order.

ORDER ON THE FTC'S MOTION IN LIMINE
PAGE - 1

1    its practices did not violate the FTC Act for several reasons, including: (1) the ability of

2    consumers to prevent unwanted purchases through parental controls or refunds, (2) the harm to

3    consumers was not substantial thanks to the amount of refunds awarded, (3) the harm to

4    consumers was outweighed by the convenience of a more seamless or "friction-free" app

5    experience, and (4) Amazon has already voluntarily addressed the issues that arose regarding in-

6    app purchases by children. (*See* Dkt. No. 145 at 3–4.) The case is set for a bench trial on May 2,

7    2016. (Dkt. No. 21.)

8        Plaintiff FTC brings a motion *in limine* with respect to Amazon's six expert witnesses.

9    (Dkt. Nos. 104 and 112.) The FTC argues that Amazon's experts should not be permitted to

10   testify, either entirely or in part, for failure to meet the requirements of Federal Rule of Evidence

11   702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

12       The parties previously submitted briefing on the FTC's motion to exclude two of

13   Amazon's rebuttal witnesses, Dr. Barry A. Sabol and Dr. Craig Rosenberg. (Dkt. No. 80.) The

14   Court entered an Order granting the motion in part, concluding that Dr. Rosenberg's report

15   constituted proper rebuttal but that most of Dr. Sabol's report was properly excluded. (Dkt. No.

16   139.)

17   **II.      DISCUSSION**

18       **A.      Standard of Review**

19       The trial court has the "task of ensuring that an expert's testimony both rests on a reliable

20   foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals*, 509

21   U.S. 579, 597 (1993). A witness who is qualified as an expert by knowledge, skill, experience,

22   training, or education may testify in the form of an opinion or otherwise if: (1) the expert's

23   scientific, technical, or other specialized knowledge will help the trier of fact to understand the

24   evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data;

25   (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably

26   applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

ORDER ON THE FTC'S MOTION IN LIMINE
PAGE - 2

1    In *Daubert*, the Supreme Court rejected the rigid "general acceptance" test for the

2   admissibility of scientific evidence. 509 U.S. at 596. The Court reasoned that "[v]igorous cross-

3   examination, presentation of contrary evidence, and careful instruction on the burden of proof

4   are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* When

5   determining admissibility, the text is "a flexible one," with a focus on principles and

6   methodology. *Id.* at 595. General acceptance is still relevant, but so are other factors. *Id.* at 594.

7   These factors include, but are not limited to: (1) whether the theory or technique can be, or has

8   been, tested; (2) whether the theory or technique is subjected to peer review and publication; and

9   (3) the known or potential rate of error. *Id.* at 593–94.

10    Expert testimony is liberally admitted under the Federal Rules. *See Daubert v. Merrell*

11   *Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993) (noting that Rule 702 is part of the "liberal thrust

12   of the Federal Rules and their general approach of relaxing the traditional barriers to opinion

13   testimony" (quotation marks omitted); *see also* Fed. R. Evid. 702, advisory committee notes to

14   2000 amendments ("[R]ejection of expert testimony is the exception rather than the rule.").

15    Significantly, in a bench trial, the Court's gatekeeping function under *Daubert* "is less

16   pressing," because "the 'gatekeeper' and the trier of fact are one and the same." *Lake Union*

17   *Drydock Co. v. United States*, 2007 WL 2572291, at *1 (W.D. Wash. Sept. 4, 2007) (Lasnik, J.).

18   In determining the admissibility of expert testimony, "there is less danger that a trial court will

19   be 'unduly impressed by the expert's testimony or opinion' in a bench trial." *FTC v.*

20   *BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014).

21   **B.    Evaluation of Amazon's Experts**

22    With the liberal standards set forth by the Federal Rules of Evidence in mind, the Court

23   turns to each of Amazon's expert reports and the FTC's arguments for exclusion.

24    **1.    Dr. Ravi Dhar, Ph.D.**

25    The FTC first moves to exclude two portions of the expert report of Dr. Ravi Dhar,

26   Ph.D.: (1) Dr. Dhar's opinions relating to what he refers to as Amazon's "launch and learn"

1    practice, and (2) Dr. Dhar's opinion that Amazon reasonably informed its customers about in-

2    app purchasing. (Dkt. No. 112 at 5–10.)

3          First, the FTC takes issue with Dr. Dhar's opinion that Amazon's implementation of

4    password prompts gradually over time is an example of an accepted business practice known as

5    "launch and learn." (Dkt. No. 112 at 5–7.) The FTC argues that this opinion is irrelevant to the

6    issues in this case and that Dr. Dhar's opinion is unreliable for failing to be a product of his own

7    independent research and for failing to incorporate a review of pertinent literature. (*Id.*) The

8    Federal Rules of Evidence impose a very low threshold requirement for relevance: evidence with

9    any tendency to make a consequential fact more or less probable is relevant. Fed. R. Evid. 401.

10   And the presumption in favor of including, rather than excluding, evidence is even stronger in

11   nonjury cases such as this one. *Turner v. Univ. of Wash.*, No., 2007 WL 2984682, at *1 (W.D.

12   Wash. Oct. 10, 2007) (in "nonjury cases the district court can commit reversible error by

13   excluding evidence but it is almost impossible for it to do so by admitting [it.]") (internal citation

14   omitted). Moreover, the FTC's critiques regarding Dr. Dhar's methodologies, in addition to

15   appearing exaggerated, are capable of being borne out on cross-examination.

16         Second, the FTC takes issue with the reliability of Dr. Dhar's opinion that Amazon's

17   customers were "reasonably informed" about in-app purchases. (Dkt. No. 112 at 7–10.) The FTC

18   asserts that Dr. Dhar's opinion is flawed chiefly because, in analyzing the existence of certain

19   notices or warnings, it assumes that Amazon customers noticed, read, and understood the

20   information presented. (*Id.*) For example, Dr. Dhar discusses the existence of an "IAP statement"

21   placed on the download pages of apps for which in-app purchases were enabled, as well as the

22   use of a visual aid known as a "badge" to highlight the availability of in-app purchases (Dkt. No.

23   126 at 29–30.) Dr. Dhar also analyzed the existence of parental controls and confirmation e-

24   mails as further aspects of the customer experience he believed rendered Amazon customers

25   "reasonably informed" regarding in-app purchases. (*Id.* at 31–34.) The FTC's point is well taken:

26   the existence of these notices and warnings does not, in actuality, demonstrate that customers

1    noticed or understood them. However, the Court finds that this critique can be sufficiently

2    demonstrated in cross-examination. Particularly considering the liberal inclusion of expert

3    testimony, a liberality that is only enhanced in the context of a bench trial, the Court does not

4    find flat-out exclusion of Dr. Dhar's report appropriate.

5         With respect to the opinions of Dr. Dhar, the FTC's motion is DENIED.

6    **2.       Dr. Donna Hoffman, Ph.D.**

7         Next, the FTC moves to exclude the expert opinion of Dr. Donna Hoffman, Ph.D., in its

8    entirety. (Dkt. No. 112 at 10–12.)The FTC objects that Dr. Hoffman's opinions are either not

9    closely enough tied to the issues in this case to be helpful to the trier of fact, or so poorly

10   analyzed as to be unreliable. (*Id.*) The key opinions presented in Dr. Hoffman's report are as

11   follows: (1) consumers tend to prefer a seamless or "friction-free" online or mobile experience,

12   meaning, for example, that they prefer fewer barriers such as password entries; (2) Amazon

13   customers specifically have come to expect such a "friction-free" process; and (3) Amazon has

14   appropriately balanced the preference for a "friction-free" user experience with checks such as

15   password protections, parental controls, and notifications. (Dkt. No. 146-1 at 212.) The FTC

16   argues that Dr. Hoffman's first two opinions will not be helpful to the trier of fact. (Dkt. No. 112

17   at 10–11.) Additionally, the FTC takes issue with Dr. Hoffman's ultimate conclusion as it is not

18   based on her own independent analysis. (*Id.* at 12.)

19        Upon review, the Court does not find exclusion of Dr. Hoffman's expert opinion

20   warranted. First, the cases cited by the FTC to argue that Dr. Hoffman may not "rely upon

21   opinions developed by another expert . . . without independent verification" are factually distinct.

22   In *Fosmire v. Progressive Max. Ins. Co.*, an expert who relied solely on ten year-old data from

23   another expert was properly excluded. 277 F.R.D. 625, 630 (W.D. Wash. 2011). In *Cholakyan v.*

24   *Mercedes-Benz, USA, LLC*, the witness in question conducted no independent analysis and, when

25   asked whether eighty percent of his report was composed of verbatim quotes from another

26   expert's report, responded with, "Why reinvent the wheel?" 281 F.R.D. 534, 544–45 (C.D. Cal.

1   2012).

2   However, "an expert can appropriately rely on the opinions of others if other evidence

3   supports his opinion and the record demonstrates that the expert conducted an independent

4   evaluation of that evidence." *Cholakyan*, 281 F.R.D. at 544. While Dr. Hoffman cites to Dr.

5   Dhar's report to discuss the manner in which Amazon implemented various notification

6   measures to the in-app purchase experience, she also relied on her own extensive knowledge (*see*

7   Dkt. No. 146-1 at 208–211) and numerous additional materials (*Id.* at 272–278) in reaching her

8   independent conclusion. Finally, Dr. Hoffman's ultimate conclusion—that Amazon successfully

9   balanced market pressures to provide a "friction-free" customer experience and effectively notify

10  consumers of potential charges—is relevant.

11  If, at trial, Dr. Hoffman attempts to testify to irrelevant information with respect to

12  Amazon's general business reputation, or the general preferences of consumers to an overly-

13  burdensome and unhelpful degree, the Court will certainly entertain a relevance objection at that

14  time. The FTC's Motion to Exclude Dr. Hoffman's testimony is DENIED.

15  **3.   Michael Callahan**

16  The FTC moves to exclude the expert testimony of Mr. Michael Callahan, a former

17  Amazon employee with nearly thirty years of experience working and consulting with what he

18  calls "customer-centric business design." (Dkt. No. 146-1 at 285, 337) (internal quotation marks

19  omitted.) The FTC argues that Mr. Callahan's expert opinions are both irrelevant and unreliable.

20  (Dkt. No. 112 at 12–14.)

21  A large portion of Mr. Callahan's expert report is devoted to his opinions regarding

22  Amazon's general reputation for customer service. (Dkt. No. 146-1 at 287–310.) In fact, Mr.

23  Callahan's report attests that he was asked to evaluate "Amazon's approach to and achievement

24  of customer satisfaction generally" and whether the company's refund practices are "consistent

25  with [its] proclaimed commitment to customer satisfaction." (*Id.* at 286.) When Mr. Callahan's

26  report turns to an issue pertinent to this case, the availability of refunds for Amazon's customers,

1  the discussion begins with Amazon's original refund practices in returning physical goods such

2  as books. (Dkt. No. 146-1 at 310.) Indeed, the report only mentions in-app purchases a handful

3  of times, and does not discuss them in any depth. (*See id.* at 288, 311.)

4      In this instance, the Court agrees that Mr. Callahan's report is not relevant or helpful to

5  the Court in making its ultimate determination with respect to violations of the FTC Act.

6  Accordingly, with respect to Mr. Callahan's expert testimony, the FTC's Motion to Exclude is

7  GRANTED.

8          **4.      Dr. Craig Rosenberg, Ph.D.**

9      The FTC next objects to the report of Dr. Craig Rosenberg, Ph.D. (Dkt. No. 112 at 14–

10  16.) Dr. Rosenberg performed a "usability test" in which he evaluated the user experience with

11  the Amazon Appstore by working with volunteer test subjects. (Dkt. No. 146-2 at 7–8.) Twenty-

12  four subjects participated in a survey in which they completed tasks and answered questions

13  regarding the use of Amazon apps. (*Id.* at 18–20.)

14      The Court previously ruled that Dr. Rosenberg's rebuttal report was properly offered to

15  rebut the FTC's expert, Jennifer King. (Dkt. No. 139 at 5–6.) In so ruling, the Court noted that it

16  had "some hesitation" with respect to Dr. Rosenberg's test. (*Id.* at 5.) The Court noted that, "it is

17  possible that test subjects primed to explain and identify information present on various screens

18  are not appropriately comparable to the average consumer who is not so primed." (*Id.*)

19      In addition to this concern, the FTC argues that Dr. Rosenberg's usability test involves

20  another serious methodological flaw; testing the wrong password prompts and app description

21  pages. (Dkt. No. 112 at 14.) Dr. Rosenberg's test used screenshots from 2013 and 2014

22  interfaces. (Dkt. No. 146-2 at 19.) However, this case involves Amazon's use of in-app

23  purchases beginning in November 2011. (Dkt. No. 1 at 3.) Despite Amazon's argument that "the

24  FTC offers no explanation how Dr. Rosenberg's testing of the May 2013 and June 2014 first-

25  time purchase prompts . . . renders his entire testimony unreliable," the FTC offers a clear

26  example of the difference between the 2011–2012 and the 2013–2014 interfaces. (Dkt. No. 145

1    at 16.) In 2011 and 2012, Amazon customers downloading an app were prompted by a button

2    labeled, "FREE," whereas in Dr. Rosenberg's usability test, the prompt reads, "GET." (Dkt. No.

3    112 at 15; *see also* Dkt. No. 1 at 5; Dkt. No. 146-2 at 22.)

4          The Court agrees that Dr. Rosenberg's report is offered as proper rebuttal and that the

5    "usability test" pertaining to consumer understanding with respect to in-app purchases is

6    relevant. However, the Court maintains its serious misgivings about the soundness of

7    conclusions drawn from a study that primed its test subjects and used a later version of the

8    Appstore interface. While the Court does not elect to exclude Dr. Rosenberg's testimony prior to

9    trial, it anticipates rigorous cross-examination on the applicability of the "usability test" to the

10   facts of this case.

11         With respect to Dr. Rosenberg, the FTC's motion is DENIED.

12         **5.      Dr. Barry A. Sabol, Ph.D.**

13         As a rebuttal of an FTC expert named Jennifer King, Amazon tasked Dr. Barry A. Sabol,

14   Ph.D., with creating an anonymous survey of 1,237 Amazon customers. (Dkt. No. 146-2 at 172.)

15   In this Court's previous order, it determined that portions of the survey performed by Dr. Sabol

16   were outside the scope of proper rebuttal, specifically what the Court noted as the "[s]econd

17   portion of Questions 21 and 22; Questions 23 and 24." (Dkt. No. 139 at 6.) What remains for the

18   Court's consideration, then, are simply Dr. Sabol's initial survey questions, specifically asking

19   participants (1) if they have children under 17 living in their house, (2) if they have purchased any of

20   a certain number of Amazon digital products, (3) and if they have ever contacted Amazon's customer

21   service about a digital product. (*See* Dkt. No. 146-2 at 179–183.)

22         Having already ruled that much of Dr. Sabol's report should be excluded, the remaining

23   portions of his report are simply not useful for the trier of fact. Accordingly, the FTC's Motion to

24   Exclude with respect to Dr. Sabol is GRANTED.

25         **6.      Dr. Andrew L. Sears, Ph.D.**

26         Finally, the Court considers the FTC's motion with respect to Dr. Andrew L. Sears, Ph.D.

1  The FTC moves to exclude two portions of Dr. Sears's opinion: (1) that Amazon's "design and

2  refinement process" was consistent with industry practices and state-of-the-art, and (2) that the

3  Kindle Fire's interfaces and design with respect to in-app purchases did not fall below industry

4  practices such that they would have unfairly confused parents. (Dkt. No. 112 at 19.) The FTC

5  argues that Dr. Sears's opinions are irrelevant and go beyond the scope of his qualifications. (*Id.*)

6  More specifically, the FTC argues that a comparison between the in-app practices of Amazon

7  and other companies "has no bearing" on whether Amazon is liable for violations of Section 5 of

8  the FTC Act. (*Id.*)

9          Dr. Sears was retained by Amazon to review Ms. King's expert report. (Dkt. No. 146-2 at

10  209.) Upon review, the Court is satisfied with Dr. Sears's qualifications. Moreover, the Court

11  concludes that Dr. Sears's opinions constitute a valid, relevant rebuttal of Ms. King's opinions.

12  Exclusion of Dr. Sears as a witness is not necessary: the Court may sustain any well-placed

13  relevance objections at trial, as well as evaluate the appropriate weight to assign to Dr. Sears's

14  opinion after he testifies. With respect to Dr. Sears, the FTC's Motion is DENIED.

15  **III.    CONCLUSION**

16          For the foregoing reasons, the FTC's Motion in Limine (Dkt. Nos. 104 and 112) is

17  GRANTED in part and DENIED in part.

18          DATED this 29th day of March 2016.

19

20

21

22

23  _____

24  John C. Coughenour

25  UNITED STATES DISTRICT JUDGE

26