1

2

3

4

5

6

7

8

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   FEDERAL TRADE COMMISSION,

10                                       Plaintiff,

11           v.

12   AMAZON.COM, INC.,

13                                       Defendant.

No. 2:14-CV-01038-JCC

**AMAZON.COM, INC.'S
SUPPLEMENTAL BRIEF REGARDING
THE FTC'S CALCULATION OF
MONETARY RELIEF**

NOTE ON MOTION CALENDAR:

Friday, June 17, 2016

ORAL ARGUMENT REQUESTED

PUBLIC REDACTED VERSION

14

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   DISCUSSION ........................................................................................................ 1

    A.    The FTC's Estimate of Monetary Relief Is Substantially Inflated ....................... 2

        1.    Corrections to the FTC's Estimate of Monetary Relief ............................. 2

            a.    Corrections to the FTC's Estimate of Potentially Relevant Revenue ........................................................................................... 2

                (i)    Exclude Purchases Within Adult-Oriented Apps .............. 2

                (ii)    Exclude Purchases After Customer's First Refund .......... 3

                (iii)    Exclude Purchases After Customer's First FreeTime Activity .............................................................................. 4

                (iv)    Exclude Late-Night Purchases .......................................... 4

                (v)    Exclude Purchases After Parental Controls Enabled ......... 5

                (vi)    Exclude Additional Purchases Subject to Passwords ........ 5

                (vii)    Additional 99-Cent Sales on First-Generation Kindle Fire ......................................................................... 7

            b.    Corrections to the FTC's "Unauthorized Charge Rate" ............... 8

                (i)    The FTC's "Unauthorized Charge Rate" Is Implausible ......................................................................... 8

                (ii)    Corrected "Unauthorized Charge Rate" ............................. 9

                    (a)    Customers Who Chose No Password for Future Purchases When Presented with June 2014 Prompt ............................................................. 9

                    (b)    Customers Who Had Parental Controls Disabled After Presented with May 2013 Prompt ............................................................................. 10

                    (c)    Failed Transactions More Than 30 Days After Customer's Initial Failed Transaction ........ 11

                    (d)    Refund Percentage for Customer Contacts Identifying "Child" or "Accidental in Wrap-Up Codes ........................................................... 13

            c.    Corrected Estimate of Monetary Relief ...................................... 13

        2.    Alternative Estimate of Monetary Relief ............................................... 14

    B.    An Appropriate Monetary Remedy Is a Notice-and- Claim Procedure With No Monetary Floor or Ceiling ......................................................................... 14

III.  CONCLUSION ..................................................................................................... 16

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – i
24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# I. INTRODUCTION

As the Court observed, the FTC's request for an award of $26.5 million is "too high." Dkt. 224, at 22. One reason, among several, for the inflated figure is that the FTC would have the Court believe that *every* failed password attempt associated with an in-app purchase was made by a child. This assumption ignores the fact that adults also forget their passwords, change their minds, or lose interest when forced to navigate an unavoidable password prompt. While it generates a large figure, the FTC's assumption belies human nature and common experience.

Careful (and conservative) analysis demonstrates that $26.5 million is substantially beyond what can credibly be calculated to be appropriate monetary relief owed to Amazon customers who have not yet been refunded. That analysis confirms that the Court should either deny the FTC's request in its entirety because the FTC failed to reasonably estimate relief or enter judgment for an amount substantially lower than the FTC's request.

Should the Court conclude otherwise, the method that would correspond most closely to any legitimate claims is an appropriately designed notice-and-claim procedure with no overall monetary minimum or maximum. This approach would ensure that (1) deserving customers will be made whole and (2) the FTC will not receive a windfall recovery.[1] It would also dispense with the need to resolve the contentions about the amount of uncompensated "injury," an effort that, even stripping out clearly counterfactual claims, will never be more than an estimation.

# II. DISCUSSION

After correcting for errors in the FTC's estimate, the data demonstrate that any award of monetary relief even remotely near the FTC's request is unwarranted.

---

[1] Despite publicly stating that its goal is to "put that money back in consumers' pockets," 5/27/2016 Hanson Decl. ¶ 2 (7/11/2014 FTC Interview with CNN), the FTC now asks that the Court permit the FTC in its sole discretion to refund some or all of any monetary relief to consumers, to use some or all of it for "other equitable relief . . . it determines to be reasonably related to practices alleged in the Complaint," or deposit some or all of it "to the U.S. Treasury as disgorgement," FTC Proposed Order and Judgment (Dkt. 98-1), at 6.

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 1
24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**A.    The FTC's Estimate of Monetary Relief Is Substantially Inflated**

        **1.    Corrections to the FTC's Estimate of Monetary Relief**

The FTC first requested $26,242,025 in equitable monetary relief, Dkts. 109, 182, and increased its request to $26,541,207 based on its estimate of additional transactions on the first-generation Kindle Fire not subject to a password, Dkt. 235. For the reasons discussed here and in the Declarations of Jonathan Werner filed February 22, 2016 (Dkt. 168) ("2/22/2016 Werner Decl.") and April 20, 2016 (Dkt.220-1) ("4/20/2016 Werner Decl."), the FTC's estimate is vastly inflated and reflects the same unrealism and overreach that accompanied its request for a permanent injunction.

                **a.    Corrections to the FTC's Estimate of Potentially Relevant Revenue**

The FTC's first categorical error lies in overstating the pool of potentially relevant revenue. The FTC starts with in-app purchasing data for approximately 6,000 "high-risk" apps, after excluding purchases (1) within casino apps; (2) subject to a high-price password; (3) subject to other passwords if reflected in "metric-events" data; or (4) completed after June 3, 2014, other than those made on the first-generation Kindle Fire. *See* Miller Decl. (Dkt. 110) ¶¶ 6-10; Supp. Miller Decl. (Dkt. 183) ¶ 3. This pool of transactions improperly includes purchases that were unlikely to have been made by children.

                    **(i)    Exclude Purchases Within Adult-Oriented Apps**

The FTC misleadingly refers to its estimate of more than $86 million of potentially relevant revenue as "in-app charges incurred without password entry in kids' apps." FTC SJ Mot. (Dkt. 109), at 28. In fact, even after the FTC's exclusion of casino apps, the remaining pool of transactions includes purchases within apps that are not of interest to children or are played in significant numbers by adults and teens. *See* 2/22/2016 Rubenson Decl. (Dkt. 171) ¶¶ 3.2-3.3 & Exs. A-F. To address this issue in part, Amazon has identified additional apps not likely to be of interest to children. Thus, Amazon has excluded (1) apps rated adult or mature; (2) apps classified in categories not likely of interest to kids, such as personal finance or

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

navigation;[2] and (3) other specific apps with violence or problem-solving characteristics that likely are played by adults and teens,[3] not by kids "with little or no understanding of money" or confused about "[v]irtual items that cost money." *See* FTC SJ Mot. (Dkt. 109), at 2. Application of this correction reduces the FTC's revenue estimate by ███████ (to ███████). 5/27/2016 Werner Decl. ¶ 8 & Ex. A. Critically, this exclusion merely targets apps not of interest to kids. A substantial portion of the remaining apps, even if enjoyed in part by children, are also played by large numbers of adults and teens.[4]

### (ii)    Exclude Purchases After Customer's First Refund

When customers contacted Amazon by phone, email, or chat to request a refund for an accidental or "unauthorized" in-app purchase, Amazon customer-service agents issued refunds in the overwhelming majority of cases and also educated customers about Parental Controls. 2/2/2016 Pieros Decl. (Dkt. 96) ¶¶ 3-4; *see also* 2/22/2016 Werner Decl. (Dkt. 168) ¶¶ 16-17. Amazon's agents not only instructed customers how to enable Parental Controls to

---

[2] Amazon also excluded the following app categories: accounting, books (other than comics), magazines (other than Dirt Wheels Magazine and Celebrations), meditation, relationships, productivity, travel, utilities, and weather. 2/22/2016 Werner Decl. (Dkt. 168) Ex. B.

[3] The thirty specific apps excluded on this basis, such as "Crime City" and "Gun Zombie: Hell Gate," are identified in Exhibit B of the 2/22/2016 Werner Declaration (Dkt. 168); *see also* 5/27/2016 Werner Decl. Ex. C (app detail pages for the thirty specifically excluded apps).

[4] *See* 2/22/2016 Rubenson Decl. (Dkt. 171) ¶¶ 3.2-3.3 & Ex. C (2013 Nielsen Study) ("Unlike popular belief that the heaviest [app] gamers will consist of a majority of younger smartphone users, nearly half (45 percent) of all heavy gamers are aged between 25 and 35 years of age . . . . Also, one fourth of all heavy [app] gamers are over 35 years of age."), Ex. E (2015 Mobile Gaming Study) ("Youngsters are not the biggest consumers of mobile games. In fact, parents are more likely to be gamers than their children. . . . The findings of this study reveal a direct correlation between the amounts of money spent on virtual goods within social games and gamer age – the older the gamer, the more they spend."). For example, the FTC includes in-app purchases within universally popular apps like Angry Birds, Subway Surfers, the Simpsons, and NFL Pro, even though these apps are played by large numbers of adults. *See id.* Ex. A ("Nielsen reveals most popular Android apps by age. Angry Birds appeals most to over 35s."). In fact, *hundreds* of customer reviews for just the five apps on the FTC's list with the highest refund amounts confirm that those apps are played by significant numbers of adults. 5/27/2016 Werner Decl. ¶ 34 & Ex. D.

The FTC's estimate ignores this crucial characteristic of apps included in its analysis. Amazon's reduction of ██████ to the FTC's revenue estimate, therefore, is exceedingly conservative in favor of the FTC because a substantial portion of those remaining sales were made by adults or teenagers, not children.

---

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 3

24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

require a password but also sent follow-up emails with those instructions.  2/2/2016 Pieros Decl.

(Dkt. 96) ¶ 4.  Because customers who received such a refund were directly informed of in-app

purchasing opportunities and how to prevent them with Parental Controls, it would be

unreasonable to hold Amazon responsible for any subsequent in-app purchases made by these

fully informed customers.  Thus, Amazon's corrected estimate excludes purchases made after the

date a customer received a first refund for an in-app purchase.  5/27/2016 Werner Decl. ¶ 11.

This correction reduces the amount of potentially relevant revenue by ▮▮▮▮▮▮ (to

▮▮▮▮▮▮).  *Id.* ¶ 11 & Ex. A.

### (iii)    Exclude Purchases After Customer's First FreeTime Activity

Similar to Parental Controls, Amazon's Kindle FreeTime is a comprehensive

child tablet-management solution that automatically disallows any and all in-app purchasing.

2/2/2016 Rubenson Decl. (Dkt. 95) ¶ 20.  To begin using FreeTime, a user creates a child profile,

which requires entry of an existing Parental Controls password or the creation of one.  *See*

2/22/2016 Werner Decl. (Dkt. 168) ¶ 11(c).  As a result, it would be inappropriate to include

among allegedly "injured" consumers those customers who were aware of and had in fact

previously used FreeTime (and Parental Controls).  Amazon therefore excludes in-app purchases

made by a customer after the date of initial FreeTime activity on that customer's account.

5/27/2016 Werner Decl. ¶ 12.  That correction reduces the amount of potentially relevant

revenue by an additional ▮▮▮▮▮ (to ▮▮▮▮▮).  *Id.* ¶ 12 & Ex. A.

### (iv)    Exclude Late-Night Purchases

The FTC's estimate is also overinclusive because it includes in-app purchases

completed when children are likely asleep (i.e., such purchases would overwhelmingly be made

by adults).  As a conservative correction to address this problem, Amazon has excluded

transactions made between 11 p.m. and 3 a.m. Pacific Time.[5]  5/27/2016 Werner Decl. ¶ 13.  The

---

[5] In the data the parties are using to estimate potential relief, the time of purchase is for the Pacific Time zone, not necessarily the local time zone of the customer.  5/27/2016 Werner Decl. ¶ 13.

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 4

24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    resulting revenue reduction is ▮▮▮▮▮▮ (to ▮▮▮▮▮▮▮▮). *Id.* ¶ 13 & Ex. A.

2                    **(v)      Exclude Purchases After Parental Controls Enabled**

3           In late December 2013, Amazon began collecting "metric-events" data that

4    records password-related activity associated with in-app purchases. 6/29/2015 Bhatt Decl.

5    (Dkt. 34) ¶¶ 4-5.  For example, the data indicate which password prompt was presented, if any,

6    and whether a purchase was successfully completed. *Id.* ¶ 4.  Because of the nature of, and the

7    way Amazon collects, metric-events data, not all metric-events data for completed orders are

8    successfully transmitted to and recorded by Amazon. *Id.* ¶ 8; 4/20/2016 Werner Decl. (Dkt.

9    220-1) ¶ 10(f).  For example, metric-events data are not collected by Amazon in "real-time" but

10   instead are stored on a customer's device and periodically transmitted to Amazon's servers if and

11   when certain technical conditions are satisfied.  6/29/2015 Bhatt Decl. (Dkt. 34) ¶ 8.

12          The metric-events data produced by Amazon identify a subset of instances in

13   which, beginning in late December 2013, a customer was presented with a Parental Controls

14   password, meaning they had *enabled* Parental Controls and were therefore necessarily aware of

15   the availability of that feature to protect against unwanted in-app purchases.  5/27/2016 Werner

16   Decl. ¶ 14.  For such customers, Amazon has excluded purchases made after the first Parental

17   Controls password prompt.  This restriction reduces the pool of potentially relevant revenue by

18   ▮▮▮▮▮▮ (to ▮▮▮▮▮▮▮).  *Id.* ¶ 14 & Ex. A.  This correction is also conservative given the

19   incompleteness of the data, including the fact that none cover the period before December 2013

20   even though Parental Controls were available since launch in November 2011.

21                    **(vi)     Exclude Additional Purchases Subject to Passwords**

22          The FTC also underestimates transactions subject to a password.  Although the

23   FTC excluded purchases subject to the high-price password prompt (i.e., based on prices in sales

24   data), the FTC excluded only a subset of orders subject to other password prompts (i.e., only

25   specific orders with associated metric-events data indicating a successful password purchase).

26   Miller Decl. (Dkt. 110) ¶¶ 6-7, 9.  There is no basis for ignoring additional transactions subject to

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

"non-price" passwords (i.e., first-order, Parental Controls, high-risk, and high-frequency prompts).  A customer who successfully entered a password obviously was not injured.

To address this deficiency, for each month in 2014 through June 3, Amazon calculated the percentage of sales *with* metric-events password data that were subject to a non-price password.  5/27/2016 Werner Decl. ¶ 15.  Then, as reflected in Table 1 in the May 27 Werner Declaration, Amazon applied these percentages to the corresponding amount of transactions *without* metric-events data to estimate additional 2014 password purchases beyond those excluded by the FTC.  *Id.* ¶ 15 & tbl. 1.  Applying these estimates of additional password purchases in 2014 reduces the amount of potentially relevant revenue by an additional ███████ (to ███████).  *Id.* ¶ 15 & tbl. 1, Ex. A.

Even with that correction to sales in 2014, however, the FTC's analysis still underestimates password-enabled purchases because it ignores the fact that those non-price password prompts were also in place between May and December 2013.  5/27/2016 Werner Decl. ¶ 16.  Amazon addresses this deficiency by taking the percentage of sales with metric-events data that were subject to a non-price password between January and June 3, 2014 (i.e., approximately ████) and applying it to the amount of potentially relevant revenue for the period May 2013 through December 2013 for all applicable devices ███████.  *Id.* ¶¶ 15-16 & tbl. 1.  This additional correction further reduces potentially relevant revenue by ███████ (to ███████).  *Id.* ¶ 16 & Ex. A.

It bears noting that the password estimates above are still conservative in nature, and thus favor the FTC, because they do not attempt to estimate purchases (1) on the first-generation Kindle Fire at any point since November 2011 that were subject to the Parental Controls password, (2) on other devices prior to May 2013 that were subject to the Parental Controls password, or (3) on other devices between February and April 2013 that were subject to the high-frequency password.  4/20/2016 Werner Decl. (Dkt. 220-1) ¶ 10(g).

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 6

24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### (vii)    Additional 99-Cent Sales on First-Generation Kindle Fire

In its May 9 supplemental submission, the FTC contends that an additional ███████ should be included in the pool of potentially relevant revenue based on its estimate of 99-cent in-app purchases on first-generation Kindle Fire tablets between January 2015 through April 2016. *See* Dkt. 235 ¶¶ 5, 7.  The estimate is wrong, however, because it is based on sales within *all* apps; it is not limited to the "high-risk" apps used by the parties elsewhere to identify revenue potentially relevant to the claim in this case.  5/27/2016 Werner Decl. ¶ 17.

To correct for this overstatement, Amazon estimated the amount of relevant transactions *within "high-risk" apps* as a percentage of relevant transactions *within all apps*. 5/27/2016 Werner Decl. ¶ 17.   To be conservative, Amazon's analysis uses the *highest* monthly percentage during the most recent 6-month period for which data were produced ███████ to estimate the amount of later sales within "high-risk" apps. *Id.*  Applying that percentage to corresponding sales across all apps for December 2014 through December 2015 ███████ and the FTC's estimate for January through April 2016 ███████ equals ███████.[6] *Id.*; *see also* 2/22/2016 Werner Decl. (Dkt. 168) Ex. F; 5/9/2016 FTC Filing (Dkt. 235) ¶ 7.  Adding ███████ to the corrected total above results in ███████ in potentially relevant revenue. *Id.* ¶ 17 & Ex. A.  It is against this figure, not the FTC's inflated ███████ estimate, that any "failure rate" should be applied.

The FTC also requests additional monetary relief from May 2016 onward for 99-cent purchases on the first-generation Kindle Fire "because these charges are ongoing and the date on which the Court will enter its final order in this case is uncertain." Dkt. 235 ¶ 8.  This request is moot.  On May 6, Amazon voluntarily began requiring a password for *all* in-app purchases on the first-generation device, lowering the existing password threshold from $1 to

---

[6] The parties' analyses already include 99-cent sales on the first-generation tablet through December 1, 2014, which – based on agreement by the parties in discovery – is the end date for the transactional data used for the bulk of the parties' analyses.  In its May 9 filing, the FTC did not include December 2014 sales under $1 on the first-generation tablet.  *See* Dkt. 235.  For the adjustment applied in this section, Amazon has included December 2014.

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 7

24976-0374/130796642

Perkins Coie LLP
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

zero.  5/27/2016 Werner Decl. ¶ 32.  As a result, there are *no ongoing sales* on the first-

generation tablet that are relevant to the FTC's request for monetary relief.[7]

### b.     Corrections to the FTC's "Unauthorized Charge Rate"

The FTC's second categorical error is its estimate of an "Unauthorized Charge

Rate" ███, which it applies to its inflated estimate of potentially relevant revenue to calculate

alleged injury.[8]  Amazon's analysis attempts to correct for some of this error.

### (i)     The FTC's "Unauthorized Charge Rate" Is Implausible

The FTC's estimate of an "Unauthorized Charge Rate" is flawed because it is

based on the implausible assumption that *all* failed password attempts in the data were attempts

by a child to make an in-app purchase and who, absent the password prompt, "otherwise would

have incurred an unauthorized charge."  FTC SJ Mot. (Dkt. 109), at 28; *see also* Dkts. 167, 168,

220-1 (Amazon's critiques).  The FTC's estimate assumes, for example, that *none* of the failures

in the data are adults who forgot their passwords, adults (or children) who chose to abandon their

transactions, children who had permission but forgot their parents' passwords, technical failures,

or other reasons unrelated to unauthorized attempts by a child.

This assumption is not only unfounded on its face but Amazon's data also

demonstrate it is unreliable.  The failure rate for password prompts in *adult-oriented* apps (i.e.,

casino apps and the additional adult-oriented apps excluded in Amazon's analysis) is ███ which

---

[7] In its May 9 submission, the FTC notes that customers may purchase first-generation Kindle Fire tablets on Amazon's website.  Dkt. 235 ¶ 6.  These *used* or *refurbished* tablets are offered for purchase through Amazon's *third-party seller* program or, on occasion, Amazon Warehouse Deals.  5/27/2016 Werner Decl. ¶ 32.  In any event, potentially relevant in-app purchases on these devices are included in the parties' remedy analyses.

[8] To arrive at its estimate of an "Unauthorized Charge Rate," the FTC relied on password metric-events data for (1) completed, "successful transactions," and (2) instances in which a password prompt was presented, but an order was not successfully completed (which for convenience are referred to below as "password failures," "failed transactions," or "failures," but which critically are not limited to incorrect password entry).  Miller Decl. (Dkt. 110) ¶¶ 10, 13; 2/22/2016 Werner Decl. (Dkt. 168) ¶¶ 8, 10.  The FTC limited its password analysis to transactions associated with high-risk, high-price, and high-frequency password prompts.  Miller Decl. (Dkt. 110) ¶¶ 10, 12.  The FTC calculated its estimated "Unauthorized Charge Rate" by dividing the number of failed transactions by the sum of successful and failed transactions, or F/(F+S).  *Id.* ¶¶ 12-13.

---

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 8

24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

is *identical* to the FTC's "Unauthorized Charge Rate" for children. 4/20/2016 Werner Decl.

(Dkt. 220-1) ¶ 12. In other words, Amazon's data show that adults forgot their passwords,

abandoned their transactions, or had technical failures *at the same rate* the FTC estimates for

children. If the FTC's critical assumption is correct that no adult attempts were included in its

"Unauthorized Charge Rate," the failure rate for adult-oriented apps would be much lower or

*even zero*. It would be statistically incomprehensible for adults to input their passwords without

fail for one set of apps and not for another, yet that is what the FTC's estimate assumes. These

data starkly demonstrate that there is no logical or evidentiary basis for assuming that every

failed password prompt was an unauthorized attempt by a child. As a result, the FTC has failed

to carry its burden of "proving that the amount it seeks in restitution reasonably approximates the

defendant's unjust gains." *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 603 (9th Cir. 2016).

This failure is fatal to the FTC's request for monetary relief.

### (ii)   Corrected "Unauthorized Charge Rate"

To address in part the FTC's grossly inflated estimate of an "Unauthorized

Charge Rate," Amazon applied three corrections described below.[9] However, even these

corrections do not address the entirety of the FTC's error because it is impossible to tell from the

data whether a password blocked a child's rather than an adults' attempted purchase.

### (a)   Customers Who Chose No Password for Future Purchases When Presented with June 2014 Prompt

As a first step to identify attempted transactions not likely to be by children,

Amazon identified all password failures by a customer who explicitly chose *not* to require a

password for future in-app purchases in response to the June 2014 first-time purchase prompt.

5/27/2016 Werner Decl. ¶ 19; *see also* Dkt. 93, at 15-16 & Fig. 8 (discussing June 2014 prompt).

---

[9] Consistent with the global restrictions discussed above, Amazon first modified the FTC's universe of password metric-events data by excluding transactions and attempted transactions within the additional apps excluded by Amazon and those made between 11 p.m. and 3 a.m. PT. 5/27/2016 Werner Decl. ¶ 18. The failure rate after these two modifications is ▮▮▮▮. *Id.*

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 9

24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Those customers opted out of a password for any number of reasons (e.g., because they did not have children, did not share their device with children, or were otherwise not concerned by unauthorized purchases by kids), but the point is they made that conscious election when presented with the prompt. Amazon therefore excludes all such customers' failed purchase attempts from the pool of failures the FTC presumes were unauthorized attempts by a child. Because the data cover only a limited period and are incomplete, this correction reduces the estimated "Unauthorized Charge Rate" a modest amount (to ▮▮▮▮). *See id.* ¶ 19 & Ex. A.

### (b) Customers Who Had Parental Controls Disabled After Presented with May 2013 Prompt

Based on the same rationale, all failed attempts by customers who had Parental Controls disabled after being presented with the May 2013 first-time purchase prompt should be excluded from the "Unauthorized Charge Rate." 5/27/2016 Werner Decl. ¶ 20. The May 2013 first-time purchase prompt, which required entry of a password to complete the purchase, included the following notice immediately below the password-entry box: "If you'd like to require a password for future in-app purchases, please turn on Parental Controls." Dkt. 93, at 13 & Fig. 5. The term "Parental Controls" was a hyperlink for the user to easily enable the protection. *Id.* It is reasonable to infer that customers presented with the May 2013 first-time purchase prompt who did not enable Parental Controls very likely did not have children, did not share their device with children, or were otherwise unconcerned about unauthorized in-app purchases by a child.[10] The FTC, by contrast, assumes that *all* password failures for these same customer accounts were unauthorized attempts by a child, despite the fact those account holders elected not to enable Parental Controls. That unreasonable assumption should be rejected.[11]

---

[10] The refund data confirm the success of the May 2013 prompt. Refunds flattened shortly after implementation of the May 2013 prompt. *See* Amazon Opp. to FTC SJ Mot. (Dkt. 167), at 33 fig. 2.

[11] It is Amazon's position that the May 2013 first-time purchase prompt was equally effective as the June 2014 prompt, which the FTC concedes complies with Section 5 of the FTC Act. Consistent with the Court's order, however, Amazon's analysis of potentially relevant revenue includes purchases through June 3, 2014 (and beyond for sales on first-generation Kindle Fire tablets). Application of the rate correction described in this section, however, presents a different question. Namely, are password failures by customers who were presented with the

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 10

24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Moreover, it would be unfair to hold Amazon responsible for purchases when customers are

2    directly informed of and declined protection against those purchases.  That is, after all, the

3    "express, informed consent" the FTC has demanded.

4              For this correction, Amazon identified customers in the metric-events data who

5    completed an order in response to the May 2013 first-time purchase prompt.  5/27/2016 Werner

6    Decl. ¶ 21.  Among those customers, Amazon identified those who were later presented with a

7    high-price, high-frequency, or high-risk password, meaning they chose not to enable Parental

8    Controls (which if implemented would have overridden the other prompts).  *Id.*  As with the

9    correction in the preceding section, Amazon's analysis treats all failed purchase attempts by

10   these customers as instances other than unauthorized purchase attempts by a child, which further

11   reduces the "Unauthorized Charge Rate" to ████ .  *Id.* ¶ 21 & Ex. A.

### (c)    Failed Transactions More Than 30 Days After Customer's Initial Failed Transaction

A third flaw with the FTC's estimate of the failure rate is its use of data on

password failures to draw inferences from data on successful orders without accounting for a

fundamental difference between blocked and successful purchase attempts.  The FTC's analysis

assumes that *all* unsuccessful purchase attempts reflected in the password data represent an

unauthorized purchase attempt by a child that would have been completed had it not been

blocked by a password challenge.  The FTC then takes the failure rate it calculated from the

password data and applies it without modification to its estimate of revenue from orders that it

deems were not subject to a password, contending that the result represents unauthorized

purchases by children.

The FTC's analysis ignores a pivotal distinction between a password-blocked

---

May 2013 first-time purchase prompt and declined to enable Parental Controls more likely to be (1) failed attempts
by children without parental authorization – the FTC assumes *all* are – or (2) failures by adults, for technical
reasons, or for any of the other many reasons unrelated to unauthorized purchase attempts by a child?  The latter is
far more likely for customers matching this profile.

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 11

24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   purchase attempt by a child and an unauthorized purchase.  5/27/2016 Werner Decl. ¶ 23.  A

2   parent is unlikely to learn of a password-*blocked* purchase attempt because no charge is incurred.

3   *Id.*  But every *successful* in-app purchase by a child (or otherwise) results in an immediate order-

4   confirmation email sent to the Amazon account holder (e.g., parent) and each purchase would be

5   included as a separate line item on the account holder's credit- or debit-card statement.  *Id.*  By

6   counting all password failures as would-be purchases by a child, the FTC unreasonably assumes

7   that a parent would ignore all of these notices or watch passively and helplessly in perpetuity as

8   unauthorized purchases pile up (no matter how many).  *Id.*  A much more reasonable assumption

9   is that a parent who had not authorized such purchases would respond to these notices by taking

10  steps to prevent future unwanted purchases by enabling Parental Controls, by instructing or

11  supervising the child, by limiting device use, or otherwise.  *See id.*

12          Amazon's analysis conservatively corrects for the FTC's unreasonable

13  assumption by not counting password failures occurring more than thirty days after a customer's

14  initial failure as would-be unauthorized charges by a child.  5/27/2016 Werner Decl. ¶ 24.  All

15  failures within the thirty-day period are counted, without limit.  *Id.*  But failures beyond thirty

16  days should not be treated as unauthorized child purchases because they reasonably would or

17  should have been blocked by Parental Controls, been blocked by other limitations, or reasonably

18  should be viewed as unrelated to attempted unauthorized purchases by a child.  *Id.*

19          Since its April 20 Offer of Proof, Amazon has conducted further analyses of the

20  data to confirm the accuracy and robustness of the results of its analysis.  5/27/2016 Werner

21  Decl. ¶ 25.  In doing so, Amazon discovered an error in the statistical software code it used to

22  identify password failures more than thirty days after a customer's initial failure.  *Id.*  After

23  updating the code, the effect of this restriction is smaller than estimated in the Offer of Proof and

24  results in a reduction of the FTC's "Unauthorized Charge Rate" to ▮▮▮▮ .  *Id.* ¶ 25 &  Ex. A.

25

26

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 12

24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### (d)   Refund Percentage for Customer Contacts Identifying "Child" or "Accidental in Wrap-Up Codes

Even after the application of the three rate corrections discussed above, the resulting estimate remains significantly inflated due to the FTC's implausible assumption that all password failures are unauthorized attempts by a child to make a purchase. *See* 5/27/2016 Werner Decl. ¶ 26.  For example, the above corrections do not account for uncompleted purchase attempts (recorded as "failures" in the password data) that result from technical problems (e.g., lost or slow Internet connection); children with authorization who forgot their parent's password; children who changed their mind and closed a purchase window; or attempts by adults not identified by the partial corrections above, whether due to data limitations or the fact that many adults make in-app purchases on devices shared with children.  *Id.*  Nor do the corrections above address the fact that parents who learn of an in-app purchase after the fact may approve of the purchase at that time.  *Id.*

To address this flaw, Amazon applies an additional correction.  For those transactions within the corrected pool of potentially relevant revenue that have already been refunded, Amazon customer service agents classified ▮▮▮ of the refunds (as a percentage of refunded dollars) with wrap-up codes that included the words "child" or "accidental."  5/27/2016 Werner Decl. ¶ 27.  That is, at least ▮▮▮▮ of these potentially relevant refunds were for reasons *other than child or accidental purchases*.[12]  Applying that ▮▮▮ figure to the rate above ▮▮▮▮ further reduces the "Unauthorized Charge Rate" to ▮▮▮.  *See id.* ¶ 27 & Ex. A.

### c.   Corrected Estimate of Monetary Relief

All told, applying the corrected "Unauthorized Charge Rate" ▮▮▮▮ to the corrected revenue figure ▮▮▮▮ results in an estimated ▮▮▮▮ in "unauthorized"

---

[12] The percentage of refunds coded as child or accidental purchases is almost certainly high.  Amazon customer-service agents are trained to take the customer's word as true and have no way of verifying a customer's statement that a child made a purchase, and some customers take advantage of Amazon's generous refund practices. *See* 2/22/2016 Hanson Decl. (Dkt. 172), Ex. R (Pieros 30(b)(6) Dep.) 156:10-18.

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 13

24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

purchases by children.  5/27/2016 Werner Decl. ¶ 29 & Ex. A.  Amazon, however, has already

refunded ████████ for purchases in the corrected pool of potentially relevant revenue, leaving

*at most* $473,422 in unrefunded revenue from "unauthorized" purchases.  *Id.* ¶ 29 & Ex. A.

### 2.    Alternative Estimate of Monetary Relief

Amazon's above analysis demonstrates that the FTC has not borne its burden of

reasonably approximating Amazon's alleged "unjust gains."  But even if the Court does not

accept every one of Amazon's corrections, the FTC's estimate is still demonstrably overstated.

For example, application of the June 2014 prompt, May 2013 prompt, and 30-day failure

corrections in tandem (without further reduction for the percentage of refunds associated with

wrap-up codes related to child and accidental purchases) reduces the "Unauthorized Charge

Rate" to ████ and results in ████████ in alleged injury and $4,900,867 in estimated relief

after known refunds.  *See* 5/27/2016 Werner Decl. ¶ 30.  Alternatively, simply applying the

percentage of wrap-up codes related to child and accidental purchases ████ to the FTC's

proposed failure rate (████, *see* note 9) reduces the "Unauthorized Charge Rate" to ████

and results in ████████ in alleged injury and $9,454,658 in relief after refunds.  *Id.*  In no

event does the FTC's requested relief of $26.5 million withstand close scrutiny.

### B.    An Appropriate Monetary Remedy Is a Notice-and-Claim Procedure With No Monetary Floor or Ceiling

As confirmed by the corrections outlined above, Amazon continues to believe

that, through its well-known and generous refund practices, the number of customers yet to be

made whole is de minimis.  Nonetheless, Amazon has always been and remains willing to refund

any additional customers whose children accidentally made in-app purchases.  Therefore, if the

Court concludes that additional monetary relief is warranted in an amount that is not

substantially lower than the FTC's requested amount, the Court should reject entering a specific

amount of relief and instead order a notice-and-claim procedure.  Amazon made that same offer

to the FTC before it filed this action.

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 14

24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    An appropriate notice-and-claims process would neither cap the total amount of

2    available refunds nor set a minimum amount of payment. Instead, it would be designed to most

3    accurately and efficiently ensure that any and all injured consumers are compensated without

4    making guesswork out of the limited available data on which the FTC relies. If the FTC's goal

5    truly is to identify any remaining deserving customers and to provide accurate refunds to those

6    customers, a notice-and-claims process better achieves that result.

7        A claims process intended to provide redress to parents whose children made

8    unwanted purchases should include the following protections against potential abuse:[13]

9    • Potentially eligible transactions would be those in the pool of potentially relevant
10     revenue, after applying the corrections in Parts II.A.1.a(i)-(v), (vii).[14]

11   • Amazon would notify potentially eligible customers by email that they may be
        eligible for a refund if (1) they were charged for an in-app purchase by a child
12      under the age of 13 (2) that they did not authorize and (3) that Amazon had not
        already refunded.[15]
13

14   • Customers submitting a claim would confirm they meet the eligibility conditions.

15   • For any refund claim exceeding $20 the customer must limit the refund request to
        purchases made within a customer-selected 45-day window. A customer may
16      request that the 45-day limit be extended by providing a specific explanation of
        the circumstances that allowed a child to continue to make unauthorized
17

18   _____

19       [13] The potential for abuse is real. Data produced by Amazon show that, each month after July 2013, at least
         ▉ of customers receiving a refund for an in-app purchase within a "high-risk" app had previously received a
20   refund and thus had already received education about parental controls. Expert Declaration of Dr. Ravi Dhar (Dkts.
     146-1, 149, 150, 173), Ex. 5-B.

21       [14] The corrections in Part II.A.1.a(vi) are not included because they are not tied to specific transactions.

22       [15] Restricting refund eligibility to purchases by children under the age of 13 is appropriate given the nature
     of the FTC's claim, which contends that in-app purchasing and virtual items were confusing to children who did not
23   understand they were spending actual money. See, e.g., FTC SJ Mot. (Dkt. 109), at 2. The FTC effectively
     concedes the appropriateness of this restriction, having (1) agreed in discovery to keyword search terms such as
     "under 13" and "pre-teen" and (2) instructed its expert Dr. Daniel Hamermesh to limit his analysis of injury for time
24   spent seeking a refund to available data on households with children aged 3-13. Hanson Decl. ¶ 3; Hamermesh
     Report (Dkt. 103), at 5 ("I restrict the [Current Population Survey] sample to people who have children between
25   ages 3 and 13 inclusive, thus matching these data as closely as the CPS allows to adults in households where
     children might have made unauthorized in-app purchases in the Amazon Appstore.").
26

AMAPON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 15

24976-0374/130796642

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

purchases despite repeated purchase notices to the customer.[16]

- Amazon may deny a refund request if there is sufficient, credible evidence of fraud by the customer.[17]

- Amazon will provide a requested refund for eligible purchases not already refunded within 14 days after a submitted claim or completion of a fraud investigation, whichever is later.[18]

### III.    CONCLUSION

Because the FTC has failed to bear its burden of providing a reasonable estimate of harm, the Court should either deny the relief requested or substantially reduce the amount awarded.  Alternatively, the Court should order a notice-and-claim procedure, as described in Amazon's proposed order.  Amazon respectfully requests that the Court hold oral argument on this issue, with 30 minutes allocated to each party.

---

[16] The 45-day window is a fair restriction and necessary to prevent individuals from unfairly exploiting a claims process.  Within a 45-day period, a customer will have received at least two notices of each in-app purchase in the form of the immediate email confirmation sent by Amazon after each purchase and an entry on the customer's credit- or debit-card statement.  Given these notices and the fact that neither of the parties nor the Court has a definitive way to confirm whether a customer seeking a refund in fact has children or whether particular purchases were made by a child, a 45-day window for claims exceeding $20 is a fair and reasonable way to limit the volume of invalid claim requests that are unrelated to unauthorized purchases by children.  This is the same standard approved by the court in the Northern District of California overseeing a claims process regarding in-app purchases made through Apple's app store. *See In re Apple In-App Purchase Litig.*, 2013 WL 1856713, at *5 (N.D. Cal. May 2, 2013) (approving proposed class-action settlement that included provision limiting relief to "a single 45-day period for which [a class member] ha[d] not previously received a refund").

[17] Amazon fully refunded nearly all customers who contacted Amazon and said an in-app purchase was made by a child without authorization; the small number of exceptions were predominantly customers who previously received refunds or were engaging in fraud. *See* Amazon's Opp. to SJ Mot. (Dkt. 167), at 14; 2/22/2016 Werner Decl. (Dkt. 168) ¶¶ 16-17.

[18] There are significant efficiencies gained by Amazon's administration of the claims process because, among other things, Amazon already has access to customer contact and credit-card information.  The claims process would take longer and cost more if administered by a third party.

---

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 16

24976-0374/130796642

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

DATED: May 27, 2016


*s/ Harry H. Schneider, Jr.*
Harry H. Schneider, Jr. WSBA No. 9404
David J. Burman WSBA No. 10611
Jeffrey M. Hanson WSBA No. 34871
Attorneys for Defendant Amazon.com, Inc.
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
HSchneider@perkinscoie.com
DBurman@perkinscoie.com
JHanson@perkinscoie.com

*s/ Danielle R. Foley*
J. Douglas Baldridge WSBA No. 37247
Danielle R. Foley (admitted *pro hac vice*)
**Venable LLP**
575 7th Street, NW
Washington, DC 20004
Telephone: (202) 344-4000
Facsimile: (202) 344-8300
jbaldridge@venable.com,
drfoley@venable.com


*Attorneys for Defendant Amazon.com, Inc.*

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 17

24976-0374/130796642

## CERTIFICATE OF SERVICE

I certify that on May 27, 2016, I electronically filed the foregoing Amazon.com, Inc.'s Supplemental Brief Regarding FTC's Calculation of Monetary Relief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to attorneys of record.

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 27th day of May, 2016.

*s/ Harry H. Schneider, Jr.*

AMAZON'S SUPPLEMENTAL BRIEF REGARDING
FTC'S CALCULATION OF MONETARY RELIEF
(No. 2:14-CV-01038-JCC) – 18

24976-0374/130796642