1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9
10

FEDERAL TRADE COMMISSION,

11              Plaintiff,

12        v.

13   AMAZON.COM, INC.,

14              Defendant.

15

**Case No. 2:14-cv-01038-JCC**

**PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL
BRIEF REGARDING FTC'S
CALCULATION OF MONETARY
RELIEF**

16
17
18
19
20
21
22
23
24
25
26

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

Amazon's latest effort to meet its burden to respond to the FTC's calculation of monetary relief flounders. This Court has held that Amazon's in-app billing practices violated Section 5 of the FTC Act and that the FTC reasonably approximated monetary relief owing from Amazon's four-plus years of misconduct. Dkt. 224 at 15-21. It has been Amazon's burden to show, with evidence, that the FTC's calculation overstated the harm. *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 603-04 (9th Cir. 2016). Amazon has not met that burden.

If anything, Amazon's supplemental submission illustrates the utter absence of evidence showing that the FTC's calculations included charges that should not have been included. Instead of evidence, Amazon offers speculation, urging this Court to ignore the FTC's evidence of monetary relief and the Ninth Circuit's burden-shifting framework entirely. As the remedy for its multi-year violation of the FTC Act, Amazon asks this Court to deny all relief, grant "limited" monetary relief based on unprincipled guesswork, or allow Amazon to issue Amazon gift cards to injured consumers as it sees fit.

At bottom, Amazon's brief consists of an unsupported assessment of the FTC's requested relief as "vastly inflated" and unrealistic. The unchallenged evidence shows otherwise. It is hardly unrealistic to find that a practice Amazon admitted was "clearly causing problems for a large percentage of [its] customers" influenced ███ *percent* of its in-app revenue. Dkt. 224 at 4; *see infra* Part I. This Court should apply the burden-shifting framework required in the Ninth Circuit and enter an order granting monetary relief in an amount equal or close to the FTC's calculation.

## BACKGROUND

Amazon has had numerous and extensive opportunities to respond to the FTC's reasonable approximation of monetary relief. Besides Amazon's response brief on summary judgment (Dkt. 170 at 18-21 & Dkt. 169), in the following months, Amazon filed a surreply (Dkt. 195), "offer of proof" (Dkt. 220), supplemental brief (Dkt. 246), and substantively revised proposed order (Dkt. 250), all relating to the FTC's calculation of monetary relief. Amazon

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

discussed that calculation (and its offer of proof that serves as the foundation for its supplemental brief) during the parties' April 21, 2016 oral argument on summary judgment. Having accepted Amazon's late-filed Offer of Proof, the Court's instruction to Amazon for this supplemental briefing was to "explain[] the methodologies for which it advocates in its Offer of Proof and attached declaration." Not content with its previous critiques of the FTC's calculation, however, Amazon's latest submission additionally (i) proposes for the first time a new adjustment to the FTC's calculations, and (ii) advocates abandoning the calculation altogether in favor of a limited notice-and-claims procedure without even a minimum monetary floor. Both arguments are untimely, and this Court should not consider them. *See Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1052 (9th Cir. 2012) (affirming grant of summary judgment where district court did not consider opposing party's submission "filed less than three days before a hearing and long past the deadline for submitting such materials"); *Held v. Northshore Sch. Dist.*, No. C13-1548 MJP, 2014 WL 6451297, at *6-7 (W.D. Wash. Nov. 17, 2014) (granting motion to strike third summary judgment response brief filed on the noting date and without leave of court); *Vanriper v. Local 14, Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, No. 3:13CV2102, 2015 WL 45533, at *9 (N.D. Ohio Jan. 2, 2015) (finding waiver where "Plaintiffs' brief goes beyond the scope of the Court's request raising a completely new argument for consideration rather than identifying supporting authority for arguments previously made"); *Samica Enters., LLC v. Mail Boxes Etc. USA, Inc.*, No. CV 06-2800 ODW (CT), 2010 WL 807440, at *4 (C.D. Cal. Feb. 26, 2010) (refusing to consider new arguments that "were not raised in the initial [summary judgment] Opposition and were outside the scope of the requested supplemental briefing"). Amazon should not be permitted to continue to introduce new arguments in an attempt to minimize relief for its FTC Act violation.

Oral argument is unnecessary. The amount of monetary relief Amazon owes is ripe for decision.

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

**LEGAL STANDARD**

As noted above, this Court held that the FTC reasonably approximated monetary relief. Dkt. 224 at 15-16. Under the burden-shifting framework reiterated by the Ninth Circuit in *Commerce Planet*, Amazon must "show that the FTC's figures overstate" the harm by including charges that were in fact authorized or otherwise outside the scope of the FTC's claim. 815 F.3d at 604. Courts regularly hold that once the FTC has made a reasonable approximation, the defendant must come forward with *evidence*, not mere speculation, to reduce the amount of relief. *See, e.g.*, *FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 386 (D. Conn. 2009) (rejecting reduction in relief for reorders because defendant had no evidence that customers who reordered did so because they were satisfied with the product, but only "speculat[ed]" that this must be the reason); *FTC v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167, 1213 (N.D. Ga. 2008) (same); *FTC v. Medicor LLC*, 217 F. Supp. 2d 1048, 1058 (C.D. Cal. 2002) (rejecting defendants' arguments about reducing relief calculation for expenses and amounts received by trusts "[b]ecause Defendants have not provided any evidence in support of their arguments"); *FTC v. JK Publ'ns, Inc.*, No. 99-0044 ABC, 2000 WL 35594143, at *17 (C.D. Cal. Aug. 9, 2000) (despite defendants' several arguments that the court ought to use certain assumptions in calculating relief, concluding that "defendants failed to offer any evidence (as opposed to speculation) as to why or how  the FTC's calculations do not reasonably approximate the amount of consumer loss").

Amazon provides no authority exempting a defendant who does not make that evidentiary showing from the Ninth Circuit's burden-shifting framework. Nor is there any authority for the proposition that a defendant, unable to meet its burden, may propose alternate remedies that dispose of the FTC's reasonable approximation of monetary relief altogether.

**I.      The Framework for the FTC's Reasonable Approximation.**

The FTC has described the basic framework for calculating relief in this case in detail. Dkt. 109 at 28; Dkt. 99 at 2-4; Dkt. 182 at 13-15. Amazon has repeatedly attacked the FTC's

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

calculation as too high while ignoring the fact that key assumptions underlying it work in Amazon's favor. For instance:

- The FTC began by excluding *all* in-app charges in apps not classified as "High Risk," even though many apps not so classified would appeal to children (e.g., "Kids Salon," "Puppy Maker," "Fish Farm," "Make Milkshakes! – Free," "Monsters University," plus twenty-five others attached hereto as Exhibit B).

- The FTC then excluded *all* in-app charges in "High Risk" apps classified as "Casino" apps, even though there is no dispute that some "Casino" apps would appeal to children (e.g., "Puppy Slots," "Mega Zoo Slot Machine," "Pomeranian Pennies"). *See* Dkt. 182 at 14 n.15.

- After applying an unauthorized charge rate to this pool of revenue, the FTC then credited Amazon for *all* its in-app charge refunds, even though not all refunds related to unauthorized in-app charges by children and therefore do not correspond to the segment of charges at issue. *See, e.g.*, Dkt. 245 at 12 ¶ 27.

Applying the FTC's methodology and unauthorized charge rate resulted in relief for Amazon's unauthorized billing practices equaling just ▮ percent of its total in-app charge revenue over the years.[1]

## II. Amazon Again Fails to Satisfy Its Burden Under Ninth Circuit Law.

While Amazon raises numerous criticisms of the FTC's reasonable approximation of relief, it fails to meet its burden to produce evidence *showing* that the FTC's figure overstated the harm. Amazon's criticisms amount to mere argument and many are based solely on the declaration of Jonathan Werner, Amazon's finance director, who testifies far beyond any

---

[1] This figure relies on data produced by Amazon during this litigation at Amazon_00209634 and Amazon_00379866.

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

1  personal expertise. Not one of Amazon's proposed reductions is based on actual evidence that

2  charges were in fact authorized or were not incurred by children.

3  **A.  Amazon's proposed revenue exclusions are speculative and overbroad.**

4  Amazon's proposed revenue exclusions are based on guesses about whether such charges

5  are likely to be authorized, making them speculative. The same flaw makes them overbroad,

6  because they inevitably discard unauthorized charges in addition to the authorized charges

7  Amazon contends they eliminate.

8  **1.  Proposed exclusion (a): Apps allegedly not of interest to children.**

9  Amazon's first revenue exclusion eliminates *all* charges incurred in apps Amazon

10  believes are "not likely" to be of interest to children. Dkt. 246 at 4.

11  In calculating relief, the FTC conservatively relied on Amazon's own "High-Risk" list of

12  apps, excluding the "Casino" apps. The "High-Risk" list consists of (a) apps that were designated

13  as "child-directed" by the app developer or (b) apps that hit certain refund-rate thresholds. Dkt.

14  109 at 7, ¶ 21; Dkt. 224 at 5. In March 2013, Amazon targeted this list of apps for additional

15  password prompting, illustrating that Amazon understood these apps to be at the core of the high

16  refund rates, the primary root cause of which was children. *Id.*; *see also* Dkt. 109 at 5, ¶ 12.

17  Amazon lists apps it argues are not of interest to children, without any evidence in

18  support. Instead, Amazon's finance director, who identifies no specialized knowledge on his part

19  about children's game-playing, removed apps that he or Amazon believe are not likely to be of

20  interest to children.  Dkt. 247 at ¶ 8. Moreover, there is substantial undisputed evidence that

21  these games are played by children. Consumers complained about children racking up

22  unauthorized in-app charges within many of these games. Dkt. 186-1 at 31 (Crime City); Dkt.

23  205 (Monster Shooter). The customer reviews visible in Amazon's own exhibits refer to child

24  players of these apps.  *See, e.g.*, Dkt. 247-1 at 7 (Apache Attack: "My son loves it."); 76

25  (Farmkill: "well my son likes it more than me and its free").

26

PLAINTIFF'S RESPONSE TO                                    Federal Trade Commission
AMAZON'S SUPPLEMENTAL BRIEF                       600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-01038-JCC                                    Washington, DC  20580
(202) 326-3231

In any event, the FTC's list as a whole is underinclusive, thereby leaning in Amazon's favor. Many apps not on the "High-Risk" list appeal to children, including: "Princess Salon," "Dress Up! Emo Girl Makeover," and "Wicked Snow White." *See* Ex. B (listing 30 apps not on the "High-Risk" list).

### 2. Proposed exclusion (b): Purchases after a refund.

Amazon's second exclusion removes all charges any consumers have incurred after receiving a refund of any kind for any in-app charge. The theory is that Amazon's consumers could only have incurred unauthorized charges once, because those consumers must have known better after receiving a refund. But Amazon does not provide sufficient evidence that all consumers who received refunds were instructed about parental controls and understood the consequences such that all subsequent unauthorized charges could be rendered "unreasonable." *See* Dkt. 246 at 5-6. Amazon has not introduced sufficient evidence to show that Amazon always included instructions per the policy or that consumers understood those instructions. Rather, the evidence shows that Amazon customer service agents did not always instruct or effectively educate consumers about parental controls. *See* Dkt. 142-3 at 27; Dkt. 102 at 67-68 (noting that consumers complained about parental controls malfunctioning). Yet Amazon excludes every consumer who received a previous refund for any reason at all, whether or not those consumers would have been likely to receive parental controls instructions from Amazon under Amazon's own internal policy.

### 3. Proposed exclusion (c): Purchases after first Free Time activity.

Amazon's third exclusion removes all charges after a consumer has used an app called "FreeTime" that had a range of functions primarily unrelated to in-app charges. Dkt. 179 at 14. It is undisputed that Amazon did not disclose that parental controls or FreeTime had to be activated to avoid unauthorized in-app charges. Dkt. 109 at 5, ¶ 11 n.3. This exclusion essentially asks this Court to reconsider its finding that, notwithstanding the existence of FreeTime, Amazon billed consumers without their express informed consent for children's in-app charges. Mere use of

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

FreeTime reveals nothing about a consumer's awareness of Amazon's default in-app billing practices or even that using apps within FreeTime happens to prevent in-app charges. Amazon has submitted no evidence on this point.

**4.  Proposed exclusion (d): Charges incurred at night.**

Amazon's fourth exclusion proposes eliminating all charges incurred between 11:00 pm and 3:00 am Pacific Time, on the theory that children "are very likely asleep" then. Dkt. 247 at 4, ¶13. Even if some children are likely to sleep during those hours, Amazon provides no evidence supporting their assumptions about children's sleeping patterns and tablet use. Nor does Mr. Werner, an Amazon finance director, identify any expertise on his part that would support his conclusions. This Court need not credit such speculation in determining the final amount of monetary relief. *See John M. Floyd & Assocs. v. Tapco Credit Union*, 550 F. App'x 359, 360 (9th Cir. 2013) ("The [] declaration . . . sets out mere speculation for the critical facts, without a showing of foundation in personal knowledge, for the facts claimed to be at issue. As did the district court, we reject the statements submitted by [plaintiff] as unsubstantiated."); *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991) ("Because [defendant's] declaration is not based on personal knowledge, but on information and belief, his statement does not raise a triable issue of fact . . . ."); *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (affirming grant of summary judgment where appellant "submitted conclusory and speculative affidavits that fail to set forth specific facts in support of appellant's [] theory"); *Commerce Planet*, 815 F.3d at 604 (affirming district court's refusal to consider expert testimony based on a third-party consumer survey as not a "reliable method of quantifying" how the FTC's reasonable approximation of relief was overstated).

**5.  Proposed exclusion (e): Purchases after parental controls were used.**

Amazon's fifth exclusion removes all charges incurred by a consumer who used parental controls for any purpose, ever. This exclusion again asks this Court to reconsider its finding that, notwithstanding the existence of parental controls, Amazon billed consumers without their

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

express informed consent for children's in-app charges. Amazon provides no evidence that consumers understood that the absence of parental controls would allow children to incur in-app charges within "Free" games without account holder involvement. Indeed, this Court held that in-app charges were not reasonably avoidable by consumers. Dkt. 224 at 17-20. Merely clicking "Parental Controls" to "on" at some point does not suddenly render consumers informed about Amazon's undisclosed in-app billing practices.

**6.  Proposed exclusions (f)-(g): Additional purchases possibly subject to a password.**

Amazon's sixth and seventh exclusions remove charges Amazon assumes were password-prompted based on projections about data it did not collect. The FTC excluded from its calculations all charges that Amazon's data showed were password-protected. Amazon, however, attempts to exclude additional charges on the grounds that its "metric-events" data collection was incomplete. The FTC has reasonably proffered that, in the absence of data indicating that charges were password-protected, those charges were not in fact password-protected. Remarkably, Amazon attempts to overcome this presumption based on admittedly incomplete data, and without any explanation. Courts have repeatedly held that a defendant may not use deficiencies in its own data as a basis for lowering a reasonable relief approximation. *See, e.g.*, *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 369 (2d Cir. 2011) (rejecting defendant's challenge to FTC's reasonable approximation where records were "incomplete"); *FTC v. Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d 202, 221 (D. Mass 2009) ("To the extent the defendants argue that the FTC's estimate is not an exact calculation of consumer loss, I again conclude that problems with the defendants' own record keeping are a primary reason why a more exact figure cannot be easily determined."), *aff'd*, 624 F.3d 1, 18 (1st Cir. 2010) ("[U]nclear financial records cannot carry a defendant's burden of demonstrating that such a reasonable approximation is inaccurate."); *FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1013 (N.D. Cal. 2010); *JK Publ'ns, Inc.*, 2000 WL 35594143, at *17; *FTC v. Bay Area Bus. Council, Inc.*, No. 02 C 5762, 2004 WL 769388, at *14 (N.D. Ill Apr. 9, 2004) ("To the extent that . . . Defendants' failure to produce relevant evidence makes it impossible to accurately determine the

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

proper amount, the 'risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty.'" (quoting *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997))).

### 7. Proposed exclusion (h): Additional 99-cent charges on First-Generation Kindle Fire.

Based on the available data, the FTC approximated continued 99-cent in-app charges by kids in kids' apps on First-Generation Kindle Fire devices. Amazon responded by adjusting that amount using projections about what proportion of such charges it expected would be attributed to High-Risk apps during the relevant time period. But Amazon has *actual* data that would tell this Court the exact amount of the continued in-app charges that should be part of the monetary relief calculation. Amazon cannot diminish the monetary relief owed for its unauthorized billing practices through conjecture, especially when it possesses the actual data and has had every opportunity to present that data to the Court.

### B. Amazon's proposed adjustments to the unauthorized charge rate are overbroad and based on unsupported speculation.

Amazon's rate adjustments are speculative and overbroad, sweeping in both unauthorized and authorized charges, even under the most charitable interpretation of Amazon's theories.[2] Moreover, certain of Amazon's adjustments expressly contradict or are inconsistent with this Court's April 26, 2016 ruling on summary judgment.

### 1. Proposed adjustment (a): Choice of no password after June 2014.

Amazon's first adjustment alters the unauthorized charge rate by removing all password failures before June 2014 by consumers who, in June 2014, chose not to require a password for purchases after June 2014. This modification is inconsistent with this Court's summary judgment ruling and has no basis in fact or logic. This Court held that "Amazon's injurious practices lasted up until users were clearly informed both about the existence of in-app purchases and the scope

---

[2] Amazon attempts to undermine the FTC's unauthorized charge rate by comparing it to the rate for "Casino" apps and a hand-picked set of other "High-Risk" apps it believes children would not use as often. This is a misleading comparison. Children use these apps as well. *See* Parts I, II(a)(1) *supra*. Moreover, apps on the "High-Risk" list tended to have high return rates and, unsurprisingly, have similarly high failure rates.

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3231

9

of their consent by virtue of the revised in-app purchase prompt on June 3, 2014." Dkt. 224 at 22. Amazon proposes looking at consumers who at some point faced the June 2014 prompt and then, if the consumer—once informed about in-app charges—opted not to require a password, retroactively deeming all prior in-app charges on that device as authorized. Amazon speculates about consumers' motives for opting not to require a password when faced with the June 2014 prompt, but there is nothing in the record supporting this speculation. For instance, while Amazon suggests these consumers may not have had children, there is no reason to believe that a parent—once informed about in-app charges and the possibility of such charges within kids' games—would not avoid unauthorized charges by not downloading such games or not allowing children to use the tablet, rather than requiring a password going forward. A customer's decision after June 2014 to not require a password for purchases does not mean that all prior in-app charges actually were authorized.

### 2.   Proposed adjustment (b): Customers who did not activate parental controls after May 2013.

Amazon's second adjustment proposes eliminating from the pool of unauthorized charges all password failures after Amazon displayed its May 2013 first-time password prompt. Amazon's theory is contrary to this Court's summary judgment order, which held that Amazon's practices continued to be unfair even after the May 2013 prompt. Dkt. 224 at 22. Amazon insists that this prompt obtained a customer's "express, informed consent" to future charges, Dkt. 246 at 13, but this Court's order found the opposite. Dkt. 224 at 22 (holding that Amazon's unfair practices pertains to all in-app charges made "without express, informed authorization" and runs through June 3, 2014 for most devices and continues to the present for First-Generation Kindle Fires). In an attempt to square its approach with this Court's ruling, Amazon characterizes the issue as being whether consumers after May 2013 match the "profile" of a consumer who incurred unauthorized charges. This is a distinction without a difference; the May 2013 prompt did not obtain customer's consent to future charges without a password and, pursuant to this

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

1    Court's ruling, subsequent password failures should be counted as part of the unauthorized

2    charge rate.

3        **3.  Proposed adjustment (c): Failed transactions more than 30 days after first failure.**

4            Amazon's third adjustment proposes excluding all failed password attempts more than 30

5    days after a consumer's first failed password attempt. It is apparently Amazon's hunch that, if

6    such a charge had been incurred, a customer would have noticed the charge (either on a credit

7    card statement or by Amazon's e-mail confirmation) and then understood the steps to take to

8    prevent future charges. Amazon offers no evidence supporting this chain of inferences, and the

9    theory already has been rejected by this Court. This Court has held that, in fact, not all

10   consumers would notice a charge: "[G]iven the design of the Appstore and procedures around in-

11   app purchases, it is reasonable to conclude that many customers were never aware that they had

12   made an in-app purchase." Dkt. 224 at 17; *cf. JK Publ'ns, Inc.*, 2000 WL 35594143, at *15

13   (finding defendant failed to account for "Court's finding that there are undoubtedly injured

14   cardholders who will never file a complaint because they did not catch the unauthorized charges

15   on their bank statements"). Accordingly, those consumers would not have been aware of the

16   possibility of future charges. Further, given the e-mail confirmation's lack of information about

17   the nature of the charge, and Amazon's stated no-refund policy, which could discourage

18   customer contact, even customers who saw some information about the charge did not have the

19   information necessary to prevent future charges. *See, e.g.*, Dkt. 109 at 12, ¶ 37.

20           Finally, even if the Court were to accept Amazon's position, Amazon has not performed

21   its calculation in accordance with its theory. Amazon removes the password failures at issue

22   from the numerator in calculating the unauthorized charge rate, rather than removing them from

23   the equation entirely. In other words, Amazon treats password failures it alleges would never

24   have occurred as if they were successful. But under Amazon's counterfactual theory, these later

25   password prompts would never appear at all, because the customer would have set up parental

26   controls or not permitted his or her child to use the device. Thus, at minimum, these later

     attempts should be removed entirely from the calculations (numerator and denominator).

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

**4.  New proposed adjustment (d): Also apply ratio of refunds with particular wrap-up codes.**

Apparently unsatisfied with the unauthorized charge rate it achieved after correcting its calculation error in III.c, Dkt. 246 at 14, Amazon now—for the first time—argues that the rate should be reduced by a ██████ based on the percentage of refunds assigned particular codes, called "wrap-up codes," by its customer service agents. As noted above, Amazon has waived this argument and this Court should not consider it. Separately, and critically, it has no merit.[3]

Amazon contends that this adjustment is needed to account for a ragbag series of imaginable password failures: poor Internet connection at the precise moment of password entry; hypothetical children authorized to make purchases but who forget their parents' passwords or change their minds; or other attempts by adults not corrected for elsewhere. Amazon offers no evidence that any such failures are included within the FTC's unauthorized charge rate. Indeed, Amazon offers no evidence that any such failures occurred at all. And Amazon makes no serious effort to show any relationship between such failures and the adjustment Amazon proposes.[4] Groundless speculation cannot satisfy Amazon's burden.

\*       \*       \*

The FTC does not agree that Amazon has met its burden with respect to any particular exclusion or adjustment. Nonetheless, for reference, Exhibit A shows the effect of accepting various subsets of Amazon proposals on the final amount of monetary relief. The FTC arranges the proposals in descending order by the amount of monetary relief. If this Court were inclined to account for certain of Amazon's proposals, the requested monetary relief would decrease as shown in each corresponding row in Exhibit A. Exhibit A does not include proposed rate

---

[3] Equally flawed is Amazon's application of its wrap-up code ratio to the unauthorized charge rate but not to the refunds deducted from the injury figure (approximately $██████ instead of ████ % of $██████ There is no justification for crediting Amazon with refunds for charges not even included in injury.

[4] Moreover, if this Court were to accept other exclusions or adjustments proposed by Amazon, there is no basis to believe that an ungrounded "catch-all" adjustment is necessary or that it would not be duplicative of the other deductions. In fact, Amazon's request that this Court layer proposed rate adjustments on top of proposed revenue exclusions already would be duplicative (e.g., proposing revenue exclusions in II.b, c, and e and rate adjustments in III.a, b, and c  all based on the theory that consumers would know about and activate parental controls).

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

adjustment (b) or (d), given that those adjustments are foreclosed by, respectively, this Court's summary judgment ruling and Amazon's waiver of an untimely argument. Exhibit A follows the parameters below:

- In Amazon's favor, though the FTC has been unable to replicate Amazon's calculations exactly, Exhibit A uses Amazon's revenue figures (except for the revenue from 99-cent charges on First-Generation devices, for reasons described in Part II(A)(7) above).

- The FTC, like Amazon, applies the proposed revenue exclusions sequentially. Amazon's calculations do not make it possible to identify the impact of nonconsecutive revenue exclusions (for example, (a) and (c) only).

- As shown in the column "Effective Unauthorized Charge Rate" in Exhibit A, each of Amazon's proposed revenue exclusions can be expressed as a rate adjustment—that is, as a percentage. Halving the pool of revenue used in the calculation, for example, is the same as halving the unauthorized charge rate as applied to the FTC's initial pool of revenue. Treating the modifications equally allows apples-to-apples comparisons of the impact of Amazon's revenue exclusions and rate adjustments.

- The FTC applies Amazon's rate adjustment (c) consistent with Amazon's theory, as detailed in Part II(B)(3) above (i.e., applying the same deduction in the numerator and denominator), removing those ██████ password failures from the equation entirely.

- The FTC's proposed revenue pool includes more in-app charges and more refunded in-app charges than Amazon's proposal (specifically, $██████ in refunds as compared to $██████, *see* Dkt. 220). Because Amazon's only suggested refund figure assumes that every revenue exclusion has been accepted by this Court, the FTC uses that figure in the rows of Exhibit A (11-14) that apply every revenue exclusion. Where the revenue pool used to calculate relief falls somewhere between Amazon's proposal and the FTC's, however, refunds will necessarily fall between Amazon's refund figure ($██████) and the FTC's ($██████). Critically, in Amazon's favor, the FTC credits Amazon with the higher refund figure throughout the rest of Exhibit A. This means that rows 2-10 of

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

13

1    Exhibit A understate relief by as much as the difference between the two refund figures

2    (that is, approximately $██████).

3    **III. Consistent with This Court's Order, Monetary Relief Remains Appropriate.**

4         Having failed to meet its burden by relying on speculation rather than evidence, Amazon

5    attempts to shirk it entirely by proposing a new alternative remedy that would result in *no*

6    monetary award. *Commerce Planet* does not permit such an extraordinary outcome, and, not

7    surprisingly, Amazon offers no authority that holds otherwise.[5] Entry of monetary relief is

8    necessary for meaningful consumer redress and to ensure that Amazon is not unjustly enriched

9    by its illegal conduct.[6] *Commerce Planet*, 815 F.3d at 603 ("[T]he purpose of [a restitution]

10   award is 'to prevent the defendant's unjust enrichment by recapturing the gains the defendant

11   secured in a transaction.'" (quoting 1 Dobbs, Law of Remedies § 4.1(1), at 552)). Despite

12   Amazon's insinuations of windfall recoveries, the FTC "often requests orders directing equitable

13   disgorgement of the excess money to the United States Treasury" in order to "ensure that

14   defendants are not unjustly enriched by retaining some of their unlawful proceeds by virtue of

15   the fact that they cannot identify all the consumers entitled to restitution and cannot distribute all

16   the equitable relief ordered to be paid." *Febre*, 128 F.3d at 537. The only "windfall" at issue is

17   whether Amazon will be allowed to pocket the lucre of its unauthorized billing practices.

18        Despite being found liable for violating the FTC Act, Amazon proposes to run its own

19   redress program with no monetary floor, numerous eligibility restrictions, and virtually no third-

20   party oversight. Dkt. 250-1 at 4-6. As noted above, Amazon waived this argument and this Court

21   should not consider it.[7] Moreover, under Amazon's new proposal, there would be no incentive to

22

23   [5] Amazon also fails to offer any justification for what is essentially a request to reconsider the Court's April 26, 2016 order that a monetary award is proper relief in this case. *See* Dkt. 224 at 16 (requesting further briefing regarding the "money damages award to enter in this case").

24   [6] The FTC's proposed order on monetary relief is attached. It includes provisions common in FTC orders involving monetary relief to facilitate redress. *See, e.g.*, *FTC v. Ideal Fin. Sols., Inc.*, No. 2:13-CV-00143, 2016 WL 756527, at *9 (D. Nev. Feb. 23, 2016).

25   [7] Specifically, Amazon failed to address the administration of relief in its response, surreply, offer of proof, or during oral argument on the FTC's motion.

26

PLAINTIFF'S RESPONSE TO                                    Federal Trade Commission
AMAZON'S SUPPLEMENTAL BRIEF                         600 Pennsylvania Avenue N.W.
Case No. 2:14-cv-01038-JCC                                      Washington, DC 20580
                          14                                          (202) 326-3231

provide adequate relief to injured consumers; in fact, Amazon would have a strong incentive to administer redress in a close-fisted manner consistent with the multifarious restrictions on relief Amazon proposes.[8] Among other things, Amazon would not give a consumer a refund if the consumer had ever received a refund for any in-app charge for any reason (including a technical problem) or if a minor over the age of 13 had incurred the charge. Refund requests exceeding $20 would be limited to a single 45-day period unless granted leave by Amazon. Amazon also would demand that consumers "confirm" information about the in-app charges. This would likely discourage consumers from going through the claims process, as many may not have a precise memory of a low-dollar charge incurred years ago. *Cf.* Dkt. 224 at 17 ("[G]iven the design of the Appstore and procedures around in-app purchases, it is reasonable to conclude that many customers were never aware that they had made an in-app purchase."); *id.* at 20 ("[T]he majority of in-app purchases by customers were for $2.99 or less . . ."). Finally, any consumer whom Amazon actually deems worthy of redress would receive an Amazon gift card, not a true refund. The Court should reject this egregious, self-serving proposal and enter monetary relief as contemplated by the Court's April 26, 2016 order. *See Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d at 1214 (rejecting defendant's request to pay redress directly to consumers because "the defendants have offered no compelling reason why they, the purveyors of the deception, should be charged with competently and honestly reimbursing the consumers").

---

[8] Indeed, Amazon's proposal does not even meet the requirements set forth in the pre-litigated, pre-liability-finding FTC in-app purchasing settlements with Apple, Inc. and Google, Inc. (limited eligibility restrictions, and with a specified amount of monetary relief serving as a mandatory floor). *See* https://www.ftc.gov/system/files/documents/cases/140327appledo.pdf; https://www.ftc.gov/system/files/documents/cases/141205googleplaydo.pdf.

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

| | |
|---|---|
| 1 | Dated: June 17, 2016 |

/s/ Jason M. Adler
JASON M. ADLER
HEATHER ALLEN
JANE M. RICCI
MIYA TANDON
KATHARINE ROLLER
HELEN WONG
jadler@ftc.gov, hallen@ftc.gov, jricci@ftc.gov,
mtandon@ftc.gov, kroller@ftc.gov,
hwong@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue N.W., CC-10232
Washington, DC 20580
P: (202) 326-3231, (202) 326-2038,
(202) 326-2269, (202) 326-2351, (202) 326-3582,
(202) 326-3779
F: (202) 326-3239

LAURA M. SOLIS, WA Bar No. 36005
lsolis@ftc.gov
Federal Trade Commission
915 2nd Avenue, Suite 2896
Seattle, WA  98174
P: (206) 220-4544, F: (206) 220-6366

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I, Jason Adler, certify that on June 17, 2016, I electronically filed the foregoing Plaintiff's Response to Amazon's Supplemental Brief Regarding FTC's Calculation of Monetary Relief, Declaration in Support and Exhibits A-B, and Proposed Order with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

By: /s/ Jason M. Adler

PLAINTIFF'S RESPONSE TO
AMAZON'S SUPPLEMENTAL BRIEF
Case No. 2:14-cv-01038-JCC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC  20580
(202) 326-3231