THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

                  Plaintiff,

      v.

AMAZON.COM, INC.,

                Defendant.

CASE NO. C14-1038-JCC

ORDER DETERMINING
MONETARY RELIEF

On April 26, 2016, the Court granted partial summary judgment for the Federal Trade Commission (FTC) and found Defendant Amazon liable for violations of Section 5 of the FTC Act. (Dkt. Nos. 224, 225, and 274-36.) The Court reserved ruling on the issue of monetary damages, finding the FTC's requested relief was too high. (Dkt. No. 274-36 at 23.) On October 4, 2016, the Court held oral argument on the question of the proper amount and scope of monetary damages.  After the oral argument, the Court issued a minute order that it was inclined to adopt a notice-and-claims procedure and ordered the parties to provide further supplemental briefing. (Dkt. No. 280.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds further oral argument unnecessary and hereby ORDERS Amazon to adopt the notice-and-claims procedure outlined below.

## I.     BACKGROUND

In its original summary judgment briefing, the FTC requested approximately $26.5

million in monetary damages. (Dkt. No. 109 at 32; Dkt. No. 246 at 3.) The FTC generated this figure by calculating an "unauthorized charge rate"—the rate of password failures as a portion of total password prompts given—and applying it to the universe of relevant in-app purchase revenue. (Dkt. No. 274-36 at 16.) The Court held that the rate suggested by the FTC in its original briefing was too high, as it assumed every failed password attempt should be associated with an attempted in-app purchase by a child. (*Id.* at 17.) Rather, as the Court discussed, "many password 'failures' could have occurred because the user got distracted, changed his or her mind, or simply could not remember their password." (*Id.* at 16.) Accordingly, further briefing was requested (Dkt. Nos. 244, 246, 257, and 258), which the Court has now considered in addition to the arguments presented on October 4, 2016, and the supplemental briefing on the notice-and-claims procedure (Dkt. Nos. 282, 285).

Amazon argues that the estimate provided by the FTC is so unreasonable as to warrant either: (1) entry of judgment for a substantially lower amount, or (2) entry of a money judgment through a notice-and-claim procedure rather than a lump sum to the U.S. Treasury. (Dkt. No. 246 at 3.)[1] In response, the FTC argues that Amazon's arguments are untimely and an impermissible abandonment of the burden-shifting framework established by the Ninth Circuit. (Dkt. No. 257 at 2.) The Court, having invited the additional briefing on the scope of appropriate money damages and remedy, is not persuaded by the FTC's timeliness argument.

## II.    DISCUSSION

### A.    Standard of Review

This Court is guided by the two-step burden-shifting framework adopted by the Ninth Circuit in *F.T.C. v. Commerce Planet, Inc.*, 815 F.3d 593 (9th Cir. 2016), for calculating restitution awards under section 53(b) of the FTC Act. "Under the first step, the FTC bears the

---

[1] Amazon also argued in its original supplemental briefing that the Court should deny the FTC's request for monetary judgment entirely. (Dkt. No. 246 at 3.) However, at oral argument, Amazon's counsel withdrew this proposal. Therefore, the Court will not consider it.

burden of proving that the amount it seeks in restitution reasonably approximates the defendant's unjust gains, since the purpose of such an award is 'to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction.'" *Id.* at 603 (quoting 1 Dobbs, Law of Remedies § 4.1(1), at 552). The Court notes that it has already held that the FTC made the required threshold showing with respect to a reasonable approximation of money damages. (*See* Dkt. No. 274-36 at 22–23.) If, as here, the FTC meets its burden under the first step, "the burden then shifts to the defendant to show that the FTC's figures overstate the amount of the defendant's unjust gains." *Id.* at 604. However, at this stage of the analysis, "[a]ny risk of uncertainty . . . 'falls on the wrongdoer whose illegal conduct created the uncertainty.'" *Id.* (citing *F.T.C. v. Bronson Partners*, 654 F.3d 359, 368 (2d Cir. 2011)).

### B.        Lump Sum Monetary Relief

Amazon takes issue with nearly every lump sum monetary relief calculation put forth by the FTC. Amazon argues that there should be various decreases to the pool of relevant revenue and corrections to the unauthorized charge rate. (*Id.* at 4–15.) The FTC submits that Amazon's proposed exclusions are not only overbroad, but based on speculation rather than concrete evidence. (Dkt. No. 257 at 6.) The FTC also argues that the corrections to the unauthorized charge rate are problematic and should be rejected. (*Id.* at 10–13.)

The Court concludes that the original monetary relief number proposed by the FTC is too high, but also that Amazon's supplemental briefing constitutes a flawed attempt to show that the FTC's figures overstate the harm at issue in this case. Having considered the arguments in the parties' first set of supplemental briefs (Dkt. Nos. 244, 246, 257, and 258), the Court concludes that both parties have failed to provide persuasive ways to decrease the lump sum monetary relief amount to a more precise calculation than the FTC's original number. The number proposed by the FTC is too high because it does not take into account the fact that not all failed password attempts are associated with unauthorized purchases by children. Further, most of Amazon's proposed reductions are too speculative and many are in opposition to the Court's

order on the motion for summary judgment.[2] Therefore, the Court DENIES the FTC's request

for lump sum monetary relief and moves to the notice-and-claims procedure arguments.

### B.   Notice-and-Claims Procedure

As a preliminary matter, the Court has the authority to order a notice-and-claims

procedure as opposed to lump sum monetary relief. The FTC Act gives the Court broad equitable

powers to award any relief "necessary to accomplish complete justice." *Commerce Planet*, 815

F.3d at 598 (quoting *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982)). The Court's

"equitable powers are comprehensive" when deciding on the appropriate remedy and "a court

sitting in equity may . . . give whatever other relief may be necessary under the circumstances."

*Id.* Therefore the FTC's argument that the Court must issue an order for lump sum monetary

relief because the FTC met its original burden to approximate the amount of relief is

unpersuasive. (*See* Dkt. No. 285 at 2–4.) Although "[a]ny risk of uncertainty" falls on the

defendant, *Commerce Planet*, 815 F.3d at 604, the Court still must determine which remedy is

most appropriate under the circumstances. As discussed below, the Court concludes that a

notice-and-claims procedure is the more appropriate form of relief because it removes the

inherent uncertainty of the lump sum monetary relief options suggested by the parties.

#### 1.   Amazon's Proposal

Amazon proposes that it would bear the administrative costs of its proposed notice-and-

claims procedure. (Dkt. No. 282 at 7.)

##### a.   *Potentially Eligible Transactions*

As for the specifics, Amazon first suggests that the "potentially eligible transactions"

eligible for a refund should contain: (1) the corrected pool of potentially relevant revenue from

high-risk apps as defined by the FTC (Dkt. Nos. 111, 183); (2) for the same set of high-risk apps,

the in-app purchases for less than $1 on first-generation Kindle Fire devices from December 2,

---

[2] Amazon proposes many of the same exclusions in their proposal on the notice-and-claims procedure. The Court discusses each of the exclusions' merits in detail below.

2014, through May 5, 2016—the date after which the company began to require a password for all in-app purchases on the first-generation device; (3) exclude purchases based on five revenue adjustments; and (4) exclude purchases that have already been refunded. (Dkt. No. 282 at 7–8.)

The revenue exclusions Amazon proposes would exclude "purchases (a) within additional apps not of interest to kids; (b) after a customer's first refund; (c) after a customer's first Kindle FreeTime activity; (d) between 11 p.m. and 3 a.m. Pacific Time; and (e) after a customer had enabled the Parental Controls Password prompt." (*Id.* at 8 n.4.) As to the first exclusion, the FTC's original damages calculation used the in-app purchasing data for 6,000 "high-risk" apps and excluded purchases (1) made within "casino" apps, (2) subject to a high-price password, (3) subject to other passwords if reflected in "metric-events" data, or (4) completed after June 3, 2014, other than those made on the first-generation Kindle Fire. (Dkt. No. 246 at 4–5.) Amazon argues that this calculation still includes purchases that were unlikely to have been made by children. Amazon submits that additional apps' potential refunds should be excluded: (1) those rated "adult" or "mature," (2) those classified in categories that would not interest children, "such as personal finance or navigation," and (3) thirty specific apps, including "Crime City" and "Gun Zombie: Hell Gate," with violence or characteristics rendering them unlikely to have been played by children. (*Id.*)

Second, Amazon proposes excluding purchases made after a customer had received a refund, arguing that those customers were fully informed about parental controls and the possibilities of in-app purchasing. (*Id.* at 5–6.) Third, Amazon proposes that the Court exclude purchases that occurred after a consumer was made aware of Kindle FreeTime, a tablet program that involves creating a child profile.  (*Id.* at 6.) Finally, Amazon also advocates for the exclusion of late-night purchases because children would normally be asleep during that time and purchases made after parental controls had been enabled. (*Id.* at 6–7.)

b.    *Claims Process*

Amazon then proposes that once potentially eligible transactions are defined, Amazon

1  would send an email notice to all customers with potentially eligible transactions, informing

2  them "that they may be eligible for a refund for in-app purchases if made without authorization

3  by a child under the age of 13." (Dkt. No. 282 at 8–9.) Amazon suggests that "[b]y the later of

4  January 31, 2017, or 90 days after entry of final judgment, Amazon would send the required

5  notices to potentially eligible customers."  (*Id.* at 11.) Then, those customers would be able to

6  submit a claim for a refund by using a webpage maintained by Amazon. (*Id.* at 9.) The customers

7  would be required to confirm that the purchase was made without authorization by a child under

8  the age of 13. (*Id.*) However, Amazon submits that "[i]f a customer's selection of refund requests

9  exceeds $20, the webpage would instruct the customer to limit refund requests to purchases

10  made within a single 45-day period of the customer's choosing." (*Id.* at 9–10.) The customer

11  would be able to request that the 45-day limit extended by "providing a specific explanation

12  of the circumstances that allowed a child to continue to make unauthorized purchases despite

13  repeated notices to the customer." (*Id.* at 10.) Amazon argues this limitation is necessary "to

14  prevent individuals from exploiting the proposed claims process" and is a "fair restriction given

15  that each in-app purchase results in an immediate email notification sent to the account holder

16  and a line entry on an associated credit-or debit-card statement." (*Id.*)

17       c.  *Refunds*

18     Next, Amazon proposes that the customer refunds should be issued in the form of an

19  Amazon gift card applied to the customers' Amazon accounts, or the customers could elect to

20  have a refund check sent by mail. (*Id.*) Amazon's proposal would also allow Amazon to

21  investigate refund requests that it suspects may be fraudulent, and deny requests if there is

22  "sufficient credible evidence that the refund request is fraudulent." (*Id.* at 11.) Amazon submits

23  that the refund would be provided "within 14 days of the later of (1) submission of a claim,

24  (2) completion of a fraud investigation concluding that the request is not fraudulent, or

25  (3) completion of investigation of a request for an exemption from the 45-day limit on claims

26  exceeding $20", allowing for 30 days for refunds issued by check. (*Id.*)

1        The "Consumer Redress Period," during which customers could submit requests for

2   refunds, would begin once Amazon sent out the notices and would continue for 12 months under

3   Amazon's proposal. (*Id.* at 12) Under Amazon's plan, within 30 days after the close of each

4   quarter during those 12 months, "Amazon would provide the FTC with records sufficient to

5   show the amount of refunds requested, paid, and denied." (*Id.*) For denied refunds, Amazon

6   would provide the reasons for denial and the FTC could ask Amazon to reconsider "any denial,

7   and, if necessary, any disputes that remain could be resolved by a Special Master appointed by

8   the Court." (*Id.*) Finally, Amazon's proposed notice-and-claims procedure would neither cap the

9   total amount of available refunds, nor set a minimum amount of refunds to be issued—meaning

10   it has no monetary floor or ceiling. (*Id.*)

11           2.    The FTC's Proposal

12           a.    *Potentially Eligible Transactions*

13        The FTC argues that eligibility for refunds should be "straightforward" and include "any

14   Amazon customer who claims a minor incurred an unauthorized in-app charge on the customer's

15   account before June 4, 2014." [3] (Dkt. No. 285 at 6.) The FTC contends that many of its original

16   calculations of monetary relief actually tipped in Amazon's favor. The FTC points out that some

17   of the "high risk" apps excluded from the relevant refunds were clearly targeted towards

18   children, including apps known as "Puppy Slots," and "Mega Zoo Slot Machine." (Dkt. No. 257

19   at 5.) Additionally, the FTC only included revenue from "high risk" apps, despite the fact that

20   there were many apps targeted towards children, including those named "Fish Farm," "Kids

21   Salon," and "Monsters University," excluded by this decision. (*Id.*) The FTC rebuts Amazon's

22   argument that certain apps are "not likely" to be of interest to children, pointing out that the list

23   of "high risk" apps on which the FTC relied was generated by Amazon. (Dkt. No. 257 at 6.) For

24

25   [3] This Court previously held "the scope of Amazon's unfair billing practices pertains to all in-app charges made by
26   account users without express, informed authorization" until June 3, 2014, and continuing on First-Generation
    devices through May 5, 2016—the date after which the company began to require a password for all in-app
    purchases on the first-generation device. (Dkt. No. 274-36 at 23.)

ORDER DETERMINING MONETARY RELIEF
PAGE - 7

1   example, while Amazon argues in its supplemental brief that an additional thirty apps are "not

2   likely" of interest to children, there is substantial evidence that those very apps have been used

3   by children. (Dkt. No. 186-1 at 31; Dkt. No. 205; Dkt. No. 247-1 at 7, 76.)

4         The FTC further disputes Amazon's suggestion that in-app charges generated after a

5   consumer has already received a refund should be excluded. As the FTC suggests, Amazon's

6   recommendation essentially requests the Court to make a ruling that all unauthorized charges

7   occurring after a first refund were "unreasonable" or reasonably avoidable within the meaning of

8   the FTC Act analysis. (Dkt. No. 257 at 7.) Similarly, the FTC argues that there is no evidence

9   that revenue generated after a consumer was made aware of the Kindle FreeTime app should be

10  excluded, as there is not a perfect correlation between use of the FreeTime app and awareness of

11  in-app purchases or parental controls in the remainder of the Amazon apps. (*Id.* at 7–8.) The

12  same logic applies to Amazon's argument that charges incurred by consumers who had used

13  parental controls should not be included. The FTC argues that Amazon's proposed exclusion of

14  charges incurred between 11:00 p.m. and 3:00 a.m. Pacific Standard Time is conjecture.

15  (Dkt. No. 257 at 8.) Notably, the Amazon finance director on whose declaration Amazon relies,

16  does not claim to have any expertise in the sleep patterns and tablet use of children. Finally, the

17  FTC argues that Amazon's limitation of eligible transactions to those made by children under

18  age 13 is unfounded. (Dkt. No. 285 at 11.) The FTC contends that the FTC's agreement during

19  discovery to use search terms "under-13" and "pre-teen" was meant to locate relevant documents

20  at Amazon, not a concession on the scope of liability. (*Id.*)

21              b.    *Claims Process*

22         In regards to the claims process, the FTC proposes that the notice-and-claims procedure

23  should be a "streamlined process" and "Amazon should not burden customers by requesting

24  more information than is necessary to determine whether the charges consumers identify as

25  unauthorized qualify as eligible charges under the order." (*Id.* at 7.)The FTC requests the

26  opportunity to review and approve the notice sent to Amazon customers within 30 days after

ORDER DETERMINING MONETARY RELIEF
PAGE - 8

1    entry of this Order. (Dkt. No. 285-1 at 4.) The FTC also proposes that Amazon's 45-day

2    limitation is contrary to the Court's order which held that the unauthorized in-app charges were

3    not reasonably avoidable by customers. (Dkt. No. 285 at 10) (citing Dkt. No. 274-36 at 18–21).

4                    c.    *Refunds*

5         Next, the FTC suggests that the refunds should not be issued in the form of Amazon gift

6    cards because it could lead to Amazon recapturing some portion of that refund. (Dkt. No. 285 at

7    8.) As for Amazon's proposed no floor or ceiling on refunds, the FTC proposes that a mandatory

8    floor "serves a as a guardrail for the redress program and helps insure that Amazon will refund a

9    sum consistent with the record in this case." (*Id.* at 5.) The FTC contends that the mandatory

10   floor should be no less than $12,228,806—"which accepts all of Amazon's proposed reductions

11   . . . and then lowers the FTC's unauthorized charge rate by the percentage of in-app refunds that

12   Amazon did not code as relating to children." (*Id.* at 6.) Under the FTC's proposal, if Amazon

13   fails to refund the full amount of the mandatory floor, the remaining amount would be remitted

14   to the FTC. (*Id.* at 5–6.)

15                    3.    The Court's Conclusion

16        As already stated, the burden is on Amazon to prove that the FTC's relief overstates the

17   amount of relief necessary, *Commerce Planet, Inc.*, 815 F.3d at 604, because the FTC has

18   already met its burden to show a reasonable approximation. The Court concludes Amazon has

19   demonstrated that a notice-and-claims procedure is the more appropriate form of monetary relief

20   than a lump sum payment because it removes the uncertainty of the proper lump sum amount

21   that the parties have vigorously disputed. Moreover, it accomplishes the goals of placing liability

22   on Amazon and refunding eligible customers. Finally, the notice and claims form of monetary

23   relief is more precise in that specific customers who incurred unauthorized in-app purchases will

24   be able to recover, instead of the Court determining a lump sum amount of recovery that would

25   be based on speculation. The proper notice-and-claims procedure for this matter is outlined

26   below.

a.      *Potentially Eligible Transactions*

The Court agrees that the amount of potentially eligible refunds should be reduced, but not to the extent advocated for by Amazon. First, the Court agrees with Amazon that the revenue from high-risk apps as defined by the FTC begins the relevant inquiry for what makes up the potentially eligible transactions. The Court also agrees with Amazon that for the same set of high-risk apps, in-app purchases for less than $1 on first-generation Kindle Fire devices from December 2, 2014, through May 5, 2016 will be included into the potentially eligible transactions for the reasons stated in its proposal outlined above. The Court also agrees with Amazon that it is logical that the potentially eligible transactions should exclude in-app purchases made without authorization by a child that have already been refunded.

However, the Court agrees with the FTC that Amazon's argument that the potentially eligible transactions should be decreased by certain "high risk" apps that are not likely to be of interest to children is inadequate. There is substantial evidence that those very apps have been used by children. (*See* Dkt. No. 186-1 at 31; Dkt. No. 205; Dkt. No. 247-1 at 7, 76.) The Court is also not persuaded by the suggestion that in-app charges made, without authorization, after a receipt of a refund are not a part of the "harm" discussed in the Court's order granting the FTC partial summary judgment. Amazon has not provided sufficient evidence that all consumers who received refunds were instructed about parental controls. In fact the evidence indicates that Amazon customer service agents did not always instruct or effectively educate customers about parental controls. (Dkt. No. 102 at 67–68.) Accordingly, purchases made after receipt of a refund are still included in the potentially eligible transactions. The same is true for purchases made regardless of a customer's use or awareness of parental controls or Kindle FreeTime. Amazon did not disclose that parental controls or FreeTime had to be activated to avoid unauthorized in-app charges. (*See* Dkt. No. 109 at 5, ¶ 11 n.3.) Therefore, Amazon's arguments for these exclusions are unpersuasive due to a lack of sufficient evidence.

With respect to Amazon's request to exclude purchases made between 11:00 p.m. and

3:00 a.m. Pacific Standard Time, the Court concludes that a reasonable way to account for the fact that not all failed password attempts would have been made by children is, in fact, to omit the purchases made in the late night hours. In so doing, the Court takes judicial notice of the fact that children are generally asleep between 11:00 p.m. and 3:00 a.m. Pacific Standard Time (2:00 a.m. – 6:00 a.m. Eastern Standard Time). Judicial notice may be taken of factual matters that are either generally known or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *U.S. v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003); Fed. R. Evid. 201(b). Common sense dictates that the majority of people are asleep during these hours, particularly if they are children.

Finally, the Court is not persuaded by Amazon's argument that purchases made by children age 13 and older are not part of the harm in this matter. As the FTC points out, the FTC never made any sort of concessions on the scope of liability by using search terms like "pre-teen" and "under-13" during discovery. The Court agrees. This case deals with all unauthorized in-app purchases made by *children*. Children between ages 13 and 17 are included in this definition because drawing a line at age 13 would be an arbitrary distinction for which the Court finds no basis under these facts. Therefore, all unauthorized in-app purchases by children, not just those age 12 and under, are included in the potentially eligible transactions.

b. *Claims Process*

The Court agrees with Amazon's proposal to send notices to potentially eligible customers by the later of January 31, 2017 or 90 days after entry of this Order. This timeline seems reasonable under the circumstances and the FTC proposal of 90 days after the entry of final judgment is consistent. The Court also agrees with the FTC that the notice-and-claims procedure should be a streamlined process, and has adopted such language in the notice-and-claims procedure outlined below.  Finally, the Court finds that the FTC's proposal to review and approve the notice, prior to it being sent to customers, is appropriate. The notice-and-claims procedure below reflects this conclusion.

ORDER DETERMINING MONETARY RELIEF
PAGE - 11

1    However, the Court is not persuaded by Amazon's 45-day limit for claims over $20

2  because it is contrary to the Court's motion for summary judgment order. This argument is not

3  convincing for the same reasons the Court rejected most of the proposed exclusions above. Even

4  though a customer may get an email notification when an in-app purchase occurs and may see

5  said purchase on their monthly credit or debit card statements, this Court already found in its

6  order on the motion for summary judgment that unauthorized in-app charges were not reasonably

7  avoidable by customers and some may have not been aware of such charges. (Dkt. No. 274-36 at

8  18 –21.) Therefore, the Court concludes that there will be no limit on the amount of claims a

9  customer can pursue. Amazon's fraud detection plan, adopted below, is the more adequate way

10  to catch any sort of abuse of the notice-and-claim procedure while simultaneously making sure

11  that all injured customers can recover the full amount of harm incurred by Amazon's practices.

12                                     c. *Refunds*

13    First, the Court agrees with the FTC that the refunds should not be issued in the form of

14  Amazon gift cards. Although it may be convenient for customers, that refund form is completely

15  contrary to the Court's determination that Amazon is liable for violations of the FTC Act. If

16  Amazon were able to issue Amazon gift cards as a refund, Amazon would undoubtedly recapture

17  some of the profits that are at issue. Therefore, the Court rejects that proposal and agrees with the

18  FTC that the refunds should be returned to the source of the initial charge (such as a credit or

19  debit card), and if that option is not available, the refunds should be issued in check form.

20    Next, the Court concludes that Amazon's proposed plans for investigating refund

21  requests that may be fraudulent is reasonable. However, the Court modifies this proposal to

22  exclude the investigation of a request for an exemption from the 45-day limit on claims

23  exceeding $20 because that limitation was denied above.

24    Finally, the Court concludes that the FTC's proposal for a mandatory floor of recovery

25  would be based on speculation of the monetary harm in this matter and is denied. The FTC bases

26  its proposed floor on Amazon's proposed exclusions to the potential relevant revenue and

unauthorized charge rate, but also states that none of the exclusions "meet[] Amazon's burden." (Dkt. No. 285 at 6.) The Court agrees that Amazon's proposed exclusions, except for excluding the charges made late at night, do not meet its burden. However, the late night purchase exclusion adopted by the Court undoubtedly does not capture all the transactions that should be excluded. Therefore, the Court cannot impose a mandatory floor based on these speculative exclusions that are contrary to the Court's order on the motion for summary judgment. Moreover, the Court cannot impose a mandatory floor based on the FTC's initial relief calculation because the Court found it to be too high. (Dkt. No. 274-36 at 23.) As such, the Court cannot construct an arbitrary mandatory floor and will not impose one in this case.

## II.   NOTICE-AND-CLAIM PROCEDURE

To provide the utmost clarity, the Court will outline the specific notice-and-claim procedure adopted above. Accordingly, the Court ORDERS the following notice-and-claim procedure.

DEFINITIONS

1. "**Account Holder**" means an individual with a billing address in the United States who controls an Amazon account to which Amazon may bill In-App Charges.

2. "**App**" means any software application that can be installed on a mobile device from the Amazon Appstore.

3. "**Consumer Redress Period**" means the twelve-month period of time beginning upon the later of (1) January 31, 2017, or (2) 90 days after entry of this Order.

4. "**In-App Charge**" means a charge billed by Amazon associated with a user's acquisition of virtual or digital items from the Amazon Appstore for use within an App.

5. "**Potentially Eligible Transaction**" means an In-App Charge within the following pool of transactions:

a. The corrected pool of potentially relevant revenue (In-App Charges) defined by the FTC in the Declaration and Supplemental Declaration of Julie Beth Miller (Dkt. Nos. 110, 183);

b. For the same set of apps used in Ms. Miller's analyses (Dkt. Nos. 110, 183), also include In-App Charges for less than $1 on first-generation Kindle Fire devices for the period from December 2, 2014, through May 5, 2016;

c. Exclude In-App Charges based on the revenue adjustment for purchases made between 11 p.m. and 3 a.m. Pacific Standard Time in Exhibit A to the May 27, 2016, Declaration of Jonathan M. Werner (Dkt. No. 247) (and as outlined in Parts II.A.1.a.(iv) of Amazon's supplemental brief on monetary relief (Dkt. No. 246)); and

d. Exclude In-App Charges for which Amazon has already provided a refund to Account Holders.

NOTICE-AND-CLAIMS PROCESS

Amazon shall implement a notice-and-claims process to provide refunds to eligible Account Holders as follows:

1. Eligible Refund Request. Amazon shall offer refunds to Account Holders for the full purchase price of any Potentially Eligible Transaction that satisfies the following conditions (and therefore constitutes an "**Eligible Refund Request**"):

A. The Account Holder requests a refund within the Consumer Redress Period;

B. The Account Holder confirms the following for each requested refund of an In-App Charge:

i. the In-App Charge was paid by the Account Holder;

ii. the In-App Charge was incurred by a child under the age of 18; and

iii.       the In-App Charge was the result of a purchase that was not authorized by the Account Holder.

2.   <u>Form of Refund</u>.  When submitting a claim, an Account Holder shall have the option to elect have the refund issued to the source of the initial charge (such as a credit or debit card). If that option is not available, the refunds shall be issued as a check and sent by mail to an address provided by the Account Holder.

3.   <u>Prompt Refund</u>.  Amazon shall provide prompt refunds to Account Holders for the full purchase price of any Eligible Refund Request.  For purposes of this Section, a "prompt" refund means a refund provided within 14 days of the later of (1) claim submission, or (2) completion of a fraud investigation concluding that a request is not fraudulent. For refunds issued by check, Amazon shall have 30 days, rather than 14 days, to send a refund check.

4.   <u>Fraudulent Refund Requests</u>.  Amazon may investigate refund requests that it suspects may be fraudulent (e.g., an identified In-App Charge was in fact authorized and/or incurred by an adult).  If, after investigation, Amazon concludes that there is sufficient credible evidence that a refund request is fraudulent, Amazon may decline an otherwise Eligible Refund Request.  All refund requests denied for fraud are subject to the reporting requirements in Paragraph 7, which provide the FTC opportunity to question or challenge denial of a refund.

5.   <u>Notice to Potentially Eligible Account Holders</u>.  By the start of the Consumer Redress Period, Amazon shall send an email notice to any Account Holder it charged for a Potentially Eligible Transaction.  The email notice shall include a subject line relating to the content of the notice and contain the following information, disclosed in a clear and conspicuous manner: (1) that refunds are available for Account Holders who have been billed for eligible In-App Charges incurred by children under the age of 18 that were not authorized by the Account Holder; (2) that such refunds are available until the end of the Consumer Redress Period; and (3) instructions regarding how to obtain refunds pursuant to this Order, including means of contacting Amazon for a refund. Amazon shall send the proposed notice to the FTC for review and approval within 30 days after entry of this Order. Once approved, Amazon shall send the notice to the current or last-known email address for the Account Holder.  For undeliverable email

notices, Amazon shall mail a notice to the Account Holder's current or last-known physical address.

6. <u>Reminder Notice</u>. Between 30 and 45 days prior to the end of the Consumer Redress Period, Amazon shall send a reminder notice to Account Holders who have not submitted a claim.

7. <u>Reporting Requirements</u>.  Within 30 days after the close of each quarter within the Consumer Redress Period, Amazon shall provide the FTC with records sufficient to show the amount of refunds requested, paid, and denied.  For refunds denied (e.g., for fraud), Amazon shall also provide the bases for denial.  Within 90 days after receipt of a quarterly report due under this Paragraph, the FTC may ask Amazon to reconsider any refund denial identified in the report. Thereafter, if any disputes remain with respect to refund denials, either the FTC or Amazon may request appointment of a Special Master.

8. <u>Streamlined Process</u>. Amazon's refund program under Paragraph 1 must not be difficult, costly, confusing, time consuming, require Account Holders to provide more information than necessary to determine that a charge qualifies as an Eligible Refund Request under Paragraph 1, or require Account Holders to provide separate documentation of such charges.

## III.  CONCLUSION

For the foregoing reasons, the above notice-and-claims procedure is hereby ordered pursuant to Amazon's violation of the FTC Act.

DATED this 10th day of November 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE